```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MARYLAND
 2
   UNITED STATES OF AMERICA,          )
 3                                    )
                  Plaintiff,          )
 4        vs.                         )
                                      ) CRIMINAL NO.: JKB-16-0363
 5   GERALD JOHNSON, et al.,          )
                                      )
 6                Defendant.          )
                                      )
 7   _____  )

 8                Transcript of Motions Hearing
                 Before the Honorable James K. Bredar
 9                 Monday, October 30th, 2017
                      Baltimore, Maryland
10
   For the Plaintiff:
11
          Peter J. Martinez, AUSA
12        Christina A. Hoffman, AUSA

13   For Defendant Gerald Johnson:

14        Paul F. Enzinna, Esquire (By telephone)
          Jeffrey B. O'Toole, Esquire (By telephone)
15
   For the Defendant Wesley Jamal Brown:
16
          Christopher M. Davis, Esquire (By telephone)
17
   For Defendant Kenneth Jones:
18
          Alan R.L. Bussard, Esquire (By telephone)
19
   For Defendant Marquise McCants:
20
          John R. Francomano, III, Esquire
21
   For the Defendant Joseph Bonds:
22
          David Solomon, Esquire (By telephone)
23
24              Christine T. Asif, RPR, FCRR
                 Federal Official Court Reporter
25               101 W. Lombard Street, 4th Floor
                    Baltimore, Maryland 21201
```

```
 1                      P R O C E E D I N G S

 2              THE COURT:  Good afternoon.  Be seated, please.

 3              Mr. Martinez, you may call the case.

 4              MR. MARTINEZ:  Good afternoon, Your Honor.  This is

 5    criminal case number JKB-16-363, United States versus Gerald

 6    Johnson, et al.  Peter Martinez for the Government.  With me

 7    is AUSA Christina Hoffman.  We're here to address a motion to

 8    continue by Marquise McCants.

 9              THE COURT:  And, Mr. Francomano, you're here in

10    person on behalf of your client.

11              MR. FRANCOMANO:  I am, Your Honor.  Good

12    afternoon.

13              THE COURT:  And your client is?

14              MR. ENZINNA:  Marquise McCants, Your Honor.

15              THE COURT:  McCants.  And I have Mr. O'Toole and Mr.

16    Enzinna on the line by telephone; correct?

17              MR. O'TOOLE:  Yes, Your Honor.  Good afternoon,

18    sir.

19              THE COURT:  And you're representing Mr. Johnson.

20              And Mr. Davis, you're on the line representing?

21              MR. DAVIS:  Wesley Brown.

22              THE COURT:  And, Mr. Bussard, you're on the line

23    representing?

24              MR. BUSSARD:  Kenneth Jones, Your Honor.

25              THE COURT:  And, finally, Mr. Solomon you're on the
```

1  line representing?

2          MR. SOLOMON:  Joseph Bonds.

3          THE COURT:  Bonds?

4          MR. SOLOMON:  Yes, Your Honor.

5          THE COURT:  Thank you.  We're in court this

6  afternoon because evidently there was a disclosure of

7  information to defense counsel approximately is it ten days

8  ago at this point, is it -- it starts on the 18th, the first

9  disclosure is on the 20th?

10          MR. MARTINEZ:  No, we received the information on

11  the 16th and disclosed it on the 18th.

12          THE COURT:  On the 18th, excuse me.  Okay.  So 12

13  days ago information was disclosed to defense counsel to the

14  effect that Marquise McCants was overheard through electronic

15  surveillance discussing certain matters with another defendant

16  in this case, who has already pled guilty and is awaiting

17  sentencing.  And the discussion went into areas that the

18  government thinks are relevant to the trial in this case.  And

19  the consequence of that is that the government, at least with

20  respect to two of the statements allegedly made by Mr.

21  McCants, intends to, if permitted by the Court, introduce

22  that -- recordings of those statements and play them before

23  the jury.  Is that it, Mr. Martinez?

24          MR. MARTINEZ:  That's correct, Your Honor.

25          THE COURT:  And then Mr. Francomano reacted to that

1    on the 29th of October by filing a motion seeking a

2    continuance of this trial, which is scheduled to begin on the

3    13th of November and is projected to last until approximately

4    the middle of January, some eight or nine weeks, probably

5    about six weeks or six weeks and a couple of days of actual

6    trial time, many interruptions because of the Court's schedule

7    and because of the intervening holidays, nonetheless, a

8    lengthy trial that has been scheduled for a long time.

9            Strikes me that there are two issues that are before

10   the Court.  The first is the question of whether or not there

11   should be a postponement in light of this new circumstance.

12   The second, not necessarily to be resolved today, is the

13   ultimate admissibility of any such evidence that the

14   government has proffered here.  So first things first, I have

15   reviewed Mr. Francomano's request for a continuance, does any

16   other defendant join the request for continuance or is it only

17   Mr. Francomano?  On behalf of Mr. Johnson, Counsel?

18           MR. O'TOOLE:  Your Honor, this is Jeffrey O'Toole.

19   Your Honor, I'm among the attorneys who have not yet received,

20   and we're getting to Mr. Martinez the hard drive to download

21   the material, I'll be delivering it to him tomorrow.  I don't

22   take a position because I have not listened to the hours of

23   tapes that are apparently on this recording or intercepted in

24   the jailhouse.  But it's difficult to know whether that

25   material would help us or hurt us at the moment.  I think

1    we're unable to object or to join the motion for

2    continuance.

3              THE COURT:  The -- what's overheard on the

4    recording, were those statements all made on the same day or

5    were they made on days immediately adjacent to each other or

6    were they made over the last year or what?

7              MR. MARTINEZ:  Your Honor --

8              THE COURT:  I'm asking the government counsel.  Go

9    ahead.

10             MR. O'TOOLE:  All right.  Thank you.

11             MR. MARTINEZ:  Your Honor, the two that we intend to

12   use at trial pertain to conversations, the first conversation

13   took place on September 25th of 2017, and the second took

14   place the following day, September 26th.  The devices --

15   recording devices were not removed from the jail, because the

16   investigation was ongoing until October 4th.  And then it took

17   the FBI, I guess it was 12 additional days to get us the

18   exported copies of the audio recordings and we notified

19   counsel.  The two conversations we intend to use now were

20   September 25th and September 26th.

21             THE COURT:  When did the FBI first realize what they

22   had?

23             MR. MARTINEZ:  I think they understood they had

24   incriminating conversations pertaining to those two

25   individuals as they were monitoring the wire.  But I think

1    that they did not want to disclose that for fear of

2    compromising the ongoing surveillance operation until they had

3    removed from the multipurpose room in CDF.

4            THE COURT:  And so they held the material from the

5    25th or 26th of September until the 18th of October.

6            MR. MARTINEZ:  Until the 16th, when they gave it to

7    us.

8            THE COURT:  The 16th of October.

9            MR. O'TOOLE:  Your Honor, could I ask Mr. Martinez

10    stand closer to the microphone.  I can understand what the

11    Court's saying, but I have difficult time understanding what

12    Mr. Martinez is saying.

13            MR. MARTINEZ:  Sorry.  I need a taller microphone.

14            THE COURT:  Do you want to be seated?

15            MR. MARTINEZ:  Yes.

16            THE COURT:  Pull the microphone closer.  Give me the

17    sum and substance of the statements, Mr. Martinez, that you

18    think are admissible here.

19            MR. MARTINEZ:  Yes, Your Honor.  The first September

20    25th conversation, as the Court is aware was between Marquise

21    McCants and Norman Handy, a co-defendant in this case.  And

22    most of the conversation pertained to this pending criminal

23    case.  But the two or three minutes that is of greatest

24    interest to the government, and that we believe the jury

25    should hear about at trial and see, is a discussion between

1    McCants and Handy regarding the 2013 murder of Moses Malone,

2    which we allege was committed by Mr. Brown, Mr. McCants' half

3    brother and co-defendant in the case.

4            During the conversation Mr. Handy and Mr. McCants

5    discussed several things, the fact that Mr. Brown had

6    "beaten," in Mr. Handy's words and Mr. McCants's words, the

7    murder charge in state court.  They discussed the additional

8    evidence that the federal government might have pertaining to

9    the murder.  They discussed the fact that the government might

10   be calling witnesses to substantiate text messages in which

11   Brown disposed of the murder weapon.  And it's clear from

12   those discussions, we think a jury could clearly find from

13   those discussions, A, that Mr. Brown did in fact murder Mr.

14   Malone.  B, that Mr. McCants and Mr. Handy both know what was

15   done with the murder weapon.  And C, that they're working

16   together in the jail to try and identify who the snitches are

17   in this particular case.  So that's the key portion of that

18   recording --

19           THE COURT:  Well, the last part of it is very

20   important.  Let's back up for a minute, though, it's Mr.

21   McCants and Mr. Handy speaking?

22           MR. MARTINEZ:  Correct.

23           THE COURT:  And it would tend to inculpate Mr.

24   Brown; right?

25           MR. MARTINEZ:  And Mr. Johnson, who we have alleged

1    authorized it.

2          THE COURT:  Okay.  So those statements would be

3    admissible against Mr. Brown and Mr. Johnson, if they were

4    co-conspirator statements.

5          MR. MARTINEZ:  Correct.

6          THE COURT:  That is statements made in the course of

7    the conspiracy, and in furtherance of the conspiracy.  So

8    perhaps they would be admissible against Mr. McCants just as

9    his own statements or admissions.  Although, I'm not sure

10   exactly what he's admitting to in describing the conduct of

11   others.  We'll get to that in a minute.  The co-conspirators,

12   how are these admissible co-conspirator statements?

13         MR. MARTINEZ:  Well, Your Honor, they're all

14   defendants in the same case at the time the statements are

15   made, and they're discussing what the evidence is, and whom

16   the witnesses might be that the government intends to call at

17   trial.  And one of the manner and means that we've alleged

18   with respect to this racketeering conspiracy is that it's a

19   rule of the gang that members aren't allowed to snitch.  And

20   that the gang bands together to identify witnesses against the

21   gang, to intimidate them and to retaliate against them.

22         And so to the extent that they're talking about the

23   fact that their fellow gang member and co-defendant in this

24   case beat a murder in state court, they're trying to suss out

25   the differences in the case, including who the witnesses may

1    be.  And to identify particular individuals who are named in a

2    conversation and say, I don't put it past him for testifying

3    or Wes thinks they're going to call Deandre, that's very much

4    consistent with a conspiracy that includes as a predicate

5    crime witness tampering and witness retaliation.

6              THE COURT:  Well, any defendant who's preparing for

7    trial is focused like a laser beam on who's going to testify

8    at trial, so that they can be prepared to cross-examine them

9    and potentially discredit them and so forth.  That's very

10   different from tampering with a witness, and obstructing

11   justice.  Is there something in the statements that suggests

12   that it is more than the simple anticipation of or planning

13   for who might be testifying at trial?

14             MR. MARTINEZ:  I think the context here matters,

15   Your Honor.  And first of all, this is coming in the context

16   of a discussion of a witness murder.  And --

17             THE COURT:  So the murdered individual, Malone, was

18   a witness?

19             MR. MARTINEZ:  Correct.

20             THE COURT:  Okay.

21             MR. MARTINEZ:  And they're talking about who the

22   witnesses that might testify about the witness murder may be.

23   To the extent that the Court's question is, are there

24   expressed statements during the recording that we need to take

25   care of so-and-so, or we need to get a green light for this

 1    particular witness, there is no such expressed statement in

 2    the recording.  However, given the context of what they're

 3    talking about, and the other gang-related activity that's

 4    discussed before and after this conversation took place,

 5    together with the allegations that we've made and that the

 6    jury will hear about, with respect to what this gang does to

 7    identify and eliminate or deal with witnesses who come forward

 8    to testify about the gang, we think that a jury could draw any

 9    number of inferences from the fact that this conversation took

10    place.

11            And I would add, one of the key issues that the

12    jury's going to be asked to decide at trial is to the extent

13    that Mr. McCants or others are proven to have joined an

14    agreement to be part of this racketeering enterprise, the

15    question the jury's then going to have to decide is what

16    crimes were foreseeable to them, did they agree would be

17    committed in furtherance of the enterprise, were murders part

18    of the agreement.  And to the extent that you have two

19    co-defendants who weren't direct participants in this murder,

20    sitting inside the jail, talking about the intimate details of

21    the murder, including what became of the murder weapon, who

22    testified, and they name three different witnesses.  I forgot

23    about the initial witness who had testified in state court.

24    This goes to the idea that this murder was committed in

25    furtherance of the gang, because all the gang members know

1    about it and how it was committed.

2         THE COURT:  I don't have much quarrel with you on

3    that point.  That's not my question, though.  My question is,

4    how does the conversation itself further the ends of the

5    conspiracy?  You were on more firm ground when you were

6    speaking earlier about some effort to intimidate or tamper

7    with witnesses, that could be continuing conspiratorial

8    activity.  But mere statements that, yeah, we killed people in

9    the past, graphic, horrible statements about their -- how

10   their physiology reacted to being shot, don't necessarily

11   advance the objectives of the conspiracy; correct?

12        MR. MARTINEZ:  There is a string of case law, Your

13   Honor, which deals with conversations between co-conspirators

14   where one co-conspirator is bringing another up to speed or

15   updating them as to affairs that are pertinent to the

16   conspiracy.  And so to the extent that you have two gang

17   members inside the jail talking about what evidence was

18   presented against a certain gang member at one trial, how the

19   evidence might differ at an upcoming trial, and they're

20   talking about what happened to murder weapons, and yes, to

21   Your Honor's point, they're trying to identify who the

22   additional witnesses are, I think that's all part of the

23   conversation that's meant to bring a fellow co-conspirator up

24   to speed, and to identify potential witnesses who may need to

25   be eliminated because they're going to hold the fellow gang

1    member accountable for somebody being killed.

2          THE COURT:  Well, I think that this is a complex

3    question.  I take it you don't have transcripts yet of the

4    relevant conversations?

5          MR. MARTINEZ:  Ms. Hoffman actually -- and she filed

6    a motion in limine Friday evening to admit statements by Mr.

7    Malone, the victim of the murder we have charged, pertaining

8    to the robbery and shooting that he was a victim of and was

9    going to testify about, which was motive for his murder.  We

10    move to admit those under the forfeiture by wrongdoing

11    exception.  But in support of her motion Ms. Hoffman did

12    excerpt a transcribed portion, the key portion of the

13    conversation between McCants and Handy regarding the Malone

14    murder.

15          THE COURT:  Does it encapsulate and include all of

16    the statements that you would intend to offer, or are there

17    other statements or portions that have not yet been

18    transcribed that you have not submitted.

19          MR. MARTINEZ:  I think it includes the key portions.

20    But I do think there are parts of the discussion, both before

21    and after the section she did transcribe, or had transcribed,

22    that we would want to use.

23          THE COURT:  Thank you, Mr. Martinez.

24          So, Mr. Francomano, as to Mr. McCants himself, you

25    are requesting a continuance in the trial?

1          MR. ENZINNA:  Correct, Your Honor.

2          THE COURT:  But what about Mr. Martinez' point in

3     his written papers that the only reason that this disclosure

4     is being made so very late in the game is because it only

5     occurred very late in the game, on the 25th and 26th of

6     September, before a scheduled trial date of November 13, a

7     trial that has been scheduled for many, many months, in a case

8     that was indicted in 2016, not even this calendar year.  I

9     mean, let's take the example of a defendant improvidently

10    blurts something out in the jail van on the way over to court

11    on the morning of trial and it substantially changes the

12    complexion of the government's evidence because the deputy

13    Marshal overheard it, does a defendant get a postponement of

14    his trial date because all the sudden he's made a blurt and it

15    completely changes the picture that defense counsel thought he

16    or she was dealing with to that point?

17         MR. ENZINNA:  No, Your Honor.  I believe that that

18    would not be a reason for a continuance.  We're in a different

19    situation here.  Number one, the recordings were the 25th and

20    26th of September.  We did not receive them until October

21    16th.  Excuse me, October 18th.  That being said, Your Honor,

22    there's only two recordings, I believe, that Mr. McCants is on

23    that they're trying to use in the case coming up on the 13th.

24    The problem is it's not just a blurt or something that was

25    just said.  There's 42 days of recordings that I need to go

1    through, that I need to go through with my client.  Your

2    Honor, if I were to go to trial, go to my client and say, hey,

3    they have two recordings of you, don't worry about it we don't

4    need to go through the rest of this stuff, let's just go

5    through this stuff.

6            THE COURT:  Let me first ask Mr. Martinez and Ms.

7    Hoffman, have you scrubbed the 42 days worth of recordings for

8    *Brady* or *Giglio* material?

9            MR. MARTINEZ:  We haven't done a complete scrub,

10   Your Honor.  We've reviewed the line sheets that the FBI

11   monitors prepare as they were listening to the conversations

12   in real time.  We've identified as best we can at this point,

13   which conversations involved defendants in this case.  It's

14   currently our understanding that the only defendants in the

15   case who were actually intercepted having conversations are

16   Mr. McCants and Mr. Handy.  Other defendants in the case are

17   discussed, at least based on what the line sheet summaries

18   tell us.  And many of the conversations -- which we've offered

19   to turn over, just to make sure that there's no hiding of the

20   ball and defense counsel have everything that we do -- many of

21   the conversations appear to be solely between detainees at CDF

22   who are not charged with or otherwise involved in this case.

23           THE COURT:  Okay.  But that doesn't mean that there

24   isn't any *Brady* or *Giglio* material in those statements.  I

25   mean, you could have two individuals talking there and saying,

1    well, listen I heard that, you know, Brown didn't shoot

2    anybody.

3              MR. MARTINEZ:  Your Honor's correct.  And that I

4    think is in large part why we felt it was appropriate to tell

5    all defense counsel 11 days ago, you ought to have all this

6    stuff.

7              THE COURT:  Yeah, but the government -- the

8    government has the first responsibility itself to examine the

9    material in its possession to see if there's anything of an

10   exculpatory or impeachment nature in it.

11             MR. MARTINEZ:  We understand that, Your Honor.  And

12   in that respect I suppose we're not in all that different

13   position than Mr. Francomano, in that we've got it recently,

14   we're still looking through it.

15             THE COURT:  When are you going to be finished?

16             MR. MARTINEZ:  That's a good question, Your Honor.

17   It is a lot of stuff.  I would say if the objective of the

18   exercise were to completely scrub the recordings for *Brady* or

19   *Giglio*, it might take a couple weeks.

20             MR. O'TOOLE:  Your Honor, if I could, this is

21   Jeffrey O'Toole.  Before we get too far from Your Honor's

22   suggestion of the example of the blurting out on the day of

23   the trial, in that case I think Mr. McCants wouldn't have as

24   much ground for a continuance as Mr. Johnson or Mr. Brown

25   might, who weren't involved in that conversation, but who

1    might be referenced in it.  So I think that the examination of

2    these tapes needs to be done.

3             THE COURT:  Well, do I hear you, Mr. O'Toole, then

4    asking for a postponement of the trial?

5             MR. O'TOOLE:  Well, I'm asking the Court for -- I

6    think this is all playing out -- just started to my

7    understanding yesterday because we had conversations talking

8    about this.  But we may be asking for it, or a ruling by the

9    Court that this does not come in, which would be simple, I

10   suppose, and let this thing proceed as the Court has

11   scheduled.

12            MR. DAVIS:  On behalf of Mr. Brown, that would be my

13   feeling with regard to the statements at the Chesapeake

14   Detention Facility.  They're not statements of Mr. Brown.  The

15   conspiracy has ended.  They're not in furtherance of the

16   conspiracy.  And these are not unusual facts that everybody

17   doesn't know about.  The facts that were discussed regarding

18   Mr. Brown are facts that everybody knows about, they're in the

19   indictment, they're in the discovery, there's nothing new

20   here.  Basically, you have Mr. McCants and this other fellow

21   just talking about the case.

22            If Your Honor were inclined to find that a

23   conspiracy hadn't ended, and the statements were in

24   furtherance of the conspiracy, which I don't see how they

25   could, but if he did, then I would move to exclude them under

403, because they're duplicative of the other evidence coming
in and it's going to mislead the jury.  Mr. Brown had nothing
to do with these guys just shooting the breeze in the
barbershop or in the computer room at the detention facility.

Now, I spoke to Mr. Martinez about this over the
weekend.  And I didn't join in the motion for a continuance,
because he indicated to me that those were the only statements
he was going to try to get into evidence.  When we spoke, I
said fine, but I can't respond until I know what theory that
you're going to try to seek admission.  I agree with Your
Honor, I think that the focus on the conspiracy ending and
that these statements aren't in furtherance of the conspiracy,
I think that's why they shouldn't come in.

So I'm asking that at least with respect to Mr.
Brown, that these statements that are also present in the
evidence elsewhere, not be allowed to come in through these
two guys talking.  Because I think it's unfair to imply that
Mr. Brown is involved in some type of witness tampering, or
there's some big plot going on.  Because I think it's an
unfair characterization to allow it to come in against Mr.
Brown.  There's plenty of evidence elsewhere.

THE COURT:  Well, you would agree, Mr. Davis, that
if there was embedded in this evidence, proof of some kind of
plot to try to intimidate witnesses or even just discover who
the witnesses were, for the purpose of intimidating them and

1    changing their testimony or eliminating the possibility of

2    their testifying, that that sort of co-conspirator statement,

3    even if made just on the eve of trial, is potentially

4    admissible against all of the defendants; isn't it?

5              MR. DAVIS:  It would be, but that's not the case

6    here.

7              THE COURT:  Well, that's the question.

8              MR. DAVIS:  The fact --

9              THE COURT:  That's the question.

10             MR. DAVIS:  The fact that Wes was acquited is public

11   record.

12             THE COURT:  Right.

13             MR. DAVIS:  I mean how it can be -- and the fact

14   that he suspects that a person who's -- these people are

15   identified in the indictment, these are text messages going

16   back and forth, I mean, and they're identified in the

17   discovery.  Your Honor, hit the nail right on the head when

18   you said that all these defendants are focused on who's

19   testifying.  What's lacking is any indication of witness

20   tampering or witness threatening.

21             And I understand that there are problems with

22   witness retaliation in Baltimore City, but there are no

23   allegations here to support Mr. Brown engaging in that conduct

24   at this point in time.  And I'm not overlooking the fact that

25   the decedent here, Mr. Malone, was killed because he was a

1    witness, but I'm just saying now there's nothing to indicate

2    it other than it happened in the past.  And I don't think

3    that's fair.

4              THE COURT:  There's a long line of cases that

5    attempts to distinguish so-called idle chatter from true

6    co-conspirator statements made after the time when a

7    conspiracy, at least by charging, has ended.  And they're

8    frequently in the context of jail conversations.  It's not an

9    uncommon experience that defendants talk when locked up under

10   a false sense of privacy.  So this is not unknown in the law

11   at all.  It just turns on what was -- you know, was there an

12   objective, and was the conversation in furtherance of some

13   conspiratorial activity.  Based on the proffers I've heard

14   from the government so far, I'm not persuaded, but I haven't

15   heard the actual testimony, I haven't heard the tapes.

16             The problem we've got is it's after 6:00 p.m. on the

17   day when the government was to disclose *Jencks*, consistent

18   with the prior scheduling order, agreement by the government,

19   and so forth.  The government obviously doesn't want to

20   disclose the *Jencks* today if the trial is not going to

21   commence on the 13th of November as anticipated.

22             Mr. Martinez, I think you're in a hard spot here.

23   If you continue to push this and want to introduce this

24   evidence and try to get it in, I'll hold a hearing on that

25   question sometime in the next few days.  I don't know what the

1    outcome is going to be on the question of whether or not it's

2    admissible or if it's not admissible.  If I determine that it

3    is admissible, I may conclude that the defendants are entitled

4    to some postponement in order to look into the background of

5    this.

6            Mr. McCants is in the weakest position with respect

7    to that, because his client, arguably, is the whole cause of

8    sort of the emergency here by making statements at such a late

9    point.  But even Mr. Francomano has a reasonably strong

10   argument in that the statements are made on the 25th and 26th

11   of September, but they're not disclosed by the FBI, even

12   though they're heard in real time, apparently, until more than

13   three weeks later, or about three weeks later.

14           As you're coming down to the wire getting ready for

15   a trial, three weeks, in that time period, that's a very

16   sensitive, significant period of time.  And I'm certain the

17   government had some very hard decisions and choices to make

18   there, but they needed to make them, promptly, and go one way

19   or another on it.  So that hangs out there, as a possibility.

20           I'm not going to postpone the trial tonight.  That

21   means the government must disclose their *Jencks* tonight.  But

22   you do it at the risk of the trial nonetheless being

23   postponed, because you are pushing the admission of these two

24   statements.  Oddly, you're in the best position if I decide

25   that the statements won't come in, because then the defendants

1    have no argument for a postponement.  If I decide that they

2    are admissible, or at least parts of them are, then there's a

3    serious question that has to be addressed with respect to how

4    much time defense counsel should reasonably have to meet those

5    statements.

6            I don't know the outcome of that.  We'll have to

7    decide that in the context of what the whole discussion

8    reveals.  But I'm sympathetic, not so much to Mr. Francomano,

9    although somewhat, but completely sympathetic to others,

10   particularly Mr. Davis, who represents Mr. Brown, because

11   evidently, it's conduct engaged in by Mr. Brown that is

12   specifically being discussed.

13           The bottom line, Mr. Martinez, is that I think you

14   have some very hard choices to make.  But this is how things

15   developed.  And I can't short circuit the process here to the

16   prejudice of defendants.  They're entitled to the two weeks on

17   the Jencks, that's a settled question in this case, it's the

18   law of this case.  So if we're proceeding to trial on the 13th

19   of November, they get the *Jencks* tonight.  At the same time,

20   whether or not it's fair to go ahead with this trial as

21   scheduled, with this evidence -- new evidence being in play,

22   that's a complex question, not resolvable at this hour.  It

23   may take a hearing -- it will take hearings for certain and

24   some time for the Court to reflect on it.  It's a complex

25   question.

 1          MR. DAVIS:  Your Honor, with respect to the

 2     forfeiture by wrongdoing, which is the second issue here, I

 3     didn't -- I expected this.  This goes to statements Mr. Malone

 4     made to law enforcement prior to his being murdered.  And I

 5     always expected the government to move on this.  Although, I

 6     would appreciate if the government could tell me what

 7     statements they intend to introduce, so that when I respond to

 8     the motion they filed last Friday I can respond in a something

 9     thorough manner.  But I expected that motion to be filed that

10     is no surprise.  I've seen this before.

11          THE COURT:  All right.  Well, that's a open question

12     still to be resolved.  But I don't think there's anything else

13     for the Court to address this evening.  The *Jencks* was to be

14     disclosed today.  The trial has not been postponed.  It could

15     be.

16          But the difficulty, Mr. Martinez, is that if the

17     trial is not postponed, but you haven't produced the *Jencks*.

18     Then the only remedy for that is to not permit you to call the

19     witnesses, an extreme one.  So I can't imagine that the

20     government is going to roll the dice on the other question

21     with such dramatic potential consequences hanging in the

22     balance.  It's up to you.  I don't see, though, given the

23     corner that you are painted into, mostly by circumstances,

24     slightly by the FBI's late disclosure, I don't see how you

25     have the option to continue to pursue the admission of this

1    evidence.  But it's not my decision, it's yours.

2          Anything else?

3          MR. BUSSARD:  Your Honor, this is Alan Bussard, just

4    a scheduling question, I noticed on the Court calendar, on the

5    website, that the pretrial conference is no longer there for

6    the 3rd, this Friday.  Is that going to be combined with the

7    motions hearing on the 7th?

8          THE COURT:  I believe the preliminary -- the

9    pretrial conference was explicitly moved, wasn't it?  I'll

10   turn to other counsel, I don't have the scheduling order right

11   in front of me.  I thought it was moved until something like

12   the 7th.

13         MR. MARTINEZ:  I recall Mr. Welch, when he was still

14   in the case, filing a motion asking that the conference to be

15   moved because of an obligation he had.  And the Court did

16   grant that request and in an order, I believe, and our office

17   filed a notice of hearing on ECF.

18         THE COURT:  Well, motions in limine get heard at

19   the -- in this courtroom get heard at the same time as the

20   pretrial conference any way, that's why all the defendants

21   have to come.  So that's the pretrial conference.  And we'll

22   check the order, but so there's no -- since I've got all the

23   counsel on the line and present here in court, Mr. Martinez,

24   what's that date and time?

25         MR. MARTINEZ:  I believe it's November 7th.

```
 1              THE COURT:  At 10:00 in the morning.

 2              Mr. Francomano, you anticipated that was not just a

 3    hearing on motions in limine, but also the pretrial conference

 4    in this case?

 5              MR. FRANCOMANO:  That's what I believe, Your

 6    Honor.

 7              THE COURT:  Yes.  That's it, Mr. Bussard, any

 8    ambiguity about that?

 9              MR. BUSSARD:  Not at all.  Thank you, Your Honor.

10              MR. SOLOMON:  Your Honor, this is -- I'm sorry to

11    interrupt, this is David Solomon on behalf of Joseph Bonds.

12              THE COURT:  Speak up, Mr. Solomon.

13              MR. SOLOMON:  I'm sorry, this is David Solomon for

14    Joseph Bonds, for whatever reason I've been out of the loop on

15    a number of these scheduled hearings.  So I didn't even have

16    on my calendar the pretrial conference for November 7th.  Am I

17    to understand that November 7th at 10:00 o'clock will be a

18    pretrial conference as well as motions in limine?

19              THE COURT:  Yes, and the number of -- there are

20    dates, I think your jury instructions, motions in limine, all

21    the normal things that you're familiar with, Mr. Solomon, from

22    cases that you've tried before me in the past, that all came

23    to pass perhaps last Friday.  What was the deadline.

24              MR. SOLOMON:  Okay.  Well, that's fine.  I mean, I

25    just want to be clear for scheduling purposes.  That's fine.
```

1    I have nothing further.

2            THE COURT:  We're going to consult the scheduling

3    order.

4            MR. MARTINEZ:  Your Honor, while that's being done,

5    could I make a proposal regarding the situation the government

6    is in, in light of the Court's analysis of the issue we're

7    confronting today.  It is, as Your Honor described, a highly

8    difficult situation to choose between using evidence that we

9    believe is of significant probative value to a substantive

10   offense and an overt act, in furtherance of a RICO case, that

11   is probably the centerpiece of our case on the one hand, and

12   making sure that our witnesses are not exposed for any longer

13   than necessary on the other.  That's a very difficult --

14           THE COURT:  It's a terrible problem.

15           MR. MARTINEZ:  -- spot to be put in.  And what I'm

16   proposing to the Court is whether it's possible to fashion

17   some kind of intermediate compromise whereby the trial date is

18   postponed for ten days or so, so that we can fully litigate

19   the admissibility issue before *Jencks* goes out, thereby

20   preventing us from disclosing witnesses without knowing

21   whether a postponement will be granted.

22           THE COURT:  Well, the problem is I've got five

23   defense attorneys in this case, all five of them with busy

24   practices, many before this court.  You know, what gets

25   delayed on the front end has to be filled in on the back end.

1    What you're basically saying is you would prefer to give up

2    the last two weeks of November, and instead have this trial

3    occupy the last two weeks in January on the back end?  That's

4    what it would take.

5              MR. MARTINEZ:  I think under the circumstances,

6    yes.

7              THE COURT:  Okay.  Well, the problem is -- Mr.

8    Francomano, are you available the last two weeks in January?

9              MR. FRANCOMANO:  I would have to check, Your

10   Honor.

11             THE COURT:  Mr. --

12             MR. O'TOOLE:  Your Honor, if I can just tell the

13   Court, as long as he's checking, I start a trial in Nashville,

14   Tennessee, two and a half years waiting for the trial.  And

15   I've tried to assure the Court when we scheduled that case

16   that we would be done with this case, when I thought that it

17   would be done.

18             THE COURT:  That's Mr. O'Toole speaking?

19             MR. O'TOOLE:  Yes, it is, Your Honor.  Thank you.

20             THE COURT:  All right.  Mr. Davis?

21             MR. DAVIS:  I'm trying -- it will not -- as long as

22   I finish by the second week of February, I'm okay.

23             THE COURT:  Okay.  Mr. Bussard?

24             MR. BUSSARD:  Your Honor, I believe I am available,

25   because I -- a client pled out.  I was to start a trial at the

1     end of January, but I am now available.

2            THE COURT:  Mr. Solomon?

3            MR. SOLOMON:  Your Honor, I have five matters in the

4     last two weeks of January specially set, but if the court will

5     provide something in writing to the effect that we have --

6     trial dates had to be changed for, you know, various reasons,

7     I can probably convince the administrative judges in different

8     jurisdictions to postpone cases.

9            THE COURT:  Mr. O'Toole, Mr. Enzinna's also prepared

10    on this case, is he not?

11           MR. O'TOOLE:  Yes, Your Honor.

12           THE COURT:  So what would the prejudice be to your

13    client if this trial were to run over, what's it scheduled end

14    date right now, about the 11th of January?

15           MR. MARTINEZ:  I believe the 12th.

16           THE COURT:  12th of January.

17           MR. O'TOOLE:  I thought it was the 11th, I think the

18    answer is there's probably a reason that I'm still in the

19    case, the 4th Circuit says you keep two attorneys.  I'm not

20    here as a potted plant.  I think that I'm important for the

21    scheduling of the case.

22           THE COURT:  On the strength of the rather dubious

23    ruling from the circuit that two counsel should remain in a

24    capital case, it's no longer a capital case, but we do still

25    respect that ruling, even though the underpinning for it seems

1   to have demoted long ago.  Well, Mr. Martinez, I've got one

2   lawyer and perhaps Mr. Francomano, who hasn't responded yet,

3   that would have a problem.

4          MR. MARTINEZ:  Well, Mr. Francomano's the one asking

5   for a continuance.  And I certainly respect that, you know,

6   defense counsel have schedules and that they should weigh in

7   the balance, but I also think the interest of the government

8   using evidence that it believes is highly relevant and

9   probative -- we haven't even gotten to the second statement --

10  and while at the same time trying not to expose witnesses

11  before it's absolutely necessary and before we know that a

12  postponement will or won't be granted also weigh in the

13  balance.  And so under the circumstances, I think rather than

14  putting us to a Hobson's choice, a short continuance is a fair

15  and reasonable intermediate compromise.

16         THE COURT:  But no one would project with a, say,

17  ten day or two-week postponement, that we would have the trial

18  finished by the 23rd of January; right?

19         MR. MARTINEZ:  I don't want to promise that it would

20  go that quickly.

21         THE COURT:  I understand.

22         MR. MARTINEZ:  But we're here on a defense motion

23  for continuance, and counsel were all willing to continue it

24  before the Court indicated where it was going.  And now when

25  we're in the spot where we have to --

1          THE COURT:  I never heard Mr. O'Toole say he was

2    prepared to accept a continuance under any circumstances.  And

3    I think defense counsel have been very forthright, if they

4    were just laying in the weeds and raising false issues you

5    would have had Davis, Bussard, Solomon, Enzinna, and

6    Francomano, every one of them would have had impossible

7    calendars the last three weeks of January, these are officers

8    of the Court.

9          MR. MARTINEZ:  Your Honor, just a few minutes ago --

10          THE COURT:  They didn't responds that way.  All

11    these lawyers have indicated that, you know, they could

12    accommodate the -- exactly the extension you're requesting.

13    So I don't think that if there was any kind of criticism

14    intended or directed at defense counsel, in terms of

15    strategizing here, that would be out of bounds here.  And I

16    don't -- but at the same time, I don't see a hint of it.

17          MR. MARTINEZ:  Your Honor, just a few -- Mr. O'Toole

18    didn't indicate that he was in favor of the continuance, just

19    a few minutes ago you asked him do I understand you to be

20    arguing for a continuance.

21          MR. O'TOOLE:  Please step to the microphone, Mr.

22    Martinez, this sounds important and I can't hear you.

23          MR. MARTINEZ:  I'm right in front of the microphone.

24    And I was just saying a few minutes ago, Mr. O'Toole, when you

25    spoke up it was going to take some time to scrub the universe

1    for *Brady* and *Giglio*, Judge Bredar responded by asking Mr.

2    O'Toole, do I now understand you to be asking for a

3    continuance?  And you said, well, Your Honor this is a fluid

4    situation and we're reacting to the information as it comes to

5    us, or something to that effect, but at that point it did seem

6    to me that you were --

7              THE COURT:  You can stop, Mr. Martinez.  I'm not

8    going to hold Mr. O'Toole to a standard where he's thinking on

9    his feet in a court hearing that is evolving in front of all

10   of you as it's evolving in front of me.  I don't find anything

11   sneaky about what Mr. O'Toole did.  I think -- tell me the

12   name of the case in what is it, the Middle District of

13   Tennessee?

14             MR. O'TOOLE:  My client is Ralphael Leavell,

15   L-e-a-v-e-l-l, and the judge is Judge Sean Cox, he is -- Judge

16   Cox specially assigned to the case from Detroit, Michigan.

17   The Judge Sharp, who retired, chief judge, Judge Cox took over

18   all of his calendars.  This case has been set now for a long

19   time.  And I told him, you know, very emphatically when we set

20   that trial date when this case was scheduled and how long I

21   thought it was going to take.

22             THE COURT:  How long is that trial scheduled to

23   last?

24             MR. O'TOOLE:  That trial shouldn't take more than

25   ten days, I think that's going to be a fairly short trial.

1    And it's conceivable when they set that trial, they offered us

2    January 30th as opposed to January 23rd.  I mean, tomorrow

3    morning I can call Judge Cox and see if all parties can be

4    available ten days or two weeks later.  I'm not trying to put

5    anybody in a bind, I'm just trying to answer the Court's

6    question about our scheduling and that's my calendar.  I think

7    it would be wrong not to tell you that.  But I'll be happy to

8    try to get Judge Cox TO work with you or perhaps you could get

9    him to work with you to make my availability possible for

10   everybody.

11          THE COURT:  Tell me the name of the judge again.

12          MR. O'TOOLE:  Judge Sean, S-e-a-n, Cox, C-o-x.  He's

13   out of Detroit, but the case is in Nashville.

14          THE COURT:  And what's the charge?

15          MR. O'TOOLE:  Murder, the case number is

16   3:14-0200.

17          THE COURT:  Okay.  Mr. O'Toole, hold on a second.  3

18   colon, 14 what?

19          THE COURT:  Dash 0200.

20          THE COURT:  Okay.  Judge Sean Cox and the

21   defendant's --

22          MR. O'TOOLE:  My client -- I'm sorry, Your Honor.

23          THE COURT:  Is it a multidefendant case?

24          MR. O'TOOLE:  It was until recently when the judge

25   severed the cases.  The brother is going to trial in a week.

1    And then our trial is to follow on January 23rd.

2            THE COURT:  Okay.  And your client's name is.

3            MR. O'TOOLE:  Ralphael Leavell, L-e-a-v-e-l-l.

4            THE COURT:  Spell the last name again for me?

5            MR. O'TOOLE:  L-e-a-v-e-l-l.

6            THE COURT:  V as in victor?

7            MR. O'TOOLE:  L-e-a -- yeah, l e a, victor, e-l-l.

8            THE COURT:  Leavell.

9            MR. O'TOOLE:  Leavell.

10           THE COURT:  And what's the charge?

11           MR. O'TOOLE:  The charge is murder.  It's a Hobbs

12   Act murder.

13           THE COURT:  Hobbs Act murder.

14           MR. O'TOOLE:  Correct.

15           THE COURT:  Okay.

16           MR. O'TOOLE:  He had a co-defendant, was his brother

17   Quenton he's going to trial I think in less than a week.

18           THE COURT:  Right.  All right.  The government is

19   relieved of the obligation from releasing the *Jencks* tonight,

20   even though the trial schedule is still as it is.  We start on

21   November 13th.  Pull up the calendar for tomorrow morning.

22   What have we got tomorrow morning?

23           THE CLERK:  Nothing.

24           THE COURT:  So we'll reconvene on this matter at

25   11:00 a.m. tomorrow morning.  Government available?

1          MR. MARTINEZ:  Yes, Your Honor.

2          THE COURT:  Mr. Francomano?

3          MR. ENZINNA:  I will, be Your Honor.

4          THE COURT:  Mr. O'Toole, Mr. Enzinna?

5          MR. O'TOOLE:  Your Honor, I'd ask Mr. Enzinna to

6   stand in for me if I could.  I'll be at a State Department

7   meeting with Mr. Tillerson in the morning at 9:30 to 11:00.

8          THE COURT:  Okay.  Mr. Enzinna, you can cover?  Mr.

9   Enzinna, you can cover?  Mr. O'Toole, do you believe Mr.

10  Enzinna can cover?

11         MR. ENZINNA:  Your Honor, I am here and I can cover.

12  I apologize.

13         THE COURT:  Yes.  Mr. Davis.

14         MR. DAVIS:  Yes.  That's 1:00 p.m. tomorrow?

15         THE COURT:  11:00 a.m.

16         MR. DAVIS:  11:00 a.m.  Yes, I can be there.

17         THE COURT:  Mr. Bussard?

18         MR. BUSSARD:  I can be there, Your Honor.

19         THE COURT:  Mr. Solomon?

20         MR. SOLOMON:  Your Honor, I have a detention hearing

21  before Judge Gesner at 11:00, but it shouldn't be a long

22  matter.

23         THE COURT:  At what time?

24         MR. SOLOMON:  11:00.

25         THE COURT:  Okay.  Just call in there tomorrow

```
 1    morning, Mr. Solomon, explain the situation and get that

 2    moved.

 3              MR. SOLOMON:  The detention hearing, that's fine.

 4    Okay.

 5              THE COURT:  Yes.  And Mr. Francomano.

 6              MR. FRANCOMANO:  Yes, Your Honor.  I'll be here.

 7              THE COURT:  Counsel have the option of either

 8    appearing in person or by telephone.

 9              Mr. Enzinna, are you going to be here in person or

10    by phone?

11              MR. ENZINNA:  I'll be on the phone, Your Honor.

12              THE COURT:  Mr. Davis?

13              MR. DAVIS:  I prefer to be on the phone, if I can,

14    it's much more efficient.

15              THE COURT:  Mr. Bussard.

16              MR. BUSSARD:  I will try to be in court, Your

17    Honor.

18              THE COURT:  Mr. Solomon?

19              MR. SOLOMON:  I'll be there.

20              THE COURT:  Mr. Francomano?

21              MR. FRANCOMANO:  I'll be here in court.

22              MR. O'TOOLE:  Your Honor, if I could -- Your Honor,

23    this is Mr. O'Toole, if I could, if I'm back from the State

24    Department I would like to join as well.  Thank you.

25              THE COURT:  Absolutely.  Mr. Martinez and Ms.
```

1   Hoffman, you can be here in person?

2           MR. MARTINEZ:  Yes, Your Honor.

3           THE COURT:  Okay.  Very good.  So the objective will

4   be to -- for the Court to confer with Judge Cox before the

5   11:00 tomorrow morning, to see if we can secure a January 30

6   trial start date for Mr. O'Toole, or later, but January 30.

7   If we accomplish that, that will give us the space to afford a

8   two-week postponement of this trial.

9           Now, we start running into the Court's other

10  problems, though, I don't have the schedule immediately in

11  front of me.  Let's see.  When did I advise all of you that I

12  would be unavailable in December, is that the --

13          MR. BUSSARD:  The 11th to the 15th, Your Honor.

14          THE COURT:  That's right.  So we would essentially

15  pick the jury, and have a week of trial.  And then there would

16  be a week of no trial.  And then we would pick up with the

17  schedule previously set.  Is that it?

18          MR. O'TOOLE:  Your Honor, did I just hear you say

19  you were going to call Judge Cox or you wanted me to call

20  Judge Cox?

21          THE COURT:  I will call Judge Cox.

22          MR. SOLOMON:  Your Honor, this is David Solomon

23  again, I'm sorry, did I hear you correctly when you're saying

24  that the last two weeks of November would put perhaps -- would

25  be days that we don't sit?

1          THE COURT:  Well, the trial may not -- the trial,

2     under this scenario, would not start until Monday the 27th of

3     November.  I mean, it's all kinds of logistical problems are

4     generated, the jury notices have already gone out, the Court

5     has a full calendar in the second two weeks -- or in the

6     latter two weeks of January, probably in the neighborhood of

7     20 to 30 matters that have to be rescheduled.  I mean, it's an

8     enormous problem.  I'm trying my hardest to find a middle

9     ground that will work and protect all of the defendants'

10    rights in this situation.  I am not by any means at this point

11    ruling that we are postponing this trial.  Not even close.

12    I'm just carving out different possibilities.  I'll make my

13    ruling tomorrow in that regard.

14          MR. SOLOMON:  Well, Your Honor, I'm sorry, I just

15    wanted to preface what I say letting the court know that I

16    wasn't there for the motion hearing when apparently the trial

17    schedule was verbalized.  I have two medical days on the 28th

18    and 29th of November where I must be out for a battery of

19    tests and medical procedures.  And I can't -- I just can't do

20    anything about that.  So I just wanted to put the Court on

21    notice.

22          THE COURT:  Mr. Solomon, I believe that very

23    recently I issued a paperless order in this case that set out,

24    with great precision, every single day that the Court was

25    going to sit and not going to sit between November the 13th --

1    I thought it was the 11th of January, Mr. Martinez corrects me

2    says it was the 12th of January, that every single day, every

3    Friday, every date in relation to the Christmas holiday, and

4    am counting on that, and explicitly advised the government in

5    particular to tell the Court if six weeks of trial time was

6    going to be insufficient to get this done.  And the government

7    did not come back with a response to that, which I took to

8    indicate they thought they could get it in.  But taking away

9    even two days is potentially problematic.

10           MR. SOLOMON:  Well, perhaps what the government can

11   do then, assuming I'm in trial at that point, is avoid calling

12   witnesses that implicate my client and have somebody just

13   stand in for me on those two days.

14           THE COURT:  No, I'm not going to do that.  I guess

15   the way I can look at it is that based on Mr. O'Toole's

16   schedule, I've got until the 20 -- till the 20th of January.

17   Friday, is that a Friday?

18           MR. MARTINEZ:  That looks like a Saturday, Your

19   Honor.

20           THE COURT:  So the 19th.  If we go forward on the

21   13th of November, based on everything that has just been said

22   during this hearing, all counsel should understand that the

23   trial window is now November 13 until November 19 -- until

24   January 19.  No one had an objection to that.  So that's the

25   new trial window.  Accordingly, Mr. Solomon, while I'm

1    frustrated with the fact that you didn't point out these two

2    medical dates previously, I know what you've been dealing with

3    and we're going to accommodate those two dates.  What are

4    they, the 28th and 29th?

5            MR. SOLOMON:  28th and 29th, yes.

6            THE COURT:  28th and 29th.

7            MR. SOLOMON:  Thank you, I appreciate that.

8            THE COURT:  Mr. Jaco, you have that?

9            THE CLERK:  (Indicating.)

10            THE COURT:  All right.  The government hasn't lost

11    any trial days as a result of Mr. Solomon's needing to be out

12    on those two dates, agreed Mr. Martinez?

13            MR. MARTINEZ:  Agreed.

14            THE COURT:  In fact, if anything you picked up two

15    days.  I think that the government needs to think long and

16    hard about how essential this additional testimony is, the

17    bind that it places the Court in, all parties, the impact on

18    the public in terms of delaying -- completely redoing the jury

19    notices.  The impact on other litigants, including your own

20    office in terms of proceedings in late January, and by

21    tomorrow morning be ready to state what your position

22    ultimately is with respect to that question.  11:00 o'clock

23    tomorrow.

24            Anything else, Mr. Martinez?

25            MR. MARTINEZ:  Not at this time Your Honor.

1          MS. HOFFMAN:  Your Honor, I do have one question.

2          THE COURT:  Yes, ma'am.

3          MS. HOFFMAN:  Would you like us to litigate the

4    admissibility of the statements tomorrow morning at 11:00?

5          THE COURT:  I suppose it would be useful if you were

6    ready to do that, but I'm not certain yet whether I'll be in a

7    position to do that, or whether defense counsel will be.

8          MR. ENZINNA:  Your Honor, I will not be able to do

9    that by tomorrow at 11:00.

10         THE COURT:  Okay.  Well, I understand your position.

11   11:00 o'clock tomorrow.  We're in recess.

12         (The proceedings were concluded.)

13

14         I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.
15

16         _____/s/_____
                 Christine T. Asif
17               Official Court Reporter

18

19

20

21

22

23

24

25

```
 1   < Dates >                6:8.
     first september 25th   18th 3:8, 3:11,
 2     6:19.                   3:12, 6:5.
     January 19 37:24.       19th 37:20.
 3   January 23rd 31:2,      1:00 33:14.
       32:1.                  .
 4   January 30 35:5,         .
       35:6.                 < 2 >.
 5   November 13 13:6,       20 36:7, 37:16.
       37:23.                2013 7:1.
 6   November 19 37:23.      2016 13:8.
     November 7th 23:25,     2017 1:17, 5:13.
 7     24:16, 24:17.         20th 3:9, 37:16.
     October 16th            21201 1:50.
 8     13:20.                23rd 28:18.
     October 18th            25th 6:5, 13:5,
 9     13:21.                  13:19, 20:10.
     October 4th 5:16.       26th 6:5, 13:5,
10   September 25th 5:13,      13:20, 20:10.
       5:20.                 27th 36:2.
11   September 26th 5:14,    28th 36:17, 38:4,
       5:20.                   38:5, 38:6.
12    .                      29th 4:1, 36:18,
      .                        38:4, 38:5,
13   < 0 >.                     38:6.
     0200 31:19.              .
14    .                       .
      .                      < 3 >.
15   < 1 >.                  3 31:17.
     101 1:49.               30 36:7.
16   10:00 24:1, 24:17.      30th 1:17, 31:2.
     11 15:5.                3:14-0200 31:16.
17   11:00 32:25, 33:7,      3rd 23:6.
       33:15, 33:16,          .
18     33:21, 35:5,           .
       38:22, 39:4, 39:9,    < 4 >.
19     39:11.                403 17:1.
     11:00. 33:24.           42 13:25, 14:7.
20   11th 27:14, 27:17,      4th 1:49, 27:19.
       35:13, 37:1.           .
21   12 3:12, 5:17.           .
     12th 27:15, 27:16,      < 6 >.
22     37:2.                 6:00 19:16.
     13th 4:3, 13:23,         .
23     19:21, 21:18,         < 7 >.
       32:21, 36:25,         7th 23:7, 23:12.
24     37:21.                 .
     14 31:18.                .
25   15th 35:13.             < 9 >.
     16th 3:11, 6:6,
```

```
9:30 33:7.
_____/s/_____
_____ 39:18.
 .
 .
< A >.
A. 1:23.
a.m. 32:25, 33:15,
  33:16.
able 39:8.
above-entitled
  39:16.
Absolutely 28:11,
  34:25.
accept 29:2.
accommodate 29:12,
  38:3.
accomplish 35:7.
Accordingly 37:25.
accountable 12:1.
acquited 18:10.
Act 25:10, 32:12,
  32:13.
activity 10:3, 11:8,
  19:13.
actual 4:5, 19:15.
actually 12:5,
  14:15.
add 10:11.
additional 5:17,
  7:7, 11:22,
  38:16.
address 2:7,
  22:13.
addressed 21:3.
adjacent 5:5.
administrative
  27:7.
admissibility 4:13,
  25:19, 39:4.
admissible 6:18,
  8:3, 8:8, 8:12,
  18:4, 20:2, 20:3,
  21:2.
admission 17:10,
  20:23, 22:25.
admissions 8:9.
admit 12:6, 12:10.
admitting 8:10.
advance 11:11.
```

```
 1   advise 35:11.           approximately 3:7,     became 10:21.
     advised 37:4.             4:3.                 begin 4:2.
 2   affairs 11:15.          areas 3:17.            behalf 2:10, 4:17,
     afford 35:7.            arguably 20:7.           16:12, 24:11.
 3   afternoon 2:2, 2:4,     arguing 29:20.         believe 6:24, 13:17,
       2:12, 2:17, 3:6.      argument 20:10,          13:22, 23:8,
 4   ago 3:8, 3:13, 15:5,      21:1.                  23:16, 23:25,
       28:1, 29:9, 29:19,    Asif 1:47, 39:14,        24:5, 25:9, 26:24,
 5     29:24.                  39:19.                 27:15, 33:9,
     agree 10:16, 17:10,     assigned 30:16.          36:22.
 6     17:22.                assuming 37:11.        believes 28:8.
     Agreed 38:12,           assure 26:15.          best 14:12, 20:24.
 7     38:13.                attempts 19:5.         big 17:19.
     agreement 10:14,        attorneys 4:19,        bind 31:5, 38:17.
 8     10:18, 19:18.           25:23, 27:19.        blurt 13:14,
     ahead 5:9, 21:20.       audio 5:18.              13:24.
 9   al 1:9, 2:6.            AUSA 1:22, 1:23,       blurting 15:22.
     Alan 1:36, 23:3.          2:7.                 blurts 13:10.
10   allegations 10:5,       authorized 8:1.        Bonds 1:42, 3:2,
       18:23.                availability 31:9.       3:3, 24:11,
11   allege 7:2.             available 26:8,          24:14.
     alleged 7:25,             26:24, 27:1, 31:4,   bottom 21:13.
12     8:17.                   32:25.               bounds 29:15.
     allegedly 3:20.         avoid 37:11.           Brady 14:8, 14:24,
13   allow 17:20.            awaiting 3:16.           15:18, 30:1.
     allowed 8:19,           aware 6:20.            Bredar 1:16, 30:1.
14     17:16.                away 37:8.             breeze 17:3.
     already 3:16,           .                      bring 11:23.
15     36:4.                 .                      bringing 11:14.
     Although 8:9, 21:9,     < B >.                 brother 7:3, 31:25,
16     22:5.                 B. 1:28.                 32:16.
     ambiguity 24:8.         back 7:20, 18:16,      Brown 1:30, 2:21,
17   AMERICA 1:4.              25:25, 26:3,           7:2, 7:5, 7:11,
     among 4:19.               34:23, 37:7.           7:13, 7:24, 8:3,
18   analysis 25:6.          background 20:4.         15:1, 15:24,
     answer 27:18,           balance 22:22, 28:7,     16:12, 16:14,
19     31:5.                   28:13.                 16:18, 17:2,
     anticipated 19:21,      ball 14:20.              17:15, 17:18,
20     24:2.                 Baltimore 1:18,          17:21, 18:23,
     anticipation 9:12.        1:50, 18:22.           21:10, 21:11.
21   anybody 15:2,           bands 8:20.            BUSSARD 1:36, 2:22,
       31:5.                 barbershop 17:4.         2:24, 23:3, 24:7,
22   apologize 33:12.        Based 14:17, 19:13,      24:9, 26:23,
     apparently 4:23,          37:15, 37:21.          26:24, 29:5,
23     20:12, 36:16.         Basically 16:20,         33:17, 33:18,
     appear 14:21.             26:1.                  34:15, 34:16,
24   appearing 34:8.         battery 36:18.           35:13.
     appreciate 22:6,        beam 9:7.              busy 25:23.
25     38:7.                 beat 8:24.             .
     appropriate 15:4.       beaten 7:6.            .
```

< C >.
C-o-x 31:12.
calendar 13:8, 23:4,
    24:16, 31:6,
    32:21, 36:5.
calendars 29:7,
    30:18.
call 2:3, 8:16, 9:3,
    22:18, 31:3,
    33:25, 35:19,
    35:21.
calling 7:10,
    37:11.
capital 27:24.
care 9:25.
carving 36:12.
cases 19:4, 24:22,
    27:8, 31:25.
cause 20:7.
CDF 6:3, 14:21.
centerpiece 25:11.
certain 3:15, 11:18,
    20:16, 21:23,
    39:6.
certainly 28:5.
certify 39:14.
changed 27:6.
changes 13:11,
    13:15.
changing 18:1.
characterization
    17:20.
charge 7:7, 31:14,
    32:10, 32:11.
charged 12:7,
    14:22.
charging 19:7.
chatter 19:5.
check 23:22, 26:9.
checking 26:13.
Chesapeake 16:13.
chief 30:17.
choice 28:14.
choices 20:17,
    21:14.
choose 25:8.
Christina 1:23,
    2:7.
Christine 1:47,
    39:14, 39:19.

Christmas 37:3.
Christopher 1:32.
Circuit 21:15,
    27:19, 27:23.
circumstance 4:11.
circumstances 22:23,
    26:5, 28:13,
    29:2.
City 18:22.
clear 7:11, 24:25.
clearly 7:12.
client 2:10, 2:13,
    14:1, 14:2, 20:7,
    26:25, 27:13,
    30:14, 31:22,
    32:2, 37:12.
close 36:11.
closer 6:10, 6:16.
co-conspirator 8:4,
    8:12, 11:14,
    11:23, 18:2,
    19:6.
co-conspirators
    8:11, 11:13.
co-defendant 6:21,
    7:3, 8:23,
    32:16.
co-defendants
    10:19.
colon 31:18.
combined 23:6.
comes 30:4.
coming 9:15, 13:23,
    17:1, 20:14.
commence 19:21.
committed 7:2,
    10:17, 10:24,
    11:1.
complete 14:9.
completely 13:15,
    15:18, 21:9,
    38:18.
complex 12:2, 21:22,
    21:24.
complexion 13:12.
compromise 25:17,
    28:15.
compromising 6:2.
computer 17:4.
conceivable 31:1.

conclude 20:3.
concluded. 39:12.
conduct 8:10, 18:23,
    21:11.
confer 35:4.
conference 23:5,
    23:9, 23:14,
    23:20, 23:21,
    24:3, 24:16,
    24:18.
confronting 25:7.
consequence 3:19.
consequences
    22:21.
consistent 9:4,
    19:17.
conspiracy 8:7,
    8:18, 9:4, 11:5,
    11:11, 11:16,
    16:15, 16:16,
    16:23, 16:24,
    17:11, 17:12,
    19:7.
conspiratorial 11:7,
    19:13.
consult 25:2.
context 9:14, 9:15,
    10:2, 19:8,
    21:7.
continuance 4:2,
    4:15, 4:16, 5:2,
    12:25, 13:18,
    15:24, 17:6, 28:5,
    28:14, 28:23,
    29:2, 29:18,
    29:20, 30:3.
continue 2:8, 19:23,
    22:25, 28:23.
continuing 11:7.
conversation 5:12,
    6:20, 6:22, 7:4,
    9:2, 10:4, 10:9,
    11:4, 11:23,
    12:13, 15:25,
    19:12.
conversations 5:12,
    5:19, 5:24, 11:13,
    12:4, 14:11,
    14:13, 14:15,
    14:18, 14:21,

16:7, 19:8.
convince 27:7.
copies 5:18.
corner 22:23.
Correct 2:16, 3:24,
 7:22, 8:5, 9:19,
 11:11, 13:1, 15:3,
 32:14, 39:15.
correctly 35:23.
corrects 37:1.
Counsel 3:7, 3:13,
 4:17, 5:8, 5:19,
 13:15, 14:20,
 15:5, 21:4, 23:10,
 23:23, 27:23,
 28:6, 28:23, 29:3,
 29:14, 34:7,
 37:22, 39:7.
counting 37:4.
couple 4:5, 15:19.
course 8:6.
courtroom 23:19.
cover 33:8, 33:9,
 33:10, 33:11.
Cox 30:15, 30:16,
 30:17, 31:3, 31:8,
 31:12, 31:20,
 35:4, 35:19,
 35:20, 35:21.
crime 9:5.
crimes 10:16.
CRIMINAL 1:8, 2:5,
 6:22.
criticism 29:13.
cross-examine 9:8.
currently 14:14.
.
.
< D >.
Dash 31:19.
date 13:6, 13:14,
 23:24, 25:17,
 27:14, 30:20,
 35:6, 37:3.
dates 24:20, 27:6,
 38:2, 38:3,
 38:12.
David 1:44, 24:11,
 24:13, 35:22.
DAVIS 1:32, 2:20,

2:21, 16:12,
 17:22, 18:5, 18:8,
 18:10, 18:13,
 21:10, 22:1,
 26:20, 26:21,
 29:5, 33:13,
 33:14, 33:16,
 34:12, 34:13.
day 5:4, 5:14,
 15:22, 19:17,
 28:17, 36:24,
 37:2.
days 3:7, 3:13, 4:5,
 5:5, 5:17, 13:25,
 14:7, 15:5, 19:25,
 25:18, 30:25,
 31:4, 35:25,
 36:17, 37:9,
 37:13, 38:11,
 38:15.
deadline 24:23.
deal 10:7.
dealing 13:16,
 38:2.
deals 11:13.
Deandre 9:3.
decedent 18:25.
December 35:12.
decide 10:12, 10:15,
 20:24, 21:1,
 21:7.
decision 23:1.
decisions 20:17.
Defendant 1:11,
 1:25, 1:30, 1:34,
 1:38, 1:42, 3:15,
 4:16, 9:6, 13:9,
 13:13, 31:21.
defendants 8:14,
 14:13, 14:14,
 14:16, 18:4,
 18:18, 19:9, 20:3,
 20:25, 21:16,
 23:20, 36:9.
defense 3:7, 3:13,
 13:15, 14:20,
 15:5, 21:4, 25:23,
 28:6, 28:22, 29:3,
 29:14, 39:7.
delayed 25:25.

delaying 38:18.
delivering 4:21.
demoted 28:1.
Department 33:6,
 34:24.
deputy 13:12.
described 25:7.
describing 8:10.
details 10:20.
detainees 14:21.
Detention 16:14,
 17:4, 33:20,
 34:3.
determine 20:2.
Detroit 30:16,
 31:13.
developed 21:15.
devices 5:14,
 5:15.
dice 22:20.
differ 11:19.
differences 8:25.
different 9:10,
 10:22, 13:18,
 15:12, 27:7,
 36:12.
difficult 4:24,
 6:11, 25:8,
 25:13.
difficulty 22:16.
direct 10:19.
directed 29:14.
disclose 6:1, 19:17,
 19:20, 20:21.
disclosed 3:11,
 3:13, 20:11,
 22:14.
disclosing 25:20.
disclosure 3:6, 3:9,
 13:3, 22:24.
discover 17:24.
discovery 16:19,
 18:17.
discredit 9:9.
discussed 7:5, 7:7,
 7:9, 10:4, 14:17,
 16:17, 21:12.
discussing 3:15,
 8:15.
discussion 3:17,

6:25, 9:16, 12:20,
21:7.
discussions 7:12,
7:13.
disposed 7:11.
distinguish 19:5.
District 1:1, 1:2,
30:12.
done 7:15, 14:9,
16:2, 25:4, 26:16,
26:17, 37:6.
down 20:14.
download 4:20.
dramatic 22:21.
draw 10:8.
drive 4:20.
dubious 27:22.
duplicative 17:1.
During 7:4, 9:24,
37:22.
.
.
< E >.
e-l-l 32:7.
earlier 11:6.
ECF 23:17.
effect 3:14, 27:5,
30:5.
efficient 34:14.
effort 11:6.
eight 4:4.
either 34:7.
electronic 3:14.
eliminate 10:7.
eliminated 11:25.
eliminating 18:1.
elsewhere 17:16,
17:21.
embedded 17:23.
emergency 20:8.
emphatically
30:19.
encapsulate 12:15.
end 25:25, 26:3,
27:1, 27:13.
ended 16:15, 16:23,
19:7.
ending 17:11.
ends 11:4.
enforcement 22:4.

engaged 21:11.
engaging 18:23.
enormous 36:8.
enterprise 10:14,
10:17.
entitled 20:3,
21:16.
ENZINNA 1:27, 2:16,
27:9, 29:5, 33:4,
33:5, 33:8, 33:9,
33:10, 33:11,
34:9, 34:11.
Esquire 1:27, 1:28,
1:32, 1:36, 1:40,
1:44.
essential 38:16.
essentially 35:14.
et 1:9, 2:6.
eve 18:3.
evening 12:6,
22:13.
everybody 16:16,
16:18, 31:10.
everything 14:20,
37:21.
evidence 4:13, 7:8,
8:15, 11:17,
11:19, 13:12,
17:1, 17:8, 17:16,
17:21, 17:23,
19:24, 21:21,
23:1, 25:8,
28:8.
evidently 3:6,
21:11.
evolving 30:9,
30:10.
exactly 8:10,
29:12.
examination 16:1.
examine 15:8.
example 13:9,
15:22.
exception 12:11.
excerpt 12:12.
exclude 16:25.
exculpatory 15:10.
Excuse 3:12,
13:21.
exercise 15:18.

expected 22:3, 22:5,
22:9.
experience 19:9.
explain 34:1.
explicitly 23:9,
37:4.
exported 5:18.
expose 28:10.
exposed 25:12.
expressed 9:24,
10:1.
extension 29:12.
extent 8:22, 9:23,
10:12, 10:18,
11:16.
extreme 22:19.
.
.
< F >.
F. 1:27.
Facility 16:14,
17:4.
fact 7:5, 7:9, 7:13,
8:23, 10:9, 18:8,
18:10, 18:13,
18:24, 38:1,
38:14.
facts 16:16, 16:17,
16:18.
fair 19:3, 21:20,
28:14.
fairly 30:25.
false 19:10, 29:4.
familiar 24:21.
far 15:21, 19:14.
fashion 25:16.
favor 29:18.
FBI 5:17, 5:21,
14:10, 20:11,
22:24.
FCRR 1:47, 39:14.
fear 6:1.
February 26:22.
Federal 1:48, 7:8.
feeling 16:13.
feet 30:9.
fellow 8:23, 11:23,
11:25, 16:20.
felt 15:4.
few 19:25, 29:9,

```
1      29:17, 29:19,              37:17.                 28:12.
       29:24.                 front 23:11, 25:25,     graphic 11:9.
2   filed 12:5, 22:8,            29:23, 30:9,        great 36:24.
       22:9, 23:17.              30:10, 35:11.       greatest 6:23.
3   filing 4:1, 23:14.       frustrated 38:1.       green 9:25.
    filled 25:25.            full 36:5.              ground 11:5, 15:24,
4   finally 2:25.            fully 25:18.               36:9.
    find 7:12, 16:22,        furtherance 8:7,        guess 5:17, 37:14.
5      30:10, 36:8.             10:17, 10:25,        guilty 3:16.
    fine 17:9, 24:24,           16:15, 16:24,        guys 17:3, 17:17.
6      24:25, 34:3.             17:12, 19:12,        .
    finish 26:22.               25:10.              .
7   finished 15:15,          .                      < H >.
       28:18.                .                       half 7:2, 26:14.
8   firm 11:5.               < G >.                  hand 25:11.
    first 3:8, 4:10,         game 13:4, 13:5.        Handy 6:21, 7:1,
9      4:14, 5:12, 5:21,     gang 8:19, 8:20,           7:4, 7:6, 7:14,
       9:15, 14:6,              8:21, 8:23, 10:6,       7:21, 12:13,
10     15:8.                    10:8, 10:25,            14:16.
    five 25:22, 25:23,          11:16, 11:18,       hanging 22:21.
11     27:3.                    11:25.              hangs 20:19.
    Floor 1:49.              gang-related 10:3.     happened 11:20,
12  fluid 30:3.              gave 6:6.                  19:2.
    focus 17:11.             generated 36:4.        happy 31:7.
13  focused 9:7,             Gerald 1:9, 1:25,      hard 4:20, 19:22,
       18:18.                   2:5.                    20:17, 21:14,
14  follow 32:1.             Gesner 33:21.             38:16.
    following 5:14.          gets 25:24.            hardest 36:8.
15  foregoing 39:15.         getting 4:20,          head 18:17.
    foreseeable 10:16.          20:14.              hear 6:25, 10:6,
16  forfeiture 12:10,        Giglio 14:8, 14:24,       16:3, 29:22,
       22:2.                    15:19, 30:1.            35:18, 35:23.
17  forgot 10:22.            Give 6:16, 26:1,       heard 15:1, 19:13,
    forth 9:9, 18:16,           35:7.                   19:15, 20:12,
18     19:19.                given 10:2, 22:22.         23:18, 23:19,
    forthright 29:3.         gotten 28:9.               29:1.
19  forward 10:7,            Government 2:6,         Hearing 1:15, 19:24,
       37:20.                   3:18, 3:19, 4:14,       21:23, 23:7,
20  FRANCOMANO 1:40,            5:8, 6:24, 7:8,        23:17, 24:3, 30:9,
       2:9, 2:11, 3:25,         7:9, 8:16, 13:12,      33:20, 34:3,
21     4:15, 4:17, 12:24,       15:7, 15:8, 19:14,     36:16, 37:22.
       15:13, 20:9, 21:8,       19:17, 19:18,       hearings 21:23,
22     24:2, 24:5, 26:8,        19:19, 20:17,          24:15.
       26:9, 28:2, 28:4,        20:21, 22:5, 22:6,   held 6:4.
23     29:6, 33:2, 34:5,        22:20, 25:5, 28:7,   help 4:25.
       34:6, 34:20,             32:18, 32:25,        hereby 39:14.
24     34:21.                   37:4, 37:6, 37:10,   hiding 14:19.
    frequently 19:8.            38:10, 38:15.        highly 25:7, 28:8.
25  Friday 12:6, 22:8,       grant 23:16.           hint 29:16.
       23:6, 24:23, 37:3,    granted 25:21,          hit 18:17.
```

Hobbs 32:11, 32:13.
Hobson 28:14.
Hoffman 1:23, 2:7, 12:5, 12:11, 14:7, 35:1.
hold 11:25, 19:24, 30:8, 31:17.
holiday 37:3.
holidays 4:7.
Honorable 1:16.
horrible 11:9.
hour 21:22.
hours 4:22.
hurt 4:25.
.
.
< I >.
idea 10:24.
identified 14:12, 18:15, 18:16.
identify 7:16, 8:20, 9:1, 10:7, 11:21, 11:24.
idle 19:5.
III 1:40.
imagine 22:19.
immediately 5:5, 35:10.
impact 38:17, 38:19.
impeachment 15:10.
implicate 37:12.
imply 17:17.
important 7:20, 27:20, 29:22.
impossible 29:6.
improvidently 13:9.
in. 17:13, 25:15, 37:8.
inclined 16:22.
include 12:15.
includes 9:4, 12:19.
including 8:25, 10:21, 38:19.
incriminating 5:24.
inculpate 7:23.

indicate 19:1, 29:18, 37:8.
indicated 17:7, 28:24, 29:11.
Indicating. 38:9.
indication 18:19.
indicted 13:8.
indictment 16:19, 18:15.
individual 9:17.
individuals 5:25, 9:1, 14:25.
inferences 10:9.
information 3:7, 3:10, 3:13, 30:4.
initial 10:23.
inside 10:20, 11:17.
instead 26:2.
instructions 24:20.
insufficient 37:6.
intend 5:11, 5:19, 12:16, 22:7.
intended 29:14.
intends 3:21, 8:16.
intercepted 4:23, 14:15.
interest 6:24, 28:7.
intermediate 25:17, 28:15.
interrupt 24:11.
interruptions 4:6.
intervening 4:7.
intimate 10:20.
intimidate 8:21, 11:6, 17:24.
intimidating 17:25.
introduce 3:21, 19:23, 22:7.
investigation 5:16.
involved 14:13, 14:22, 15:25, 17:18.
issue 22:2, 25:6,

25:19.
issued 36:23.
issues 4:9, 10:11, 29:4.
itself 11:4, 15:8.
.
.
< J >.
J. 1:22.
Jaco 38:8.
jail 5:15, 7:16, 10:20, 11:17, 13:10, 19:8.
jailhouse 4:24.
Jamal 1:30.
James 1:16.
January 4:4, 26:3, 26:8, 27:1, 27:4, 27:14, 27:16, 28:18, 29:7, 31:2, 36:6, 37:1, 37:2, 37:16, 38:20.
Jeffrey 1:28, 4:18, 15:21.
Jencks 19:17, 19:20, 20:21, 21:17, 21:19, 22:13, 22:17, 25:19, 32:19.
JKB-16-0363 1:8.
JKB-16-363 2:5.
John 1:40.
Johnson 1:9, 1:25, 2:6, 2:19, 4:17, 7:25, 8:3, 15:24.
join 4:16, 5:1, 17:6, 34:24.
joined 10:13.
Jones 1:34, 2:24.
Joseph 1:42, 3:2, 24:11, 24:14.
Judge 30:1, 30:15, 30:17, 31:3, 31:8, 31:11, 31:12, 31:20, 31:24, 33:21, 35:4, 35:19, 35:20, 35:21.
judges 27:7.

```
 1    jurisdictions
        27:8.
 2    jury 3:23, 6:24,
        7:12, 10:6, 10:8,
 3      10:12, 10:15,
        17:2, 24:20,
 4      35:15, 36:4,
        38:18.
 5    justice 9:11.
      .
 6    .
      < K >.
 7    K. 1:16.
      keep 27:19.
 8    Kenneth 1:34,
        2:24.
 9    key 7:17, 10:11,
        12:12, 12:19.
10    killed 11:8, 12:1,
        18:25.
11    kind 17:23, 25:17,
        29:13.
12    kinds 36:3.
      knowing 25:20.
13    knows 16:18.
      .
14    .
      < L >.
15    L-e-a 32:7.
      L-e-a-v-e-l-l 30:15,
16      32:3, 32:5.
      lacking 18:19.
17    large 15:4.
      laser 9:7.
18    last 4:3, 5:6, 7:19,
        22:8, 24:23, 26:2,
19      26:3, 26:8, 27:4,
        29:7, 30:23, 32:4,
20      35:24.
      late 13:4, 13:5,
21      20:8, 22:24,
        38:20.
22    later 20:13, 31:4,
        35:6.
23    latter 36:6.
      law 11:12, 19:10,
24      21:18, 22:4.
      lawyer 28:2.
25    lawyers 29:11.
      laying 29:4.
```

```
least 3:19, 14:17,
  17:14, 19:7,
  21:2.
Leavell 30:14, 32:3,
  32:8, 32:9.
lengthy 4:8.
less 32:17.
letting 36:15.
light 4:11, 9:25,
  25:6.
limine 12:6, 23:18,
  24:3, 24:18,
  24:20.
line 2:16, 2:20,
  2:22, 3:1, 14:10,
  14:17, 19:4,
  21:13, 23:23.
listen 15:1.
listened 4:22.
listening 14:11.
litigants 38:19.
litigate 25:18,
  39:3.
locked 19:9.
logistical 36:3.
Lombard 1:49.
long 4:8, 19:4,
  26:13, 26:21,
  28:1, 30:18,
  30:20, 30:22,
  33:21, 38:15.
longer 23:5, 25:12,
  27:24.
look 20:4, 37:15.
looking 15:14.
looks 37:18.
loop 24:14.
lost 38:10.
lot 15:17.
.
.
< M >.
M. 1:32.
ma'am 39:2.
Malone 7:1, 7:14,
  9:17, 12:7, 12:13,
  18:25, 22:3.
manner 8:17, 22:9.
Marquise 1:38, 2:8,
  2:14, 3:14,
```

```
  6:20.
Marshal 13:13.
Martinez 1:22, 2:3,
  2:6, 3:23, 4:20,
  6:9, 6:12, 6:17,
  12:23, 13:2, 14:6,
  17:5, 19:22,
  21:13, 22:16,
  23:23, 28:1,
  29:22, 30:7,
  34:25, 37:1,
  38:12, 38:24.
Maryland 1:2, 1:18,
  1:50.
material 4:21, 4:25,
  6:4, 14:8, 14:24,
  15:9.
matter 32:24, 33:22,
  39:16.
matters 3:15, 9:14,
  27:3, 36:7.
Mccants 1:38, 2:8,
  2:14, 2:15, 3:14,
  3:21, 6:21, 7:1,
  7:2, 7:4, 7:6,
  7:14, 7:21, 8:8,
  10:13, 12:13,
  12:24, 13:22,
  14:16, 15:23,
  16:20, 20:6.
mean 13:9, 14:23,
  14:25, 18:13,
  18:16, 24:24,
  31:2, 36:3,
  36:7.
means 8:17, 20:21,
  36:10.
meant 11:23.
medical 36:17,
  36:19, 38:2.
meet 21:4.
meeting 33:7.
member 8:23, 11:18,
  12:1.
members 8:19, 10:25,
  11:17.
mere 11:8.
messages 7:10,
  18:15.
Michigan 30:16.
```

```
  1   microphone 6:10,        32:13.                  36:25, 37:21.
        6:13, 6:16, 29:21,   murdered 9:17,          Number 2:5, 10:9,
  2     29:23.                 22:4.                    13:19, 24:15,
      Middle 4:4, 30:12,      murders 10:17.           24:19, 31:15.
  3     36:8.                 .                       .
      minute 7:20, 8:11.      .                       .
  4   minutes 6:23, 29:9,     < N >.                  < O >.
        29:19, 29:24.         nail 18:17.             o'clock 24:17,
  5   mislead 17:2.           name 10:22, 30:12,        38:22, 39:11.
      moment 4:25.              31:11, 32:2,          object 5:1.
  6   Monday 1:17, 36:2.        32:4.                 objection 37:24.
      monitoring 5:25.        named 9:1.              objective 15:17,
  7   monitors 14:11.         Nashville 26:13,          19:12, 35:3.
      months 13:7.              31:13.                objectives 11:11.
  8   morning 13:11, 24:1,    nature 15:10.           obligation 23:15,
        31:3, 32:21,          necessarily 4:12,         32:19.
  9     32:22, 32:25,           11:10.                obstructing 9:10.
        33:7, 34:1, 35:5,     necessary 25:13,        obviously 19:19.
 10     38:21, 39:4.            28:11.                occupy 26:3.
      Moses 7:1.              need 6:13, 9:24,        occurred 13:5.
 11   mostly 22:23.            9:25, 11:24,           October 1:17, 4:1,
      motion 2:7, 4:1,          13:25, 14:1,           6:5, 6:8.
 12     5:1, 12:6, 12:11,       14:4.                 Oddly 20:24.
        17:6, 22:8, 22:9,     needed 20:18.           offense 25:10.
 13     23:14, 28:22,         needing 38:11.          offer 12:16.
        36:16.                needs 16:2, 38:15.      offered 14:18,
 14   Motions 1:15, 23:7,     neighborhood 36:6.        31:1.
        23:18, 24:3,          new 4:11, 16:19,        office 23:16,
 15     24:18, 24:20.           21:21, 37:25.           38:20.
      motive 12:9.            next 19:25.             officers 29:7.
 16   move 12:10, 16:25,      nine 4:4.               Official 1:48,
        22:5.                 NO. 1:8.                  39:20.
 17   moved 23:9, 23:11,      nonetheless 4:7,        Okay 3:12, 8:2,
        23:15, 34:2.            20:22.                  9:20, 14:23,
 18   MR. ENZINNA 2:14,       normal 24:21.             24:24, 26:7,
        13:1, 13:17, 33:3,    Norman 6:21.              26:22, 26:23,
 19     39:8.                 NORTHERN 1:2.             31:17, 31:20,
      MS. HOFFMAN 39:1,       Nothing 16:19, 17:2,     32:2, 32:15, 33:8,
 20     39:3.                   19:1, 25:1,             33:25, 34:4, 35:3,
      multidefendant            32:23.                  39:10.
 21     31:23.                notice 23:17,           one 8:17, 10:11,
      multipurpose 6:3.         36:21.                  11:14, 11:18,
 22   Murder 7:1, 7:7,        noticed 23:4.             13:19, 20:18,
        7:9, 7:11, 7:13,      notices 36:4,             25:11, 28:1, 28:4,
 23     7:15, 8:24, 9:16,       38:19.                  28:16, 29:6,
        9:22, 10:19,          notified 5:18.           37:24, 39:1.
 24     10:21, 10:24,         November 4:3, 19:21,    one. 22:19.
        11:20, 12:7, 12:9,      21:19, 26:2,          ongoing 5:16, 6:2.
 25     12:14, 31:15,           32:21, 35:24,         open 22:11.
        32:11, 32:12,           36:3, 36:18,          operation 6:2.
```

opposed 31:2.
option 22:25,
    34:7.
order 19:18, 20:4,
    23:10, 23:16,
    23:22, 25:3,
    36:23.
others 8:11, 10:13,
    21:9.
otherwise 14:22.
ought 15:5.
outcome 20:1,
    21:6.
overheard 3:14, 5:3,
    13:13.
overlooking 18:24.
overt 25:10.
own 8:9, 38:19.
.
.
< P >.
p.m. 19:16, 33:14.
painted 22:23.
paperless 36:23.
papers 13:3.
part 7:19, 10:14,
    10:17, 11:22,
    15:4.
participants
    10:19.
particular 7:17,
    9:1, 10:1, 37:5.
particularly
    21:10.
parties 31:3,
    38:17.
parts 12:20, 21:2.
pass 24:23.
past 9:2, 11:9,
    19:2, 24:22.
Paul 1:27.
pending 6:22.
people 11:8,
    18:14.
perhaps 8:8, 24:23,
    28:2, 31:8, 35:24,
    37:10.
period 20:15,
    20:16.
permit 22:18.

permitted 3:21.
person 2:10, 18:14,
    34:8, 34:9,
    35:1.
persuaded 19:14.
pertain 5:12.
pertained 6:22.
pertaining 5:24,
    7:8, 12:7.
pertinent 11:15.
Peter 1:22, 2:6.
phone 34:10, 34:11,
    34:13.
physiology 11:10.
pick 35:15, 35:16.
picked 38:14.
picture 13:15.
place 5:13, 5:14,
    10:4, 10:10.
places 38:17.
Plaintiff 1:6,
    1:20.
planning 9:12.
plant 27:20.
play 3:22, 21:21.
playing 16:6.
Please 2:2, 29:21.
pled 3:16, 26:25.
plenty 17:21.
plot 17:19, 17:24.
point 3:8, 11:21,
    13:2, 13:16,
    14:12, 18:24,
    30:5, 36:10,
    37:11, 38:1.
point. 11:3, 20:9.
portion 7:17,
    12:12.
portions 12:17,
    12:19.
position 4:22,
    15:13, 20:6,
    20:24, 38:21,
    39:7, 39:10.
possession 15:9.
possibilities
    36:12.
possibility 18:1,
    20:19.
possible 25:16,

31:9.
postpone 20:20,
    27:8.
postponed 20:23,
    22:14, 22:17,
    25:18.
postponement 4:11,
    13:13, 16:4, 20:4,
    21:1, 25:21,
    28:12, 28:17,
    35:8.
postponing 36:11.
potential 11:24,
    22:21.
potentially 9:9,
    18:3, 37:9.
potted 27:20.
practices 25:24.
precision 36:24.
predicate 9:4.
preface 36:15.
prefer 26:1,
    34:13.
prejudice 21:16,
    27:12.
preliminary 23:8.
prepare 14:11.
prepared 9:8, 27:9,
    29:2.
preparing 9:6.
present 17:15,
    23:23.
presented 11:18.
pretrial 23:5, 23:9,
    23:20, 23:21,
    24:3, 24:16,
    24:18.
preventing 25:20.
previously 35:17,
    38:2.
prior 19:18, 22:4.
privacy 19:10.
probably 4:4, 25:11,
    27:7, 27:18,
    36:6.
probative 25:9,
    28:9.
problem 13:24,
    19:16, 25:14,
    25:22, 26:7, 28:3,

36:8.
problematic 37:9.
problems 18:21,
  35:10, 36:3.
procedures 36:19.
proceed 16:10.
proceeding 21:18.
proceedings 38:20,
  39:12, 39:16.
process 21:15.
produced 22:17.
proffered 4:14.
proffers 19:13.
project 28:16.
projected 4:3.
promise 28:19.
promptly 20:18.
proof 17:23.
proposal 25:5.
proposing 25:16.
protect 36:9.
proven 10:13.
provide 27:5.
public 18:10,
  38:18.
Pull 6:16, 32:21.
purpose 17:25.
purposes 24:25.
pursue 22:25.
push 19:23.
pushing 20:23.
put 9:2, 25:15,
  31:4, 35:24,
  36:20.
putting 28:14.
.
.
< Q >.
quarrel 11:2.
Quenton 32:17.
question 4:10, 9:23,
  10:15, 11:3, 12:3,
  15:16, 18:7, 18:9,
  19:25, 20:1, 21:3,
  21:17, 21:22,
  21:25, 22:11,
  22:20, 23:4, 31:6,
  38:22, 39:1.
quickly 28:20.
.

.
< R >.
R. 1:40.
racketeering 8:18,
  10:14.
raising 29:4.
Ralphael 30:14,
  32:3.
rather 27:22,
  28:13.
reacted 3:25,
  11:10.
reacting 30:4.
ready 20:14, 38:21,
  39:6.
real 14:12, 20:12.
realize 5:21.
reason 13:3, 13:18,
  24:14, 27:18.
reasonable 28:15.
reasonably 20:9,
  21:4.
reasons 27:6.
recall 23:13.
receive 13:20.
received 3:10,
  4:19.
recently 15:13,
  31:24, 36:23.
recess 39:11.
reconvene 32:24.
record 18:11,
  39:16.
recording 4:23, 5:4,
  5:15, 7:18, 9:24,
  10:2.
recordings 3:22,
  5:18, 13:19,
  13:22, 13:25,
  14:3, 14:7,
  15:18.
redoing 38:18.
referenced 16:1.
reflect 21:24.
regard 16:13,
  36:13.
regarding 7:1,
  12:13, 16:17,
  25:5.
relation 37:3.

releasing 32:19.
relevant 3:18, 12:4,
  28:8.
relieved 32:19.
remain 27:23.
remedy 22:18.
removed 5:15, 6:3.
Reporter 1:48,
  39:20.
representing 2:19,
  2:20, 2:23, 3:1.
represents 21:10.
request 4:15, 4:16,
  23:16.
requesting 12:25,
  29:12.
rescheduled 36:7.
resolvable 21:22.
resolved 4:12,
  22:12.
respect 3:20, 8:18,
  10:6, 15:12,
  17:14, 20:6, 21:3,
  22:1, 27:25, 28:5,
  38:22.
respond 17:9, 22:7,
  22:8.
responded 28:2,
  30:1.
responds 29:10.
response 37:7.
responsibility
  15:8.
rest 14:4.
result 38:11.
retaliate 8:21.
retaliation 9:5,
  18:22.
retired 30:17.
reveals 21:8.
reviewed 4:15,
  14:10.
RICO 25:10.
rights 36:10.
risk 20:22.
robbery 12:8.
roll 22:20.
room 6:3, 17:4.
RPR 1:47, 39:14.
rule 8:19.

ruling 16:8, 27:23, 27:25, 36:11, 36:13.
run 27:13.
running 35:9.
.
.
< S >.
S-e-a-n 31:12.
Saturday 37:18.
saying 6:11, 6:12, 14:25, 19:1, 26:1, 29:24, 35:23.
says 27:19, 37:2.
scenario 36:2.
schedule 4:6, 32:20, 35:10, 35:17, 36:17, 37:16.
scheduled 4:2, 4:8, 13:6, 13:7, 16:11, 21:21, 24:15, 26:15, 27:13, 30:20, 30:22.
schedules 28:6.
scheduling 19:18, 23:4, 23:10, 24:25, 25:2, 27:21, 31:6.
scrub 14:9, 15:18, 29:25.
scrubbed 14:7.
Sean 30:15, 31:12, 31:20.
seated 2:2, 6:14.
second 4:12, 5:13, 22:2, 26:22, 28:9, 31:17, 36:5.
section 12:21.
secure 35:5.
seek 17:10.
seeking 4:1.
seem 30:5.
seems 27:25.
seen 22:10.
sense 19:10.
sensitive 20:16.
sentencing 3:17.
September 6:5, 13:6, 13:20, 20:11.
serious 21:3.

set 27:4, 30:18, 30:19, 31:1, 35:17, 36:23.
settled 21:17.
several 7:5.
severed 31:25.
Sharp 30:17.
sheet 14:17.
sheets 14:10.
shoot 15:1.
shooting 12:8, 17:3.
short 21:15, 28:14, 30:25.
shot 11:10.
shouldn't 17:13, 30:24, 33:21.
significant 20:16, 25:9.
simple 9:12, 16:9.
single 36:24, 37:2.
sir 2:18.
sit 35:25, 36:25.
sitting 10:20.
situation 13:19, 25:5, 25:8, 30:4, 34:1, 36:10.
six 4:5, 37:5.
slightly 22:24.
sneaky 30:11.
snitch 8:19.
snitches 7:16.
so-and-so 9:25.
so-called 19:5.
solely 14:21.
Solomon 1:44, 2:25, 3:2, 3:4, 24:10, 24:11, 24:12, 24:13, 24:21, 24:24, 27:2, 27:3, 29:5, 33:19, 33:20, 33:24, 34:1, 34:3, 34:18, 34:19, 35:22, 36:14, 36:22, 37:10, 37:25, 38:5, 38:7, 38:11.
somebody 12:1,

37:12.
sometime 19:25.
somewhat 21:9.
Sorry 6:13, 24:10, 24:13, 31:22, 35:23, 36:14.
sort 18:2, 20:8.
sounds 29:22.
space 35:7.
speaking 7:21, 11:6, 26:18.
specially 27:4, 30:16.
specifically 21:12.
speed 11:14, 11:24.
Spell 32:4.
spoke 17:5, 17:8, 29:25.
spot 19:22, 25:15, 28:25.
stand 6:10, 33:6, 37:13.
standard 30:8.
start 26:13, 26:25, 32:20, 35:6, 35:9, 36:2.
started 16:6.
starts 3:8.
State 7:7, 8:24, 10:23, 33:6, 34:23, 38:21.
statement 10:1, 18:2, 28:9.
States 1:1, 1:4, 2:5.
stenographic 39:15.
step 29:21.
stop 30:7.
strategizing 29:15.
Street 1:49.
strength 27:22.
Strikes 4:9.
string 11:12.
strong 20:9.
stuff 14:4, 14:5, 15:6, 15:17.

submitted 12:18.
substance 6:17.
substantially
    13:11.
substantiate 7:10.
substantive 25:9.
sudden 13:14.
suggestion 15:22.
suggests 9:11.
sum 6:17.
summaries 14:17.
support 12:11,
    18:23.
suppose 15:12,
    16:10, 39:5.
surprise 22:10.
surveillance 3:15,
    6:2.
suspects 18:14.
suss 8:24.
sympathetic 21:8,
    21:9.
.
.
< T >.
T. 1:47, 39:19.
taller 6:13.
tamper 11:6.
tampering 9:5, 9:10,
    17:18, 18:20.
tapes 4:23, 16:2,
    19:15.
telephone 1:27,
    1:28, 1:32, 1:36,
    1:44, 2:16,
    34:8.
ten 3:7, 25:18,
    28:17, 30:25,
    31:4.
tend 7:23.
Tennessee 26:14,
    30:13.
terms 29:14, 38:18,
    38:20.
terrible 25:14.
testified 10:22,
    10:23.
testify 9:7, 9:22,
    10:8, 12:9.
testifying 9:2,

9:13, 18:2,
    18:19.
testimony 18:1,
    19:15, 38:16.
tests 36:19.
text 7:10, 18:15.
THE CLERK 32:23,
    38:9.
theory 17:9.
thereby 25:19.
thinking 30:8.
thinks 3:18, 9:3.
thorough 22:9.
though 7:20, 11:3,
    20:12, 22:22,
    27:25, 32:20,
    35:10.
threatening 18:20.
three 6:23, 10:22,
    20:13, 20:15,
    29:7.
till 37:16.
Tillerson 33:7.
today 4:12, 19:20,
    22:14, 25:7.
together 7:16, 8:20,
    10:5.
tomorrow 4:21, 31:2,
    32:21, 32:22,
    32:25, 33:14,
    33:25, 35:5,
    36:13, 38:21,
    38:23, 39:4, 39:9,
    39:11.
tonight 20:20,
    20:21, 21:19,
    32:19.
took 5:13, 5:16,
    10:4, 10:9, 30:17,
    37:7.
transcribe 12:21.
transcribed 12:12,
    12:18, 12:21.
Transcript 1:15,
    39:15.
transcripts 12:3.
tried 24:22,
    26:15.
true 19:5.
try 7:16, 17:8,

17:10, 17:24,
    19:24, 31:8,
    34:16.
trying 8:24, 11:21,
    13:23, 26:21,
    28:10, 31:4, 31:5,
    36:8.
turn 14:19, 23:10.
turns 19:11.
two-week 28:17,
    35:8.
type 17:18.
.
.
< U >.
ultimate 4:13.
ultimately 38:22.
unable 5:1.
unavailable 35:12.
uncommon 19:9.
underpinning
    27:25.
understand 6:10,
    15:11, 18:21,
    24:17, 28:21,
    29:19, 30:2,
    37:22, 39:10.
understanding 6:11,
    14:14, 16:7.
understood 5:23.
unfair 17:17,
    17:20.
United 1:1, 1:4,
    2:5.
universe 29:25.
unknown 19:10.
Until 4:3, 5:16,
    6:2, 6:5, 6:6,
    13:20, 17:9,
    20:12, 23:11,
    31:24, 36:2,
    37:16, 37:23.
unusual 16:16.
upcoming 11:19.
updating 11:15.
useful 39:5.
using 25:8, 28:8.
.
.
< V >.

```
 1    value 25:9.                  39:8.
      van 13:10.              willing 28:23.
 2    various 27:6.           window 37:23,
      verbalized 36:17.          37:25.
 3    versus 2:5.             wire 5:25, 20:14.
      victim 12:7, 12:8.      without 25:20.
 4    victor 32:6, 32:7.      witness 9:5, 9:10,
      vs 1:7.                     9:16, 9:18, 9:22,
 5    .                          10:1, 10:23,
      .                          17:18, 18:19,
 6    < W >.                     18:20, 18:22,
      W. 1:49.                   19:1.
 7    waiting 26:14.          witnesses 7:10,
      wanted 35:19, 36:15,       8:16, 8:20, 8:25,
 8        36:20.                 9:22, 10:7, 10:22,
      weakest 20:6.              11:7, 11:22,
 9    weapon 7:11, 7:15,         11:24, 17:24,
          10:21.                 17:25, 22:19,
10    weapons 11:20.             25:12, 25:20,
      website 23:5.              28:10, 37:12.
11    weeds 29:4.             words 7:6.
      week 26:22, 31:25,      work 31:8, 31:9,
12        32:17, 35:15,          36:9.
          35:16.              working 7:15.
13    weekend 17:6.           worry 14:3.
      weeks 4:4, 4:5,         worth 14:7.
14        15:19, 20:13,       writing 27:5.
          20:15, 21:16,       written 13:3.
15        26:2, 26:3, 26:8,   wrongdoing 12:10,
          27:4, 29:7, 31:4,       22:2.
16        35:24, 36:5, 36:6,  .
          37:5.               .
17    weigh 28:6, 28:12.      < Y >.
      Welch 23:13.            year 5:6, 13:8.
18    Wes 9:3, 18:10.         years 26:14.
      Wesley 1:30, 2:21.      yesterday 16:7.
19    whatever 24:14.
      whereby 25:17.
20    whether 4:10, 4:24,
          20:1, 21:20,
21        25:16, 25:21,
          39:6, 39:7.
22    whole 20:7, 21:7.
      whom 8:15.
23    will 10:6, 21:23,
          24:17, 25:21,
24        26:21, 27:4,
          28:12, 33:3,
25        34:16, 35:3, 35:7,
          35:21, 36:9, 39:7,
```