1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF MARYLAND
2

3   UNITED STATES OF AMERICA,      )
                                   )
4           Plaintiff,             )
        vs.                        )
5                                  ) CRIMINAL NO.: JKB-16-0363
    GERALD JOHNSON, et al.,        )
6                                  )
            Defendant.             )
7   _____)

8
                  Transcript of Proceedings
9          Before the Honorable James K. Bredar
                  Monday, May 10th, 2021
10                  Baltimore, Maryland

11  APPEARANCES:

12  For the Plaintiff:

13      Peter J. Martinez, AUSA

14      Christina Hoffman, AUSA

15  For Defendant Gerald Johnson:

16      Paul F. Enzinna, Esquire

17      Jeffrey B. O'Toole, Esquire

18  For Defendant Kenneth Jones:

19      Alan R.L. Bussard, Esquire

20  For Defendant Marquise McCants:

21      Jenifer Wicks, Esquire

22      Christopher C. Nieto, Esquire
    _____
23
                  Christine T. Asif, RPR, FCRR
24              Federal Official Court Reporter
                101 W. Lombard Street, 4th Floor
25                Baltimore, Maryland 21201

```
 1                    P R O C E E D I N G S
 2              THE COURT:  Good morning.  Be seated, please.
 3              This is the United States versus Johnson, et al. --
 4    you may be seated.  This is United States versus Johnson, et
 5    al., JKB-16-363.  We're here pursuant to an order of the
 6    United States Court of Appeals for the 4th Circuit directing
 7    the Court to conduct a hearing under the law set out in United
 8    States versus Remmer, a United States Supreme Court opinion.
 9              The brief history of this matter is this case came
10    on for trial in late 2017 bridging over into 2018.  On the 9th
11    of January, 2018, an event occurred, which caused the Court to
12    pause the trial and conduct some inquiries.  In the midst of
13    that or near the end of those inquiries, counsel for Mr.
14    Johnson in particular, but joined by the other counsel,
15    requested that the Court conduct a hearing pursuant to Remmer.
16    The Court having made the preliminary inquiries that it
17    thought were appropriate in the circumstances, and having
18    satisfied itself that there was not cause for such concern to
19    the point that a full blown Remmer hearing needed to be
20    conducted, denied the request.
21              Subsequently, the defendants were convicted and
22    sentenced.  They appealed their convictions to the Court of
23    Appeals.  The panel that heard the appeal ruled two to one
24    that the Court had erred in not conducting a Remmer hearing as
25    requested by defense counsel after the event that occurred on
```

1    the 9th of January.

2         Accordingly, the Court of Appeals remanded the case

3    with instructions for the Court to conduct a post-verdict

4    *Remmer* hearing, at which time it would be the burden of the

5    United States to demonstrate that the events of January 9

6    carrying over into January 10 did not adversely impact the

7    capacity of the seated jurors to continue their work with

8    fairness and impartiality.

9         Accordingly, we will now conduct that hearing.  And

10   those persons who served as jurors and alternate jurors will

11   be brought to the courtroom one at a time and they will be

12   questioned by the Court.  The questions have been set and

13   determined by the Court in advance of the proceeding, after

14   extensive consultation with counsel, input from counsel, in

15   some cases the acceptance of counsel's request and

16   suggestions, in other instances the Court having denied those

17   suggestions and requests.

18         The matter will proceed in this fashion:  In a

19   moment we'll begin.  The first juror who will be questioned

20   will be that person who was serving as Juror No. 4 on the 9th

21   of January, 2018.  We have to be careful in terms of how we

22   describe this juror because, in fact, someone else originally

23   served as Juror No. 4, but that person was excused sometime

24   after the trial began.  And the individual who we will be

25   questioning this morning then transitioned from status as an

1    alternate juror to being Juror No. 4.

2            And then, of course, at the end of the inquiries on

3    the 9th and 10th of January, this gentleman who was then

4    serving as Juror No. 4 was excused from the jury, no longer

5    served on this jury. And yet another person, now a third

6    person, was designated Juror No. 4, continued to sit in the

7    case. And that person will also be questioned as a part of

8    this process, as will all of those jurors who deliberated and

9    all those who were still serving as alternates.

10           So, it's a bit confusing, three different persons

11   were serving as Juror No. 4 at different times during this

12   trial. But the Juror No. 4 who we will question first was

13   that person who was serving as Juror No. 4 on the 9th and 10th

14   of January, and then was subsequently excused. I can't

15   remember for sure, he may have been excused on the 9th. And

16   my clerk confirms actually he was excused the 9th. So let's

17   leave it that way, did not serve as Juror No. 4 on the 10th.

18           Once we have completed the questioning of the person

19   who was then serving as Juror No. 4, then we will proceed

20   through the other jurors in their numerical order, 1, 2, 3, 4,

21   5, so forth, up through 12. And then we will proceed to the

22   alternates and question them in order.

23           One juror is not in the United States, that's Juror

24   No. 12. Juror No. 12 will not be questioned in the same order

25   as the rest. We've made special arrangements for her to be

1  questioned.  That will occur at 9:30 a.m. tomorrow morning via

2  video and audio connection, a Zoom connection from her

3  residence in Geneva, Switzerland.  Those arrangements are in

4  place and we will execute them tomorrow.

5          Mr. Martinez, I think one question is pending with

6  respect to the Swiss juror, and I would appreciate it if you

7  and your colleagues would seek an answer to this.  It would be

8  my hope and intention to place Juror No. 12 under oath over

9  Zoom tomorrow.  I don't see that as absolutely essential to

10  the Court's purposes and inquiry here.  And if the diplomatic

11  authorities ask that because of certain treaty understandings

12  or other details of the relationship with the government of

13  Switzerland, that the Court not do that, then we can proceed

14  with her just through what will be a less formal interview and

15  still make our record on her recollections of these events.

16          I think the record would be better if I was able to

17  put her under oath in the same way that I intend to put all of

18  the other persons testifying in this matter under oath.  But

19  please be in a position to advise first thing tomorrow morning

20  as to whether the State Department and the people in

21  international affairs in the Justice Department have a concern

22  in that regard.

23          MR. MARTINEZ:  I will, Your Honor.  And I can tell

24  the Court now that what I anticipate being told is that so

25  long as she participates in this proceeding voluntarily -- and

1    I believe we've already crossed that bridge, she's chosen to

2    participate voluntarily -- then there's no issue with the

3    Court placing her under oath.  And if she voluntarily chooses

4    to give sworn testimony, neither the Swiss government nor ours

5    would have any issue with proceeding in that fashion.  So I

6    will confirm that and notify the Court tomorrow morning.

7            THE COURT:  All right.  Well, that's a unique issue

8    on just one side of this matter.  I don't think the defendants

9    have any standing to address the issue.  The Court's desire is

10   to conduct the matter as thoroughly, as completely, and as

11   lawfully as possible.  But when it comes to a matter of

12   international relations such as this one, the third branch of

13   government appropriately defers to the executive in guiding us

14   so that we do not, through this judicial proceeding, somehow

15   run afoul of our treaty obligations or otherwise impair our

16   relationship with a foreign government.

17           Okay.  So we'll get an answer to that first thing

18   tomorrow.  We will --

19           MR. ENZINNA:  Your Honor --

20           THE COURT:  -- have the jurors come into the

21   courtroom through the side door.  They'll appear one at a time

22   from the jury stand.  They'll be sworn.  I will ask them the

23   questions that have been disclosed to counsel in advance.

24           Then before the juror is excused, I will stop and we

25   will turn to these telex devices.  And through them I will

1    have a private, on the record discussion with counsel and see

2    whether counsel for the Government or counsel for any

3    defendant asks that I ask -- put a follow-up question to a

4    juror.  And I'll hear what that follow-up question is and then

5    I'll make a determination as to whether I think it's

6    appropriate.

7         If I think it is, then we'll come off the private

8    channel, come back on to the regular courtroom channel where

9    everyone can hear.  I'll put the question to the juror and

10   hear the answer.  And we'll keep going and see if that

11   generates a request for more follow-up questions.  And I'll

12   rule on those until we get to the end of that process.

13        Then once we're finished with that particular juror,

14   then that juror will be escorted from the courtroom through

15   the same door that they entered.  We'll call for the next

16   juror, who is in -- each subsequent juror is being held in a

17   staging area behind this courtroom.  They'll be brought in one

18   at a time, just like a conveyor belt, on to the next one and

19   we'll question that juror.

20        The jurors, upon arrival at the courthouse this

21   morning were greeted by courthouse staff.  They were moved to

22   the jury assembly area on the 4th floor of this courthouse.

23   Fortunately, there are no juries being selected today in this

24   courthouse.  There is a jury trial otherwise underway, but it

25   doesn't intersect with this proceeding at all.

1        The jurors are being held in the jury assembly area

2   under instructions not the speak with each other.  And they

3   are being observed 100 percent of the time.  And when they

4   move within the courthouse, they are being escorted by court

5   staff or by court security officers, first to the holding area

6   behind this courtroom and then into this courtroom.  Then when

7   it's time for them to leave once they've been excused a court

8   security officer will escort them to the courthouse entrance

9   and send them on their way.

10        Let the record also reflect that the public has

11  every opportunity to view and listen to this proceeding.  But

12  we are conducting this proceeding in the midst of the COVID

13  pandemic.  And, accordingly, we continue to have special

14  measures in place to protect the health and well-being of

15  everyone who participates in a court proceeding, to

16  accommodate that need in this particular proceeding, I have

17  elected to open another courtroom, courtroom 7A, two floors

18  above this one.

19        That's where the public can assemble and watch these

20  proceedings.  They are being transmitted there by camera, a

21  live camera feed from this courtroom and live audio feed.  And

22  there, of course, is a court staff person supervising

23  proceedings in courtroom 7A.  And members of the press,

24  members of the public are permitted to be there and

25  participate.

1          Now, the public will not be able to hear the private

2     discussions that occur over the telex devices, as is sort of

3     standard practice for a bench conference.  They can't hear a

4     bench conference either and the telex devices are intended to

5     supplant or replace a bench conference.

6          Last of all, let the record reflect that all three

7     defendants are present this morning.

8          Mr. Johnson, are you present?

9          DEFENDANT JOHNSON:  Yes, sir.

10         THE COURT:  Mr. Jones, are you present?

11         DEFENDANT JONES:  Yes, sir.

12         THE COURT:  And, Mr. McCants, are you present?

13         DEFENDANT McCANTS:  Yes.

14         THE COURT:  And the defendants are seated in the

15    gallery area of the courtroom, which of course is not

16    functioning as a gallery.  The courtroom is closed except to

17    direct participants in the proceeding.  That, I think, takes

18    care of all the preliminary matters.

19         Mr. Enzinna, you had a question?

20         MR. ENZINNA:  Well, Your Honor, with respect to

21    Juror No. 12, I just want to make -- say for the record that

22    the defendants would object to her testifying any way other

23    than under oath.  And I think Your Honor's statement that the

24    defendants don't have standing to object to that is

25    incorrect.

1          THE COURT:  Thank you Mr. Enzinna.

2          Okay.  Are we ready for Juror No. 4?

3          THE CLERK:  Yes.

4          THE COURT:  Okay.  Let's bring him in.  My clerk

5    points out to me that under our COVID procedures we also have

6    a public access telephone line open to the courtroom via AT&T

7    conference call.  And so persons can listen into this

8    proceeding.  They can't see it, but they can listen in by

9    dialing in on a telephone number, which is published on the

10   court's website in the manner that we allow with respect to

11   all of our nonsealed proceedings during COVID.  Now, that

12   telephone line will also be silenced during the private telex

13   proceedings, just as would be the case with the bench

14   conference.

15         THE CLERK:  Thank you.

16         THE COURT:  Let me, Mr. Enzinna -- before you leave,

17   Ms. Smith -- I take the point about standing as to oath.  I

18   was concerned, Mr. Enzinna, that your position was going to be

19   that she could not be placed under oath because of positions

20   you took previously in terms of the Court's potentially

21   involving you in a violation of Swiss law.  But I didn't

22   anticipate that your position would be different from that

23   this morning.  Thinking about that for a moment, I think

24   you're actually right that you would have standing to raise

25   that issue.

1          So let me withdraw that observation and conclude

2     that counsel and the defendants do have standing.  That

3     doesn't determine what the Court's ruling is going to be.  I

4     may well proceed without Juror No. 12 under oath if there is

5     an objection from the diplomatic authorities, just as part of

6     the effort to create as much of a record as I possibly can in

7     the circumstances that we are in.  But I reconsider the ruling

8     on the question of whether or not there's standing.  On that

9     issue I think there is.

10          All right.  Let's bring him in.

11          (Juror No. 4 entered the courtroom.)

12          THE WITNESS:  Good morning.

13          THE COURT:  Good morning, if you would raise your

14     right hand.  Turn all the way around you can face us.

15     Perfect.  Thank you.

16          Ms. Smith.

17          THE CLERK:  Yes Your Honor.  Good morning, sir.

18                    JUROR NO. 4,

19     called as a witness, being first duly sworn, was examined and

20     testified as follows:

21          THE WITNESS:  Yes, ma'am.

22          THE CLERK:  Thank you, you may have a seat.

23                    EXAMINATION

24     BY THE COURT:

25     Q.  Just have a seat and look right up here, sir.  Keep your

1    voice up, if you can.  The first question I have for you is

2    are you the person who was serving as Juror No. 4 on January

3    9, 2018, during the trial of a case that was called United

4    States versus Gerald Johnson, et al., the case number was

5    JKB-16-363, are you that person?

6    **A.**  Yes, sir.

7    **Q.**  Good morning.

8    **A.**  Hi, Your Honor.

9    **Q.**  Good morning to you.

10   **A.**  Good morning.

11   **Q.**  So then let me state for the record that between November

12   27, 2017 and January 9, 2018, until you were excused, you

13   served as a juror in the trial of the United States versus

14   Gerald Johnson, et al., case number JKB-16-363.  Prior to

15   November 27 you served as an alternate juror in the same

16   matter, do you remember that?

17   **A.**  Yes, sir.

18   **Q.**  I was the judge who presided during that trial, we were in

19   a different courtroom, but I was the judge.  Do you remember

20   that?

21   **A.**  That is correct.

22   **Q.**  Okay.  Also here with us today are the lawyers who

23   represent the parties in the case.  Starting with Assistant

24   U.S. Attorney Martinez and Assistant U.S. Attorney Hoffman,

25   they represent the government.  Mr. Enzinna and Mr. O'Toole

1    who represent Mr. Johnson.  Mr. Bussard who represents

2    Mr. Jones.  And Ms. Wicks and Mr. Nieto, who represent Mr.

3    McCants.  Once again, do you remember your service as a juror

4    in this case?

5    **A.**  Yes, sir.

6    **Q.**  And you do confirm that you were serving as Juror No. 4 on

7    January 9, 2018?

8    **A.**  Yes, sir.

9    **Q.**  The trial lasted for many weeks.  During the trial some

10   concerns were raised, such as defendants passing notes,

11   looking at jurors, and having access to juror information

12   through the juror selection process known as voir dire.  The

13   Court addressed these concerns without pausing the trial.

14   Then on January 9, 2018, an event occurred which caused the

15   trial to briefly pause.

16          In the presence of at least some of the rest of the

17   jurors and the alternates, you may have expressed concern that

18   persons, perhaps the defendants' family members, might be

19   taking pictures of the jurors as they passed through the

20   vestibule at the entrance to the courtroom and the jury room.

21   We understand that you may have thought that this was a

22   significant event, and may have said something to the effect

23   of, this is really serious, to your fellow jurors.  A few

24   minutes later you were interviewed by court staff about that

25   event.  You were later excused from further service on the

1    jury.  Today I have some questions about January 9, 2018.

2            The lawyers I introduced earlier are not here to ask

3    you questions, only the Court will do that, only I will do

4    that.  But they are here to represent the interests of their

5    clients and to propose follow-up questions that the Court may

6    or may not ask you in its discretion.

7            So next question:  Do you remember this event that

8    I'm referring to on January 9?

9    **A.**  I do, sir.

10   **Q.**  Do you recall making statements indicating your belief or

11   concern that persons might be taking pictures of jurors?

12   **A.**  Yes.

13   **Q.**  Do you recall if any other jurors shared your concerns

14   regarding potential picture taking?

15   **A.**  I came back into the chamber and -- where we were gathered

16   and I did express that and I believe someone -- one of my

17   fellow jurors reported to the -- I forgot her name, that was

18   escorting us and, yes, so I believe they might have said that

19   to the girl that escorted us.

20   **Q.**  Okay.  So you've kind of answered my next question, but

21   I'm going to ask it any way, did anyone including yourself

22   suggest that these concerns should be reported to the Court?

23   **A.**  Yes.

24   **Q.**  Consistent with what you just said?

25   **A.**  Correct.

1  **Q.**  Okay.  Now, please tell us what you remember seeing and

2  saying that day?

3  **A.**  As we were walking and then entering the area that we

4  should be in, members outside of the hallway, I saw them with

5  phone facing us taking pictures, I'm not sure if it was taking

6  pictures or videotaping.  That I cannot tell you, but I did

7  observe they were in the act of taking pictures.

8  **Q.**  And tell me a little bit more about how you were able to

9  make that determination?

10  **A.**  Through observation while I was walking back into the

11  chamber that we were supposed to be residing in.  So I just

12  happened to make an observation of that.  And it did raise

13  some concerns.

14  **Q.**  Did you participate in discussion among the jurors about

15  the possibility of picture taking?

16  **A.**  Briefly.  Didn't get too involved into it.  Just briefly

17  saying I observed they were taking pictures of us.  But no

18  further details or did not get into it of discussing.

19  **Q.**  Okay.  So to the best of your ability, can you tell us

20  what you remember what was said by you and by others.  Tell

21  us, you know, what you remember if you can, about these

22  discussions.

23  **A.**  Not much.  It did not go any farther.  I just expressed

24  that, you know, I observed they were taking pictures of us.

25  And I said, you know, I'm not comfortable with that.  But

1    beyond that I don't recall if -- I don't think we went any

2    farther than that.  And then I guess one of my colleague juror

3    referenced -- made mention to the -- I forgot her name, that

4    was escorting us.  And at that point it pretty much was

5    silent.  I got a phone call the next day I am excused from

6    being a juror.

7    **Q.**  Thank you, Juror No. 4.

8    **A.**  I don't remember any other further discussion.  I don't

9    think it went any further than that.

10    **Q.**  Thank you.

11    **A.**  You're welcome, sir.

12    **Q.**  Now I'm going to ask for your patience for a moment while

13    I'm going to have a private conversation with the lawyers that

14    you won't be able to hear.  Just going to hear this light

15    noise machine, which I'm sure you're going to remember from

16    the trial, because it's very annoying.

17    **A.**  Yeah, I understand.

18    **Q.**  Okay.  So you won't be able to hear, but you'll see that

19    I'm talking with them, but you won't be able to hear.  So will

20    you be patient for just a minute?

21    **A.**  Certainly.

22    **Q.**  Thank you, sir.

23    **A.**  You're welcome.

24             (Bench conference on the record.)

25             THE COURT:  Turn the husher down a little bit.  One

```
1    more.
2              Mr. Martinez, are you able to hear me?
3              MR. MARTINEZ:  Faintly, Your Honor.
4              THE COURT:  Okay.  Let me get a little closer to the
5    mike, turn my volume down.  Mr. Martinez, can you hear me?
6              MR. MARTINEZ:  I can now, sir.
7              THE COURT:  Loud and clear.
8              MR. MARTINEZ:  Yes, sir.
9              THE COURT:  Ms. Hoffman, can you hear me loud and
10   clear?
11             MS. HOFFMAN:  Yes, sir.
12             THE COURT:  Mr. Enzinna, can you hear me loud and
13   clear?
14             MR. ENZINNA:  I can hear you now, yes.
15             THE COURT:  Mr. O'Toole.
16             MR. O'TOOLE:  Yes, I can.
17             THE COURT:  Mr. Bussard, can you hear me?  Mr.
18   Bussard?
19             MR. BUSSARD:  Very blurred, but yes I can hear
20   you.
21             THE COURT:  Well, I want to make sure you can hear
22   me well.
23             MR. BUSSARD:  I can hear you now.
24             THE COURT:  Thank you.  Ms. Wicks, can you hear me?
25             MS. WICKS:   Yes, I can hear you.
```

1          THE COURT:  Mr. Nieto, can you hear me?

2          MR. NIETO:  Yes, Your Honor.

3          THE COURT:  Mr. Martinez, do you have any requested

4   follow-up questions for the juror who was serving as Juror No.

5   4 on January 9?

6          MR. MARTINEZ:  Not at this time, but we do reserve

7   the right to suggest follow-up if the Court agrees to ask

8   follow-up questions proposed by defense counsel.

9          THE COURT:  Yes.  And I should have verified that

10   the court reporter can hear me loud and clear.  And she's

11   nodding her head.

12          Yes.  Mr. Enzinna, your proposed follow-up

13   questions, please.

14          MR. ENZINNA:  Your Honor --

15          THE COURT:  Can't hear you, Mr. Enzinna.  Get a

16   little closer to the microphone.  You have to be right up on

17   the mike and then use a soft voice.

18          MR. ENZINNA:  I apologize.  I have two proposed

19   follow-up questions.  One is I would like the Court to ask him

20   whether he indicated to the other jurors that it was serious

21   or significant.  Second question --

22          THE COURT:  Hold on a second, let me get my notes

23   here.  Yes, sir, go ahead, second proposed question.

24          MR. ENZINNA:  The second proposed question is the

25   additional question 7, which we proposed in our -- in our

1    modifications and additions, proposal was that he would be

2    asked whether had he remained a juror this would have affected

3    his ability to decide the case.

4                THE COURT:  Thank you.  And you've got your record

5    on that issue.  I will not ask the question that you propose

6    as your second follow-up question for the reason that this

7    juror did not serve as a deliberating juror in the case.  And,

8    accordingly, I do not find that I would benefit from hearing

9    what his experience was subsequently.  We've addressed this in

10   the paper rulings.

11               I will ask the first proposed follow-up question and

12   will do that now.

13               Mr. Bussard, do you have any proposed follow-up

14   questions?

15               MR. BUSSARD:  Your Honor, Mr. Enzinna in his first

16   proposed question is specific as to the word serious.  I --

17   when the Court asked the question "What did you say?"  He just

18   said I don't think I said much, it was very brief.  So he

19   didn't really say the words that he communicated to the

20   others, but I will stand by Mr. Enzinna's question.

21               THE COURT:  Okay.  Very good.  So no follow-up

22   questions requested from Mr. Bussard.

23               Ms. Wicks, do you have any additional follow-up

24   questions requested?

25               MS. WICKS:  No, Your Honor, I just join with the

1    previous request.

2              THE COURT:  Thank you.  That's noted.  We'll drop

3    the private channel and go back to the courtroom record.

4              (The following proceedings were had in open court.)

5              THE COURT:  Juror No. 4 -- are you ready, Ms. Smith?

6              All right.  Well, the portal -- the public access

7    line is optional, it's not technically required.  It's

8    something we do as a matter of convenience for the public

9    during COVID, but we otherwise have public access assured

10   through the opening up of 7A.  Accordingly, Ms. Smith, perhaps

11   you can work with IT at the next break and see if we can get

12   that problem sorted out, but we're going to go ahead and

13   proceed without the public access line up and operating at the

14   moment.

15   **BY THE COURT:**

16   **Q.**  So Juror No. 4, when you had your encounter with your

17   fellow jurors, after seeing what you saw outside the jury

18   room, do you remember whether you described to your fellow

19   jurors your experience or what you were perceiving in any

20   particular way, for instance, did you perhaps use the word

21   "serious," this is serious guys, this is a serious matter or

22   perhaps use words like "this is significant, this is a

23   significant matter."  Now, I don't want to put words in your

24   mouth, but I do want to try to probe and jog your memory a

25   little bit if it's possible to do so.  What do you remember

1    about that?

2    **A.**   I don't think I expressed those languages of serious or

3    significant.   I think it was more of concern.

4    **Q.**   Concern?

5    **A.**   Yeah.

6              THE COURT:   Okay.   Thank you, sir.   We'll go back on

7    to the private line.

8              (Bench conference on the record.)

9              THE COURT:   Mr. Martinez, do you have any additional

10   follow-up questions?

11             MR. MARTINEZ:   No, Your Honor.

12             THE COURT:   Mr. Enzinna, do you?

13             MR. ENZINNA:   No, Your Honor.

14             THE COURT:   Mr. O'Toole, do you?

15             MR. O'TOOLE:   No, sir.

16             THE COURT:   Mr. Bussard, do you?

17             MR. BUSSARD:   No, Your Honor.

18             THE COURT:   Mr. Wicks, do you?   Ms. Wicks, I'm sorry

19   I'm going to do that repetitively because I go into autopilot.

20   Ms. Wicks, do you have any follow-up questions?

21             MS. WICKS:   I do not.

22             THE COURT:   Mr. Nieto, do you?

23             MR. NIETO:   No, Your Honor.

24             THE COURT:   May Juror No. 4 be excused, Mr.

25   Martinez?

```
 1                MR. MARTINEZ:  Yes, Your Honor.

 2                THE COURT:  Mr. Enzinna?

 3                MR. ENZINNA:  Yes, Your Honor.

 4                THE COURT:  Mr. O'Toole?

 5                MR. O'TOOLE:  Yes, Your Honor.

 6                THE COURT:  Mr. Bussard?

 7                MR. BUSSARD:  Yes, sir.

 8                THE COURT:  Ms. Wicks?

 9                MS. WICKS:   Yes, Your Honor.

10                THE COURT:  Mr. Nieto?

11                MR. NIETO:  Yes, Your Honor.

12                THE COURT:  We'll return to the open channel in the

13      courtroom.

14                (The following proceedings were had in open court.)

15                THE COURT:  Thank you, sir, we appreciate your

16      returning to court and being faithful to your summons to come

17      back.  With the Court's thanks you are once again excused and

18      you may depart.  Ms. Smith will see you out of the courtroom.

19                THE WITNESS:  Thank you, sir.

20                THE COURT:  Thank you, sir.

21                (Juror No. 1 entered the courtroom.)

22                THE COURT:  Good morning, ma'am.

23                THE WITNESS:  Good morning.

24                THE COURT:  You can put your belongings on that

25      chair right there.
```

1          THE WITNESS:  This one?

2          THE COURT:  Yes, ma'am.  Please take a seat.  Turn

3  so you can see me clearly, but keep your face near that

4  microphone.  You're doing it perfectly already without

5  instructions.

6          THE CLERK:  Please raise your right hand.

7                    JUROR NO. 1,

8  called as a witness, being first duly sworn, was examined and

9  testified as follows:

10         THE WITNESS:  I do.

11         THE CLERK:  Thank you.

12                    EXAMINATION

13 BY THE COURT:

14 **Q.**  Good morning to you.

15 **A.**  Good morning.

16 **Q.**  You served as Juror No. 1 in the trial of United States

17 versus Johnson, et al., case number JKB-16-363 back in late

18 2017 and early 2018; is that correct?

19 **A.**  Yes.

20 **Q.**  Between November 20 and January 25, 2018, you served as a

21 juror in the trial of United States versus Gerald Johnson, et

22 al., case number JKB-16-30363; true?

23 **A.**  Yes.

24 **Q.**  I was the judge who presided during that trial?

25 **A.**  Yes, that's true.

1    **Q.** We were in a different courtroom, we weren't in this

2    courtroom, but I was the judge; correct?

3    **A.** Correct.

4    **Q.** Okay. So also here with us today, in addition to me, are

5    the attorneys who represent the parties in this case.

6    Assistant U.S. Attorney Martinez, Assistant U.S. Attorney

7    Hoffman who represented the government. Mr. Enzinna, Mr.

8    O'Toole who represented Mr. Johnson, and still do. Mr.

9    Bussard who represents Mr. Jones. All the way over your right

10   shoulder there. And Ms. Wicks and Mr. Nieto, who represent

11   Mr. McCants.

12       Once again, do you remember your service as a juror in

13   that case?

14   **A.** Yes.

15   **Q.** That trial lasted for many weeks. During the trial some

16   concerns were raised, such as defendants passing notes,

17   looking at jurors, and having access to juror information

18   through the juror selection process known as voir dire. The

19   Court addressed these concerns without pausing the trial.

20       Then on January 9, 2018, an event occurred which caused

21   the trial to briefly pause. One of your fellow jurors, in the

22   presence of at least some of the rest of the jurors and

23   alternates, expressed concern that persons, perhaps a

24   defendant's family members, might be taking pictures of the

25   jurors as they passed through the vestibule at the entrance to

1    the courtroom and the jury room.  We understand that juror may

2    have seen this as a significant event.  A few minutes later,

3    you were interviewed by court staff about that event.

4         A day later, on January 10, 2018, I spoke to the jury in

5    the courtroom and said one or more jurors had a concern that

6    perhaps someone outside of the jury room, in the courtroom

7    vestibule or courtroom hallway, had photographed or otherwise

8    captured the images of jurors.  This matter was investigated

9    after that report was received.  The investigation included

10   the examination of a relevant smart phone, a camera type

11   device in the possession of a relevant individual.  That

12   investigation revealed that there were no images, films,

13   videos of the sort that I've referred to captured on that

14   telephone.

15        Today I have some questions for you about the events of

16   January 9, 2018.  Specifically, I need your assistance in

17   learning whether the events of that day impacted your ability

18   to continue to be a fair and impartial juror for the remainder

19   of the trial.

20        The lawyers I introduced earlier are not here to ask you

21   questions, only the Court, me, will do that.  But the lawyers

22   are here to represent the interests of their clients and to

23   propose follow-up questions to me that I may or may not ask in

24   my discretion.

25        As you respond to my questions, please be careful not to

1     tell us about the jury's deliberations on guilt or innocence,

2     or about how you reached your verdict.  I don't want to hear

3     about that.

4          Do you remember this event that I'm referring to on

5     January 9?

6     **A.**   Yes.

7     **Q.**   Did you see anyone engaged in any action that suggested

8     that they were taking pictures of the jurors?

9     **A.**   No.

10    **Q.**   Did you hear any juror make statements indicating his or

11    her belief that persons might be taking pictures of jurors?

12    **A.**   Yes.

13    **Q.**   Okay.  If so, what do you remember hearing?

14    **A.**   I just remember -- I don't know specifically which juror

15    it was, but I do remember someone expressing concern that they

16    believed that someone in the audience was taking pictures of

17    us as we were coming in and out of the courtroom.

18    **Q.**   Okay.  So you've sort of anticipated my next question

19    which is, do you recall which jurors raised concerns regarding

20    potential picture taking?

21    **A.**   No, I don't remember which juror.

22    **Q.**   Okay.  Did anyone, including yourself, suggest that these

23    concerns should be reported to the Court?

24    **A.**   Yes.

25    **Q.**   Did you hear or participate in discussion among the jurors

1    about the possibility of picture taking?

2    **A.** Yes.

3    **Q.** Can you remember what was said?

4    **A.** I basically was concerned, just like everyone else, for my

5    safety and well-being.  So we all decided to come forward and

6    let everyone know what this juror expressed.

7    **Q.** In responding to the next questions, I'm going to ask --

8    I'm going to again ask you to draw a line between events that

9    occurred prior to the start of your deliberations, and events

10   that happened after you began deliberations.  By

11   deliberations, I mean that point in the trial where no more

12   evidence was presented, the lawyers had made their arguments,

13   and I had read the jury instructions to you.  That's the point

14   when deliberations began.  And I don't want to hear anything

15   about that.  Just the matters that came before that.  So all

16   of your answers to these questions should be limited to events

17   that occurred and things that you thought or felt before you

18   began deliberations.  To reiterate, in your answers to these

19   questions, you should not tell us anything about what

20   happened, what was said, what you thought or what you felt

21   after deliberations began.  Are we good on that?

22   **A.** Yes.

23   **Q.** Okay.  After any discussion about possible picture taking

24   on January 9 and 10, did you feel intimidated by anything that

25   had occurred?

1    **A.**  Personally, I wouldn't say intimidated.  Like I said, I

2    just felt like it was a issue, like maybe we couldn't have

3    been -- I guess you could say intimidated then, if my picture

4    was being taken I was definitely concerned.

5    **Q.**  Let me ask you this question then, were you able to remain

6    an impartial juror and were you able to keep an open mind as

7    the trial continued after that?

8    **A.**  Oh, yes.  Absolutely.

9    **Q.**  Do you believe that the events of January 9 and January

10   10, 2018, left you unable to continue to serve as a fair and

11   impartial juror in the case, or unable to fully consider the

12   evidence and arguments presented by both sides with an open

13   mind?

14   **A.**  No.  You're saying -- no I didn't feel like it made me not

15   have a open mind after that.

16   **Q.**  You felt you continued to have an open mind after that?

17   **A.**  Yes.

18   **Q.**  Any doubt in your mind about that?

19   **A.**  No.

20   **Q.**  Thank you.  Now, the next part of this I'm going to have a

21   private discussion with the lawyers.  And I'm going to do it

22   over this little electronic device.  And you're not going to

23   be able to hear what's going on.  Instead, you're going to

24   hear that annoying -- remember our noise making machine?

25   **A.**  Yes.

1    **Q.** That's the thing you remember for sure; right?

2    **A.** Yeah.

3    **Q.** We're going to turn it on again, so you can't hear, but

4    we're going to have a private discussion outside of your

5    hearing. And then I'm going to talk to you further after

6    that.

7    **A.** Okay.

8            THE COURT: Okay. Go on to the private channel.

9            (Bench conference on the record.)

10           THE COURT: Mr. Martinez, do you have any follow-up

11   questions?

12           MR. MARTINEZ: I do, Your Honor. In light of this

13   juror's answer to question 11, in which she first said that

14   she didn't feel intimidated and then said, I guess you can say

15   intimidated, we would propose the Court ask the juror whether

16   the curative statement that the Court gave on January 10th of

17   2018 to the effect of this matter has been investigated, a

18   relevant smart phone camera device has been examined -- the

19   Court has already read the statement. The substance of the

20   question we would like the Court to ask is whether that

21   curative statement helped this juror put the events of January

22   9th behind her.

23           THE COURT: Thank you. Mr. Enzinna, do you have any

24   proposed follow-up questions?

25           MR. ENZINNA: Yes, I do, Your Honor. But first I

1    object to the follow-up question proposed by Mr. Martinez.

2    Because as he pointed out, the Court has already reminded the

3    juror about the quote, unquote, investigation.  I don't think

4    it needs to be re-asked, I don't think it should be re-asked,

5    I think it places undue influence on that.  And if it is

6    re-asked, I think it should be asked in such a way that the

7    juror is reminded of the flaws in that investigation,

8    including, for example, the fact that only one camera was

9    examined.

10             THE COURT:  Thank you, Mr. Enzinna.  I'm going to

11   sustain the defendant's objection and not ask the government,

12   I think that in context it's clear what the juror intended to

13   say.

14             Mr. Enzinna, go ahead.

15             MR. ENZINNA:  Yes, as far as follow-up questions,

16   first of all, as we said in our papers that we filed, the

17   Court has asked the juror whether she could remain impartial

18   without explaining to the juror what impartial means.  And I

19   think there is a significant difference between the ordinary

20   understanding of the word impartial as being open minded and

21   the definition of that term for 6th Amendment purposes, which

22   includes the notion that the juror has only considered the

23   evidence put forward in the trial and that this has not

24   influenced the juror.  Therefore, I think that the juror

25   should be asked whether -- as we proposed, whether after the

1    event she was able to put it out of her mind or whether she

2    continued to think about it.

3         THE COURT:  Thank you, Mr. Enzinna.  Do you have any

4    other questions?

5         MR. ENZINNA:  And I think that's all, Your Honor.

6         THE COURT:  Thank you, Mr. Enzinna.

7         Mr. Bussard, do you have any?

8         MR. BUSSARD:  Nothing further.

9         THE COURT:  Ms. Wicks, do you have any?

10         MS. WICKS:  No, thank you.

11         THE COURT:  Thank you, Ms. Wicks.

12         The Court declines to inquire of the juror further

13    in the manner that Mr. Enzinna proposes.  I have watched the

14    juror's demeanor.  I have watched her body language, listened

15    carefully not just to the answers that she supplied, but also

16    to all of the nonverbal cues that she has projected, including

17    visual cues while testifying.  My interpretation is that she

18    does understand the Court's use of language such as

19    impartiality, fairness, open-mindedness and so forth.  We've

20    blended those terms together through the question that has

21    been proposed.  And in her own way she has answered.

22         She did at one point make reference to intimidation.

23    At first she steered away from that word, then she steered

24    back to that word saying, I guess you could say intimidated.

25    But more what I took from her total message was an expression

1    of concern.  Once someone had raised the possibility that

2    pictures were being taken, she was concerned.  She also

3    indicated some generalized concern throughout this trial, as

4    one would expect any person to have after they heard the

5    evidence that was presented here.

6           Most significant part of her testimony in the

7    Court's view, though, came as I continued to ask questions,

8    and then she became quite emphatic that she remained open

9    minded, that she did not have difficulty retaining her open

10   mind.  She said or implied that she was able to be fair and

11   impartial.  Her words said that much, but her body language

12   and the intensity with respect to how she expressed that view

13   is what is persuasive to the Court.  I'm satisfied with the

14   answers that have been generated to this point by this juror,

15   I'm satisfied that we have learned what her mental status was.

16   There being no pending follow-up questions, she will now be

17   excused.  Back to the --

18           MR. ENZINNA:  Your Honor --

19           THE COURT:  Is someone speaking?

20           MR. ENZINNA:  Before we end I would like to say that

21   to the extent the Court is making its decision making here on

22   its observations and what it called visual cues, I would

23   object to the fact that the Court has instructed all the

24   jurors, so far only two of them, to face the Court directly

25   and not to face us so that we are -- we don't have access to

those things.

THE COURT:  Let the record reflect that this juror is currently sitting in the witness box, as she has been during her testimony.  I would say that her position is that she is at -- if the judge is seated at the south end of the courtroom, if the gallery is at the north end, if counsel are seated in the well facing south, this juror is seated on the stand facing west.  It is true that when the juror has gone to answer her questions she has looked sometimes directly at the Court.  She's also then looked back to her right or more to what I describe to the northwest, to the microphone.

She's seated probably ten feet away from Mr. Enzinna and Mr. Nieto.  Maybe 12 feet from Ms. Wicks.  Probably 15 to 16 feet from Mr. Bussard.  Probably 15 feet from Mr. Martinez and 20 feet from Ms. Hoffman.  She has in front of her the normal plexiglas barriers that are equipped throughout our COVID-equipped courtrooms.  The barrier of the jury box comes up to somewhere between elbow and shoulder height on her. There is a computer monitor on the stand, but it has been folded so that it is flat and is below the level of her right shoulder.

That's the scene, as best I can describe it, that she is situated in.  As she has answered her questions, I believe that her upper body positioning, how she has expressed herself with emphasis, at the moments that I saw it, are quite

1    clear to anyone who is in the courtroom, including persons who

2    are off to her right shoulder.  And more important, though, is

3    the volume with which she expressed her views, and her tone of

4    voice.  It's from that mostly, that I drew the inference as to

5    the certainty that she continued her duties after the events

6    of January 9 with impartiality and mostly from her perspective

7    with an open mind.  That's what she stressed the most.

8              Okay.  We'll go ahead and excuse the juror.

9              (The following proceedings were had in open court.)

10             THE COURT:  As it turns out, we have no additional

11    questions for you.  We sincerely appreciate your coming back

12    to court these three years later and speaking to us about that

13    event, and you are now excused.  The Court clerk will take you

14    out.  Thank you so much, ma'am.

15             THE WITNESS:  Thank you.

16             (Juror No. 2 entered the courtroom.)

17             THE COURT:  You can turn around this way, ma'am.

18    Good morning to you.  Please raise your -- we have a lot of

19    preparation steps, sorry, get that microphone covered.  Now

20    we're ready.

21             THE WITNESS:  Good morning.

22             THE COURT:  Okay.  Good morning to you.  During

23    COVID everything moves at probably half speed.  And you've

24    probably experienced that in your own life and certainly true

25    here.  So my apologies.  But now we're ready.  You can remain

1    seated but would you raise your light hand?

2              THE WITNESS:  Pardon me?

3              THE COURT:  Would you raise your right hand, we're

4    going to put you under oath.

5              Go ahead, Ms. Smith.

6              THE CLERK:  Yes, Your Honor.

7                         JUROR NO. 2,

8    called as a witness, being first duly sworn, was examined and

9    testified as follows:

10             THE WITNESS:  I do.

11             THE CLERK:  Thank you.

12                        EXAMINATION

13   BY THE COURT:

14   **Q.**  Get my paperwork straight up here.  There we go.  In the

15   trial of United States versus Gerald Johnson, case number

16   JKB-16-0363, you served as Juror No. 2?

17   **A.**  Uh-huh.

18   **Q.**  Is that true?

19   **A.**  Yes.

20   **Q.**  Between November 20, 2017 and January 25, 2018, you served

21   as a juror in the trial of United States versus Gerald

22   Johnson, et al., case number JKB-16-0363, I was the judge who

23   presided during that trial, do you remember me?

24   **A.**  Oh, absolutely.

25   **Q.**  Okay.  And so we were in a different courtroom?

**A.**  Uh-huh.

**Q.**  But it's the same judge, okay.  Also here with us today are Assistant U.S. Attorney Martinez, and Assistant U.S. Attorney Hoffman representing the government.

**A.**  Yes.

**Q.**  Mr. Enzinna and Mr. O'Toole representing Mr. Johnson.  Mr. Bussard -- you can turn around take a look at them.  Mr. Bussard representing Mr. Jones.  And also over your right shoulder, Ms. Wicks and Mr. Nieto representing Mr. McCants, they were not in the trial, but they represent Mr. McCants now.

**A.**  Yes.

**Q.**  Are you with me?

**A.**  Yes.

**Q.**  Okay.  Do you remember your service as a juror in this case?

**A.**  Most definitely.

**Q.**  The trial lasted for many weeks.  During the trial some concerns were raised, such as defendants passing notes, looking at jurors, and having access to juror information through the juror selection process known as voir dire.  The Court addressed these concerns without pausing the trial.

Then, on January 9, 2018, an event occurred which caused the trial to briefly pause.  One of your fellow jurors, in the presence of at least some of the rest of the jurors and

1    alternates, expressed concern that persons, perhaps a

2    defendants' family members, might be taking pictures of the

3    jurors as they passed through the vestibule at the entrance to

4    the courtroom and the jury room.  We understand that juror may

5    have seen this as a significant event.  A few minutes later,

6    you were interviewed by court staff about that event.

7    **A.**  Yes.

8    **Q.**  A day later, on January 10, 2018, I spoke to the jury in

9    the courtroom and said, one or more jurors had a concern that

10   perhaps someone outside of the jury room in the courtroom

11   vestibule or courtroom hallway had photographed or otherwise

12   captured the images of jurors.  This matter was investigated

13   after that report was received.  The investigation included

14   the examination of a relevant smart phone, camera-type device

15   in the possession of a relevant individual.  That

16   investigation revealed that there were no images, films,

17   videos of the sort I have referred to captured on that

18   telephone.

19   **A.**  Yes, I do remember that.

20   **Q.**  Today, I have some questions for you about the events of

21   January 9, 2018.  Specifically, I need your assistance in

22   learning whether the events of that day impacted your ability

23   to continue to be a fair and impartial juror for the remainder

24   of the trial?

25   **A.**  No.

1  **Q.**  The lawyers I introduced earlier are not here to ask you

2  questions, only the Court -- only me -- will do that.  But

3  those lawyers are here to represent the interests of their

4  clients and propose follow-up questions that Court -- me --

5  may or may not ask you in its discretion.  As you respond to

6  my questions, please be careful not to tell us about the

7  jury's deliberations on the defendants' guilt or innocence, or

8  about how you reached your verdict.

9         Now, do you remember this event on January 9, 2018?

10  **A.**  Yeah, I couldn't have told you the date, but yes I do

11  remember the incident.

12  **Q.**  Did you see anyone engaged in any action that suggested

13  that they were taking pictures of the jurors?

14  **A.**  No.

15  **Q.**  Did you hear any jurors make statements indicating -- let

16  me start that over, I said plural I should have made it

17  singular, I'm going to back up.  Did you hear any juror make

18  statements indicating his or her belief that persons might be

19  taking pictures of jurors?

20  **A.**  I don't recall if it was -- if that specifically was

21  mentioned.  I know all of the jurors had noticed family

22  members coming in and out and so on.  But as far as the

23  picture taking, I don't recall anyone coming in and saying

24  that they saw that.

25  **Q.**  Tell us as best you're able what you do remember hearing.

1    **A.**  Just that we did notice that people were looking at us.

2    And several people, and I have to include myself in that, were

3    feeling a little uncomfortable.  But as far as picture taking,

4    absolutely not, saw no evidence of that.

5    **Q.**  Do you recall which jurors raised concerns regarding

6    potential picture taking?

7    **A.**  Gosh, I don't remember anybody's -- just the one that I

8    can recall.  But, again, I could pick him out, but I don't

9    recall his name.

10    **Q.**  What did he look like?

11    **A.**  I believe he was perhaps from south Asia or somewhere.  He

12    had dark hair and a dark complexion, but -- this morning when

13    I came in, it was hard to recognize anybody with their masks.

14    Some people said hello, I said, oh, hi.  But I don't recall

15    the name.  I'm sorry.

16    **Q.**  Okay.  Did anyone, including yourself, suggest that these

17    concerns should be reported to the Court?

18    **A.**  There was nothing happening.  I mean, nobody said anything

19    to us as we walked in.  And as I said, I saw nobody holding

20    camera here, there, or trying to hide it or anything.  And,

21    you know, the Marshals were always watching us come in and

22    out.  It didn't -- I don't think people were worried about it.

23    It just was like, oh, I wonder if that's somebody's mother or

24    this that and the other.

25    **Q.**  Okay.  My questions are going to start sounding redundant,

1    but we have to do this in a certain way, so just bear with me,

2    all right?

3    **A.**   Sure.

4    **Q.**   Did you hear or participate in discussion among the jurors

5    about the possibility of picture taking?

6    **A.**   No.   No.

7    **Q.**   And can you remember anything about that that was being

8    said that you haven't told us about already?

9    **A.**   Well, we -- I do remember when that person left the jury

10   and an alternate came in.   And we all kind of looked at each

11   other like, oh, boy, something's up.   But no, not the jurors

12   discussing that.

13   **Q.**   Okay.   Now, in responding to the next questions, I'm going

14   to again ask you to draw a line between events that occurred

15   prior to the start of your deliberations and events that

16   happened after you began deliberations.   By deliberations, I

17   mean that point in the trial when no more evidence was

18   presented, the lawyers had made their arguments, and I had

19   read the jury instructions to you.   That's the point when

20   deliberations began.

21   **A.**   Uh-huh.

22   **Q.**   And I don't want to hear anything about that.   Just the

23   matters that came before that.   So all of your answers to

24   these questions should be limited to events that occurred and

25   things that you thought or felt before you began

1    deliberations.  To reiterate, in your answers to these

2    questions, you should not tell us anything about what

3    happened, what was said, what you thought, or what you felt

4    after deliberations began?

5    **A.**  Okay.

6    **Q.**  After any discussion about possible picture taking on

7    January 9 and 10, did you feel intimidated by anything that

8    had occurred?

9    **A.**  No.

10   **Q.**  Were you able to remain an impartial juror, and were you

11   able to keep an open mind as the trial continued after that?

12   **A.**  Yes.

13   **Q.**  Do you believe that the events of January 9 and January

14   10, 2018, left you unable to continue to serve as a fair and

15   impartial juror in the case, or unable to fully consider the

16   evidence and arguments presented by both sides with an open

17   mind?

18   **A.**  No, I would assume we -- had that been the case, I would

19   assume that a juror would be expected to express that to

20   someone in charge.  But no.

21   **Q.**  Would you have done that?

22   **A.**  If I felt that way, yeah.

23   **Q.**  Thank you.  Now I'm going to have a private conversation

24   with the lawyers over this little electronic device.  You

25   won't be able to hear it, instead you'll hear the husher, the

1    noise maker machine, which I'm sure you remember from three

2    years ago.  We're going to turn that on.  And then I'm going

3    to have a private conversation and then I'll be back with you

4    in a minute.  Okay?

5    **A**.  Yeah, uh-huh.

6              (Bench conference on the record.)

7              THE COURT:  Mr. Martinez, do you have any follow-up

8    questions?

9              MR. MARTINEZ:  No.

10             THE COURT:  Mr. Enzinna, do you?  Microphone.

11             MR. ENZINNA:  I apologize, I could not hear Mr.

12   Martinez, but I assume he said no.

13             THE COURT:  He said no.

14             MR. ENZINNA:  I do have follow-up questions.

15             THE COURT:  Yes, sir.

16             MR. ENZINNA:  First of all, when you asked her if

17   she remembered her service she said, this is a quote, most

18   definitely.  I think she should be asked what she meant by

19   that.

20             THE COURT:  Thank you, Mr. Enzinna.  Anything else?

21             MR. ENZINNA:  Yes.  She claimed that she did not

22   remember hearing anyone say anything about photos --

23   specifically about photos, but she was the juror who --

24             THE COURT:  Just a second, someone's lost service on

25   their device.

1          Ms. Smith, assist Mr. McCants.  The record will

2     reflect that one of the defendants, Mr. McCants has signaled

3     that his telex device has failed.  We're in the process of

4     replacing it with a substitute device.

5          Test, test, 1, 2, 3, test.  Test, 1, 2, 3.  Let the

6     record reflect Mr. McCants is signaling that he is now able to

7     hear.  We remain on the private channel on the record.

8          Mr. Enzinna, did you have another question?

9          MR. ENZINNA:  Yes, Juror No. 2 said that she --

10    juror No. 2 said that she did not specifically recall

11    specifically anyone talking about photography, but she was the

12    juror that it was reported during the trial was the person who

13    said that Juror No. 4 came in and said he had observed people

14    taking photos and said it was really serious.  She also said

15    here today that she or others wondered if it was someone's

16    mother.  And part of her report -- or what was reported that

17    she said during the trial, was that Juror No. 4 said it might

18    have been Mr. McCants's mother taking pictures.  So I think

19    there's parts of her memory that we're not hearing about and I

20    think she needs to be probed further and reminded what she

21    said at trial.

22         The third thing, she said when Juror No. 4 left, was

23    excused, she said all the rest of the jurors looked at each

24    other and said, quote, something was up.  I think she needs to

25    be asked more about that and what did she think was up.

1          THE COURT:  I didn't hear her say that the jurors

2     said that to each other, but that they looked at each other as

3     if to sort of communicate that back and forth among

4     themselves.  But there was no suggestion on her part of a

5     discussion or, in fact, anything being said.  Do you remember

6     it differently, Mr. Enzinna?

7          MR. ENZINNA:  No, I think you're correct, Your

8     Honor.  And I may have misspoke.  She did say they looked at

9     each other as if something was up.

10          THE COURT:  Thank you, Mr. Enzinna.

11          MR. ENZINNA:  I'd like her to be asked what she

12     thought was up.

13          THE COURT:  Any other questions?

14          MR. ENZINNA:  Also, Your Honor, I make the same

15     request that I made with Juror No. 1, with regard to her being

16     asked about being intimidated and remaining impartial.  Again,

17     I think the problem is that the Court -- the jurors are not

18     being told what the term impartial means in this context.  And

19     I think that also the way the question's being asked, it's

20     effectively a leading question.  Because you're asking jurors

21     to admit that they did not fulfill their oath by being

22     impartial.  And I think it ought -- the way the question ought

23     to be asked is whether or not the jurors continue to think

24     about this incident or whether they put it out of their

25     mind.

1           THE COURT:  Thank you, Mr. Enzinna.  Can you hear

2    me -- can you all hear me?  I can't suddenly -- I've got it

3    back.

4           Thank you, Mr. Enzinna.  I decline to ask any of the

5    follow-up questions that you just proposed.  I make that

6    ruling based on the interaction that I've had be the juror,

7    who I continue to look at about ten feet away from me.  And

8    having listened carefully to the answers that she supplied.

9    No doubt we could have extensive discussions about this trial,

10   its details, the impressions that it left on jurors that have

11   stayed with them over time.  But this juror strikes me as

12   intelligent, as sophisticated in her use of language.  And,

13   accordingly, her understanding of language.  I have no

14   significant doubt that she understands the meaning of the word

15   impartial.

16          I've also, once again with this juror, listened for

17   and watched for any signals or indications of ambivalence or

18   questioning on the core issue, and that is whether or not

19   whatever happened on January 9 had an impact on her continuing

20   ability to serve as a fair and impartial and open-minded

21   juror.  And once again, this juror, in her responses, has been

22   crystal clear on that issue.  Was there a matter of concern

23   raised?  Evidently, to the point that there was some nonverbal

24   communication that went on after Juror No. 4 was excused and

25   an alternate was seated.

1          But what we're really here to assess is not whether

2     or not there were twists and turns during the trial and so

3     forth, there clearly were some.  It's really, at the end of

4     the day, a bottom line assessment of whether or not the

5     government can demonstrate that the juror's ability to

6     function fairly, impartially, and with an open mind, and

7     without effect from any sort of outside event, whether all of

8     that prevailed.  And her answers and the emphasis that she has

9     supplied in providing them, provides the Court what -- with

10    what it will need to assess her particular capacity for

11    fairness, impartiality and open mindedness after the events of

12    January 9.

13          Mr. Bussard, do you have any follow-up questions?

14          MR. BUSSARD:  Your Honor, I do not.

15          THE COURT:  Closer to the microphone please, Mr.

16    Bussard.

17          MR. BUSSARD:  I join Mr. Enzinna as far as his

18    requests.  I too recall that Mr. Juror No. 2 was the one that

19    spoke up after the January 9th --

20          THE COURT:  You're fading out, Mr. Bussard.  I'm

21    going to ask you to sort of get closer to the mike and then

22    come up with you recall Juror No. 2, and it sort of faded

23    out.

24          MR. BUSSARD:  I recall Juror No. 2, to the same

25    extent Mr. Enzinna recalled, that she was the one that had

1  made a statement during the January 9th, January 10th

2  exchange.  So I join with Mr. Enzinna on his questions as

3  well.

4  THE COURT:  Let me elaborate on my ruling, because I

5  have some recollection of that same circumstance that Mr.

6  Enzinna and Mr. Bussard are describing.  But the Court is

7  electing not to further develop that at this time in favor of

8  the testimony elicited this morning, which goes to what the

9  Court is zeroed in on at this point, not whether or not there

10  was some discussion.  It's incontrovertible that Juror No. 4

11  did think that he saw something in terms of picture taking and

12  did make some comment in front of other jurors.  That's

13  incontrovertible.  That occurred.  And events like that

14  sometimes happen during the course of trials.

15  What the Court has to nail down is what was the

16  effect of that, if any, what impact was there.  And, of

17  course, what we're concerned about is whether or not these

18  jurors were able to soldier on and continue on in their

19  service with an open mind, with fairness, and with

20  impartiality.  And, accordingly, the Court is most focused on

21  that inquiry in this proceeding.  And is completely ready to

22  ask follow-up questions that will start to explore ambivalence

23  around that point.

24  With this juror, though, there is no evidence of

25  ambivalence around that issue.  The assurance, self-assurance

1    that she has with respect to her continuing capacity to be

2    fair and impartial and open minded is palpable, not just in

3    the words that she expressed but once again the energy with

4    which she expressed them and her tone and emphasis.

5    Ms. Wicks, do you have any proposed follow-up questions.

6              MS. WICKS:   Nothing in addition to what was already

7    raised Your Honor.

8              MR. O'TOOLE:  Your Honor, I wonder --

9              THE COURT:  Mr. O'Toole.

10             MR. O'TOOLE:  Yes, I'm having a feedback here.  And

11   I know the Court has already heard from Mr. Enzinna and I

12   don't mean to --

13             THE COURT:  And in general our practice is going to

14   be one lawyer for each defendant speaking.  There's nothing

15   wrong with two lawyers being here and you're consulting

16   privately, but really we need to hear from one lawyer per

17   juror.  And you can switch back and forth with you handling

18   some jurors and Mr. Enzinna handling some and so forth, but

19   we're not going to do a tag-team approach.

20             MR. O'TOOLE:  I wonder if we could do that going

21   forward with my able to make one comment here.

22             THE COURT:  Go ahead.

23             MR. O'TOOLE:  I think what's happening with the use

24   of the word and the question involving were they able to stay

25   impartial, I think that by nature puts them directly on the

1    spot.  I think that if going forward we can find out if they

2    were able to put those incidents out of their mind, especially

3    with this juror, who selectively has forgotten that she's the

4    one who did say that she heard the comments about the picture

5    taking.  So I think that the jurors --

6           THE COURT:  In proposing a question, you have to

7    consider what the relevance of the answer would be.  Let's

8    suppose a juror responded to that by saying no, I couldn't put

9    that out of my mind.  I can still remember it.  I can remember

10   it today.  I remember it with crystal clarity.  Whether or not

11   they could put the issue out of their mind isn't what's

12   relevant here.  What's relevant is whether the issue affected

13   their ability to be fair and impartial and to operate with an

14   open mind.

15           And I'm not going to engage in an effort to try to,

16   you know, probe, dig, come at them from multiple angles, and

17   test the question of fairness, impartiality, and open

18   mindedness, unless I encounter what I discern to be some

19   ambivalence, some lack of emphasis, some lack of clarity on

20   this ultimate question about which I'm inquiring.  Should that

21   occur, I'll be on it like a bird dog.  It hasn't happened.

22           MR. O'TOOLE:  Well, I think the last comment I have,

23   then I'll remain silent, is proposing a very insignificant

24   almost in terms of time expenditure, a two-step process, a

25   two-question process, don't take away the question you're

1    suggesting but preface with were you able to put it out of

2    your mind?  If they say yes, then obviously we're already into

3    your question.  If they say no, I couldn't put it out of my

4    mind, but when you ask them could you remain impartial then

5    they may say yes or they may say no.  But I'm suggesting an

6    investment of a two-step process, which would be a

7    insignificant amount of time to get to the next step.

8         What you're doing, what the Court is doing the is

9    going right to the point of putting them on the spot, could --

10   you know, they do their service as they swore to do.  That's

11   the last of my comment.  Thank you, Judge.

12        THE COURT:  Let the record reflect that in inquiring

13   of the jurors in the way that I do, I'm following the time

14   honored tradition that judges, including this judge, have used

15   for decades in voir diring jurors.  We interview potential

16   jurors as a matter of routine.  We don't conduct *Remmer*

17   hearings as a matter of routine, I'll concede that.  But we do

18   interview jurors regularly, every time we seat a juror in this

19   court.

20        And we deal with jurors, particularly from our

21   community in some of our criminal cases, who have experienced

22   some of the most difficult and horrific experiences, such as

23   having their own children be the victims of homicide, or

24   themselves having children who have been incarcerated and

25   accused and convicted of serious crimes.  So it's not that the

Court is a stranger to difficult and delicate areas of inquiry with respect to jurors and potential jurors, it's actually, sadly, very common turf for this Court to tread.

And what the Court has learned is to be quite surgical in going after what is the core question. Just because your child has been convicted of a serious offense and is currently incarcerated, or just because your child has been the subject or the victim of a horrible violent crime, perhaps a sexual offense or a murder, that sort of thing, doesn't render someone incapable to serve as a juror in this court.

Now, when those kinds of circumstances have presented themselves, they do warrant a special attention being paid to the question of can this juror really perform impartially and fairly and with an open mind in light of what they have disclosed to us. The Court's practice is to shift to an emphasis on that topic. And to listen very carefully to the answers that come back. And especially to watch the juror and listen to whether there's ambivalence or whether there's emphasis in the answers that are given. I'm employing that exact same technique as I'm interviewing these jurors here.

A question like "could you put that matter out of your mind," doesn't assist me in that regard. I would be surprised if jurors did put out of their mind the question of whether there was, you know, pictures being taken, if they actually really heard that, if they actually heard a juror say

1    that, it would be completely natural that it would remain in

2    mind.  And they are acknowledging that they remember the

3    incident.  And to the extent they do, that's not a surprise.

4    It was an event that caught attention during the course of the

5    trial.  It caused the trial to be paused and so forth.

6              So whether they have the ability to put the matter

7    out of their mind at the end of the day is not the question,

8    the answer to which will assist the Court.  I'm zeroing in on

9    that which will.  Okay.  Let's go back to the regular channel.

10             (The following proceedings were had in open court.)

11             THE COURT:  Juror No. 2, thank you so much for

12   returning here to court some three years after the event.

13             THE WITNESS:  You're welcome.

14             THE COURT:  You are a good citizen in responding to

15   your summons, once again, to return.  We thank you very much

16   for your participation here today and you are excused and you

17   may depart.

18             THE WITNESS:  Thank you.

19             THE COURT:  Thank you, ma'am.

20             Ladies and gentlemen, I'm advised that there's a

21   nationwide issue with respect to the AT&T public line that we

22   ordinarily use to allow persons to dial in by conference call

23   number and listen to our proceedings.  Our IT staff and AT&T

24   nationally are working on this issue.  It's not a local issue

25   to our courthouse.  And I remind everyone and note again for

1    the record that the public is perfectly free to listen in and

2    watch these proceedings from courtroom 7A.  That channel is

3    not impacted by this technical glitch.

4              (Juror No. 3 entered the courtroom.)

5              THE COURT:  We've got to do the COVID clean up

6    first.  Take a seat on the chair.  Thank you very much.  More

7    for you in just a second.  Are we ready?  Swear the witness.

8              THE CLERK:  We are, Your Honor.

9              THE COURT:  If you would just raise your right

10   hand.

11                        JUROR NO. 3,

12   called as a witness, being first duly sworn, was examined and

13   testified as follows:

14              THE WITNESS:  I do.

15              THE CLERK:  Thank you.

16                        EXAMINATION

17   BY THE COURT:

18   **Q.**  Good morning.

19   **A.**  Hi.

20   **Q.**  You are Juror No. 3 from the trial of United States versus

21   Johnson, JKB-16-363; is that correct?

22   **A.**  Yes.

23   **Q.**  Between November 20, 2017, and January 25, 2018, you

24   served as a juror in the trial of United States versus Gerald

25   Johnson, et al., case number JKB-16-0363, I was the judge who

1    presided during that trial.  I know I have a face mask on now,

2    as do you, but do you remember that I was the judge?

3    **A.**  Yes.

4    **Q.**  Okay.  Also with us here today are attorneys who represent

5    the parties in the case.  Starting with assistant U.S.

6    Attorney Martinez and Assistant U.S. Attorney Hoffman, they

7    represent the government.  Mr. Enzinna and Mr. O'Toole who

8    represent Mr. Johnson.  Mr. Bussard, who represents Mr. Jones.

9    And Ms. Wicks and Mr. Nieto who represent Mr. McCants.  Do you

10   remember your service as a juror in this case?

11   **A.**  Yes.

12   **Q.**  The trial lasted for many weeks.  During the trial some

13   concerns were raised, such as defendants passing notes,

14   looking at jurors, having access to juror information through

15   the juror selection process known as voir dire.  The Court

16   addressed these concerns without pausing the trial.

17        Then, on January 9, 2018, an event occurred, which caused

18   the trial to briefly pause.  One of your fellow jurors, in the

19   presence of at least some of the rest of the jurors and

20   alternates, expressed concern that persons, perhaps a

21   defendants' family members, might be taking pictures of the

22   jurors as they passed through the vestibule at the entrance to

23   the courtroom and the jury room.  We understand that juror may

24   have seen this as a significant event.  A few minutes later

25   you were interviewed by court staff about that event.

1          A day later, on January 10, 2018, I spoke to the jury in

2     the courtroom and said, one or more jurors had a concern that

3     perhaps someone outside of the jury room in the courtroom

4     vestibule or courtroom hallway had photographed or otherwise

5     captured the images of jurors.  This matter was investigated

6     after that report was received.  The investigation included

7     the examination of a relevant smart phone, camera-type device

8     in the possession of a relevant individual.  That

9     investigation revealed that there were no images, films, or

10    videos of the sort that I have referred to captured on that

11    telephone.

12         Today I have some questions for you about the events of

13    January 9, 2018.  Specifically, I need your assistance in

14    learning whether the events of that day impacted your ability

15    to be a fair and impartial juror for the remainder of the

16    trial.

17         The lawyers I introduced earlier are not here to ask you

18    questions, only the Court will do that, only me.  But the

19    lawyers are here to represent the interests of their clients

20    and to propose follow-up questions that the Court -- me -- may

21    or may not ask, in my discretion.

22         As you respond to my questions, please be careful not to

23    tell us about the jury's deliberations on the defendants guilt

24    or innocence, or about how you reached your verdict.  We don't

25    want to know about that.  Do you remember this event that I'm

1    referring to on January 9?

2    **A.**   Somebody mentioned something.  I didn't pay much

3    attention.

4    **Q.**   Did you see anyone engaged in any action that suggested

5    that they were taking pictures of jurors?

6    **A.**   No.

7    **Q.**   Did you hear any juror make statements indicating his or

8    her belief that persons might be taking pictures of jurors?

9    **A.**   I heard something.

10   **Q.**   What do you remember hearing, as best you can remember it

11   now?

12   **A.**   That was about it.  Somebody said that they thought maybe

13   somebody was taking a picture.

14   **Q.**   Do you remember which jurors raised questions regarding

15   potential picture taking?

16   **A.**   No.

17   **Q.**   Did anyone, including yourself, suggest that these

18   concerns should be reported to the Court?

19   **A.**   I don't remember.  I don't think so.

20   **Q.**   Did you hear or participate in discussion among the jurors

21   about the possibility of picture taking?  If so, can you

22   remember what was said?  And I'm sorry if I'm sort of asking

23   the same questions over, but we're really trying to get out

24   exactly what you remember about this, if anything?

25   **A.**   I wasn't included in anything.  I just overheard somebody

1    say something to somebody, that possibly that was happening.

2    That's all I knew.

3    Q.   In responding to the next questions, I'm going to ask you

4    to draw a line between events that occurred prior to the start

5    of your deliberations and events that happened after you began

6    deliberations.  By deliberations I mean that point in the

7    trial where no more evidence was presented, the lawyers had

8    made their arguments, and I had read the jury instructions to

9    you.  That's the point when deliberations began.  I don't want

10   to hear anything about that.  Just the matters that came

11   before that.

12        So, all of your answers to these questions should be

13   limited to events that occurred and things that you thought or

14   felt before you began deliberations.  To reiterate, in your

15   answers to these questions, you should not tell us anything

16   about what happened, what was said, what you thought, what you

17   felt after deliberations began.  After any discussion about

18   possible picture taking on January 10 -- January 9 and 10, did

19   you feel intimidated by anything that had occurred?

20   A.   No, I actually don't even remember if I heard about it

21   before or after the deliberation.  I can't really remember

22   when I heard about it.  So, but it didn't have anything to do

23   with the decision.

24   Q.   Were you able to remain an impartial juror, and were you

25   able to keep an open mind as the trial continued, after that

1    event on January 9?

2    **A.**    Yes.

3    **Q.**    Do you believe the events of January 9 and January 10,

4    2018, left you unable to continue to serve as a fair and

5    impartial juror in the case?

6    **A.**    No.

7    **Q.**    Do you believe that you were left unable to fully consider

8    the evidence and arguments presented by both sides with an

9    open mind?

10   **A.**    No.

11   **Q.**    Any concerns about that?

12   **A.**    No.

13   **Q.**    Now what's going to happen is, I'm going to talk to the

14   lawyers on a private little electronic device.  You're not

15   going to be able to hear this.  Instead you're going to hear

16   the annoying noise machine that you probably remember from the

17   trial.

18   **A.**    Uh-huh.

19   **Q.**    Okay.  And then when I'm finished talking to them I'll

20   have more to say to you at that point.  So I'll ask your

21   patience for a minute.

22   **A.**    Okay.

23            (Bench conference on the record.)

24            THE COURT:  Mr. Martinez, do you have any follow-up

25   questions?

1          MR. MARTINEZ:  No, Your Honor.

2          THE COURT:  Mr. Enzinna, do you have any follow-up

3    questions?

4          MR. ENZINNA:  Well, Your Honor --

5          THE COURT:  Closer to the mike, please.

6          MR. ENZINNA:  She said she does not remember whether

7    she heard this before or after deliberations began.  Seems to

8    me that if she heard it, if she had not heard it before

9    deliberations began, then none of her answers today are

10   relevant.  I think she would need to be --

11         THE COURT:  You're too far from the mike.

12         MR. ENZINNA:  I think we need to be -- get more

13   clarity from her on when she heard about this, because as I

14   said, I think that if she did not hear about it until

15   deliberations began then none of her answers are relevant and

16   they're, in fact, inadmissible.

17         And I would also make the same objections I've made

18   with respect to all the other jurors with regard to the

19   Court's questions 11 through 13.  And I would request that the

20   Court ask her whether she was able to put this event out of

21   her mind.

22         THE COURT:  Let's have that as a standing request

23   from defense counsel that is in general denied by the Court

24   and the record should reflect it is denied by the Court unless

25   I elect in the specific circumstances of a particular juror to

1    revise that issue because of something I've said or noticed,

2    in which case we'll get back to it.  But otherwise, let's let

3    the record reflect that you have a continuing objection across

4    examination of all the jurors with respect to that issue.

5                Is that acceptable, Mr. Enzinna?

6                MR. ENZINNA:  That is.  Thank you, Your Honor.  And

7    finally --

8                THE COURT:  Let's go back to this other issue about

9    timing, though, which seems to be your first focal point with

10   respect to this juror.  She has -- she did make one comment,

11   she indicated that she's not sure if she heard about this

12   before deliberations began or after deliberations began.  But

13   then her other answers seemed to suggest that she wasn't

14   influenced by it regardless.  Well, how do I integrate those

15   two circumstances in my evaluation of this evidence?

16               MR. ENZINNA:  Well, Your Honor, if she did not hear

17   about the event until deliberations began, then nothing she

18   can tell us about her reaction to the event is admissible,

19   under Rule 606(b)(1).  So if what she's talking about is the

20   reaction to the event after deliberations began, then none of

21   that is admissible.

22               THE COURT:  Thank you.  Let me follow up with her.

23               MR. MARTINEZ:  Your Honor, may I be heard on that

24   for just a moment?

25               THE COURT:  Go ahead, Mr. Martinez.

1          MR. MARTINEZ:  I think that argument is legally

2    incorrect.  I think Rule 606(b) permits testimony regarding

3    external influences regardless of the timing.  We're using the

4    beginning of deliberations as a demarcation point for purposes

5    of prophylactically steering the Court's questions in this

6    case.  But I think Mr. Enzinna is wrong when she suggests

7    she's not permitted to testify regarding an external contact

8    regardless of the timing.  I think 606(b) allows for that.

9          THE COURT:  So, I'm not ruling on that question

10   right now.  Specifically that legal issue, but I still think

11   it might aid the process to try to clear up, if possible, the

12   particulars of her recollection.  Let me take another shot at

13   attempting to do that in terms of nailing down the timing

14   here, not because I necessarily agree with the suggestion from

15   Mr. Enzinna, that depending on how she answers the question,

16   that potentially renders the information that she supplied

17   irrelevant or inadmissible.  And the Court's not ruling that

18   way in any way, shape, or form, at least not at this time.

19   But I still think that there is a little bit of ambiguity

20   there that perhaps can be clarified, perhaps cannot be.

21          (The following proceedings were had in open court.)

22   **BY THE COURT:**

23   **Q.**  You've had a moment or two to think about the question

24   that I've asked you, is there anymore clarity in your mind

25   about when during the trial, before deliberations or after

1  deliberations, you might have first heard the talk or

2  suggestion about picture taking?

3  **A.**   No, I don't know when, because I didn't really pay any

4  attention.

5  **Q.**   Because you just didn't pay attention?

6  **A.**   I heard, like I said, somebody said something to somebody

7  else, overheard something.  That was all.  It didn't phase me,

8  so I didn't pay attention.

9  **Q.**   All right.  So to the extent that there was some

10  discussion about picture taking or some loose reference to it,

11  tell us again, if you can, how that did or did not affect your

12  ability to be fair and impartial and open minded as a juror

13  prior to beginning deliberations?

14  **A.**   Well, it didn't effect my decision.  Is that what you're

15  saying?

16  **Q.**   I'm not really asking you about your decision.  We try to

17  stay away from that.  I'm just trying to ask you about your

18  state of mind as you were sitting there as the days went by,

19  you know, did you -- was there -- did the events of January 9

20  have an impact on your ability to be fair and impartial and

21  open minded?

22  **A.**   No, it didn't.

23            THE COURT:  We'll go back on the private channel.

24            (Bench conference on the record.)

25            THE COURT:  Mr. Enzinna, can you hear me?

```
 1              MR. ENZINNA:  I hear you, yes.

 2              THE COURT:  All right.  So we were still in the

 3    midst of your proposed follow-up questions.  Do you have any

 4    others?

 5              MR. ENZINNA:  No, the only other thing I was going

 6    to say is that -- I'll withdraw it.

 7              THE COURT:  Thank you.  Mr. Bussard, do you have any

 8    follow-up questions?

 9              MR. BUSSARD:  No, Your Honor.

10              THE COURT:  Ms. Wicks, do you have any proposed

11    follow-up questions?

12              MS. WICKS:  None, Your Honor.

13              THE COURT:  Little bit closer to the mike, please,

14    Ms. Wicks.

15              MS. WICKS:  No, Your Honor.

16              THE COURT:  Thank you, ma'am.  We'll go back to the

17    courtroom channel.

18              (The following proceedings were had in open court.)

19              THE COURT:  Thank you Juror No. 3.  We're now

20    finished.  We sincerely appreciate your returning to court

21    after these many years to answer our questions.  You're a good

22    citizen to respond to your summons in that fashion and to come

23    back down here.  You leave with the gratitude of the Court.

24    The courtroom clerk will now take you out.  You are excused

25    and you may depart.  Please remember to take your things.
```

1              THE WITNESS:  Thank you.

2              THE COURT:  Thank you.

3              (Juror No. 4 entered the courtroom.)

4              THE COURT:  Good morning.

5              THE WITNESS:  Good morning.

6              THE COURT:  You are Juror No. 4 in United States

7    versus Johnson, JKB-16-363; is that correct?

8              THE WITNESS:  Correct.

9              THE COURT:  Between November 20, 2017 and January

10   25, 2018, you served as a juror in the trial of United States

11   versus Gerald Johnson, et al., case number JKB-16-0363.  I was

12   the judge who presided during that trial.  I've got a face

13   mask on now, but can you recognize that I was the judge?  Do

14   you remember that?

15             THE WITNESS:  Yeah.

16             THE COURT:  Okay.  Now, also here with us today, in

17   addition to me, are lawyers who represent the parties in the

18   case.  First of all, representing the government, Assistant

19   U.S. Attorney Martinez and Assistant U.S. Attorney Hoffman.

20   And then representing Mr. Johnson, Mr. Enzinna and Mr.

21   O'Toole.  Representing Mr. Jones is Mr. Bussard.  And

22   representing Mr. McCants is Ms. Wicks and Mr. Nieto.  These

23   lawyers are all in the courtroom.  And I see you looking at

24   them now, and some of them -- that's right, are over your

25   right shoulder, okay.

1          Do you remember your service in this -- thank you

2    very much.  We didn't swear you.  Let's stop and please

3    administer the oath.  Please raise your right hand.

4                         JUROR NO. 4,

5    called as a witness, being first duly sworn, was examined and

6    testified as follows:

7              THE WITNESS:  I do.

8              THE CLERK:  Thank you.

9              THE COURT:  And let me catch up and ask you if the

10   answers that you've supplied so far have been truthful?

11             THE WITNESS:  Yes.

12             THE COURT:  Okay.

13                        EXAMINATION

14   BY THE COURT:

15   **Q.**  Now do you remember your service as a juror in this

16   case?

17   **A.**  I do.

18   **Q.**  The trial lasted for many weeks.  During the trial some

19   concerns were raised, such as the defendants passing notes,

20   looking at jurors, and having access to juror information

21   through the juror selection process known as voir dire.  The

22   Court addressed these concerns without pausing the trial.

23        Then, on January 9th, 2018, an event occurred, which

24   caused the trial to briefly pause.  One of your fellow jurors,

25   in the presence of at least some of the rest of the jurors and

1    alternates, expressed concern that persons, perhaps a

2    defendant's family members, might be taking pictures of the

3    jurors as they passed through the vestibule at the entrance to

4    the courtroom and the jury room.  We understand that juror may

5    have seen this as a significant event.  A few minutes later,

6    you were interviewed by court staff about that event.

7        A day later, on January 10, 2018, I spoke to the jury in

8    the courtroom and said:  One or more jurors had a concern that

9    perhaps someone outside of the jury room, in the courtroom

10   vestibule or courtroom hallway, had photographed or otherwise

11   captured images of the jurors.  This matter was investigated

12   after that report was received.  The investigation included

13   the examination of a relevant smart phone camera type device

14   in the possession of a relevant individual.  That

15   investigation revealed that there were no images, films,

16   videos of the sort that I have referred to, captured on that

17   telephone.

18       Today, I have some questions for you about the events of

19   January 9, 2018, specifically, I need your assistance in

20   learning whether the events of that day impacted your ability

21   to continue to be a fair and impartial juror for the remainder

22   of the trial?

23           The lawyers I introduced are not here to ask you

24   questions, only the Court will do that, only I will ask you

25   questions.  But the lawyers are here to represent the

1   interests of their clients and to propose follow-up questions

2   that the Court may or may not ask you in its discretion.  As

3   you respond to my questions, please be careful not to tell us

4   the jury -- not to tell us about the jury's deliberations on

5   the defendant's guilt or innocence, or about how you reached

6   your verdict.  We don't want to hear about that.

7        Do you remember this event on January 9 that I'm

8   referring to?

9   **A.**  Vaguely.

10  **Q.**  Did you see anyone engaged in any action that suggested

11  that they were taking pictures of the jurors?

12  **A.**  No.

13  **Q.**  Did you a hear any juror make statements indicating his or

14  her belief that persons might be taking pictures of the

15  jurors?

16  **A.**  I -- yes, I did.

17  **Q.**  What do you remember hearing?

18  **A.**  I think it's -- hmm.  It was along the lines of, I can't

19  believe, you know, we see the defense family here mixed

20  together.  And I see some people on the phones.  I think

21  they're taking pictures.  And I just thought it was, you know,

22  just a little bit of just paranoia.  I didn't think anything

23  of it.  I was like, I doubt it, but -- someone said something

24  like that.

25  **Q.**  Do you recall which jurors raised concerns regarding

1    potential picture taking?

2    **A.**    No.

3    **Q.**    Did anyone, including yourself, suggest that these

4    concerns should be reported to the Court?

5    **A.**    No.

6    **Q.**    Did you hear or participate in discussion among the jurors

7    about the possibility of picture taking?

8    **A.**    No, I think it was just mentioned and it really didn't

9    evolve into a real conversation.

10    **Q.**    Okay.

11    **A.**    I think it was just someone who was a little paranoid

12    about something.  But it is -- can't really prove, people are

13    on the phone in the hallway all the time.  So I just thought

14    whatever she -- or she or he is just being paranoid.

15    **Q.**    Okay.  So the next question was, can you remember what was

16    said?  But I think you just answered that, is that true?

17    **A.**    Yeah.

18    **Q.**    In responding to the next questions I'm going to ask --

19    I'm going to again ask you to draw a line between the events

20    that occurred prior to the start of your deliberations and

21    events that happened after you began deliberations.  By

22    deliberations, I mean that point in the trial when no more

23    evidence was presented, the lawyers had made their arguments

24    and I had read the jury instructions to you, that's the point

25    when deliberations began.  And I don't want to hear anything

1    about that.  Just matters that came before that.

2        So all of your answers to these questions should be

3    limited to events that occurred, and things that you thought

4    or felt before you began deliberations.  To reiterate, in your

5    answers to these questions you should not tell us anything

6    about what happened, what was said, what you thought, what you

7    felt after deliberations began.

8        Here's the question, first one, after any discussion

9    about possible picture taking on January 9 and 10, did you

10   feel intimidated by anything that had occurred?

11   **A.**  No.

12   **Q.**  Were you able to remain an impartial juror, and were you

13   able to keep an open mind as the trial continued after that?

14   **A.**  Yes.

15   **Q.**  Do you believe that the events of January 9 and January

16   10, 2018, left you unable to continue to serve as a fair and

17   impartial juror in the case?

18   **A.**  No.

19   **Q.**  Do you believe that those events left you unable to fully

20   consider the evidence and arguments presented by both sides

21   with an open mind?

22   **A.**  No.

23   **Q.**  Now, the next thing that's going to happen is I'm going to

24   have a private conversation with the lawyers over this little

25   electronic device.  You're not going to be able to hear this

1    part of the conversation.  Instead, we're going to turn on the

2    noise maker machine, which you probably remember from the

3    trial, so that you can't hear.  Are you with me?

4    **A.**  Yeah, I miss that noise.

5    **Q.**  We'll come back and talk with you a little bit more in a

6    minute.  All right?

7    **A.**  Yeah.

8              (Bench conference on the record.)

9              THE COURT:  Mr. Martinez, do you have any questions?

10             MR. MARTINEZ:  No, Your Honor.

11             THE COURT:  Mr. Enzinna?

12             MR. ENZINNA:  Other than my standing objection, no

13    questions.

14             THE COURT:  Okay.  Please stay close the that mike.

15    I know it's very hard and when you get too close it starts

16    booming through.  But I think a distance of about two inches

17    works out about perfect.  It's not ideal and I apologize for

18    that.  I think I heard you say that you do not have any

19    questions for this witness other than your standing objections

20    and suggestions in terms of how we question all jurors; is

21    that right, Mr. Enzinna?  Can you hear me, Mr. Enzinna?

22             MR. ENZINNA:  My telex unit is coming in and out.  I

23    did not hear anything the Court said after talking about the

24    microphone.

25             THE COURT:  All right.  Meanwhile, Ms. Smith, let's

1    replace Mr. Enzinna's telex device.

2            Mr. Enzinna, are you able to hear me?

3            MR. ENZINNA:  I cannot hear you.

4            THE COURT:  Can you hear me now?

5            MR. ENZINNA:  No, I can't hear.

6            THE COURT:  Do you have the ear piece actually in

7    your ear, it looks like it's hanging.  Test, one, two, three,

8    can you hear me?

9            MR. ENZINNA:  I heard that.  If I stay just like

10   this I can hear you.

11           THE COURT:  My position with respect to this witness

12   is that you propose no specific follow-up questions for him,

13   but you want to stand on your earlier objections as to how the

14   Court is proceeding generally with respect to all witnesses,

15   but other than that you have nothing further for this

16   particular witness; is that correct?

17           MR. ENZINNA:  Yes.

18           THE COURT:  Thank you.  Mr. Bussard, any follow-up

19   questions.

20           MR. BUSSARD:  No, Your Honor.

21           THE COURT:  Ms. Wicks, any follow-up questions?

22           MS. WICKS:  No.  Thank you, Your Honor.

23           THE COURT:  Thank you, ma'am.

24           We'll go back to the courtroom channel.

25           (The following proceedings were had in open court.)

```
 1              THE COURT:  Juror No. 4, we are now finished.  Thank
 2     you very much for returning here to court in response to your
 3     summons.  You're a good citizen for doing that.  We appreciate
 4     it.  And you may depart.  The courtroom clerk will take you
 5     out.  You are excused.  You may leave the courthouse.
 6              THE WITNESS:  Thanks.
 7              THE COURT:  You didn't leave anything on the table,
 8     did you?  What about something -- there's something else up
 9     there.
10              THE CLERK:  No, that's mine.
11              THE COURT:  Okay.  Thank you.  The Court clerk will
12     take you out.
13              (Juror No. 5 entered the courtroom.)
14                          JUROR NO. 5,
15     called as a witness, being first duly sworn, was examined and
16     testified as follows:
17              THE WITNESS:  Yes.
18              THE CLERK:  Thank you.
19                          EXAMINATION
20     BY THE COURT:
21     Q.  Good morning, ma'am?
22     A.  Good morning.
23     Q.  You are Juror No. 5 from the trial of United States versus
24     Johnson, JKB-16-363; is that correct?
25     A.  That's correct.
```

1    **Q.**  Between November 20, 2017, and January 25, 2018, you

2    served as a juror in the trial of the United States versus

3    Gerald Johnson, et al., case number JKB-16-0363, I was the

4    judge who presided during that trial.  I know I've got a face

5    mask on, but do you recognize me?

6    **A.**  Yes.

7    **Q.**  Okay.  Now, we're in a different courtroom but same judge;

8    right?

9    **A.**  Yes.

10   **Q.**  Also here are the attorneys who represent the parties in

11   the case, Assistant U.S. Attorney Martinez and Assistant U.S.

12   Attorney Hoffman representing the government.  Mr. Enzinna and

13   Mr. O'Toole representing Mr. Johnson.  Mr. Bussard

14   representing Mr. Jones.  Ms. Wicks and Mr. Nieto representing

15   Mr. McCants.  Do you remember your service as a juror in this

16   case?

17   **A.**  Yes.

18   **Q.**  The trial lasted for many weeks.  During the trial, some

19   concerns were raised, such as defendants passing notes,

20   looking at jurors, and having access to juror information

21   through the juror selection process known as voir dire.  The

22   Court addressed these concerns without pausing the trial.

23        Then, on January 9, 2018, an event occurred, which caused

24   the trial to briefly pause.  One of your fellow jurors, in the

25   presence of at least some of the rest of the jurors and

1    alternates, expressed concern that persons, perhaps a

2    defendants' family members, might be taking pictures of the

3    jurors as they pass through the vestibule at the entrance to

4    the courtroom and the jury room.  We understand that juror may

5    have seen this as a significant event.  A few minutes later

6    you were interviewed by court staff about that event.

7        A day later, on January 10, 2018, I spoke to the jury in

8    the courtroom and said one or more jurors had a concern that

9    perhaps someone outside of the jury room, in the courtroom

10   vestibule, or a courtroom hallway, had photographed or

11   otherwise captured the images of jurors.  This matter was

12   investigated after that report was received.  The

13   investigation included the examination of a relevant smart

14   phone, camera-type device, in the possession of a relevant

15   individual.  That investigation revealed that there were no

16   images, films, videos of the sort that I have referred to

17   captured on that telephone.

18       Today, I have some questions for you about the events of

19   January 9, 2018.  Specifically, I need your assistance in

20   learning whether the events of that day impacted your ability

21   to continue to be a fair and impartial juror for the remainder

22   of the trial.

23           The lawyers I introduced earlier are not here to ask

24   you question, only the Court will do that -- me.  But these

25   lawyers are here to represent the interests of their clients

1  and to propose follow-up questions that the Court may or may

2  not ask you in its discretion.  As you respond to my

3  questions, please be careful not to tell us about the jury's

4  deliberations on the defendants' guilt or innocence or about

5  how you reached your verdict.  We do not want to hear about

6  that.

7      Do you remember this event from January 9?

8  **A.**  Yes.

9  **Q.**  Did you see anyone engaged in any action that suggested

10  that they were taking pictures of the jurors?

11  **A.**  No.

12  **Q.**  Did you hear any juror make statements indicating his or

13  her belief that persons might be taking pictures of jurors,

14  and if so what do you remember hearing?

15  **A.**  I just remember being called in and asked questions about

16  what happened that day.  I wasn't in the area during that

17  time.  I had been out for a walk around the building.

18  **Q.**  Do you recall which jurors raised questions regarding

19  potential picture taking?

20  **A.**  Yes.

21  **Q.**  Can you tell me what you remember about that?

22  **A.**  I just know the juror that I was sitting next to that was

23  dismissed.

24  **Q.**  Okay.  And that's the person who you believe was raising

25  the concerns?

1  **A.**  Yes.

2  **Q.**  Okay.  So you were Juror No. 5?

3  **A.**  Yes.

4  **Q.**  So that would have been either Juror No. 4 or Juror No. 6

5  I guess that you're referring to?

6  **A.**  Correct, 4.

7  **Q.**  4, it was Juror No. 4?

8  **A.**  Uh-huh.

9  **Q.**  Who had raised the concerns?

10  **A.**  Yes.

11  **Q.**  Okay.  And did you remember hearing him raise the

12  concerns?

13  **A.**  No.  Not to me, no.

14  **Q.**  Okay.  Did you hear or participate in discussion among the

15  jurors about the possibility of picture taking, and if so can

16  you remember what was said?

17  **A.**  That was three years ago --

18  **Q.**  Yeah, I know.  Just take your time.

19  **A.**  I don't remember like actual conversations.  I just knew

20  that we were being called in one by one because of an incident

21  that had happened that day.

22  **Q.**  Okay.  In responding to the next questions, I am going to

23  again ask you to draw a line between events that occurred

24  prior to the start of deliberations and events that happened

25  after you began deliberations.  By deliberations I mean that

1    point in the trial when no more evidence was presented, the

2    lawyers had made their arguments, and I had read the jury

3    instructions to you.  That's when deliberations began.  And I

4    don't want to hear anything about that, just matters that came

5    before that.

6         So all of your answers to these questions should be

7    limited to events that occurred, and things that you thought

8    or felt, before you began deliberations.  To reiterate, in

9    your answers to these questions you should not tell us

10   anything about what happened, what was said, what you thought,

11   what you felt after deliberations began, are you with me?

12   **A.**  Uh-huh, yes.

13   **Q.**  After any discussion about possible picture taking on

14   January 9 and 10, did you feel intimidated by anything that

15   had occurred?

16   **A.**  Yes.

17   **Q.**  Tell me about that?  What did you feel intimidated

18   about?

19   **A.**  Well, when you shared the incident the next day in the

20   courtroom, which was where I kind of heard the whole thing

21   kind of come out, that was a little intimidating to think that

22   that could possibly have happened.  You guaranteed us that it

23   had not, so, it was in my head.

24   **Q.**  Okay.  So then I gave you what we call an instruction, or

25   I gave you information, I said to you what I said and I just

1    referred to it a few minutes ago, did that have any effect on

2    you one way or another?

3    **A.**  Which part?

4    **Q.**  Where I said to you that we had looked into the matter and

5    then told you what we believed we had learned after we looked

6    into the matter.

7    **A.**  I believed everything you said.  I'm just saying when I

8    first heard it, it just kind of does -- that's in your head a

9    little bit.  But when you said everything was fine and there

10   was nothing there, then that's what I went with.

11   **Q.**  Okay.  So were you able to remain an impartial juror and

12   were you able to keep an open mind as the trial continued

13   after that?

14   **A.**  Yes.

15   **Q.**  Is there any doubt in your mind about that?

16   **A.**  No.

17   **Q.**  Do you believe that the events of January 9 and January 10

18   left you unable to continue to serve as a fair and impartial

19   juror in the case?

20   **A.**  Did I think that left me --

21   **Q.**  Unable.  Do you want me to repeat the question?  Do you

22   believe that the events of January 9 and January 10, 2018,

23   left you unable to continue to serve as a fair and impartial

24   juror in the case?

25   **A.**  No, I could still be fair and impartial.

1    **Q.**  Do you believe those events left you unable to fully

2    consider the evidence and arguments presented by both sides

3    with an open mind?

4    **A.**  I had an open mind.

5    **Q.**  Did you say, "I had an open mind"?

6    **A.**  Yes.

7    **Q.**  Okay.  Thank you.  Now the next part of this is going to

8    occur on this little electronic device where I'm going to talk

9    to the lawyers in private.  You're not going to be able to

10    hear this.  Instead, we're going to turn on the courtroom

11    noise machine so that you won't be able to hear.  I'll have a

12    private discussion with them and then I'll talk to you

13    further.  It might take a couple minutes of minutes, so I just

14    ask that you be patient.  Are you good?

15    **A.**  Yes.

16              THE COURT:  Thank you.

17              (Bench conference on the record.)

18              THE COURT:  Mr. Martinez, do you have any follow-up

19    questions for Juror No. 5?

20              MR. MARTINEZ:  Your Honor, I have no follow-up

21    questions, but I do want to revisit the juror's response to

22    question 11, which addressed intimidation.  To my ear it was

23    clear that her response that she felt intimidated was geared

24    towards her response to the Court's statement in the courtroom

25    the following day.  And to that extent it was a response, a

1    feeling of intimidation in response to something that happened

2    in open court with all the parties present, rather than a

3    response to an external contact.  I just want the record to

4    reflect that.  And I would request a factual finding to that

5    effect.

6                    THE COURT:  Well, we all heard it and the transcript

7    will reflect the words that were uttered.  And in your post

8    hearing briefing you'll get every opportunity to address and

9    argue exactly how she answered the question.  But I don't

10   think there's anything for me to rule on now, I mean, the

11   record is what it is.

12                   She indicated that, you know, the whole story, the

13   whole prospect of what was described to her, particularly the

14   second day had an intimidating quality for her.  She didn't

15   hesitate to then follow that by indicating that the further

16   explanation that was given by the Court purged her of that

17   feeling, such that she was able to -- well, I'm not suggesting

18   that she was ever unable to be a fair and impartial and

19   open-minded juror, but if she was it was immediately purged by

20   virtue of her testimony here, which was that she was able,

21   again, without question and with much emphasis able to

22   function as a fair and impartial and open minded juror.

23                   Anything else, Mr. Martinez?

24                   MR. MARTINEZ:  No, Your Honor.

25                   THE COURT:  Mr. Enzinna?

1          MR. ENZINNA:  Well, Your Honor, first of all, I want

2     to make an objection to the Court's asking the follow-up

3     question about the investigation, whether that reassured her.

4     I think that's not on the list of questions to be asked prior

5     to follow-ups, and I object to it being asked without the

6     opportunity to talk about it.  I think it should not have been

7     asked and I think it's misleading.  She indicated that she put

8     great store in the investigation when, in fact, the

9     investigation was deficient.  And I think that she -- I

10    understand the Court's position that what's important is what

11    she believed, not necessarily what the fact was.  But I think

12    that she needs to be asked whether or not the fact that only a

13    single camera was examined had any effect on her.

14         THE COURT:  So, Mr. Enzinna, time is short, I think

15    that the record is crystal clear on what your position is with

16    respect to this issue as well as the Court's position.  So

17    let's move on.  What else have you got?

18         MR. ENZINNA:  Also, Your Honor, she said, and this

19    is a quote, she said, "it was in my head."  I think that

20    fairly begs for the question of whether or not she was able to

21    put this out of her mind during the period prior to

22    deliberations.  And I think she should be asked that, and I

23    think she should be asked whether having it in her head

24    affected her perception or analysis of the evidence as it came

25    in.

1           THE COURT:  Thank you, Mr. Enzinna.  The question of

2     whether something is in someone's head has an inherent

3     vagueness to it.  Unquestionably, the matter was in her head.

4     She's able to recall it today when she's questioned about it,

5     and with some specificity.  That's not of assistance to the

6     Court in the determination that it ultimately has to make.

7     Lots of information goes through a person's head.  The

8     question is the significance that it is given.  And in this

9     instance the question is what significance is it given in the

10    context of fairness, open mindedness, impartiality.  And

11    accordingly, my questions ultimately are designed to zero in

12    on that issue.

13          Any other proposed questions, Mr. Enzinna?

14          MR. ENZINNA:  Your Honor, I think it's quite clear

15    that when she said it was in her head --

16          THE COURT:  I don't want to argue with you, Mr.

17    Enzinna.  I want to know if you have any other questions.

18          MR. ENZINNA:  No other questions, Your Honor.

19          THE COURT:  Thank you.

20    Mr. Bussard?

21          MR. BUSSARD:  No, Your Honor.

22          THE COURT:  Ms. Wicks?

23          MS. WICKS:   No other questions, Your Honor.

24          (The following proceedings were had in open court.)

25          THE COURT:  Back on the courtroom channel.  Juror

1    No. 5, thank you for returning to court these many years

2    later, and being a good citizen and responding to your summons

3    yet again.  We are grateful to you for your service as a juror

4    and for returning here again in response to the communication

5    that you have received from us.  You are now excused, this

6    process is completed and finished with respect to you and you

7    may depart the courthouse.  The Court clerk will take you out.

8    Please remember to collect all of your things so you don't

9    leave something behind.  Thank you, ma'am.

10             Counsel, I'm advised that the juror's lunch has

11   arrived, so I was planning to take just what would amount to a

12   morning recess, but I think so that the lunch isn't just

13   sitting there we'll go ahead and actually take the lunch break

14   now.  And one of the positive aspects of bringing lunch in for

15   the jurors is that we can take a shorter break and pick up.

16             Ms. Smith, I think we're going to stop and take the

17   lunch break, which will mean that that the juror who is with

18   you and who is on deck should instead be returned to the

19   fourth floor.

20             THE CLERK:  Yes.

21             THE COURT:  So that that juror can take lunch.  And

22   then we will resume here in 45 minutes at 12:45 p.m. and

23   what's -- let's see how long have we been convened has it been

24   over two hours?  Okay.  We will take the lunch break and

25   resume at 12:45.

1          The defendants are remanded to the custody of the
2     Marshal to be returned to this courtroom at 12:45.  We're in
3     recess.
4          (A recess was taken.)
5          THE COURT:  We're ready for Juror No. 6, Ms. Smith.
6     Please bring us Juror No. 6.
7          THE CLERK:  Please raise your right hand.
8                    JUROR NO. 6,
9     called as a witness, being first duly sworn, was examined and
10     testified as follows:
11          THE WITNESS:  Yes.
12          THE CLERK:  Thank you.
13                    EXAMINATION
14     BY THE COURT:
15     **Q.**  Good afternoon, ma'am.
16     **A.**  Good afternoon.
17     **Q.**  You are Juror No. 6 from the trial of the United States
18     versus Gerald Johnson, JKB-16-363; is that correct?
19     **A.**  Yes.
20     **Q.**  Between November 20th, 2017 and January 25th, 2018, you
21     served as a juror in the trial of the United States versus
22     Gerald Johnson, et al., case number JKB-16-0363.  I was the
23     judge who presided during that trial.  Do you remember me?
24     **A.**  Yes, I do.
25     **Q.**  Okay.  We were in a different courtroom but same judge;

1    right?

2    **A.**    Yes.

3    **Q.**    Okay.  Also here with us today are attorneys who represent

4    the parties in this case.  First of all, Assistant U.S.

5    Attorney Martinez and Assistant U.S. Attorney Hoffman

6    represent the government.  Mr. Enzinna and Mr. O'Toole

7    represent Mr. Johnson.  Mr. Bussard represents Mr. Jones.

8    Ms. Wicks and Mr. Nieto represent Mr. McCants.  Do you

9    remember your service as a juror in this case?

10    **A.**    Yes, I do.

11    **Q.**    The trial lasted for many weeks.  During the trial some

12    concerns were raised, such as defendants passing notes,

13    looking at jurors, and having access to juror information

14    through the juror selection process known as voir dire.  The

15    Court addressed these concerns without pausing the trial.

16        Then on January 9, 2018, an event occurred, which caused

17    the trial to briefly pause.  One of your fellow jurors, in the

18    presence of at least some of the rest of the jurors and

19    alternates, expressed concern that persons, perhaps a

20    defendants' family members, might be taking pictures of the

21    jurors as they passed through the vestibule at the entrance of

22    the courtroom and the jury room.  We understand that juror may

23    have seen this as a significant event.  A few minutes later

24    you were interviewed by court staff about that event.

25        A day later, on January 10, 2018, I spoke to the jury in

1    the courtroom and said:  One or more jurors had a concern that

2    perhaps someone outside of the jury room, in the courtroom

3    vestibule or courtroom hallway had photographed or otherwise

4    captured the images of jurors.  This matter was investigated

5    after that report was received.  The investigation included

6    the examination of a relevant smart phone, camera-type device

7    in the possession of a relevant individual.  That

8    investigation revealed that there were no images, films,

9    videos of the sort that I have referred to captured on that

10   telephone.

11       Today, I have some questions for you about the events of

12   January 9, 2018.  Specifically, I need your assistance in

13   learning whether the events of that day impacted your ability

14   to continue to be a fair and impartial juror for the remainder

15   of the trial.

16           The lawyers I introduced earlier are not here to ask

17   you questions, only the Court will do that, only me, but the

18   lawyers are here to represent the interests of their clients

19   and to propose follow-up questions that the Court may or may

20   not ask in my discretion.  As you respond to my questions,

21   please be careful not to tell us about the jury's

22   deliberations on the defendants' guilt or innocence, or about

23   how you reached your verdict.  We don't want to hear anything

24   about that.

25       Do you remember this event on January 9?

1  **A.**  Yes, I do.

2  **Q.**  Did you see anyone engaged in any action that suggested

3  they were taking pictures of the jurors?

4  **A.**  No, I didn't.

5  **Q.**  Did you hear any juror make statements indicating his or

6  her belief that persons might be taking pictures of jurors,

7  and if so what do you remember hearing?

8  **A.**  Yes, I did.

9  **Q.**  Tell us about that?

10  **A.**  Pretty much were concerned about what might have been

11  happening.  And they felt kind of, I guess, concerned about it

12  and told everyone and was just like, you know, maybe we need

13  to bring this up to someone because this is what I saw and

14  it's concerning.

15  **Q.**  Okay.  So you kind of answered my next question, but I'm

16  going to ask it any way in case you want to add something to

17  it, do you recall which jurors raised concerns regarding

18  potential picture taking?

19  **A.**  Yes, I do.

20  **Q.**  Tell us what you remember about that?

21  **A.**  Do you mean --

22  **Q.**  Do you remember the identity of the person?  If not, I

23  don't want you to really say somebody's name, but maybe you

24  could describe them if you know like where they sat in the

25  jury box, like what juror number they were, or maybe you can

1  describe them by their gender or by their race or by their age

2  or anything like that?

3  **A.**  Okay.  I would say he's older, a male -- older.

4  **Q.**  That's fine.  I'm older too, that's just perfectly fine.

5  **A.**  Yes.  I don't remember the juror number, but I think -- I

6  don't really remember the number that he was.  But I don't

7  know if he stayed the whole time.  I think there was -- I

8  think he might have left early, I think, at some point.

9  **Q.**  Okay.  Do you remember his race or anything else about his

10  physical appearance?

11  **A.**  I believe he's Indian American.

12  **Q.**  Indian American, okay.  How would you describe his skin

13  complexion or color?

14  **A.**  Dark.

15  **Q.**  Okay.  Did anyone, including you, request -- let me

16  rephrase that.  Did anyone, including yourself, suggest these

17  concerns should be raised to the Court?

18  **A.**  I'm sorry, can you repeat it.

19  **Q.**  Did anyone, including yourself, suggest these concerns

20  should be reported to the Court?

21  **A.**  Yes.  We pretty much, you know, if that's happening

22  someone should know about it.  So I think he had reported that

23  happening.

24  **Q.**  He referring to the juror that we were just talking about

25  a minute ago?

1    **A.**  Yeah.

2    **Q.**  Okay.  And I've sort of already asked this, but again, it

3    might spark more memories of yours, so I'm going to ask again,

4    did you hear or participate in discussion among the jurors

5    about the possibility of picture taking, can you remember what

6    was said.  And I recognize you've already told us some things,

7    but is there anything else that comes to your mind?

8    **A.**  Only when we were like on our break, I think --

9    **Q.**  Little bit closer to the microphone so we can all hear?

10   **A.**  I think it was during the break, like afterwards I believe

11   he said I think someone was taking pictures of us.  I think we

12   need to mention this.  And at the time I think the person or

13   the coordinator was the one that talked to us, or I guess he

14   addressed it to.  But I don't remember --

15   **Q.**  You say "coordinator," you mean someone from court staff

16   or someone who's on the jury?

17   **A.**  The Court staff.

18   **Q.**  Okay.

19   **A.**  But I don't necessarily remember the actual conversation,

20   but I do remember after the break all of us going back into

21   the courtroom and then it was addressed.

22   **Q.**  In responding to the next questions, I'm going to ask --

23   I'm going to again ask you to draw a line between events that

24   occurred prior to the start of your deliberations and events

25   that happened after you began your deliberations.  By

1    deliberations, I mean that point in the trial when no more

2    evidence was presented, the lawyers have made their arguments

3    and I have read the jury instructions to you.  That's the

4    point when deliberations began.  And I don't want to hear

5    anything about that.  Just the matters that came before that.

6         So, all of your answers to these questions should be

7    limited to events that occurred and things that you thought or

8    felt before you began deliberations.  To reiterate, in your

9    answers to these questions, you should not tell us anything

10   about what happened, what was said, what you thought or what

11   you felt, after deliberations began.  Okay.

12        After any discussion about possible picture taking on

13   January 9 and 10, did you feel intimidated by anything that

14   had occurred?

15   **A.**  Well, naturally, I think we were all just kind of nervous

16   just being in that environment, but it didn't impact

17   anything.

18   **Q.**  Were you able to remain an impartial juror and were you

19   able to keep an open mind as the trial continued after that?

20   **A.**  Yes.

21   **Q.**  Do you believe the events of January 9 and January 10,

22   2018 left you unable to continue to serve as a fair and

23   impartial juror in the case?

24   **A.**  No.

25   **Q.**  Do you believe those events left you unable to fully

1    consider the evidence and arguments presented by both sides

2    with an open mind?

3    **A.**  No.

4    **Q.**  Now, the next thing that's going to happen is we're going

5    to -- I'm going to talk with the lawyers over this little

6    electronic device.  You're not going to be able to hear this

7    conversation.  We're going to turn on the noise maker so you

8    can't hear.  I'm sure you remember that from the trial.  So

9    for a few minutes we'll be having a private conversation that

10   you can't hear or participate in.  And then when that's

11   finished we'll put these devices down and talk to you a little

12   bit further.  So please just be a little bit patient with us

13   because it could take a few minutes, okay?

14   **A.**  Okay.

15           (Bench conference on the record.)

16           THE COURT:  Mr. Martinez, do you have any follow-up

17   questions?

18           MR. MARTINEZ:  No, Your Honor.  I don't.

19           THE COURT:  Mr. Enzinna, do you have any follow-up

20   questions.

21           MR. ENZINNA:  Well, Your Honor, I'm not sure it's a

22   follow-up question, but it was very difficult to hear her, but

23   I thought that she said after the verdict the jurors all

24   discussed the incident, did I mishear?

25           THE COURT:  No, she did not say that.

1          MR. ENZINNA:  Then I misheard.  As far as follow-up

2     questions, she said they were all kind of nervous after this

3     happened.  I think she should be asked, did you continue to be

4     nervous as the trial went on?  When did you stop being

5     nervous?

6          THE COURT:  Thank you, Mr. Enzinna.  Do you have any

7     other questions?

8          MR. ENZINNA:  That's all, Your Honor.

9          THE COURT:  Thank you.  I'm not going to ask that

10    question for reasons explained in response to similar requests

11    previously.  The witness/juror was quite candid in revealing

12    that the topic once broached gave rise to some nervousness,

13    that there was further interaction with court staff and with

14    the Court itself afterwards.  The discussion here in court

15    today has been shifted to the lingering effects of that,

16    whether there was an impact on her ability to be fair, open

17    minded and impartial.  Once again, this juror has answered

18    those questions affirmatively that she was able to continue to

19    so serve.  And she has answered again with emphasis, without

20    ambivalence, and without equivocation.

21          Accordingly, I believe that the questions as asked

22    fully and fairly raised the issue presented, the relevant

23    question that needed to be answered.  And this juror has

24    answered in such a way as to cause me to believe that her

25    response is a complete one and one from which the Court will

1    be able to make a well-informed determination as to whether or

2    not the government is able -- has been able to demonstrate

3    that she continued to function impartially and fairly as a

4    juror and with an open mind or was not able to.

5            Mr. Bussard, questions?

6            MR. BUSSARD:  No questions.  Thank you.

7            THE COURT:  Mr. Bussard, I didn't hear you.

8            MR. BUSSARD:  No questions.  Thank you.

9            THE COURT:  No questions from Mr. Bussard.

10           Ms. Wicks, any questions?

11           MR. NIETO:  No, Your Honor.

12           THE COURT:  Mr. Nieto handling this witness.  No

13    questions from Mr. Nieto on behalf of Mr. McCants.  Thank you.

14    We'll go back to the open record.

15           (The following proceedings were had in open court.)

16           THE COURT:  Thank you, Juror No. 6.  We are now

17    finished and you will be permitted to leave.  But first I want

18    to thank you for coming back these many years later to answer

19    these questions.  I applaud your citizenship and your service

20    as a juror and as a returner today.  Thank you very much for

21    being willing to do that.  You may now depart.  Take all of

22    your things with you so you don't inadvertently leave

23    something behind.  And you may leave the courthouse.  You are

24    finished here.  Thank you, ma'am.

25           THE WITNESS:  Thank you.

```
 1                    (Juror No. 7 entered the courtroom.)
 2               THE CLERK:  Raise your right hand please.
 3                            JUROR NO. 7,
 4    called as a witness, being first duly sworn, was examined and
 5    testified as follows:
 6               THE WITNESS:  Yes.
 7               THE CLERK:  Thank you.
 8               THE COURT:  Good afternoon, ma'am.
 9                            EXAMINATION
10    BY THE COURT:
11    A.   Hello.
12    Q.   You served as Juror No. 7 in the trial of the case of
13    United States versus Johnson, case number JKB-16-363; is that
14    correct?
15    A.   Yes, sir.
16    Q.   Between November 20, 2017 and January 25, 2018, you served
17    as a juror in the trial of the United States versus Gerald
18    Johnson, et al., case number JKB-16-0363.  I was the judge who
19    presided during that trial, perhaps you remember me?
20    A.   Yes.
21    Q.   Okay.  We're in a different courtroom now, but same judge;
22    right?
23    A.   Yes.
24    Q.   Okay.  Also here with us today are attorneys who represent
25    the parties in the case.  First, we have Assistant U.S.
```

1    Attorney Martinez who represents the government.  Assistant

2    U.S. Attorney Hoffman who also represents the government.  We

3    have Mr. Enzinna and Mr. O'Toole who represent Mr. Johnson.

4    We have Mr. Bussard who represents Mr. Jones.  Mr. Bussard is

5    all the way in the back right corner there.  And then

6    Ms. Wicks and Mr. Nieto who represent Mr. McCants, even a

7    little bit further to your right.

8         Do you remember your service as a juror in this case?

9    **A.**  Yes.

10   **Q.**  The trial lasted for many weeks.  During the trial some

11   concerns were raised, such as defendants passing notes,

12   looking at jurors, and having access to juror information

13   through the juror selection process known as voir dire.  The

14   Court addressed these concerns without pausing the trial.

15        Then on January 9, 2018, an event occurred which caused

16   the trial to briefly pause.  One of your fellow jurors, in the

17   presence of at least some of the rest of the jurors and

18   alternates, expressed concern that persons, perhaps a

19   defendants' family members, might be taking pictures of the

20   jurors as they passed through the vestibule at the entrance to

21   the courtroom and the jury room.  We understand that that

22   juror may have seen this as a significant event.  A few

23   minutes later you were interviewed by court staff about that

24   event.

25        A day later, on January 10, 2018, I spoke to the jury in

1    the courtroom and said:  One or more jurors had a concern that

2    perhaps someone outside of the jury room, in the courtroom

3    vestibule or courtroom hallway, had photographed or otherwise

4    captured the images of jurors.  This matter was investigated

5    after that report was received.  The investigation included

6    the examination of a relevant smart phone, camera-type device

7    in the possession of a relevant individual.  That

8    investigation revealed that there were no images, films,

9    videos of the sort that I have referred to captured on that

10   telephone.

11        Today, I have some questions for you about the events of

12   January 9, 2018.  Specifically, I need your assistance in

13   learning whether the events of that day impacted your ability

14   to continue to be a fair and impartial juror for the remainder

15   of that trial.

16   **A.**  No, sir.

17   **Q.**  I understand your answer, but I have a little bit more to

18   ask you, so bear with me, okay?  The lawyers I introduced

19   earlier are not here to ask you questions, only the Court will

20   do that, only me.  But the lawyers are here to represent the

21   interests of their clients and to propose follow-up questions

22   that the Court may or may not ask in my discretion.  As you

23   respond to my questions, please be careful not to tell us

24   about the jury's deliberations on the defendants' guilt or

25   innocence, or about how you reached your verdict.

1       Do you remember this event on January 9th?

2  **A.**  I remember the gentleman who claimed he saw, he thought,

3  somebody taking pictures.

4  **Q.**  Okay.  Did you see anyone engaged in any action that

5  suggested that they were taking pictures of the jurors?

6  **A.**  No.

7  **Q.**  Did you hear any juror make statements indicating his or

8  her belief that persons might be taking pictures of jurors and

9  if so, what do you remember hearing?

10 **A.**  I just remember the gentleman who was dismissed being very

11 concerned and, you know, just a little scared.

12 **Q.**  Do you recall which jurors raised the questions regarding

13 the potential picture taking?  So you've referred to this

14 gentleman, was there anybody else?

15 **A.**  I don't really recall.

16 **Q.**  Did anyone, including yourself, suggest these concerns

17 should be reported to the Court?

18 **A.**  I did not, but there may have been someone else in the

19 jury room who suggested that.

20 **Q.**  Okay.  Did you otherwise hear or participate in discussion

21 among the jurors about the possibility of picture taking, and

22 can you remember just in general whatever was said, if you can

23 remember?

24 **A.**  I can't.  I'm sorry.

25 **Q.**  Okay.  In responding to the next questions, I am going to

1    again ask you to draw a line between events that occurred

2    prior to the start of deliberations and events that happened

3    after you began deliberations.  By deliberations, I mean that

4    point in the trial when no more evidence was presented, the

5    lawyers had made their arguments, and I had read the jury

6    instructions to you.  That's the point when deliberations

7    began.  I don't want to hear anything about that.  Just

8    matters that came before that.

9        So, all of your answers to these questions should be

10    limited to events that occurred, and things that you thought

11    or felt before you began deliberations.  To reiterate, in your

12    answers to these questions you should not tell us anything

13    about what happened, what was said, what you thought or what

14    you felt after deliberations began.

15            First question, after-any discussion about possible

16    picture taking on January 9 and 10, did you feel intimidated

17    by anything that had occurred?

18    **A.**  No, sir.

19    **Q.**  Were you able to remain an impartial juror and were you

20    able to keep an open mind as the trial continued after that?

21    **A.**  Yes, sir.

22    **Q.**  Do you believe the events of January 9 and January 10,

23    2018, left you unable to serve as a fair and impartial juror

24    in the case?

25    **A.**  No, sir.

1    **Q.**  Do you believe those events left you unable to fully

2    consider the evidence and arguments presented by both sides

3    with an open mind?

4    **A.**  It did not leave me to feel I could not have an open

5    mind.

6    **Q.**  Should I restate the question?  Would that be helpful to

7    you?

8    **A.**  Yes, please.

9    **Q.**  Did the events of January 9 and January 10 leave you

10   unable to fully consider the evidence and arguments presented

11   by both sides with an open mind?

12   **A.**  No, sir.

13   **Q.**  The next thing that's going to happen is that we're going

14   to take a brief pause where I'm going to talk to the lawyers

15   through this electronic device.  You're not going to be able

16   to hear that part of the conversation, instead we're going to

17   turn on the little noise maker in the courtroom so that you

18   can't hear.  You remember that from the trial.  We'll turn

19   that on.  I'll talk to the lawyers in private.  And then I'll

20   have more to say to you when I've completed that.  So just, if

21   you would, be patient with us a few minutes while we do that.

22   Okay?

23   **A.**  Yes, sir.

24            (Bench conference on the record.)

25            THE COURT:  Mr. Martinez, do you have any follow-up

```
 1    questions?

 2              MR. MARTINEZ:  No.

 3              THE COURT:  Mr. Enzinna, do you have any follow-up

 4    questions?

 5              MR. ENZINNA:  No, Your Honor.

 6              THE COURT:  Mr. Bussard, do you have any follow-up

 7    questions?

 8              MR. BUSSARD:  No, Your Honor.

 9              THE COURT:  Ms. Wicks or Mr. Nieto, do you have any

10    follow-up questions?

11              MR. NIETO:  No, Your Honor.

12              THE COURT:  Thank you.

13              (The following proceedings were had in open court.)

14              THE COURT:  Juror No. 7, we are finished.  Thank you

15    so much for returning in response to your summons.  Thank you

16    for your good citizenship, first in responding to the juror

17    summons in the first place and for participating in the

18    earlier trial and then for returning when we asked you to on

19    this occasion.  We are grateful.  You are a good citizen.

20    Please gather up all of your things.  The Court clerk will

21    take you to the door.  You may depart and leave the

22    courthouse.  You are finished.

23              THE WITNESS:  Thank you.

24              THE COURT:  Thank you, ma'am.

25              (Juror No. 8 entered the courtroom.)
```

```
 1                          JUROR NO. 8,

 2   called as a witness, being first duly sworn, was examined and

 3   testified as follows:

 4             THE WITNESS:  I do.

 5             THE CLERK:  Thank you.  You may put your hand

 6   down.

 7             THE COURT:  Good afternoon.

 8             THE WITNESS:  Good afternoon.

 9                           EXAMINATION

10   BY THE COURT:

11   Q.  You were and are Juror No. 8 from the trial of the United

12   States versus Johnson a few years ago; is that correct?

13   A.  Yes.

14   Q.  Between November 20, 2017 and January 25, 2018, you served

15   as a juror in the trial of the United States versus Gerald

16   Johnson, et al., case number JKB-16-0363.  I was the judge who

17   presided during that trial, perhaps you remember me?

18   A.  Uh-huh.

19   Q.  Same judge, different courtroom?

20   A.  (No verbal response.)

21   Q.  Okay.  Also here with us today are attorneys who represent

22   the parties in this case.  First for the Government, Assistant

23   U.S. Attorney Martinez and Assistant U.S. Attorney Hoffman.

24   A.  Uh-huh.

25   Q.  Also here on behalf of Mr. Johnson, Mr. Enzinna and Mr.
```

1    O'Toole.  On behalf of Mr. Jones, Mr. Bussard is here.  And

2    representing Mr. McCants, Ms. Wicks and Mr. Nieto are here.

3        Do you remember your service as a juror in that case?

4    **A.**  Yes.

5    **Q.**  The trial lasted for many weeks.  During the trial some

6    concerns were raised, such as defendants passing notes,

7    looking at jurors, and having access to juror information

8    through the juror selection process known as voir dire.  The

9    Court addressed these concerns without pausing the trial.

10        Then on November 9 -- excuse me, on January 9, 2018, an

11    event occurred, which caused the trial to briefly pause.  One

12    of your fellow jurors, in the presence of at least some of the

13    rest of the jurors and alternates, expressed concern that

14    persons, perhaps a defendants' family members, might be taking

15    pictures of the jurors as they passed through the vestibule at

16    the entrance to the courtroom and the jury room.  We

17    understand that juror may have seen this as a significant

18    event.  A few minutes later you were interviewed by court

19    staff about that event.

20        A day later, on January 10, 2018, I spoke to the jury in

21    the courtroom and said:  One or more jurors had a concern that

22    perhaps someone outside of the jury room, in the courtroom

23    vestibule or courtroom hallway, had photographed or otherwise

24    captured the images of jurors.  This matter was investigated

25    after that report was received.  The investigation included

1    the examination of a relevant smart phone, camera-type device,

2    in the possession of a relevant individual.  That

3    investigation revealed that there were no images, films,

4    videos of the sort that I have referred to captured on that

5    telephone.

6        Today, I have some questions for you about the events of

7    January 9, 2018.  Specifically --

8    **A.**  Okay.

9    **Q.**  -- I need your assistance in learning whether the events

10   of that day impacted your ability to continue to be a fair and

11   impartial juror for the remainder of the trial.

12       The lawyers I introduced earlier are not here to ask you

13   questions, only the Court will do that, only me.  But the

14   lawyers are here to represent the interests of their clients

15   and to propose follow-up questions that the Court may or may

16   not ask you in its discretion.  As you respond to my

17   questions, please be careful not to tell us about the jury's

18   deliberations on the defendants' guilt or innocence, or about

19   how you reached your verdict.  We don't want to know about

20   that.

21   **A.**  Okay.

22   **Q.**  Do you remember the event on January 9th?

23   **A.**  I do.

24   **Q.**  Did you see anyone engaged in any action that suggested

25   that they were taking pictures of the jurors?

1    **A.**  I did not.

2    **Q.**  Did you hear any jurors make statements indicating his or

3    her belief that persons might be taking pictures of the

4    jurors, and if so, what do you remember hearing?

5    **A.**  Honestly, I don't recall.  I know that that happened.  I

6    don't remember hearing that directly.  I remember hearing that

7    third-hand.

8    **Q.**  And when you say third hand, perhaps from other jurors or

9    alternates?

10   **A.**  Yes.

11   **Q.**  Is that a fair statement?

12   **A.**  Yes.

13   **Q.**  So let me be more precise and ask you exactly, do you

14   recall which jurors raised concerns regarding potential

15   picture taking?

16   **A.**  I don't.

17   **Q.**  Did anyone, including yourself, suggest that these

18   concerns should be reported to the Court?

19   **A.**  There -- in that third hand conversation, somebody said

20   something about it, yes.

21   **Q.**  Okay.  Did you hear or participate in discussion among the

22   jurors about the possibility of the picture taking, and if

23   so -- and I realize I'm asking you again and again, but still,

24   can you remember what was said?  And I don't want to put any

25   words in your mouth and your memories are what they are, but

1    whatever they are we would like to know what's in your

2    memory?

3    **A.**    I remember that somebody said one of the other jurors, and

4    I believe it was one of the gentleman, thought he saw someone

5    taking pictures and was concerned, and it was going to be

6    brought to Camille's attention, your attention.

7    **Q.**    And by Camille are you referring to Camille Powell, who

8    was serving as the courtroom deputy clerk during the trial?

9    **A.**    Yes.

10    **Q.**    Okay.  In responding to the next questions, I'm going to

11    again ask you to draw a line between events that occurred

12    prior to the start of your deliberations and events that

13    happened after you began deliberations.  By deliberations, I

14    mean that point in the trial when no more evidence was

15    presented, the lawyers had made their arguments, and I had

16    read the jury instructions to you.  That's the point at which

17    deliberations began.  And I don't want to hear anything about

18    that.  Just the matters that came before that?

19    **A.**    Okay.

20    **Q.**    So all of your answers to these questions should be

21    limited to events that occurred, and things that you thought

22    or felt before you began deliberations.  To reiterate, in your

23    answers to these questions, you should not tell us anything

24    about what happened, what was said, what you thought or what

25    you felt after deliberations began?

1    **A.**  Okay.

2    **Q.**  After any discussion about possible picture taking on

3    January 9 or 10, did you feel intimidated by anything that had

4    occurred?

5    **A.**  No.

6    **Q.**  Were you able to remain an impartial juror and were you

7    able to keep an open mind as the trial continued after that?

8    **A.**  Yes.

9    **Q.**  Do you believe the events of January 9 and January 10,

10   2018, left you unable to continue to serve as a fair and

11   impartial juror in the case?

12   **A.**  No.

13   **Q.**  Do you believe that those events left you unable to fully

14   consider the evidence and arguments presented by both sides

15   with an open mind?

16   **A.**  No.

17   **Q.**  The next part of this process is going to occur privately,

18   with me talking on this electronic device to just the lawyers.

19   You won't be able to hear what's going on, instead you're

20   going to hear the courtroom noise maker which you sometimes

21   heard during the trial.  And then when I'm finished talking

22   with the lawyers, I'll have more to talk to you about.  So

23   please be patient with us for just a few minutes while I have

24   this private conversation outside of your hearing; is that

25   okay?

1  **A.**  Uh-huh.

2              (Bench conference on the record.)

3              THE COURT:  Mr. Martinez, do you have any follow-up

4  questions?

5              MR. MARTINEZ:  No, I don't.

6              THE COURT:  Mr. Enzinna, do you have any follow-up

7  questions?

8              MR. ENZINNA:  No, Your Honor.  But I would like to

9  note for the record to the extent the juror's affect is

10  relevant, I just want to note the lengthy pause between the

11  question and the answer on the question whether or not this

12  juror felt intimidated.

13              THE COURT:  I concur.  She did pause and appeared to

14  give that question serious reflection before she answered.

15              Any other questions, Mr. Enzinna?

16              MR. ENZINNA:  No, Your Honor.

17              THE COURT:  Mr. Bussard, do you have any follow-up

18  questions.

19              MR. BUSSARD:  No, Your Honor.

20              THE COURT:  Ms. Wicks or Mr. Nieto, do you have any

21  follow-up questions?

22              MR. NIETO:  No, Your Honor.

23              THE COURT:  Thank you.  We'll go back to the open

24  channel.

25              (The following proceedings were had in open court.)

1          THE COURT:  Thank you, Juror No. 8.  We are now

2    finished.  We appreciate your returning to court in response

3    to this additional summons and to coming in and answering

4    questions.  Jury service is a burden.  There's no question

5    about it.  But we appreciate your willingness to shoulder that

6    burden.  You are a good citizen.  Thank you very much.  You

7    may gather up all of your things.  The courtroom clerk will

8    take you out and you are free to leave the courthouse.  Thank

9    you, ma'am.

10         (Juror No. 9 entered the courtroom.)

11                       JUROR NO. 9,

12   called as a witness, being first duly sworn, was examined and

13   testified as follows:

14         THE WITNESS:  Yes.

15         THE CLERK:  Thank you.  You can put your hand

16   down.

17                        EXAMINATION

18   BY THE COURT:

19   **Q.**  Good afternoon, sir.  You are Juror No. 9; is that

20   correct?

21   **A.**  Yes.

22   **Q.**  Between November 20, 2017 and January 25, 2018, you served

23   as a juror in the trial of the United States versus Gerald

24   Johnson et al., case number JKB-16-0363.  I was the judge who

25   presided during that trial, although it happened in a

1    different courtroom, but do you remember me?

2    **A.**   Yes.

3    **Q.**   Okay.  So same judge but different courtroom?

4    **A.**   Right.  Yeah, I remember.

5    **Q.**   Okay.  Also there -- also here with us today are attorneys

6    who represent the parties in the case, Assistant U.S. Attorney

7    Martinez and Assistant U.S. Attorney Hoffman, representing the

8    government.  Mr. Enzinna and Mr. O'Toole, representing Mr.

9    Johnson.  Mr. Bussard, who's further to your right,

10   representing Mr. Jones.  And then all the way to your right,

11   Ms. Wicks and Mr. Nieto representing Mr. McCants.

12       Do you remember your service as a juror in this case?

13   **A.**   Yes, I don't remember every detail.  But yes, I remember I

14   was a juror.

15   **Q.**   The trial lasted for many weeks.  During the trial some

16   concerns were raised such as the defendants passing notes,

17   looking at jurors, and having access to juror information

18   through the juror selection process known as voir dire.  The

19   Court addressed these concerns without pausing the trial.

20          Then on January 9, 2018, an event occurred, which

21   caused the trial to briefly pause.  One of your fellow jurors,

22   in the presence of at least some of the rest of the jurors and

23   the alternates, expressed concern that persons, perhaps a

24   defendant's family members, might be taking pictures of the

25   jurors as they passed through the vestibule at the entrance to

1    the courtroom and the jury room.  We understand that juror may

2    have seen this as a significant event.  A few minutes later

3    you were interviewed by court staff about that event.

4         A day later, on January 10, 2018, I spoke to jury in

5    the courtroom and said:  One or more jurors had a concern that

6    perhaps someone outside of the jury room, in the courtroom

7    vestibule or courtroom hallway, had photographed or otherwise

8    captured the images of jurors.  This matter was investigated

9    after that report was received.  The investigation included

10   the examination of a relevant smart phone, camera-type device,

11   in the possession of a relevant individual.  That

12   investigation revealed that there were no images, films,

13   videos of the sort that I have referred to, captured on that

14   telephone.

15       Today, I have some questions for you about the events of

16   January 9, 2018.  Specifically, I need your assistance in

17   learning whether the events of that day impacted your ability

18   to continue to be a fair and impartial juror for the remainder

19   of the trial?

20   **A.**  No.  No, it did not.

21   **Q.**  Okay.  Well, there's a little bit more to my question.

22   **A.**  Oh, sorry.

23   **Q.**  That's fine.  Thank you.  The lawyers I introduced earlier

24   are not here to ask you questions.  Only the court will do

25   that, me.

**A.** Okay.

**Q.** But the lawyers are here to represent the interests of their clients and propose follow-up questions that the Court may or may not ask you in its discretion. As you respond to my questions, please be careful not to tell us about the jury's deliberations on the defendants's guilt or innocence, or about how you reached your verdict. We don't want to know about that. Do you remember this event on January 9?

**A.** Yes.

**Q.** Did you see anyone engaged in any action that suggested they were taking pictures of the jurors?

**A.** No.

**Q.** Did you hear any juror make statements indicating his or her belief that persons might be taking pictures of the jurors, and if so what do you remember hearing?

**A.** Yes, I do remember. They said that they suspected it. And I guess they were worried about it. And then I didn't see anything, but and then we got called into the courtroom and they questioned us individually about it. But -- yeah, that's it.

**Q.** Okay. Do you recall which jurors raised concerns regarding potential picture taking?

**A.** Yes, I remember two.

**Q.** Can you describe them?

**A.** Yes, one was an African-American female, she had braids in

1   her hair, dark skin.  And one I believe he was Indian.  And I

2   believe he left.  Yeah, he left the jury early.  He was

3   Indian.  Kind of heavy set.

4   **Q.**  Did anyone, including yourself, suggest that these

5   concerns be reported to the Court?

6   **A.**  Not that -- no, not that I remember.  No.

7   **Q.**  Do you -- did you hear or participate in discussion among

8   the jurors about the possibility of picture taking and can you

9   remember anything else that was said?  I understand that

10  you've kind of already answered this question, but I'm going

11  to ask it again, just because I want to make sure that we've

12  got everything you remember?

13  **A.**  Right.  There was no -- I remember them talking about it.

14  And then I guess they suspected something.  And they -- it

15  wasn't nothing concrete, but they had suspicions.  And then

16  after that I didn't discuss it or know anything about it until

17  we got questioned, brought into the courtroom one by one and

18  we were questioned about it.  And I didn't know anything about

19  it really.  I didn't suspect anything or -- yeah.

20  **Q.**  In responding to the next questions.  I am going to again

21  ask you to draw a line between events that occurred prior to

22  the start of your deliberations and events that happened after

23  you began deliberations.  By deliberations, I mean that point

24  in the trial when no more evidence was presented, the lawyers

25  had made their arguments, and I had read the jury instructions

1   to you.  That's the point when deliberations began.  And I

2   don't want to hear anything about that?

3   **A.**  Okay.

4   **Q.**  Just matters that came before that.  So, all of your

5   answers to these questions should be limited to events that

6   occurred and things that you thought or felt before you began

7   deliberations.  To reiterate, in your answers to these

8   questions you should not tell us anything about what happened,

9   what was said, what you thought, what you felt after

10  deliberations began?

11  **A.**  Okay.

12  **Q.**  Are we good?

13  **A.**  Yes.

14  **Q.**  Okay.  After any discussion about possible picture taking

15  on January 9 and 10, did you feel intimidated by anything that

16  had occurred?

17  **A.**  No.

18  **Q.**  Were you able to remain an impartial juror and were you

19  able to keep an open mind as the trial continued after that?

20  **A.**  Yes.

21  **Q.**  Do you believe the events of January 9 and January 10 left

22  you know able to continue to serve as a fair and impartial

23  juror in the case?

24  **A.**  No.

25  **Q.**  Do you believe that those events left you unable to fully

1    consider the evidence and arguments presented by both sides

2    with an open mind?

3    **A.**  No.

4    **Q.**  The next part of this process is going to occur outside

5    your hearing.  I'm going to talk to the lawyers over this

6    electronic device.  The courtroom noise machine's going to be

7    turned on so you can't hear anything, white noise, you

8    remember that from the trial.

9    **A.**  Yes.

10   **Q.**  We'll do that for a little bit while I talk to the

11   lawyers.  And then when I'm finished I'll talk to you further.

12   It might take a few minutes, so I'm going to ask for a little

13   bit patience from you; is that okay?

14   **A.**  Okay.

15            THE COURT:  Okay.  So let's go on to the courtroom

16   channel, the private channel.

17            (Bench conference on the record.)

18            THE COURT:  Mr. Martinez, do you have any follow-up

19   questions?

20            MR. MARTINEZ:  No.

21            THE COURT:  Mr. Enzinna, do you?

22            MR. ENZINNA:  Yes, Your Honor.  He mentioned that

23   there were two jurors who spoke about the picture taking, one

24   in addition to Juror No. 4.  And I think he should be asked

25   more details about who that person was and what that person

1    said.

2            THE COURT:  All right.  I'm not certain that it's

3    essential, but he did give some description, but I'll take

4    another stab at it.

5            (The following proceedings were had in open court.)

6    **BY THE COURT:**

7    **Q.**  You indicated in one of your answers that it seemed as

8    though two jurors talked about the possibility of picture

9    taking.  One you described as I think you might have said an

10   Indian-American male?

11   **A.**  Yes.

12   **Q.**  And then you may have described another person, a female,

13   who may have been African-American and may have had braids.

14   First of all, is that a fair memory on my part of what your

15   answer was?

16   **A.**  Yes.

17   **Q.**  Okay.  What if anything can you tell us more about the

18   second person, more in terms of anything that you might

19   remember about what she said.  Just take a second, pause, and

20   see if your memory comes up with anything else she might have

21   said.

22   **A.**  I don't remember the exact words.  I think she was a

23   little -- she said -- she may have been a little worried.  I

24   guess she was questioning what was going on.  Other than that,

25   yeah, I don't know any exact words.  I think she just had

1    questions about it and suspicions.  But -- and yeah, that's --

2    that's pretty much all I remember.  I don't -- yeah.

3              THE COURT:  Thank you.  We'll go back on to the

4    private channel.

5              (Bench conference on the record.)

6              THE COURT:  Mr. Enzinna, do you have any additional

7    follow-up questions?

8              MR. ENZINNA:  Yes, Your Honor.  I think it would be

9    useful if he were questioned further to the extent he can

10   provide anymore identification of that person.

11             THE COURT:  Okay.  I'll try.

12             (The following proceedings were had in open court.)

13   **BY THE COURT:**

14   **Q.**  And this second person, the African-American female with

15   the braids, do you remember where she was sitting in the jury

16   box during the course of the trial?

17   **A.**  I believe -- she was close to me.

18   **Q.**  Let's re-orient.  You were seated in the back row?

19   **A.**  Yeah, okay.  Yeah, I was in the back row.

20   **Q.**  And was there anyone on your left?

21   **A.**  No.

22   **Q.**  You had the seat that had the little shelf beside it?

23   **A.**  Right.

24   **Q.**  Okay.

25   **A.**  And I think she was in front of me.

1   **Q.**  In front of you, okay.  Directly in front of you?

2   **A.**  Well, like to the left a little or -- yeah, like to --

3   yeah, directly in front of me.

4   **Q.**  Directly in front of you, seated right in front of you?

5   **A.**  Yes.

6   **Q.**  Anything else you remember like about her age, her

7   physical shape and, you know, was she a large person, a small

8   person, an average-sized person?

9   **A.**  She was shorter and I guess she around -- she was a little

10  younger than me.  So I'm 38, so she might have been 34, 35.

11  Had darker skin and -- I don't -- I guess about medium size

12  or --

13  **Q.**  Medium size.

14  **A.**  Yes.

15         THE COURT:  Okay.  Thank you.  We're going to go

16  back on our little private chat.

17         (Bench conference on the record.)

18         THE COURT:  Mr. Enzinna, do you have any other

19  questions?

20         MR. ENZINNA:  No, Your Honor.  Thank you.

21         THE COURT:  Mr. Bussard, do you have any questions?

22         MR. BUSSARD:  No, thank you.

23         THE COURT:  Ms. Wicks or Mr. Nieto, any questions?

24         MR. NIETO:  No, Your Honor.

25         THE COURT:  Thank you.  We're back on the Court

1    channel.

2           (The following proceedings were had in open court.)

3           THE COURT:  Thank you, Juror No. 9.  We are now

4    finished.  And you are free to leave.  Please gather up all

5    your belongings so you don't leave anything here.  Thank you

6    so much for your juror service and for returning in response

7    to this summons as well.  You're a good citizen.  We

8    appreciate the seriousness with which you are taken all this.

9    You may depart.  The courtroom clerk will see you out and you

10   may leave the courthouse.  Thank you, sir.

11          (Juror No. 10 entered the courtroom.)

12          THE CLERK:  Raise your right hand for me.

13                      JUROR NO. 10,

14   called as a witness, being first duly sworn, was examined and

15   testified as follows:

16          THE WITNESS:  I do.

17          THE CLERK:  Thank you.

18                      EXAMINATION

19   BY THE COURT:

20   Q.  Good afternoon.

21   A.  Good afternoon.

22   Q.  You are Juror No. 10; is that correct?

23   A.  Yes.

24   Q.  Between November 20, 2017 and January 25, 2018, you served

25   as a juror in the trial of the United States versus Gerald

1    Johnson, et al., case number JKB-16-0363.  I was the judge who

2    presided during that trial, perhaps you remember me?

3    **A.**  I do.

4    **Q.**  Same judge, different courtroom though?

5    **A.**  Yes.

6    **Q.**  Do you agree with that?

7    **A.**  Yes.

8    **Q.**  Now, also here with us today are attorneys who represent

9    the parties in this case starting the Assistant U.S. Attorney

10   Martinez and Assistant U.S. Attorney Hoffman who represent the

11   government.  Mr. Enzinna and Mr. O'Toole who represent Mr.

12   Johnson.  Mr. Bussard who represents Mr. Jones.  Ms. Wicks and

13   Mr. Nieto who represent Mr. McCants.

14       Do you remember your service as a juror in that case?

15   **A.**  Yes.

16   **Q.**  The trial lasted for many weeks, during the trial some

17   concerns were raised, such as defendants passing notes,

18   looking at jurors, and having access to juror information

19   through the jury selection process known as voir dire.  The

20   Court addressed these concerns without pausing the trial.

21           Then on January 9, 2018, an event occurred which

22   caused the trial to briefly pause.  One of your fellow jurors,

23   in the presence of at least some of the rest of the jurors and

24   alternates, expressed concern that persons, perhaps a

25   defendant's family members, might be taking pictures of the

1    jurors as they passed through the vestibule at the entrance to

2    the courtroom and the jury room.  We understand that juror may

3    have seen this as a significant event.  A few minutes later

4    you were interviewed by court staff about that event.

5         A day later, on January 10, 2018, I spoke to the jury in

6    the courtroom and said:  One or more jurors had a concern that

7    perhaps someone outside of the jury room, in the courtroom

8    vestibule or courtroom hallway, had photographed or otherwise

9    captured the images of jurors.  This matter was investigated

10   after that report was received.  The investigation included

11   the examination of a relevant smart phone, camera-type device

12   in the possession of a relevant individual.  That

13   investigation revealed that there were no images, films,

14   videos of the sort that I have referred to captured on that

15   telephone.

16        Today I have some questions for you about the events of

17   January 9, 2018.  Specifically, I need your assistance in

18   learning whether the events of that day impacted your ability

19   to continue to be a fair and impartial juror for the remainder

20   of the trial.

21        The lawyers I introduced earlier are not here to ask you

22   questions, only the Court will do that, me.  But the lawyers

23   are here to represent the interests of their clients and to

24   propose follow-up questions that the Court may or may not ask

25   you in its discretion.  As you respond to my questions, please

1    be careful not to tell us about the jury's deliberations on

2    the defendants' guilt or innocence or about how you reached

3    your verdict.

4        Do you remember this event on January 9?

5    **A.**  Yes.

6    **Q.**  Did you see anyone engaged in any action that suggested

7    that they were taking pictures of the jurors?

8    **A.**  No.

9    **Q.**  Did you hear any juror make statements indicating his or

10   her belief that persons might be taking pictures of jurors,

11   and if so, what do you remember hearing?

12   **A.**  I do remember hearing discussions, but I don't remember

13   any specifics.  And I don't even remember which juror started

14   the conversation.

15   **Q.**  That was exactly where I was going with my next question

16   is, do you recall which jurors raised concerns regarding

17   potential picture taking?

18   **A.**  No, sir.

19   **Q.**  Did anyone, including yourself, suggest that these

20   concerns should be reported to the Court?

21   **A.**  Could you say that again.

22   **Q.**  Did anyone, including yourself, suggest that these

23   concerns should be reported to the Court?

24   **A.**  I don't remember.

25   **Q.**  Did you hear or participate in discussion among the jurors

1  about the possibility of picture taking?  And if so, can you

2  remember what was said, what was being said?

3  **A.**  No.

4  **Q.**  Who was saying what?

5  **A.**  No, I -- no.

6  **Q.**  Okay.  In responding to the next questions, I'm going to

7  again ask you to draw a line between events that occurred

8  prior to the start of your deliberations and events that

9  happened after you began deliberating.  By deliberations, I

10  mean that point in the trial when no more evidence was

11  presented, the lawyers had made their arguments, and I had

12  read the jury instructions to you.  That's the point when

13  deliberation began.  And I don't want to hear anything about

14  that.  Just matters that came before that.

15      So, all of your answers to these questions should be

16  limited to events that occurred and things that you thought or

17  felt before you began deliberations.  To reiterate, in your

18  answers to these questions, you should not tell us anything

19  about what happened, what was said, what you thought or what

20  you felt after deliberations began.

21      After any discussion about possible picture taking on

22  January 9 and 10, did you feel intimidated by anything that

23  had occurred?

24  **A.**  No.

25  **Q.**  Were you able to remain an impartial juror and were you

1    able to keep an open mind as the trial continued after that?

2    **A.**  Yes.

3    **Q.**  Do you believe the events of January 9 and January 10,

4    2018, left you unable to continue to serve as a fair and

5    impartial juror in the case?

6    **A.**  No.

7    **Q.**  Do you believe those events on January 9 and January 10,

8    left you unable to fully consider the evidence and arguments

9    presented by both sides with an open mind?

10   **A.**  No.

11   **Q.**  The next part of this process will occur by me talking to

12   the lawyers privately over this little electronic device.  And

13   you won't be able to hear that because we're going to turn on

14   the noise maker machine in the courtroom, which I'm sure you

15   remember from the trial, to sort of blank you out, so you

16   can't hear.  I'll talk with them.  When I'm finished talking

17   with them then I'll speak with you further.  This might take a

18   couple of minutes, so please be patient with us.

19          (Bench conference on the record.)

20          THE COURT:  Mr. Martinez, do you have any follow-up

21   question?

22          MR. MARTINEZ:  No, Your Honor.

23          THE COURT:  Mr. Enzinna, do you?

24          MR. ENZINNA:  No, Your Honor.

25          THE COURT:  I didn't hear you, Mr. Enzinna.

1            MR. ENZINNA:  No, Your Honor.

2            THE COURT:  Thank you, sir.

3            Mr. Bussard, do you have any follow-up questions?

4            MR. BUSSARD:  No, Your Honor.

5            THE COURT:  Ms. Wicks or Mr. Nieto, do you have any

6    follow-up questions?

7            MR. NIETO:  No, Your Honor.

8            THE COURT:  Thank you.

9            (The following proceedings were had in open court.)

10           THE COURT:  Sir, we have finished this process.  We

11   have no further questions for you.  I want to thank you for

12   returning to court in response to our summons.  I want to

13   thank you again for your juror service in this case.  Jury

14   service is a big burden.  And it's one of the more burdensome

15   duties of citizenship, but we need jurors to come forward and

16   to be willing to serve.  So once again, on behalf of the

17   Court, I thank you for your service.  You are excused.  You

18   may depart the courthouse.  The courtroom clerk will see you

19   out of the courtroom.  Please make sure you pick up all of

20   your things, so you don't accidentally leave something here

21   and you may depart.

22           MS. WICKS:  Your Honor, can we take a comfort break

23   before the next juror?

24           THE COURT:  Yes.  One moment, Ms. Smith.  Let's

25   stand by.

1              Five minutes, Ms. Wicks?

2              MS. WICKS:   Thank you.

3              THE COURT:  Five minutes.

4              (A recess was taken.)

5              THE COURT:  All right.  We're ready for Juror No.

6      11.

7                              JUROR NO. 11,

8      called as a witness, being first duly sworn, was examined and

9      testified as follows:

10             THE WITNESS:  I do.

11             THE CLERK:  Thank you.  You may put your hand

12     down.

13                              EXAMINATION

14     BY THE COURT:

15     **Q.**  Good afternoon.

16     **A.**  Good afternoon, Your Honor.

17     **Q.**  You are Juror No. 11; is that right?

18     **A.**  That's right.

19     **Q.**  I see a little wire.

20     **A.**  It's my insulin pump.

21     **Q.**  Just wanted to make sure you didn't have a phone.

22     **A.**  No, sir.  I can pull it out if you like.

23     **Q.**  Not the slightest concern.  I just wanted to make sure

24     we're not recording anything.  How are you feeling this

25     afternoon, are you okay?

**A.**  Little stressed, little frustrated -- not frustrated, but inquisitive, but otherwise okay.

**Q.**  Is your sugar okay, that's what I --

**A.**  It's fine.  Yes, sir, I'm sorry.

**Q.**  You're firing on all cylinders?

**A.**  Yes, sir, I am.  My sugar was 163 before I came up here.

**Q.**  Okay.  So between November 20, 2017 and January 25, 2018, you served as a juror in the trial of United States versus Gerald Johnson, et al., case number JKB-16-0363.  I was the judge who presided during that trial, perhaps you remember me or perhaps you don't?

**A.**  Yes, sir, I do.

**Q.**  Okay.  So same judge but a different courtroom?

**A.**  Yes, sir.

**Q.**  Okay.  Also with us here today are attorneys who represent the parties in the case.  Starting with Assistant U.S. Attorney Martinez and Assistant U.S. Attorney Hoffman representing the government.  And then Mr. Enzinna and Mr. O'Toole representing Mr. Johnson.  Mr. Bussard representing Mr. Jones.  And Ms. Wicks and Mr. Nieto representing Mr. McCants.  Do you remember your service as a juror in this case?

**A.**  Yes, sir, I do.

**Q.**  The trial lasted for many weeks.  During the trial some concerns were raised such as defendants passing notes, looking

1    at jurors, and having access to juror information through the

2    juror selection process known as voir dire.  The Court

3    addressed these concerns without pausing the trial.

4         Then, on January 9, 2018, an event occurred which caused

5    the trial the briefly pause.  One of your fellow jurors, in

6    the presence of at least some of the rest of the jurors and

7    alternates, expressed concerns that persons, perhaps

8    defendant's family members might be taking pictures of the

9    jurors as they passed through the vestibule at the entrance to

10   the courtroom and the jury room.  We understand that juror may

11   have seen this as a significant event.  A few minutes later

12   you were interviewed by court staff about that event.

13        A day later, on January 10, 2018, I spoke to the jury in

14   the courtroom and said:  One or more jurors had a concern that

15   perhaps someone outside of the jury room, in the courtroom

16   vestibule or courtroom hallway, had photographed or otherwise

17   captured the images of jurors.  This matter was investigated

18   after that report was received, the investigation included the

19   examination of a relevant smart phone, camera-type device in

20   the possession of a relevant individual.  That investigation

21   revealed that there were no images, films, videos of the sort

22   that I have referred to captured on that telephone.

23        Today, I have some questions for you --

24   **A.**  Yes, sir.

25   **Q.**  -- about the events of January 9, 2018.  Specifically, I

1    need your assistance in learning whether the events of that

2    day impacted your ability to continue to be a fair and

3    impartial juror for the remainder of the trial.

4        The lawyers I introduced earlier are not here to ask you

5    questions, only the Court will do that, me.  But the lawyers

6    are here to represent the interests of their clients and to

7    propose follow-up questions that the Court may or may not ask

8    in its discretion.

9    **A.**  Yes, sir.

10   **Q.**  As you respond to my questions, please be careful not to

11   tell us about the jury's deliberations on the defendants'

12   guilt or innocence, or about how you reached your verdict.  We

13   don't want to hear about that.

14   **A.**  Yes, sir.

15   **Q.**  Do you remember the event of January 9, 2018 that I'm

16   referring to?

17   **A.**  I remember the event.  I don't remember the exact date.

18   **Q.**  Okay.  Did you see anyone engaged in any action that

19   suggested they were taking pictures of the jurors?

20   **A.**  There was -- yes, there was someone sitting outside, right

21   across from where we would go in and out, with a camera that

22   would seem to be taking pictures or videos, I mean, the way it

23   was sitting.

24   **Q.**  Uh-huh.  Did you hear any other jurors make any statements

25   indicating their belief that persons might be taking pictures

1  of jurors?

2  **A.** There were two or three others that had -- maybe more, I

3  don't remember exactly how many. But yeah, there were some

4  that had said something about it.

5  **Q.** What do you remember hearing?

6  **A.** Just that, was that -- was she there taking pictures. I

7  believe it was a woman. I'm sorry, it was three and a half

8  years ago.

9  **Q.** Absolutely. Take your time.

10  **A.** I believe they were saying something about there was

11  someone out there, was she taking pictures. There was some

12  concern she was taking pictures, but nothing more than that

13  that I remember.

14  **Q.** So do you recall which jurors raised questions regarding

15  the potential picture taking, if you're able?

16  **A.** No, sir. I'm sorry. It was just kind of general comments

17  made here and there.

18  **Q.** Did anyone, including yourself, suggest these concerns

19  should be reported to the Court?

20  **A.** My belief -- not my belief, excuse me, my remembrance was

21  that someone had reported it, had said that he had gone and

22  talked to -- again, forgive me, but the woman that was

23  handling us, for lack of a better word. You know, the one

24  that we were talking to.

25  **Q.** The Court staff person?

1    **A.**  Yes.  Yes, sir, I'm sorry.  That they had gone and talked

2    to them and told them about the pictures.  I don't remember

3    which one of the jurors it was.  I didn't -- well, you ask,

4    I'm sorry.

5    **Q.**  If you were going to say something else, go ahead.  I

6    don't want to cut you off.

7    **A.**  At the time I remember it was like -- it wasn't like a,

8    oh, my gosh, someone's taking pictures.  They were just kind

9    of like, what are they doing?  Are they taking pictures of us?

10   **Q.**  That is where I was going to go with my next question,

11   what did you hear?  What discussion did you participate in, if

12   any, among the jurors about the possibility of picture taking?

13   We're just asking what you remember in that regard, so perhaps

14   you've said everything you remember, perhaps you have more?

15   **A.**  Just basically people were talking about she taking --

16   again, I believe it was a woman -- was she taking pictures,

17   you know, and what were they for basically.  We didn't know

18   who the person was.  We didn't know what the connection was or

19   anything.  No one said anything about what the connection was

20   or who she was, they were just wondering.

21   **Q.**  In responding to the next questions, I'm going to again

22   ask you to draw a line between events that occurred prior to

23   the start of your deliberations and events that happened after

24   you began deliberations.

25   **A.**  Yes, sir.

**Q.**  By deliberations, I mean that point in the trial when no more evidence was presented, the lawyers had made their arguments, and I had read the jury instructions to you. That's the point when deliberations began.  And I don't want to hear anything about that.  Just about matters that came before that.

So, all of your answers to these questions should be limited to events that occurred, and things that you thought or felt before you began deliberations.  To reiterate, your answers to these questions -- in your answers to these questions, you should not tell us anything about what happened, what was said, what you thought or what you felt after deliberations began?

**A.**  Yes, sir.

**Q.**  You good with that?

**A.**  Yes, sir.

**Q.**  Okay.  After any discussion about possible picture taking on January 9 and 10, did you feel intimidated by anything that had occurred?

**A.**  No, sir.  We actually felt -- we felt it was handled when they started not taking -- not allowing anyone to take cameras or phones into the courtroom.

**Q.**  Were you able to remain an impartial juror and were you able to keep an open mind as the trial continued after that?

**A.**  Yes, sir.  That -- didn't really think twice about it once

1   we knew that the cameras weren't coming back in.

2   **Q.**  Do you believe that the events of January 9 and January

3   10, 2018, left you unable to continue to serve as a fair and

4   impartial juror in the case?

5   **A.**  No, sir, I do not.

6   **Q.**  Do you believe those events left you unable to fully

7   consider the evidence and arguments presented by both sides

8   with an open mind?

9   **A.**  No, I don't believe it stopped me from keeping an open

10  mind, if that's the question.

11  **Q.**  Well, that is the question.

12  **A.**  Yeah.  No, I don't believe it stopped me from keeping an

13  open mind.

14  **Q.**  Okay.  The next portion of the proceeding involves me

15  using this electronic device to talk to the lawyers, outside

16  of your hearing.  So we're going to turn on the noise machine

17  so that you can't hear.

18  **A.**  I remember them well, sir.

19  **Q.**  I bet you do.  And we're going to -- that's all you're

20  going to hear is that white noise.  I'm going to have a

21  private conversation with them.  And then when I'm finished

22  I'm going to talk with you more.  I just request your patience

23  for a couple minutes while I do this.

24  **A.**  Your Honor, that's fine.  Thank you.

25          THE COURT:  Okay.

1              (Bench conference on the record.)

2              THE COURT:  Mr. Martinez, do you have any follow-up

3    questions?

4              MR. MARTINEZ:  No.

5              THE COURT:  Mr. Enzinna, do you?

6              MR. ENZINNA:  Yes, Your Honor.  I do.

7              THE COURT:  Go ahead.

8              MR. ENZINNA:  He said that when the --

9              THE COURT:  You've got to get closer to the mike.

10             MR. ENZINNA:  He said that when the picture taking

11   occurred --

12             THE COURT:  You're still not quite close enough.

13   Pull that mike.

14             MR. ENZINNA:  He said that when the picture taking

15   occurred, his reaction and possibly the other jurors reaction

16   was one of curiosity, they were wondering why someone was

17   taking pictures.  I think he ought to be asked whether or not

18   the jurors connected this event to the prior incidents in

19   which they had reported concerns to the Court.  I think he

20   also should be asked whether he heard anyone describe the

21   event as "serious."

22             THE COURT:  Thank you, Mr. Enzinna.  I decline to

23   ask the first question, which I think leads him.  But I will

24   ask the second.  Let's go back on the Court channel.

25             (The following proceedings were had in open court.)

1    **BY THE COURT:**

2    **Q.**  In the various discussions that you kind of overheard from

3    that time period, do you remember anyone describing the

4    incident as "serious," this is serious?  Was anything like

5    that said or do you have any memory of that?

6    **A.**  No, um -- I'm just thinking back.  Excuse me for one

7    second.

8    **Q.**  Take your time.

9    **A.**  I don't -- no, not really.  Not anything -- you know, the

10   camera was mentioned.  It was mentioned about, you know,

11   wonder what they were doing, why they were doing it, but

12   nothing like being intimidated or afraid or scared or anything

13   like that.

14         THE COURT:  Okay.  Thank you.  We'll go back on to

15   the private channel.

16         (Bench conference on the record.)

17         THE COURT:  Mr. Enzinna, do you have any additional

18   questions?

19         MR. ENZINNA:  No, Your Honor.

20         THE COURT:  Thank you.

21         Mr. Bussard, do you have any questions?

22         MR. BUSSARD:  No, Your Honor.

23         THE COURT:  Ms. Wicks or Mr. Nieto, do you have any

24   additional questions?

25         MR. NIETO:  No, Your Honor.

1          THE COURT:  Thank you.

2          (The following proceedings were had in open court.)

3          THE COURT:  Juror No. 11, we're at the end of this

4    process now.  We are finished and you are free to leave.

5    Please, as you leave, know that it is with the Court's thanks

6    and gratitude.  We recognize that jury service is a big

7    burden.  And that it is, while one of the most important

8    duties of U.S. citizenship, it is an important one.  So thank

9    you for shouldering that burden and responding to your summons

10   first three years ago and now, again, you've come back down.

11   We're grateful for that.  And this is essential that citizens

12   do this from time to time.

13         THE WITNESS:  Yes, sir.

14         THE COURT:  Thank you so much.  Please make sure you

15   pick up all of your belongings.  The courtroom clerk will take

16   you out of the courtroom and you may leave the courthouse.

17   You are finished.  Thank you, sir.

18         THE WITNESS:  Will this be the last -- this incident

19   the last contact we'll have with the Court?

20         THE COURT:  You know, I am one of those people that

21   doesn't have a crystal ball and never predicts anything for

22   the future, or makes any absolute statements or whatever else,

23   but as far as the current proceeding that is underway, I do

24   not anticipate needing any further contact with you.

25         THE WITNESS:  Okay.  Thank you, Your Honor.

1          THE COURT:  Thank you, sir.

2          (Alternate Juror No. 3 entered the courtroom.)

3          THE COURT:  You may be seated, ma'am, then we'll

4    have you raise -- these are new COVID rules.  We get everybody

5    seated first and then we swear them.

6          THE CLERK:  Good afternoon.

7                    ALTERNATE JUROR NO. 3,

8    called as a witness, being first duly sworn, was examined and

9    testified as follows:

10         THE WITNESS:  I do.

11         THE CLERK:  Thank you.  You may put your hand down.

12                    EXAMINATION

13   BY THE COURT:

14   **Q.**  You served as alternate No. 3 in this case; is that right,

15   ma'am?

16   **A.**  Yes.

17   **Q.**  Between November 20, 2017 and January 25, 2018, you served

18   as an alternate juror in the trial of the United States versus

19   Gerald Johnson, case number JKB-16-0363.  I was the judge who

20   presided during that trial, perhaps you remember me, or

21   perhaps you don't?

22   **A.**  I do.

23   **Q.**  You do.  Okay.  Well, so same judge but different

24   courtroom; right?

25   **A.**  Yes, this is very new for me.

**Q.**  All right.  Now, also here with us today are attorneys who represent the parties in this case.  Assistant U.S. Attorney Martinez and Assistant U.S. Attorney Hoffman, representing the government.  Mr. Enzinna and Mr. O'Toole, who represent Mr. Johnson.  Mr. Bussard, who represents Mr. Jones.  Ms. Wicks and Mr. Nieto, who represent Mr. McCants.

Do you remember your service as an alternate juror in this case?

**A.**  I do.

**Q.**  The trial lasted for many weeks.  During the trial some concerns were raised, such as defendants passing notes, looking at jurors, and having access to juror information through the juror selection process known as voir dire.  The Court addressed these concerns without pausing the trial.

Then on January 9, 2018, an event occurred, which caused the trial to briefly pause.  One of your fellow jurors, in the presence of at least some of the rest of the jurors and alternates, expressed concern that persons, perhaps a defendant's family members might be taking pictures of the jurors as they passed through the vestibule at the entrance of the courtroom and to the jury room.  We understand that juror may have seen this as a significant event.  A few minutes later you were interviewed by court staff about that event.

A day later, on January 10, 2018, I spoke to the jury in the courtroom and said, one or more jurors had a concern that

1    perhaps someone outside of the jury room, in the courtroom

2    vestibule or courtroom hallway, had photographed or otherwise

3    captured the images of jurors.  This matter was investigated

4    after that report was received.  The investigation included

5    the examination of a relevant smart phone, camera-type device,

6    in the possession of a relevant individual.  That

7    investigation revealed that there were no images, films,

8    videos of the sort that I have referred to captured on that

9    telephone.

10        Today, I have some questions for you about the events of

11   January 9, 2018.  Specifically, I need your assistance in

12   learning whether the events of that day impacted your ability

13   to continue to be a fair and impartial juror for the remainder

14   of the trial.

15   **A.**  No, it did not.

16   **Q.**  Okay.  Let me continue on just a little bit here, okay.

17       The lawyers I introduced earlier are not here to ask you

18   questions, only I will do that.  Only the Court will do that.

19   But the lawyers are here to represent the interests of their

20   clients and propose follow-up questions that the Court may or

21   may not ask you in its discretion.  As you respond to my

22   questions, I want to make sure that you wouldn't speculate

23   about the jury's deliberations.  I know you didn't deliberate

24   on guilt or innocence in this case, but I don't want to know

25   about that part of this proceeding.  That's not what this is

1     about, okay.

2         Do you remember the event that I've referred to on

3     January the 9th?

4     **A.**  I do.

5     **Q.**  Did you see anyone engaged in any action that suggested

6     that they were taking pictures of the jurors?

7     **A.**  I did not.

8     **Q.**  Did you hear any juror make statements indicating his or

9     her belief that persons might be taking pictures of the

10    jurors, and if you do remember that, what do you remember

11    hearing?

12    **A.**  I did hear it.  And I basically, in so many words he --

13    the exact same words that he thought that people were taking

14    pictures of us outside of the Court barrier.

15    **Q.**  Do you remember which juror raised that concern and

16    whether there were more than one juror?

17    **A.**  It was just the one.  I don't remember his name, but he no

18    longer served, if I can remember correctly.

19    **Q.**  Do you remember what he looked like, his gender age his

20    race?

21    **A.**  He was male.

22    **Q.**  His size?

23    **A.**  Male, medium build, maybe African-American, Hispanic

24    descent.  I'm not sure.

25    **Q.**  Okay.  Did anyone, including yourself, suggest that these

1    concerns should be reported to the Court?

2    **A.**  No, I do not.

3    **Q.**  Did you hear or participate in any discussion among the

4    jurors about the possibility of picture taking?

5    **A.**  No, we didn't discuss.

6    **Q.**  Okay.  So if anything went on, you don't remember it or

7    you don't think there was any discussion?

8    **A.**  There wasn't discussion.

9    **Q.**  There wasn't any discussion, okay.  So in responding to

10   the next questions, I'm going to again ask you to draw a line

11   between events that occurred prior to the start of the jury's

12   deliberations and events that might have occurred after that.

13   Now, I recognize you didn't deliberate in the case, and I'm

14   right about that?

15   **A.**  Yes.

16   **Q.**  And by deliberations, I mean that point in the trial where

17   no more evidence was presented, the lawyers made their

18   arguments, and I read the jury instructions to you.  That's

19   the point jury deliberations began, I don't want to hear

20   anything about that, just matters that came before that.  All

21   of your answers to the questions should assume that I'm asking

22   you about before deliberations began.

23       That should be relatively easy for you since you didn't

24   deliberate.  But to the extent that you know anything about

25   the deliberations in this case, or what might have happened if

1   you did deliberate in the case, I don't want to hear anything

2   about that.  This is just about what went on before that,

3   while you were still serving, but you did serve right up until

4   deliberation began; true.

5   **A.**  Yes.

6   **Q.**  Okay.  After any discussion about possible picture taking

7   on January 9 and 10, did you feel intimidated by anything that

8   had occurred?

9   **A.**  No.

10   **Q.**  Were you able to remain an impartial juror and were you

11   able to keep an open mind as the trial continued after that?

12   **A.**  Yes.

13   **Q.**  Do you believe that the events of January 9 and January

14   10, 2018, left you unable to continue to serve as a fair and

15   impartial juror in the case?

16   **A.**  No.

17   **Q.**  Do you believe that those events left you unable to fully

18   consider the evidence and arguments presented by both sides

19   with an open mind?

20   **A.**  Can you repeat that?

21   **Q.**  Yeah it's a little bit of a lawyer's question, isn't it?

22   I'm going to try it again.  Even though I wrote it, it is a

23   lawyer's question.

24       Did those events on January 9, January 10, do you believe

25   that they left you unable to fully consider the evidence and

1    arguments presented by both sides with an open mind, were you

2    left unable to do that?

3    **A.**  No.

4    **Q.**  Okay.  The next part of this process involves me talking

5    privately with the lawyers over this little electronic device.

6    So in a moment the clerk's going to turn on the sound machine,

7    you remember the noise maker, so you can't hear what's going

8    on.  And I'm going to talk quietly to the lawyers so you can't

9    hear.  And then once I'm finished with that, I'll speak with

10   you again.  Now, this might take a few minutes, so I will ask

11   you to be patient with me, okay?

12   **A.**  Yes.

13   **Q.**  Thank you, ma'am.

14            (Bench conference on the record.)

15            THE COURT:  Mr. Martinez, do you have any follow-up

16   questions?

17            MR. MARTINEZ:  No.

18            THE COURT:  Mr. Enzinna, do you have any follow-up

19   questions?

20            MR. ENZINNA:  Yes, Your Honor.  I would request that

21   she be asked a question similar to the one we proposed as

22   additional question 7 for the Juror No. 4 who was excused on

23   January 9th.  And that is, specifically, the alternates did

24   not deliberate, they are in a position to provide the Court

25   with extremely relevant information that's not available in

1    any other way, which is -- the question should be asked, at

2    the time that you were excused, before deliberations began,

3    were you able to put this completely out of your mind?  Or if

4    you had been asked to deliberate, would you have considered

5    it.

6              THE COURT:  Thank you, Mr. Enzinna.  That request is

7    denied.  Consistent with the rulings that I've made previously

8    when you've posed it in other circumstances, I don't believe

9    that any answers to those questions would be of substantial

10   assistance in the task that rise before me.  As I've said

11   several times previously, it's obvious that the events of

12   January 9, January 10 were, quote, in people's minds.  They're

13   still able to remember them today.  So they were never purged

14   or wiped from their minds.  They are there.

15             That's not the relevant question.  The question is

16   whether or not it affected a person's continuing ability to

17   serve with fairness, with an open mind, and with impartiality.

18   Accordingly, the questions that I have crafted and that I have

19   felt would be most helpful and that I have asked are directed

20   to that point.  Accordingly, your request is denied.

21             Do you have any other questions?

22             MR. ENZINNA:  Well, Your Honor, just to make the

23   record complete I would request that she be asked whether at

24   that time, when deliberations were about to begin and she was

25   excused from the jury, whether the photo incident would have

1    affected her deliberations had she deliberated.

2        THE COURT:  That's dangerously close to intruding on

3    a part of a juror's work that we are commanded to avoid.  I

4    recognize that she did not sit as a juror, so technically it

5    might not be over the line.  Nonetheless, it starts to intrude

6    on that deliberative function.  And one of the policy

7    objectives of the rule is to not place jurors, and perhaps

8    even alternate jurors, in the position where they are

9    questioned about and try -- and held accountable in some way

10   for how they reacted to the evidence that was presented to

11   them, the verdict that they returned or would have returned if

12   they had been asked to sit.

13        So for that reason, I decline to do so.  But mainly

14   I am declining to do so, because she has already actually

15   answered that question to -- in a very thorough and complete

16   way in describing more than once, with direct answers, the

17   fact that she remained impartial, that she remained fair, that

18   she kept an open mind, and the events of January 9, January

19   10, did not affect that.

20        Any other questions?

21        MR. ENZINNA:  Your Honor, I don't think she did say

22   it didn't effect her --

23        THE COURT:  Mr. Enzinna, I don't want to argue with

24   you, but I am interested in hearing if you have any other

25   questions to propose on other topics?

1          MR. ENZINNA:  No, sir.  No other questions.

2          THE COURT:  Thank you, sir.

3          Mr. Bussard?

4          MR. BUSSARD:  No other questions.  Thank you.

5          THE COURT:  Thank you, Mr. Bussard.

6          Ms. Wicks or Mr. Nieto?

7          MR. NIETO:  No, Your Honor.

8          THE COURT:  I couldn't hear you, Mr. Nieto.

9          MR. NIETO:  Nothing additional, Your Honor.

10          THE COURT:  Thank you, Mr. Nieto.  We'll go back on

11     the Court record.

12          (The following proceedings were had in open court.)

13          THE COURT:  Back on the Court channel.  Alternate 3,

14     we are finished with this process.  Thank you so much for

15     returning to court and answering the questions that I have put

16     to you.  Thank you again for your service as a juror in this

17     case three years ago.  Thank you for responding to your

18     summons this time and being responsible about it and coming

19     back down here.  Jury service is a burden of citizenship, for

20     sure.  And I respect the fact that you have shouldered that

21     burden willingly and been willing to continue to serve and do

22     what is asked of you as a citizen.  Thank you so much.

23          Please gather up all of your belongings.  Make sure

24     you've got everything.  Then the courtroom clerk will see you

25     to the door of the courtroom and get you on your way out of

1    the building out of the courthouse.  You are excused, ma'am.

2          THE WITNESS:  Thank you.

3          THE COURT:  Thank you.

4          (Alternate Juror No. 4 entered the courtroom.)

5          THE CLERK:  Raise your right hand for me.

6                    ALTERNATE JUROR NO. 4,

7    called as a witness, being first duly sworn, was examined and

8    testified as follows:

9          THE WITNESS:  I do.

10         THE CLERK:  Thank you.

11                    EXAMINATION

12   BY THE COURT:

13   **Q.**  Good afternoon, sir.

14   **A.**  How are you?

15   **Q.**  You are alternate Juror No. 4; is that correct?

16   **A.**  Yes.

17   **Q.**  Between November 20, 2017 and January 25, 2018, you served

18   as an alternate juror in the trial of United States versus

19   Gerald Johnson, et al., case number JKB-16-0363.  I was the

20   judge who presided during that trial.  Perhaps you remember me

21   or perhaps you don't?

22   **A.**  I do.

23   **Q.**  And same judge, but different courtroom; right?

24   **A.**  Yes.

25   **Q.**  Okay.  Also here with us today are attorneys who represent

1    the parties in this case, starting with Assistant U.S.

2    Attorney Martinez and Assistant U.S. Attorney Hoffman, who

3    represent the government.  Also here, Mr. Enzinna and Mr.

4    O'Toole, who represent Mr. Johnson.  Mr. Bussard, who

5    represents Mr. Jones.  And Ms. Wicks and Mr. Nieto, who

6    represent Mr. McCants.  Do you remember your service as an

7    alternate juror in that case?

8    **A.**  Yes.

9    **Q.**  The trial lasted for many weeks.  During the trial some

10   concerns were raised such as, defendants passing notes,

11   looking at jurors having access to juror information through

12   the juror selection process known as voir dire.  The Court

13   addressed those concerns without pausing the trial.

14       Then on January 9, 2018, an event occurred which caused

15   the trial to briefly pause.  One of your fellow jurors, in the

16   presence of at least some of the rest of the jurors and

17   alternates, expressed concern that persons, perhaps a

18   defendant's family members, might be taking pictures of the

19   jurors as they passed through the vestibule at the entrance to

20   the courtroom and the jury room.  We understand that juror may

21   have seen that as a significant event.  A few minutes later

22   you were interviewed by court staff about the event.

23       A day later, on January 10, 2018, I spoke to the jury in

24   the courtroom and said, one or more jurors had a concern that

25   perhaps someone outside the jury room, in the courtroom

1    vestibule or courtroom hallway had photographed or otherwise

2    captured the images of jurors.  This matter was investigated

3    after that report was received.  The investigation included

4    the examination of a relevant smart phone, camera-type device

5    in the possession of a relevant individual.  That

6    investigation revealed that there were no images, films,

7    videos of the sort that I have referred to captured on that

8    telephone.

9         Today, I have some questions for you about the events of

10   January 9, 2018.  Specifically, I need your assistance in

11   learning whether the events of that day impacted your ability

12   to continue to be a fair and impartial juror for the remainder

13   of the trial.

14        The lawyers I introduced a minute ago are not here to ask

15   you questions.  Only the Court will do that.  Only me.  But

16   the lawyers are here to represent the interests of their

17   clients and to propose follow-up questions that the Court may

18   or may not ask in its discretion.  As you respond to my

19   questions, please be careful not to tell us anything that you

20   might know about the jury's deliberations on the defendants'

21   guilt or innocence or about how the jury reached their

22   verdict.  I recognize you were an alternate juror and you

23   didn't sit during deliberations and you didn't ultimately

24   decide the case, that's all true; right?

25   **A.**  Right.

1   **Q.**  Nonetheless, I still want to draw that firm line about
2   what we're talking about here.  We're not talking about
3   deliberations.  We're not talking about the verdict, that sort
4   of thing, don't want to hear anything about that.  Instead, we
5   want to talk about this earlier event.  Okay.  Do you remember
6   the event on January the 9th?
7   **A.**  Yes.
8   **Q.**  Did you see anyone engaged in any action that suggested
9   that they were taking pictures of the jurors?
10  **A.**  No.
11  **Q.**  Did you hear any juror make statements indicating his or
12  her belief that persons might be taking pictures of jurors,
13  and if you do remember that, what do you remember hearing?
14  **A.**  I heard talk.  I didn't hear it from the person that, you
15  know, that left.  But I heard talk and that was the reason why
16  he left, but that's about it.
17  **Q.**  Okay.  So when you mean left -- when you say left, you
18  mean he left the jury, he wasn't on the jury anymore; is that
19  right?
20  **A.**  Exactly.
21  **Q.**  Okay.  And you heard some talk among the jurors that what,
22  that there's some connection between all that?
23  **A.**  Well, that was the reason why he -- he felt that way and
24  that was the reason why, you know, he was taken off the
25  jury.

1    **Q.**  And do you remember when that talk went on?

2    **A.**  No.

3    **Q.**  Okay.

4    **A.**  Maybe after he had left, you know, people were giving

5    reasons why, but that's about it.

6    **Q.**  So do you remember which jurors raised concerns regarding

7    potential picture taking, you've already referred to one

8    person and I think you used the male gender, said it was a

9    him?

10   **A.**  Yeah.

11   **Q.**  What do you remember about him?  Do you remember what he

12   looked like, do you remember how old he was, anything like

13   that?

14   **A.**  He was one of the guys on the jury.

15   **Q.**  Yeah.  He was one of the guys on the jury, do you remember

16   what he looked like?

17   **A.**  Yeah, dark hair, I guess Indian descent.  And actually he

18   was here today.

19   **Q.**  Did you see him here today?

20   **A.**  Yeah.

21   **Q.**  Did you talk with him or just see him?

22   **A.**  No, we weren't supposed to talk to anybody, but I saw

23   him.

24   **Q.**  Okay.  You saw him.  Same guy though?

25   **A.**  Yeah.

1   **Q.** How about anybody else talking about picture taking

2   besides him, was there anybody else that you remember?

3   **A.** No, not that I can recall.  No.

4   **Q.** Okay.  Did anybody suggest -- maybe even including

5   yourself, did anybody suggest that these concerns should be

6   reported to the Court?

7   **A.** I don't know.  I didn't -- I really didn't see anybody

8   taking pictures, I mean.  I mean, everybody has phones up.  I

9   mean, who's to say if they were or weren't taking pictures.  I

10  don't know if they were.  I didn't pay any attention to it.

11  **Q.** Okay.  So the next question I may have already asked, but

12  I'm going to ask it again any way.  Did you hear or

13  participate in discussions among the jurors about the

14  possibility of picture taking, and if so can you remember what

15  was said?

16  **A.** Yeah, some of -- we talked about it, some of the people on

17  the jury.  But we just said they were -- could have been

18  taking pictures.  They didn't say anything definite, but that

19  kind of -- that's what was kind of roaming around.

20  **Q.** Okay.

21  **A.** Wasn't anything concrete, just -- maybe just talk I

22  guess.

23  **Q.** In responding to the next questions I'm going to again ask

24  you to draw a line between events that occurred prior to the

25  start of the jury's deliberations and events that happened

1    after the jury began deliberations.  By deliberations, I mean

2    that point in the trial when no more evidence was presented,

3    the lawyers had made their arguments, I had read the jury

4    instructions to you.  That's the point when deliberations

5    began and I don't want to hear anything about that.  Just the

6    matters that came before that.  Now, right before

7    deliberations began, you were excused; right?

8    **A.**  Correct.

9    **Q.**  And you didn't sit and decide the case; true?

10   **A.**  Correct.

11   **Q.**  So nonetheless, as we go through this, I don't want to

12   hear anything about deliberations, any speculation from you

13   about the verdict that's not what we're talking about here,

14   are you with me on that?

15   **A.**  Yeah.

16   **Q.**  Okay.  After any discussion about possible picture taking

17   on January 9 and January 10, did you feel intimidated by

18   anything that had occurred?

19   **A.**  No.

20   **Q.**  Were you able to remain an impartial juror and were you

21   able to keep an open mind as the trial continued after that?

22   **A.**  Yes.

23   **Q.**  Do you believe that the events of January 9 and January 10

24   left you unable to continue to serve as a fair and impartial

25   juror in the case?

1    **A.**  No.

2    **Q.**  Do you believe that the events of January 9 and January 10

3    left you unable to fully consider the evidence and arguments

4    presented by both sides with an open mind?

5    **A.**  No.

6    **Q.**  The next part of this process is going to involve me

7    talking to the lawyers privately on this little electronic

8    device.  You won't be able to hear it.  Instead, we're going

9    to turn on the courtroom noise maker, so you can't hear

10   anything.  That's on purpose so we can have a private

11   conversation.  You remember this from the trial.

12   **A.**  Yes.

13   **Q.**  Once I'm finished talking to the lawyers we'll turn that

14   off and then I'll speak to you further.  This may take a few

15   minutes, will you be patient with me?

16   **A.**  Yeah.

17   **Q.**  Thank you, sir.

18              (Bench conference on the record.)

19              THE COURT:  Mr. Martinez, do you have any follow-up

20   questions?

21              MR. MARTINEZ:  No.

22              THE COURT:  Mr. Enzinna, do you?

23              MR. ENZINNA:  Yes, Your Honor.  And to save time I'd

24   request that -- this is a standing request to all the

25   alternates, that they each be asked whether they were able to

1    put this out of their mind or whether if they had deliberated

2    it would have effected them or they would have considered

3    it.

4            THE COURT:  Thank you.  That request is denied and I

5    appreciate your requesting it now with respect to all of the

6    alternates.  Unless something that hasn't happened yet

7    develops with respect to one of these alternates that causes

8    me to believe that in fact that is an appropriate question, I

9    do not intend to ask it for the reasons previously indicated.

10   Mr. Enzinna has a standing objection to the fact that the

11   Court has declined to propound that question.

12           Do you have any other questions, Mr. Enzinna?

13           MR. ENZINNA:  No.  Thank you, Your Honor.

14           THE COURT:  Mr. Bussard?

15           MR. BUSSARD:  No.  Thank you.

16           THE COURT:  Ms. Wicks or Mr. Nieto.

17           MR. NIETO:  No, Your Honor.  Thank you.

18           (The following proceedings were had in open court.)

19           THE COURT:  Thank you Alternate No. 4.  We

20   appreciate your presence here and your participation in this

21   process, just as we appreciated your service as a juror three

22   years ago.  Thank you for coming back in response to the most

23   recent summons.  We have no further questions for you.  I just

24   want you to leave knowing that you have the gratitude of the

25   Court for being a good citizen and responding to your juror

1    notice and to your summons and to coming back here to the

2    courthouse and answering our questions.  I am grateful to you.

3    You are excused.

4              Please pick up all of your things so you make sure

5    you don't leave anything behind.  The courtroom clerk will

6    then escort you from the courtroom and you are free the leave

7    the courthouse.  Thank you, sir.

8              (Alternate Juror No. 5 entered the courtroom.)

9              THE CLERK:  You can have a seat and raise your right

10    hand.

11              THE COURT:  You can go ahead and sit down.  We have

12    different procedures because of COVID.  It's hard to follow

13    them.  I get mixed up on them.  Now pull the microphone down

14    in front of you, so it's nice and close to your face.  That's

15    perfect.  Now raise your right hand.

16                         ALTERNATE JUROR NO. 5,

17    called as a witness, being first duly sworn, was examined and

18    testified as follows:

19              THE WITNESS:  I do.

20              THE CLERK:  Thank you.  You may put your hand

21    down.

22                            EXAMINATION

23    BY THE COURT:

24    **Q.**  Good afternoon.

25    **A.**  Hi.

1    **Q.**  You served as Alternate Juror No. 5 in this case; is that

2    correct?

3    **A.**  That's correct.

4    **Q.**  Between November 20, 2017 and January 25, 2018, you served

5    as a alternate juror in the trial of the trial United States

6    versus Gerald Johnson, case number JKB-16-363, I was the judge

7    who presided during that trial.  Perhaps you remember me and

8    perhaps you don't?

9    **A.**  I do.

10   **Q.**  Okay.  Same judge, different courtroom.  Do you agree with

11   that?

12   **A.**  Correct.

13   **Q.**  Looks like a different courtroom?

14   **A.**  Uh-huh.

15   **Q.**  Okay.  Also here with us today are attorneys who represent

16   the parties in the case.  Starting with Assistant U.S.

17   Attorney Martinez and Assistant U.S. Attorney Hoffman, who

18   represent the government.  Mr. Enzinna and Mr. O'Toole, who

19   represent Mr. Johnson.  Mr. Bussard, who represents Mr. Jones.

20   And Ms. Wicks and Mr. Nieto, who represent Mr. McCants.  Do

21   you remember your service as a juror in this case?

22   **A.**  Yes, I do.

23   **Q.**  The trial lasted for many weeks.  During the trial some

24   concerns were raised, such as defendants passing notes,

25   looking at jurors and having access to juror information

1    through the juror selection process known as voir dire.  The

2    Court addressed these concerns without pausing the trial.

3         Then, on January 9, 2018, an event occurred which caused

4    the trial to briefly pause.  One of your fellow jurors, in the

5    presence of at least some of the rest of the jurors and

6    alternates, expressed concern that persons, perhaps a

7    defendants' family members, might be taking pictures of the

8    jurors as they passed through the vestibule at the entrance to

9    the courtroom and the jury room.  We understand that juror may

10   have seen this as a significant event.  A few minutes later,

11   you were interviewed by court staff about that event.

12        A day later, on January 10, 2018, I spoke to the jury in

13   the courtroom and said:  One or more jurors had a concern that

14   perhaps someone outside of the jury room, in the courtroom

15   vestibule or courtroom hallway, had photographed or otherwise

16   captured the images of jurors.  This matter was investigated

17   after that report was received.  The investigation included

18   the examination of a relevant smart phone, camera-type device

19   in the possession of a relevant individual.  That

20   investigation revealed that there were no images, films,

21   videos of the sort that I have referred to captured on that

22   telephone.

23             Today I have some questions for you about the events

24   of January 9, 2018.  Specifically, I need your assistance in

25   learning whether the events of that day impacted your ability

1    to continue to be a fair and impartial juror for the remainder

2    of the trial.

3         The lawyers I introduced earlier are not here to ask you

4    questions.  Only the Court will do that, just me.  But the

5    lawyers are here to represent the interests of their clients

6    and to propose follow-up questions that the Court may or may

7    not ask you in its discretion.  As you respond to my

8    questions, please be careful not to tell us anything you might

9    know about the jury's deliberations on the defendants' guilt

10   or innocence, or about how the jury reached the verdict.

11        Now I assume that you have nothing to tell us about that

12   because you didn't serve as a juror ultimately.  You did not

13   deliberate on guilt or innocence.  You were excused just

14   before the jury began to deliberate, am I right about that?

15   **A.**  That's correct.

16   **Q.**  Nonetheless, it's very important under the law that I make

17   it clear that we're not asking anyone, including you as an

18   alternate juror, about what went on in deliberations, guilt,

19   innocence, verdict, that's not our topic today and I want to

20   make sure you understand we're not talking about that.  Are we

21   clear on that?

22   **A.**  Yes, sir.

23   **Q.**  Do you remember the event that I've referred to on January

24   9?

25   **A.**  I don't remember the specific date, but I do recall an

1    event of that nature.

2    **Q.**  Did you see anyone engaged in any action that suggested

3    that they were taking pictures of jurors?

4    **A.**  No.  No.

5    **Q.**  Did you hear any juror make statements indicating his or

6    her belief that persons may have been taking pictures of

7    jurors, and if so, what do you remember hearing?

8    **A.**  Not necessarily pictures.  I just recall that one of our

9    jurors was very concerned about the attention that the

10   gallery, I guess you call it, was paying to us.

11   **Q.**  Do you recall which juror that was.  You might not know

12   the person's name, but could you say their gender, could you

13   say their age, their race, the --

14   **A.**  It was a relatively young African-American girl.

15   **Q.**  Relatively young, African-American, girl?

16   **A.**  Right.

17   **Q.**  Is that fair?

18   **A.**  Yes.

19   **Q.**  Was there anyone else that you heard stating a concern

20   about this issue?

21   **A.**  No.

22   **Q.**  Okay.  And this concern that was being expressed was not

23   so much about taking pictures, but it was about watching and

24   seeing jurors?

25   **A.**  Right.

1    **Q.**  Okay.  Do you remember anything about -- being said about

2    potential taking pictures of jurors?

3    **A.**  No, I don't.

4    **Q.**  Okay.  Do you remember any other jurors besides this, as

5    you referred to it as this young African-American girl,

6    raising issues in that regard?

7    **A.**  I do recall one day there was a group of people that

8    seemed to be in support of the defendants that were kind of

9    like congregating where we would have to leave the building.

10   And I do recall that we were escorted down the stairway and

11   out like a different exit.  But that's -- that's it.

12   **Q.**  Okay.  Did you hear or participate in any discussion among

13   jurors about the possibility of picture taking?

14   **A.**  Not picture taking, no.

15   **Q.**  Can you remember what was said around any topic that in

16   any way related to picture taking, anything said at all.

17   **A.**  No.

18   **Q.**  Okay.  In responding to the next questions I'm going to

19   again ask you to draw a line between events that occurred

20   prior to the start of deliberations and events that happened

21   after the jury began deliberations.  Of course, by

22   deliberations I mean that point in trial when no more evidence

23   was presented, the lawyers made their arguments, I read the

24   jury instructions.  That's the point at which deliberations

25   began.  I don't want to hear anything about that, just matters

1    that came before that.  So all of your answers should be about

2    the time before deliberations began.

3        I assume that would be the case any way, again, because

4    you were an alternate juror and you didn't actually deliberate

5    in the case or participate in the return of a verdict; is that

6    all true.

7    **A.**  Correct.

8    **Q.**  Okay.  After anything that occurred on January 9 and 10,

9    did you feel intimidated by anything that had occurred?

10    **A.**  No.

11    **Q.**  Were you able to remain an impartial juror and were you

12    able to keep an open mind as the trial continued after January

13    9 and 10?

14    **A.**  Yes.

15    **Q.**  Do you believe the events of January 9 and 10 left you

16    unable to continue to serve as a fair and impartial juror in

17    the case?

18    **A.**  No.

19    **Q.**  Do you believe that those events left you unable to fully

20    consider the evidence and arguments presented by both sides

21    with an open mind?

22    **A.**  No.

23    **Q.**  Now, the next part of this process is going to be a

24    private conversation that I'm going to have with the lawyers

25    over this little electronic device.  You won't be able to hear

1    that.  In fact, we'll be turning on the little noise machine

2    that you probably remember from the trial, so it will block

3    out anything you won't be able to hear us talking I'll talk

4    with the lawyers a bit then when I'm finished I'll come back

5    and speak with you again.  Now this could take a few minutes

6    so I guess I would ask you to be patient with me?

7    **A.**  Certainly.

8             (Bench conference on the record.)

9             THE COURT:  So, Mr. Martinez, do you have any

10   follow-up questions?

11            MR. MARTINEZ:  I have no follow-up questions, Your

12   Honor.  But I do reserve the right to be heard if Mr. Enzinna

13   proposes what I think he's about to say, but let's hear what

14   he says.

15            THE COURT:  Okay.  Mr. Enzinna.

16            MR. ENZINNA:  Your Honor, I do have a proposed

17   follow-up question.  This juror said that she did not remember

18   this event being about photography, but instead about what she

19   called the attention of the gallery and watching and looking

20   at the jury.  I think in order to understand the entire

21   picture of the effect on her, I think it is necessary that she

22   be questioned about the effect of the prior events during the

23   trial, regarding voir dire and the passing of notes.

24            THE COURT:  Thank you, Mr. Enzinna.  I interpret

25   your question of asking the Court to do something that's

1    outside of the scope of the remand from the 4th Circuit.

2    Certainly, they referenced those earlier events as having been

3    sort of a preamble to what came on the 9th of January.  But I

4    have not understood the Court's directive to be to conduct a

5    *Remmer*-type proceedings with respect to any other events that

6    occurred during the trial, including the passing of notes,

7    jurors looking at people, inquiry into juror's backgrounds as

8    part of the voir dire process.  As Judge Motz pointed out in

9    her dissent, this seems to have been a narrow remand on the

10   specific point related to picture taking.

11        That said, as you saw from the way I conducted the

12   questioning, even when I did not get an affirmative

13   acknowledgment of anything occurring in relation to picture

14   taking and so forth, and instead when this alternate juror

15   went in a different direction and talked about the comments of

16   the young African-American female, in reference to jurors

17   (sic) watching them and so forth, I nonetheless continued with

18   the juror to ensure that there wasn't anything about the

19   events of January 9, January 10, that might have infected her

20   capacity for fairness, for impartiality, and for open

21   mindedness.

22        I just reframed the question slightly, broadened it

23   out, dropped the reference to picture taking because she

24   wouldn't refer to that, but instead talked generally about

25   those events.  And received emphatic denials from the

1    alternate juror on the question of whether or not her capacity

2    for fairness, impartiality, and open mindedness was impacted

3    by the events of January 9 and 10, which are our focus.

4              And, to the extent she broadened that out in her own

5    mind to the observations about the young woman about being

6    observed, the questioning that I followed up with was designed

7    to, and I believe did, capture her reactions, her feelings,

8    her experience as to whether or not her is ability to be fair,

9    open minded, and impartial was compromised.  Accordingly, I

10   decline the invitation to inquire further on that topic.

11             Do you have other questions that you propose I ask

12   her?

13             MR. ENZINNA:  Well, Your Honor, I just want to be

14   clear that I am not requesting that the Court ask her

15   questions about the events of December 7th and December 18th,

16   the prior jury concerns.  I'm asking the Court to ask her

17   about the effect of those concerns on her perception of the

18   events on January 9th, but having said that, I have no further

19   questions.

20             THE COURT:  Thank you.  Court channel.

21             (The following proceedings were had in open court.)

22   BY THE COURT:

23   Q.  A quick follow-up question.  Was there anything that

24   happened in terms of these matters, whether it's picture

25   taking, jurors reporting that they were being looked at by

1    spectators at the trial, people that might be associated with

2    the defendants out in the hallway, anything -- did anything

3    about that effect your ability to serve as a fair and

4    impartial juror as the case proceeded to its conclusion?

5    **A.**  No.

6            THE COURT:  Thank you, ma'am.  We'll -- little more

7    patience.

8            THE WITNESS:  Okay.

9            (Bench conference on the record.)

10           THE COURT:  Mr. Bussard, do you have any questions?

11           MR. BUSSARD:  No other questions.  Thank you.

12           THE COURT:  And Ms. Wicks or Mr. Nieto, do you have

13   any questions?

14           MR. NIETO:  No, Your Honor.

15           THE COURT:  Thank you.  Go back to the Court

16   channel.

17           (The following proceedings were had in open court.)

18           THE COURT:  Thank you, Alternate Juror No. 5.  We

19   appreciate your returning to court.  We are now finished.  I

20   have no further questions for you.  In a moment we're going to

21   excuse you, but not before I say thank you and express my

22   gratitude for your good citizenship in responding your

23   summons, coming back down here to the courthouse, following

24   the instructions that we provided to you, appearing on time,

25   all of the things that you did to make this possible.  I'm

1    very grateful for that.  And you may gather up all your

2    things.  The courtroom clerk will see you to the door of the

3    courtroom and you are fee to leave the courthouse.  You are

4    excused, ma'am.

5              THE WITNESS:  Thank you.

6              (Alternate Juror No. 6 entered the courtroom.)

7                   ALTERNATE JUROR NO. 6,

8    called as a witness, being first duly sworn, was examined and

9    testified as follows:

10             THE WITNESS:  I do.

11             THE CLERK:  Thank you.

12                      EXAMINATION

13   BY THE COURT:

14   **Q.**  Good afternoon.  You are Alternate Juror No. 6; is that

15   correct?

16   **A.**  I guess so.  I'm not sure what number, but yeah.

17   **Q.**  Well, between November 20, 2017 and January 25, 2018, you

18   served as an alternate juror in the trial of the United States

19   versus Gerald Johnson, case number JKB-16-363.  I was the

20   judge who presided during that trial.  Perhaps you remember me

21   or perhaps you don't?

22   **A.**  I do.  Yes, I remember my nine weeks.

23   **Q.**  Okay.  And do you remember me?

24   **A.**  Yup.

25   **Q.**  And do you remember being in a courtroom, but not this

1    one, it was one different from this one?

2    **A.**  Yup.

3    **Q.**  Okay.  Also here with us today are attorneys who represent

4    the parties in this case.  Assistant U.S. Attorney Martinez

5    and Assistant U.S. Attorney Hoffman, who represent the

6    government.  Mr. Enzinna and Mr. O'Toole, who represent Mr.

7    Johnson.  Mr. Bussard, who represents Mr. Jones.  Ms. Wicks

8    and Mr. Nieto, who represent Mr. McCants.  Ma'am, do you

9    remember your service as a alternate juror in this case?

10   **A.**  I do.

11   **Q.**  The trial lasted for many weeks.  During the trial some

12   concerns were raised such as defendants passing notes, looking

13   at jurors, and having access to juror information through the

14   juror selection process known as voir dire.  The Court

15   addressed these concerns without pausing the trial.

16          Then on January 9, 2018, an event occurred which caused

17   the trial to briefly pause.  One of your fellow jurors, in the

18   presence of at least some of the rest of the jurors and

19   alternates, expressed concern that persons, perhaps a

20   defendant's family members, might be taking pictures of the

21   jurors as they passed through the vestibule at the entrance to

22   the courtroom and the jury room.  We understand that juror may

23   have seen this as a significant event.  A few minutes later

24   you were interviewed by court staff about that event.

25          A day later on January 10, 2018, I spoke to the jury in

the courtroom and said:  One or more jurors had a concern that

perhaps someone outside of the jury room, in the courtroom

vestibule or courtroom hallway, had photographed or otherwise

captured the images of jurors.  This matter was investigated

that have report was received.  The investigation included the

examination of a relevant smart phone, camera-type device in

the possession of a relevant individual.  That investigation

revealed that there were no images, films, videos of the sort

that I have referred to captured on that telephone.

Today, I have some questions for you --

**A.** Okay.

**Q.** -- About the events of January 9, 2018.  Specifically, I

need your assistance in learning whether the events that --

whether the events of that day impacted your ability to

continue to be a fair and impartial juror for the remainder of

the trial.  The lawyers I introduced earlier are not here to

ask you questions, only the Court will do that, just me.  But

the lawyers are here to represent the interest of their

clients and propose follow-up questions that the Court may or

may not ask you in its discretion.

As you respond to my questions, please be careful not to

tell us about the jury's deliberations on the defendants'

guilt or innocence, about how the jury reached its verdict and

so forth, which presumably you don't know anything about

because you were an alternate juror and you didn't sit

1  ultimately and decide the case.

2         First of all, am I right about all of that?

3  **A.**  Yes.

4  **Q.**  You were excused after I delivered all of those

5  instructions, and you and the alternates left and you did not

6  deliberate on the verdict in the jury room; is that true?

7  **A.**  That's correct.

8  **Q.**  Do you remember the event on January 9th?

9  **A.**  I do.

10  **Q.**  Did you see anyone engaged in any action that suggested

11  that they were taking pictures of the jurors?

12  **A.**  Not that I recall.

13  **Q.**  Okay.  Do you want to think about it for a minute.  I'm

14  not implying the answer one way or the other, just want to

15  make sure you had enough time.

16  **A.**  No, I just remember -- I actually was probably sitting out

17  in the vestibule at the time, that's where I tended to hang.

18  But I mean, I read my book or the paper.  But I do

19  specifically know what you're talking about, because the other

20  juror was out there and he sort of freaked out.

21  **Q.**  Okay.  But returning to my first question, which is

22  whether you saw anything, you saw anyone engaged in any action

23  that suggested they were taking any pictures of the jurors,

24  your answer to that question is?

25  **A.**  I really don't remember.  Honest, I don't know if I did or

170

```
 1   if I didn't, or what I'm projecting what Paul -- you know,
 2   what the other juror said.
 3   Q.  Was there -- do you remember any juror making any
 4   statements indicating his or her belief that jurors might --
 5   that persons might be taking pictures of jurors?
 6   A.  Yes, that I do.
 7   Q.  What do you remember hearing?
 8   A.  I remember him saying they are taking -- they are out
 9   there taking pictures of us.
10   Q.  Okay.  And when you say him, who are you talking about?
11   A.  I believe his name was Paul.
12   Q.  What did he look like?
13   A.  I think he was of Indian descent.
14   Q.  Okay.  And he was male?
15   A.  Yes, he was male, average height, you know, brown skin.
16   Talked with a little accent.
17   Q.  And I don't want you to speculate or add anything to it,
18   but I do want know what you remember him saying?
19   A.  You know, just what I said that, hey, they're taking
20   pictures of us.  And I guess he thought specifically him, I
21   really didn't know.  I didn't -- and then I think we all ended
22   up back in the room, but that -- specifically, what I remember
23   him saying is somebody had -- you know, they're taking
24   pictures of us, they have a camera.  Don't know who it was.
25   Q.  Okay.  Do you remember then subsequent discussion that may
```

1    or may not have occurred among jurors and alternates in the

2    immediate aftermath of his statement?

3    **A.**  Oh, geez.

4    **Q.**  If you can't remember particulars, just answer me this,

5    was there discussion?

6    **A.**  Maybe to the point of, oh, really?  And then we all went

7    in, you know, the back room.  And then like you said before,

8    things came to a halt.  But that's -- I don't -- I didn't -- I

9    don't remember people specifically talking about it, you know,

10   amongst each other, because we didn't really talk.  I just

11   know that one particular juror was pretty freaked out.

12   **Q.**  Okay.  Did anyone, including yourself, suggest that these

13   concerns should be reported to the Court?

14   **A.**  I thought they were reported.

15   **Q.**  Okay.

16   **A.**  But I don't remember somebody saying, oh, we've got to

17   report it.  I'm pretty sure that that person probably did.

18   Because we did -- you did talk to us.

19   **Q.**  Okay.  So last kind of question in this area, I've kind of

20   already asked you this one, I'm going to ask you again so just

21   bear with me.  Did you hear or participate in discussion among

22   the jurors about the possibility of picture taking?  Can you

23   remember what was said?  This is just sort of the final

24   catch-all question if there's something else you're

25   remembering about this picture taking that your memory is kind

1    of popping up with?

2    **A.**  I really don't except that for what I've already said

3    about he, you know, look, they're taking pictures of us.  And

4    that's it.

5    **Q.**  Okay.  In responding to the next questions, I'm going to

6    again ask you to draw a line between events that occurred

7    prior to the start of deliberations and events that occurred

8    after the jury began deliberations.  I recognize this isn't

9    terribly important or relevant to you, because you were an

10   alternate juror.  But the law is very clear on this and that's

11   why I have to explain it with such clarity.  So bear with me

12   for a second.  It's very important.

13        By deliberations, I mean the point in the trial when no

14   more evidence was presented, the lawyers had made their

15   arguments, and I had read the instructions to you.  That's the

16   point when deliberations began.  I don't want to hear anything

17   about deliberations, just matters that happened or occurred or

18   came up before that.  So in any of your answers to my

19   questions now, you should be limiting them to events that

20   occurred, things that you thought or felt before deliberations

21   began.  To reiterate, in your answers to these questions you

22   should not tell us anything about what happened, what was

23   said, what you thought, or what you felt after the jury began

24   to deliberate, just up to that line and then, boom, that it's

25   it.

1     **A.**  Got it.

2     **Q.**  I've said it four times.  So it's probably pretty clear,

3     but it's a very important point.  So thank you for bearing

4     with me.

5         Now, here's the next question.  After any discussion

6     about possible picture taking on January 9 and 10, did you

7     feel intimidated by anything that had occurred?

8     **A.**  No.

9     **Q.**  Were you able to remain an impartial juror and were you

10    able to keep an open mind as the trial continued after that?

11    **A.**  Yes.

12    **Q.**  Do you believe that the events of January 9 and January

13    10, 2018, left you unable to continue to serve as a fair and

14    impartial juror in the case?

15    **A.**  No.

16    **Q.**  Do you believe that the events of January 9 and January

17    10, left you unable to fully consider the evidence and

18    arguments presented by both sides with an open mind?

19    **A.**  Can you say that again?  Is that like a trick question?

20    **Q.**  That's a mouthful, written by me.  And I'm a lawyer and I

21    sometimes don't make my questions as clear --

22    **A.**  It was the unable, felt like you were trying to trick

23    me.

24    **Q.**  It was a double negative.  I'm going to try it again.

25    **A.**  Okay.

1    **Q.**  Do you believe the events of January 9 and January 10 left

2    you unable to fully consider the evidence and arguments

3    presented by both sides with an open mind?  Did they leave you

4    unable to do that or could you still do that?

5    **A.**  No, I could still do that.  So, no?

6    **Q.**  Okay.  Are you hesitating because the question is

7    complicate or because you're not sure of the answer?

8    **A.**  No, because the question is complicated.  So I'm thinking

9    I'm saying no, because it had no effect on me.

10   **Q.**  All right.  Now, the next part of this involves me talking

11   to the lawyers on this private electronic device?

12   **A.**  Okay.

13   **Q.**  You won't be able to hear.  Instead we're going to turn on

14   the noise machine.

15   **A.**  Okay.

16   **Q.**  Which you remember from trial?

17   **A.**  I do.  Yup.

18   **Q.**  Okay.  And so that will be going on for a little while.

19   I'll have a private conversation with them you can't hear.

20   And when we're finished I'll come back and talk you again.  It

21   might take a couple of minutes.  So I'm going to ask you to be

22   patient with me, okay?

23   **A.**  Yup.

24            (Bench conference on the record.)

25            THE COURT:  Mr. Martinez, do you have any follow-up

1    questions?

2         MR. MARTINEZ:  Yes, Your Honor, especially in light

3    of this juror's responses to the last three questions or four

4    questions, it was 11, 12 and 13.  I want to circle back to the

5    couple of places where she mentioned that, I believe it was

6    Juror No. 4 she was referring to, that he was pretty freaked

7    out.  I'm aware of how after the fact that may appear on a

8    cold transcript.  But I do think that based on the totality of

9    her responses, as well as her demeanor in saying that Juror

10   No. 4 was pretty freaked out, it was pretty clear that she was

11   characterizing his reaction with an almost bemused -- you

12   know, she was chiding him for overreacting.  So I would like

13   the Court to ask a few follow-up questions, to the extent it's

14   relevant, to get her opinion as to the fact that he was

15   overreacting to what he claimed to have seen.

16        THE COURT:  All right.  How do you propose I do

17   that?

18        MR. MARTINEZ:  Well -- your Honor, I'll withdraw

19   it.

20        THE COURT:  Thank you.  Any other questions

21   Mr. Martinez?

22        MR. MARTINEZ:  No, Your Honor.

23        THE COURT:  Mr. Enzinna.

24        MR. ENZINNA:  Your Honor, I request that she be

25   asked follow-up questions with respect to exactly what she

1    meant when she said the other juror was quote, unquote,

2    freaking out.

3                THE COURT:  Okay.  Fair enough.  I'll do that.

4                (The following proceedings were had in open court.)

5    **BY THE COURT:**

6    **Q.**  Alternate Juror No. 6, you used the term "freaking out,"

7    and it would be helpful to the Court if you could further

8    develop that a little bit in terms of what did -- what does

9    that mean in the context of what was going on and what it

10   captured and so forth?  When you said that the other juror was

11   freaking out, tell me about that?

12   **A.**  Okay.  I guess he was very animated, he started talking

13   real fast, you know, uncharacteristically.  You know, we got

14   to know each other, you know, fairly well.  And maybe anxious.

15   I mean, he was nervous, I think.  I mean, I think he really

16   did think that they were taking pictures, even though, you

17   know, you had told us that they did not.  So to me, I use the

18   word freaking out, but that's what I meant.

19   **Q.**  Don't take this the wrong way, but I'm going to try to use

20   the same vernacular, would you describe your reaction to this

21   as freaking out?

22   **A.**  Uh, no.

23   **Q.**  How would you describe your reaction to the totality of

24   the event?

25   **A.**  I didn't really have a reaction.  I mean, it -- I don't

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

1   get rattled.  It is what it is.  I trusted what the Marshals

2   and everybody else who were with us all the time were doing.

3   I honestly paid it no real attention.

4          THE COURT:  We'll go back now on the private

5   channel.

6          (Bench conference on the record.)

7          THE COURT:  Mr. Enzinna, can you hear me?

8          MR. ENZINNA:  Yes, I can.

9          THE COURT:  Mr. Enzinna, can you hear me?

10         MR. ENZINNA:  Yes, I can hear you.

11         THE COURT:  Do you have any further questions

12  Mr. Enzinna.

13         MR. ENZINNA:  Yes, I would request -- I would

14  request that the Court ask her whether any of the other jurors

15  appeared anxious?

16         THE COURT:  Fair enough.

17         (The following proceedings were had in open court.)

18  **BY THE COURT:**

19  **Q.**  If you can remember, in relation to this event, can you

20  describe how other jurors reacted to it?  And I don't want to

21  put words in your mouth, so I'm going to leave it there, you

22  know, what if anything do you remember about that?

23  **A.**  I don't really recall anybody being overly concerned like

24  Paul was, that's -- I don't know whether he felt like it was,

25  you know, directed at him that day, that incident.  But I

1    don't think the rest of us who were out there -- it was

2    probably, I don't know, maybe four of us who typically went

3    out there, I don't remember anybody thinking anything about

4    it.

5               THE COURT:  Thank you.  We'll go back on the private

6    channel.

7               (Bench conference on the record.)

8               THE COURT:  Mr. Enzinna, do you have any other

9    questions?

10              MR. ENZINNA:  No, Your Honor.  No further

11   questions.

12              THE COURT:  Mr. Bussard, do you have any questions?

13              MR. BUSSARD:  No other questions.  Thank you, Your

14   Honor.

15              THE COURT:  Mr. Nieto or Ms. Wicks, do you have any

16   questions?

17              MR. NIETO:  No, Your Honor.

18              THE COURT:  Thank you.

19              (The following proceedings were had in open court.)

20              THE COURT:  Alternate Juror No. 6, that's a mouthful

21   in itself, we are finished.  I have no further questions for

22   you.  In a moment you'll be free to leave.  But before we

23   excuse you I want to say thank you to you and express the

24   Court's gratitude for your returning here, once again, to

25   answer these questions today.  Jury service is a big burden.

It's hard for people to discharge it, particularly during
COVID. But you didn't hesitate and you were here and we're
very grateful for your good citizenship in coming back and
answering our questions. But we are now finished. You can
gather up all your belongings. The courtroom clerk will take
you to the courtroom door, help you to get out of the
building. And you are excused and finished. Thank you,
ma'am.

            THE WITNESS: Thank you.

            THE COURT: Let's have Mr. Jaco wait outside. In
fact, Ms. Cusatis, have Mr. Jaco wait in the holding area.
We'll call for him.

            Okay. Let the record reflect there are no jurors or
witnesses in the courtroom and Ms. Smith has returned. The
question is, where are we going to go next in this proceeding?
We all know that we're going to be convening at 9:30 tomorrow
morning to hear from Juror No. 12, who will appear before
us -- excuse me, by Zoom from Geneva, Switzerland. And then
once we have taken her testimony we will have heard from all
of the jurors and the alternate jurors in the case. That then
leaves open the question of whether we're going to take the
testimony of other witnesses.

            As I indicated, the Court would take the lead with
respect to jurors and alternate jurors under the umbrella of
their retaining juror status, at least to some significant

1    extent.  That task has been accomplished with the exception of

2    Juror No. 12 and we would resume to the normal -- or to that

3    procedure tomorrow morning.

4            But having completed that, let me turn to the

5    government who -- it's the government that has the burden of

6    proof in this proceeding, to see if they wish to call any

7    witnesses during the additional time that we have left today

8    and to share with us, if they are able, what their thoughts

9    and plans are for the remainder of the hearing, in terms of

10   the witnesses that they may wish to present.

11           Mr. Martinez?

12           MR. MARTINEZ:  Yes, Your Honor.  I don't think

13   there's anything else we'd like to accomplish today.  We have

14   no further witnesses to call today.  However, as I've

15   indicated during our last two status conferences, we are

16   hoping to call at least one nonjuror witness on Monday morning

17   the 17th.

18           THE COURT:  Remind us again who that is.

19           MR. MARTINEZ:  It's Deputy U.S. Marshal Winstone

20   Nisbet.  And there's potentially a second witness whose

21   testimony would be relevant to the same issues.

22           THE COURT:  Who is that?

23           MR. MARTINEZ:  That would be the Court Security

24   Officer Beverly.  Although, I think we're likely to call just

25   Deputy Marshal Nisbet at this point.

1          THE COURT:  Do you know at this point whether you

2    will call Andrew Jaco, a former law clerk who served in this

3    court during that time period and who took notes during the

4    session that the courtroom deputy clerk convened at the

5    Court's direction, Ms. Powell.  And whose notes then -- well,

6    made it into the record in the form of his testimony when the

7    Court was trying to decide whether or not there was a

8    sufficient level of concern to conduct a *Remmer* hearing.  Do

9    you have any intention to call Mr. Jaco?

10         MR. MARTINEZ:  No.

11         THE COURT:  Mr. Enzinna, do you?

12         MR. ENZINNA:  No, Your Honor.

13         THE COURT:  Mr. Bussard, do you?

14         MR. BUSSARD:  No, Your Honor.

15         THE COURT:  Ms. Wicks, do you?

16         MS. WICKS:   No, Your Honor.

17         THE COURT:  So may Mr. Jaco then be excused from his

18    subpoena and told he need not return to court.  Counsel?

19         MR. MARTINEZ:  Yes.

20         THE COURT:  All agree.

21         MR. ENZINNA:  Yes, Your Honor.

22         MS. WICKS:  Yes, Your Honor.

23         THE COURT:  So Ms. Smith, Mr. Jaco should be excused

24    from his subpoena.

25         Second question, the Court placed under subpoena

1    Courtroom Deputy clerk, now Operations Supervisor Camille

2    Powell, who is an employee of this court.  Mr. Martinez, do

3    you anticipate calling Ms. Powell as a witness during this

4    hearing?

5                MR. MARTINEZ:  No.

6                THE COURT:  Mr. Enzinna, do you?

7                MR. ENZINNA:  No, Your Honor.

8                THE COURT:  Mr. Bussard, do you?

9                MR. BUSSARD:  No, Your Honor.

10               THE COURT:  Ms. Wicks, do you?

11               MS. WICKS:   No, Your Honor.

12               THE COURT:  May Ms. Powell be excused from her

13    subpoena and instructed she need not plan to appear during

14    this proceeding.  Counsel?

15               MR. ENZINNA:  Yes.

16               MR. BUSSARD:  Yes.

17               MS. WICKS:  Yes.

18               THE COURT:  Ms. Powell should be instructed,

19    Ms. Smith, that she's released from her subpoena and does not

20    expect to be called to testify during this proceeding.

21               Other than that I'm not aware of any witnesses CSO

22    Beverly and Deputy Marshal Nisbet, who have been subpoenaed to

23    testify during this trial.  Has the government subpoenaed

24    anybody else?

25               MR. MARTINEZ:  There has been one more subpoena

1    issued, that's Deputy U.S. Marshal Golob.

2              THE COURT:  Oh, Golob, right.  What should the

3    status of Deputy Golob be coming out of today's hearing?

4              MR. MARTINEZ:  I think it's unlikely, but I'm not

5    prepared to tell the Court that --

6              THE COURT:  So Golob, is he subpoenaed for next

7    Monday, the 17th?

8              MR. MARTINEZ:  Yes.

9              THE COURT:  Okay.  So he remains under subpoena and

10   still is required to appear, together with Beverly and Nisbet.

11             Anyone else, Mr. Martinez?

12             MR. MARTINEZ:  No, sir.

13             THE COURT:  Mr. Enzinna, do you have anyone under

14   subpoena, anyone else that we need to be addressing at this

15   point?

16             MR. ENZINNA:  We do not have anyone under subpoena,

17   Your Honor, but I have an investigator who has been standing

18   by, and in order to make sure there would be no taint on the

19   proceeding, I've asked him not to do anything until this

20   questioning of the jurors was over.  But we have information

21   that jurors have made comments to other people about their

22   service here.  And I'd like to ask him to follow up on that.

23   I'm going to instruct him not to talk to the jurors or their

24   families, but there are other people I'd like him to talk to.

25   And I'd like to have a couple days to do that.

1          THE COURT:  Yes, we can hold the record open to the

2     extent that this hearing has not yet been completed.  You've

3     already anticipated the Court's central admonition, which is

4     that no lawyer is permitted to have any contact with any

5     juror, any family member or close associate of any juror in

6     this case without the Court's advance permission.  And you're

7     aware of that directive, you've just referenced it, correct,

8     Mr. Enzinna?

9          MR. ENZINNA:  Yes, although I'm a little unsure what

10    a close associate would mean.

11         THE COURT:  Well, probably if you want to be safe,

12    you would propose to the Court the discussion that you hope

13    the investigator could have.  But we're very protective of the

14    jurors.  All of them have appeared here in open court, been

15    subject to the questions that I have put to them, those

16    questions influenced by the input of counsel.  We're trying to

17    strike the right balance here between fully illuminating

18    whatever relevant issues exist and at the same time being

19    protective of jurors, their privacy, and their truly sacred

20    duty and responsibility in the criminal justice process.  So

21    it's a very delicate and important balance.

22         I can't give you a better definition of close

23    associate than close associate.  If you've got a question, I

24    would suggest you put it to the Court first.

25         MR. ENZINNA:  I think what I will do then, Your

1    Honor, is ask my investigator for a list and provide that to

2    the Court.

3            THE COURT:  Very good.  And if you could, do your

4    best to have him detail what he believes that relationship is

5    with the juror.

6            MR. ENZINNA:  And one other matter for Monday.

7            THE COURT:  Yes, sir.

8            MR. ENZINNA:  I don't know the witnesses the

9    government is planning on calling on Monday.  I don't know

10   what it is that they're going to testify to or what it is that

11   they can testify to that would be relevant.  I mean, I suppose

12   they can testify about what they saw the jurors do and what

13   they heard the jurors do.  But if there's anything beside

14   that, I think we would like to know so we can be prepared.

15           THE COURT:  Proffer, Mr. Martinez, as to what the

16   witnesses might be asked about.

17           MR. MARTINEZ:  Well, Your Honor, first of all, I

18   want to come back to Mr. Enzinna's witnesses, but to answer

19   his questions squarely, we have filed as exhibits to a status

20   report I believe the Court requested, at some point up to the

21   run up of this proceeding.  The Court asked us to identify the

22   witnesses that we intended to call and to produce any reports

23   prepared in connection with the investigation that was done.

24           We filed reports, as well as an e-mail from, I think

25   it was Jack Leo to AUSA Hanlon that went into the involvement

1    of DUSM Nisbet and his colleague Deputy Marshal Golob in the

2    investigation that was done.  CSO Beverly prepared a report

3    about what was relayed to him.  Those were filed as exhibits.

4    They're on the Court docket.  There's no mystery about it.

5    They've been turned over so the question is answered.

6              THE COURT:  Let me ask you this:  Would you expect

7    that any examination of those witnesses would be within the

8    scope of the reports that they filed in the case or do you

9    have plans to take them other places when they testify?  I

10   think that's the most expansive interpretation that I can give

11   to Mr. Enzinna's request.

12             MR. MARTINEZ:  No, it's all within the scope of what

13   their -- I mean, it's never the case, Your Honor, that a

14   witness gets on the stand and recites verbatim what is in a

15   written report.  There's questioning, never perfectly mirrors

16   a report.  But it's 100 percent fair to say those reports

17   capture the scope of every relevant witness's testimony.

18             THE COURT:  Okay.  Well, and is it fair to say that

19   those are the only statements that the government has in the

20   form of statements or reports that have been written by those

21   individuals in relation to this incident?

22             MR. MARTINEZ:  Yes.  When the Court asked for the

23   reports, we had AUSA Hanlon who at the time was a supervisor,

24   he's now our crim chief, but he worked with the Marshals

25   Service and the other participants in responding and

1    investigating to this event as best he could find any

2    paperwork that was relevant.  And other than e-mails about

3    meet me here or meet me there, anything that had a substantive

4    aspect to it we included, and it wasn't much.

5            THE COURT:  I don't have much suspicion of a

6    surprise coming from the government in this regard, given the

7    disclosure of those earlier reports.  It seems to me that

8    defense counsel could take those reports as at least general

9    indicators of the scope of the testimony that the witnesses

10   will provide.  I'm not entering an order restricting them to

11   that scope.  I wouldn't think that there's anything in the

12   Federal Rules that would authorize such an order.  But, in

13   general, the point is that there not be a surprise and that we

14   not be going in directions or on to topics that haven't been

15   touched upon in the discovery, or in the this case those

16   reports that have been produced.  And from Mr. Martinez'

17   answer, I don't detect any such plans or intentions.

18           Mr. Martinez, did you have anything else?

19           MR. MARTINEZ:  I do, Your Honor, because the irony

20   is that we have put those reports into the record and there

21   have been multiple occasions along the road to this proceeding

22   that we predicted Mr. Enzinna would come and say I have people

23   who talked to jurors in the case and we'd like to call them.

24   And he to this day will not identify them.  And he says, well,

25   my investigator still needs to go talk to them.

1          And so we object to the manner in which this is

2     being done.  There was an April 26 witness disclosure

3     deadline.  And, you know, they're complaining that they don't

4     know what our witness who we've identified and disclosed

5     reports for are going to say, and telling us we may have

6     witnesses we want to call, but we're not going to tell you who

7     they are what they're going to testify about.  We think that's

8     inappropriate and we object.

9          THE COURT:  So I suppose Mr. Enzinna's come back to

10    that is going to be, well, I haven't been able to talk to the

11    jurors, so I don't know exactly where things are going to

12    lead.  Of course, the government hasn't been able to talk to

13    the jurors either.  Everyone is sort of similarly impaired in

14    that respect.

15          Mr. Enzinna, do you know now of individuals that you

16    may call?

17          MR. ENZINNA:  I do not know of any particular

18    individuals that I plan to call at this point.

19          THE COURT:  Do you think it's likely that you will

20    call individuals?

21          MR. ENZINNA:  I do know of at least one individual

22    who has told other people about communications from one of the

23    jurors.

24          THE COURT:  Can you tell us who that is?

25          MR. ENZINNA:  I don't know her name.

1          THE COURT:  Can you tell us who she is by general

2    descriptors?

3          MR. ENZINNA:  I believe she is a -- I want to say a

4    hairdresser or a friend of one of the jurors.

5          THE COURT:  Hairdresser for a friend of one of the

6    jurors.  Okay.  And how do you plan to locate this person?

7          MR. ENZINNA:  I -- I plan to have my investigator do

8    that.

9          THE COURT:  Do you know what information your

10   investigator will be working from as they attempt to

11   accomplish that?

12         MR. ENZINNA:  I do not.

13         THE COURT:  All right.  Well, let's see how this

14   plays out, Mr. Martinez.  The one thing we're not going to

15   permit is for anyone to be ambushed or surprised here.

16         MR. MARTINEZ:  So just for the record --

17         THE COURT:  Let me finish.

18         MR. MARTINEZ:  Sorry.

19         THE COURT:  If there is going to be testimony in

20   that regard, I'll weigh the totality of those circumstances

21   and make sure that the government has what, in my view --

22   might not be yours -- but in my view is a sufficient

23   opportunity to fully develop that evidence, even if it

24   requires a postponement, so that the government can help the

25   Court to know the totality of the picture.

1           We're trying to find out the full scope of the

2     impact on the jurors' abilities to be fair and impartial

3     during this trial after the incident of January 9.  And to the

4     extent that this somehow sheds light on that, then we will

5     hear it.  But we will also give the government a fair and

6     reasonable opportunity to conduct their inquiries and know the

7     scope of this.

8           MR. MARTINEZ:  Well, to that effect, Your Honor, we

9     would ask which juror is associated with this hairdresser?

10     How did this information come to light?  And those are all

11     thing we are entitled to know.

12           THE COURT:  Which juror, Mr. Enzinna?

13           MR. ENZINNA:  I don't know at this point.

14           THE COURT:  Well, what do you know?

15           MR. ENZINNA:  I know that one of the juror -- it was

16     told to me.

17           THE COURT:  Who told you?

18           MR. ENZINNA:  Mr. Nieto.

19           THE COURT:  Okay.  Mr. Nieto, perhaps you're more

20     the source of this information, I should inquire of you.  What

21     have you got?

22           MR. NIETO:  I'm sorry?

23           THE COURT:  What have you got?  What is coming?

24           MR. NIETO:  Your Honor, a family friend of mine is

25     a -- was a coworker slash friends with one of the jurors.  And

1    so years ago I had met with her at a birthday party.

2              THE COURT:  This is -- who's the her?

3              MR. NIETO:  My friend, the friend of the juror.

4              THE COURT:  Yes.

5              MR. NIETO:  And so my friend had told me that they

6    had this friend that was in a trial and had expressed -- you

7    know, just said a few things about what they had discussed.  I

8    hadn't thought much of it, obviously, because I wasn't in the

9    case until this issue popped up.

10             So I had touched base with my friend to find out if

11   she had any independent recollection about the juror and the

12   issue of potential photo taking.  And she had some.  I did not

13   go into it with much detail, because I did not want to run

14   afoul or potentially run afoul.  I can tell the Court with a

15   great deal of confidence, my understanding is they used to be

16   coworkers.  They no longer are.  And I had made concerted

17   efforts to instruct my friend to not say anything about

18   anything.  And she assured me that they hadn't, because they

19   hadn't seen each other since they were no longer working

20   together.

21             So I haven't done any follow-up on that.  I

22   anticipate presumably doing that, in the context of what

23   today's hearing was.  Unfortunately, I don't know which juror

24   was her coworker slash acquaintance.  So that would be part of

25   the analysis before we reach out to my friend again for more

1    details.

2        THE COURT:  Okay.  Well, you're crystal clear,

3    you've already acknowledged it, that you understand that it

4    would be improper for anyone, you, anyone on your behalf, even

5    though the birthday party friend, so forth, to reach out to

6    the juror in this context.  And you've acknowledged that, Mr.

7    Nieto.  And let the record reflect, I've worked with Mr. Nieto

8    for years in this courthouse, and he is a paragon of ethical

9    practice in my experience.  So I have no doubt you know

10   exactly where that line is and won't cross it.

11       But what do you plan to do now?

12       MR. NIETO:  Well, Your Honor, again, I'm going to

13   sort of meet up with everyone and ask -- what I presume is try

14   to discern which juror it was, find out if it was anything

15   inconsistent or any additional information that had -- that is

16   out there that the Court does not have.  And then we would

17   presumably call her as a witness to clarify that.  I don't

18   know if at this time if she has additional information --

19       THE COURT:  Sure.

20       MR. NIETO:  So we're still in the -- we've hit a

21   pause on the fact finding mission until the conclusion of

22   today or the testimony.

23       THE COURT:  Okay.  So I don't have any concerns

24   about this, but I would like to see this come to fruition one

25   way or another, if possible, by next Monday.  And sort of sort

1    this out.  And then advise the Court whether the defense team

2    in general plans to call a witness.  If so, who it is.

3         If you're still uncertain, but you start running up

4    against restrictions that you think are blocking the way in

5    terms of what you're trying to do, that you identify that that

6    to the Court and then make your petition as to here's what we

7    need to do next, and we're mindful of the rule that forbids us

8    from having contact with the jurors without the Court's

9    permission.  So, here's what we propose to do.  Even if it's

10   not quite the juror, it's getting pretty close to the juror

11   and so forth.  And then, you know, make your argument.  And

12   we'll give the government to opportunity to respond.  And

13   we'll take the additional steps that justice and the evidence

14   indicate that we should.

15        MR. MARTINEZ:  Your Honor, I think there's one

16   question the Court's forgetting to ask, and that's who is this

17   witness?  Mr. Enzinna told the Court, I don't know who it is.

18   Mr. Nieto is sitting over there knowing who it is, not saying

19   anything.  I think that says a lot about the status of

20   reciprocal discovery --

21        THE COURT:  Mr. Martinez, find a way to take the

22   edge out of your points like this.  We're all in very choppy,

23   difficult waters here.  And all of us have a professional

24   responsibility to do our best in difficult circumstances,

25   which this Court is certainly full of, all of us have been

1    thrust into them.  But let's keep it -- let's keep the tone

2    civil.

3           That said, Mr. Nieto, I think it's a fair point, are

4    you ready to identify the witness?

5           MR. NIETO:  Well, Your Honor, the -- with my limited

6    conversations with my friend, she had expressed no interest in

7    involving herself in this matter.

8           THE COURT:  Okay.

9           MR. NIETO:  I don't know if I'll call --

10          THE COURT:  Okay.  So I'll leave it at that.  But I

11   do want you, within 48 hours, so by noon on Wednesday, either

12   identify the witness or file a notice with the Court that

13   you're not going there.

14          MR. NIETO:  Yes, Your Honor.

15          THE COURT:  Okay.  Mr. Martinez, there you've got

16   notice.  There's either -- you're going to know by Wednesday

17   at noon that they're not going anywhere or you're going to

18   have a name.

19          MR. MARTINEZ:  Your Honor, the deadline was April

20   26th.  I appreciate what the Court is trying to do, but the

21   fact of the matter is this shows the discovery rules are not a

22   two-way street and we're doing litigation by ambush.

23          THE COURT:  Yeah, well, the discovery rules have

24   never been a two-way street.  And there are all kinds of

25   rights that are protected in the Bill of Rights and in the

1    United States Constitution.  And, unfortunately, very few of

2    them run in favor of your client.  They do run in favor of the

3    defendants.

4            So, there we are.  We'll have a submission from

5    defense counsel by noon on Wednesday to indicate whether or

6    not there's going to be an additional witness called.  Do

7    you -- is this basically it, Mr. Enzinna, or are there

8    potentially other witnesses?

9            MR. ENZINNA:  There are potentially others.

10           THE COURT:  All right.  What can you tell me about

11   them.

12           MR. ENZINNA:  I don't know any -- I don't know

13   anything about any of them.  I'm looking to find them.

14           THE COURT:  All right.  So you are speculating that

15   there might be witnesses that you might find in the coming

16   days, but you have no basis right now for believing there are

17   any?

18           MR. ENZINNA:  The only basis I have for believing is

19   that this has happened with respect to other people.

20           THE COURT:  Okay.  So is that speculation on your

21   part because it's human nature and people talk, or is it

22   rooted in some shred of evidence that somebody, you know, was

23   talking about their experiences on this jury?

24           MR. ENZINNA:  I have no direct evidence -- I have no

25   evidence that any of the jurors did say anything to anybody

1   else.

2              THE COURT:  But that's not going to stop you and

3   your investigator from looking for it in the next few days?

4              MR. ENZINNA:  Correct.

5              THE COURT:  Okay.  Presumably, you were looking for

6   it previously and haven't come up with any yet, and are asking

7   the Court for some additional window of time within which to

8   do that?  Or is it your position that, no, we weren't even

9   looking for it because we were fearful of crossing the Court's

10  boundaries?

11             MR. ENZINNA:  The latter.

12             THE COURT:  Okay.  Well, in light of that, search

13  away.  And apprise the Court as soon as possible as to whether

14  you have identified other witnesses, but no sooner than next

15  Monday.  The 48-hour rule with respect to the Nieto connection

16  still stands.  So we need to have an answer on that one, one

17  way or the other.  And we'll see where we are on Monday.

18             You know, what's the prejudice with respect to this,

19  Mr. Martinez?  I'm holding the record open.  There are issues

20  with respect to the Swiss juror.  There was the possibility

21  that was going to hold things open.  The judgments have been

22  vacated in this case, but no defendant has been released from

23  custody.  They're all incarcerated.  The Court anticipates a

24  substantial briefing period after this hearing has been

25  completed.  Either way, this matter won't be resolved in the

1    district court for many, many weeks.  I don't see what the

2    harm is in allowing the sequence to proceed in the manner that

3    it is.  I don't see how the government is prejudiced or

4    prejudiced in a way that the Court should take notice of.

5         MR. MARTINEZ:  Well, we need notice of who these

6    witnesses are and what they're going to say.  We need a

7    proffer of what they're going to say in the same way that

8    they've asked for proffer what is our witnesses are going to

9    say, so we can object to testimony that may be beyond the

10   scope of the order to conduct this hearing, testimony that may

11   implicate Rule 606(b) or similar interests.  And so long as we

12   have an adequate period in which to make those objections and

13   make those records and litigate any issues that may arise out

14   of the anticipated testimony, then there is no prejudice.

15        But what's happening now is this is being done in a

16   way that could potentially deprive of us the period we would

17   need to make those objections.  That's the intent behind a

18   witness disclosure deadline.

19        THE COURT:  Don't borrow trouble.  As defense

20   counsel are painfully aware, this Court has opened all kinds

21   of processes to them.  And the fact that the Court opens those

22   processes to them doesn't ultimately mean that they prevail on

23   what it is that they want to do, who they want to call, the

24   questions they want to ask and so forth.  It's a multi-step

25   process.  The first part is making sure that the foundational

1    issues are handled correctly.

2            You know, it's ironic in a case such as this one,

3    where the Court of Appeals concluded that I made mistakes in

4    terms of the foundation that I laid in the initial phases of

5    this particular dispute, it's ironic that we would be

6    considering the question of whether we're going to curtail

7    those things further.  We're not going to.  It's going to be

8    an open and complete process.  And that works in both

9    directions.  I'm going to give the defendants the latitude

10   that they've requested here.  But I'm also not going to

11   indulge any surprise or ambush or anything along those lines.

12   And the government will be given the time that they reasonably

13   need to react to whatever they're confronted with.

14           That's just how this is going to be conducted.  I

15   think if nothing else, this record since this remand has shown

16   that this court's intention is a painstaking, careful,

17   step-by-step review.  And that will continue until I

18   ultimately make my determination about whether or not the

19   government has carried their burden in this *Remmer* hearing.

20           Okay.  I think we are finished for today and we

21   should plan to reconvene -- let's all try to be here by say

22   9:20 tomorrow morning.  Make sure the technology is all up and

23   working and operating.  Tomorrow's session involves just the

24   one witness who will be appearing via Zoom.  We've got nobody

25   else on the docket.  We'll complete that and then we'll take

1   another recess over until Monday the 17th of May.  And then we

2   will continue then with the government's proof, if any.

3          We will wind that up and know by then whether the

4   defendant's intend to present proof.  We'll know because of at

5   least one disclosure that will have come in by noon on

6   Wednesday.  And we'll be hearing other things along the way

7   from the defense camp in terms of these potential other

8   witnesses.  But the only firm deadline that's imposed, other

9   than the noon on Wednesday deadline, is Monday the 17th.  By

10  then, defense counsel's going to have to tell us whether

11  they've got any other witnesses.

12         The defendants are remanded to the custody of the

13  Marshal.  Counsel are excused.  Court's in recess.  Thank you.

14         (The proceedings were concluded.)

15

16         I, Christine Asif, RPR, FCRR, do hereby certify that
    the foregoing is a correct transcript from the stenographic

17  record of proceedings in the above-entitled matter.

18         _____/s/_____
              Christine T. Asif
           Official Court Reporter

19

20

21

22

23

24

25

```
 1                              INDEX

 2    Witness Name                                         Page

 3    Juror No. 4 (01/09/2018)

 4         Examination By the Court ...................... 11

 5    Juror No. 1

 6         Examination By the Court ...................... 23

 7    Juror No. 2

 8         Examination By the Court ...................... 35

 9    Juror No. 3

10         Examination By the Court ...................... 53

11    Juror No. 4

12         Examination By the Court ...................... 65

13    Juror No. 5

14         Examination By the Court ...................... 72

15    Juror No. 6

16         Examination By the Court ...................... 84

17    Juror No. 7

18         Examination By the Court ...................... 94

19    Juror No. 8

20         Examination By the Court ...................... 101

21    Juror No. 9

22         Examination By the Court ...................... 108

23    Juror No. 10

24         Examination By the Court ...................... 118

25
```

```
 1                         INDEX (cont'd)

 2   Witness Name                                        Page

 3   Juror No. 11

 4      Examination By the Court ...................... 125

 5   Alternate Juror No. 3

 6      Examination By the Court ...................... 136

 7   Alternate Juror No. 4

 8      Examination By the Court ...................... 146

 9   Alternate Juror No. 5

10      Examination By the Court ...................... 155

11   Alternate Juror No. 6

12      Examination By the Court ...................... 166

13

14

15

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 26 188:2.
April 26th 194:19.
December 18th
  164:15.
December 7th
  164:15.
January 10 3:6,
  57:18, 78:17,
  99:9, 113:21,
  123:7, 152:17,
  152:23, 153:2,
  173:16, 174:1.
January 10, 2018
  25:4, 28:9, 37:8,
  41:13, 55:1, 58:3,
  66:7, 69:15, 74:7,
  78:22, 85:25,
  90:21, 95:25,
  98:22, 102:20,
  106:9, 110:4,
  120:5, 123:3,
  127:13, 132:2,
  137:24, 141:13,
  147:23, 157:12,
  167:25, 173:12.
January 25, 2018
  23:20, 35:20,
  53:23, 64:9, 73:1,
  94:16, 101:14,
  108:22, 118:24,
  126:7, 136:17,
  146:17, 156:4,
  166:17.
January 25th, 2018
  84:20.
January 9 3:5, 14:8,
  18:5, 26:5, 27:24,
  28:9, 34:6, 41:7,
  41:13, 45:19,
  46:12, 56:1,
  57:18, 58:1, 58:3,
  62:19, 67:7, 69:9,
  69:15, 75:7,
  77:14, 78:17,
  78:22, 86:25,
  90:13, 90:21,
  98:16, 98:22,
  99:9, 106:3,
  106:9, 111:8,

113:15, 113:21,
  121:4, 122:22,
  123:3, 123:7,
  131:18, 132:2,
  141:7, 141:13,
  152:17, 152:23,
  153:2, 158:23,
  161:8, 161:12,
  161:15, 164:3,
  173:6, 173:12,
  173:16, 174:1,
  190:3.
January 9, 2018
  12:2, 12:12, 13:7,
  13:14, 14:1,
  24:20, 25:16,
  36:23, 37:21,
  38:9, 54:17,
  55:13, 66:19,
  73:23, 74:19,
  85:16, 86:12,
  95:15, 96:12,
  102:10, 103:7,
  109:20, 110:16,
  119:21, 120:17,
  127:4, 127:25,
  128:15, 137:15,
  138:11, 147:14,
  148:10, 157:3,
  157:24, 167:16,
  168:12.
January 9, january
  10 141:24, 143:12,
  144:18, 163:19.
January 9th 29:21,
  46:19, 97:1,
  103:22, 142:23,
  164:18, 169:8.
January 9th, 2018
  65:23.
January 9th, january
  47:1.
January, 2018 2:11,
  3:21.
November 20 23:20.
November 20, 2017
  35:20, 53:23,
  64:9, 73:1, 94:16,
  101:14, 108:22,
  118:24, 126:7,

  136:17, 146:17,
  156:4, 166:17.
November 27 12:15.
November 27, 2017
  12:11.
November 9 102:10.
.
.
< 0 >.
01/09/2018 200:5.
.
.
< 1 >.
1 4:20, 22:21, 23:7,
  23:16, 43:5,
  44:15, 200:9.
10 27:24, 41:7,
  57:18, 69:9,
  77:14, 90:13,
  98:16, 106:3,
  113:15, 118:11,
  118:13, 118:22,
  122:22, 131:18,
  141:7, 161:8,
  161:13, 161:15,
  164:3, 173:6,
  200:45.
100 8:3, 186:16.
101 1:48, 200:39.
108 200:43.
10th 4:3, 4:13,
  4:17, 29:16,
  47:1.
11 29:13, 59:19,
  79:22, 125:7,
  125:17, 135:3,
  175:4, 200:7,
  201:5.
11. 125:6.
118 200:47.
12 4:24, 5:8, 9:21,
  11:4, 33:13,
  175:4, 179:17,
  180:2.
12. 4:21, 4:24.
125 201:7.
12:45 83:22.
12:45. 83:25,
  84:2.
13. 59:19, 175:4.

136 201:11.
146 201:15.
15 33:13, 33:14.
155 201:19.
16 33:14.
163 126:6.
166 201:23.
17th 180:17, 183:7,
  199:1, 199:9.
.
.
< 2 >.
2 4:20, 34:16, 35:7,
  35:16, 43:5, 43:9,
  43:10, 46:18,
  46:22, 46:24,
  52:11, 200:13.
20 33:15.
2017 2:10, 23:18,
  84:20.
2018 23:18, 29:17.
2018. 2:10.
2021 1:18.
20th 84:20.
21201 1:49.
23 200:11.
.
.
< 3 >.
3 4:20, 43:5, 53:4,
  53:11, 53:20,
  136:2, 136:7,
  136:14, 145:13,
  200:17, 201:9.
3. 43:5, 63:19.
34 117:10.
35 200:15.
35. 117:10.
38 117:10.
.
.
< 4 >.
4. 4:1, 16:7,
  114:24, 154:19.
45 83:22.
48 194:11.
48-hour 196:15.
4th 1:48, 2:6, 7:22,
  163:1.
.

.
< 5 >.
5 4:21, 72:13,
  72:14, 72:23,
  76:2, 79:19, 83:1,
  155:8, 155:16,
  156:1, 200:25,
  201:17.
5. 165:18.
53 200:19.
.
.
< 6 >.
6 76:4, 84:5, 84:6,
  84:8, 84:17,
  166:6, 166:7,
  166:14, 176:6,
  178:20, 200:29,
  201:21.
6. 93:16.
606(b 61:2, 61:8,
  197:11.
606(b)(1 60:19.
65 200:23.
6th 30:21.
.
.
< 7 >.
7 18:25, 94:1, 94:3,
  94:12, 100:14,
  142:22, 200:33.
72 200:27.
7A 8:17, 8:23,
  20:10, 53:2.
.
.
< 8 >.
8 100:25, 101:1,
  101:11, 200:37.
8. 108:1.
84 200:31.
.
.
< 9 >.
9 108:10, 108:11,
  108:19, 200:41.
9. 118:3.
94 200:35.
9:20 198:22.
9:30 5:1, 179:16.

9th 2:10, 3:1, 3:20,
  4:3, 4:13, 4:15,
  4:16, 139:3,
  149:6, 163:3.
_____/s/_____
_____ 199:20.
.
.
< A >.
a.m. 5:1.
abilities 190:2.
ability 15:19, 19:3,
  25:17, 37:22,
  45:20, 46:5,
  49:13, 52:6,
  55:14, 62:12,
  62:20, 66:20,
  74:20, 86:13,
  92:16, 96:13,
  103:10, 110:17,
  120:18, 128:2,
  138:12, 143:16,
  148:11, 157:25,
  164:8, 165:3,
  168:14.
above 8:18.
above-entitled
  199:18.
absolute 135:22.
Absolutely 5:9,
  28:8, 35:24, 39:4,
  129:9.
accent 170:16.
acceptable 60:5.
acceptance 3:15.
access 10:6, 13:11,
  20:6, 20:9, 20:13,
  24:17, 32:25,
  36:20, 54:14,
  65:20, 73:20,
  85:13, 95:12,
  102:7, 109:17,
  119:18, 127:1,
  137:12, 147:11,
  156:25, 167:13.
accidentally
  124:20.
accommodate 8:16.
accomplish 180:13,
  189:11.

accomplished
  180:1.
Accordingly 3:2,
  3:9, 8:13, 19:8,
  20:10, 45:13,
  47:20, 82:11,
  92:21, 143:18,
  143:20, 164:9.
accountable 144:9.
accused 50:25.
acknowledged 192:3,
  192:6.
acknowledging
  52:2.
acknowledgment
  163:13.
acquaintance
  191:24.
across 60:3,
  128:21.
act 15:7.
action 26:7, 38:12,
  56:4, 67:10, 75:9,
  87:2, 97:4,
  103:24, 111:10,
  121:6, 128:18,
  139:5, 149:8,
  159:2, 169:10,
  169:22.
actual 76:19,
  89:19.
actually 4:16,
  10:24, 51:2,
  51:25, 57:20,
  71:6, 83:13,
  131:20, 144:14,
  150:17, 161:4,
  169:16.
add 87:16, 170:17.
addition 24:4, 48:6,
  64:17, 114:24.
additional 18:25,
  19:23, 21:9,
  34:10, 108:3,
  116:6, 134:17,
  134:24, 142:22,
  145:9, 180:7,
  192:15, 192:18,
  193:13, 195:6,
  196:7.

additions 19:1.
address 6:9, 80:8.
addressed 13:13,
  19:9, 24:19,
  36:22, 54:16,
  65:22, 73:22,
  79:22, 85:15,
  89:14, 89:21,
  95:14, 102:9,
  109:19, 119:20,
  127:3, 137:14,
  147:13, 157:2,
  167:15.
addressing 183:14.
adequate 197:12.
administer 65:3.
admissible 60:18,
  60:21.
admit 44:21.
admonition 184:3.
advance 3:13, 6:23,
  184:6.
adversely 3:6.
advise 5:19,
  193:1.
advised 52:20,
  83:10.
affairs 5:21.
affect 62:11, 107:9,
  144:19.
affected 19:2,
  49:12, 81:24,
  143:16, 144:1.
affirmative
  163:12.
affirmatively
  92:18.
afoul 6:15,
  191:14.
afraid 134:12.
African-american
  111:25, 115:13,
  116:14, 139:23,
  159:14, 159:15,
  160:5, 163:16.
after-any 98:15.
aftermath 171:2.
afternoon 84:15,
  84:16, 94:8,
  101:7, 101:8,

108:19, 118:20,
  118:21, 125:15,
  125:16, 125:25,
  136:6, 146:13,
  155:24, 166:14.
afterwards 89:10,
  92:14.
age 88:1, 117:6,
  139:19, 159:13.
ago 42:2, 76:17,
  78:1, 88:25,
  101:12, 129:8,
  135:10, 145:17,
  148:14, 154:22,
  191:1.
agree 61:14, 119:6,
  156:10, 181:20.
agrees 18:7.
ahead 18:23, 20:12,
  30:14, 34:8, 35:5,
  48:22, 60:25,
  83:13, 130:5,
  133:7, 155:11.
aid 61:11.
al 2:3, 2:5, 12:4,
  12:14, 23:17,
  23:22, 35:22,
  53:25, 64:11,
  73:3, 84:22,
  94:18, 101:16,
  108:24, 119:1,
  126:9, 146:19.
Alan 1:37.
allow 10:10,
  52:22.
allowing 131:21,
  197:2.
allows 61:8.
almost 49:24,
  175:11.
already 6:1, 23:4,
  29:19, 30:2, 40:8,
  48:6, 48:11, 50:2,
  89:2, 89:6,
  112:10, 144:14,
  150:7, 151:11,
  171:20, 172:2,
  184:3, 192:3.
alternates 4:9,
  4:22, 13:17,

24:23, 37:1,
54:20, 66:1, 74:1,
85:19, 95:18,
102:13, 104:9,
109:23, 119:24,
127:7, 137:18,
142:23, 147:17,
153:25, 154:6,
154:7, 157:6,
167:19, 169:5,
171:1.
Although 108:25,
180:24, 184:9.
ambiguity 61:19.
ambivalence 45:17,
47:22, 47:25,
49:19, 51:18,
92:20.
ambush 194:22,
198:11.
ambushed 189:15.
Amendment 30:21.
AMERICA 1:5.
American 88:11,
88:12.
among 15:14, 26:25,
40:4, 44:3, 56:20,
68:6, 76:14, 89:4,
97:21, 104:21,
112:7, 121:25,
130:12, 140:3,
149:21, 151:13,
160:12, 171:1,
171:21.
amongst 171:10.
amount 50:7,
83:11.
analysis 81:24,
191:25.
Andrew 181:2.
angles 49:16.
animated 176:12.
annoying 16:16,
28:24, 58:16.
answer 5:7, 6:17,
7:10, 29:13, 33:9,
49:7, 52:8, 63:21,
93:18, 96:17,
107:11, 115:15,
169:14, 169:24,

171:4, 174:7,
178:25, 185:18,
187:17, 196:16.
answered 14:20,
31:21, 33:23,
68:16, 80:9,
87:15, 92:17,
92:19, 92:23,
92:24, 107:14,
112:10, 144:15,
186:5.
answering 108:3,
145:15, 155:2,
179:4.
anticipate 5:24,
10:22, 135:24,
182:3, 191:22.
anticipated 26:18,
184:3, 197:14.
anticipates
196:23.
anxious 176:14,
177:15.
anybody 39:7, 39:13,
97:14, 150:22,
151:1, 151:2,
151:4, 151:5,
151:7, 177:23,
178:3, 182:24,
195:25.
apologies 34:25.
apologize 18:18,
42:11, 70:17.
appeal 2:23.
appealed 2:22.
Appeals 2:6, 2:23,
3:2, 198:3.
appear 6:21, 175:7,
179:17, 182:13,
183:10.
appearance 88:10.
APPEARANCES 1:21.
appeared 107:13,
177:15, 184:14.
appearing 165:24,
198:24.
applaud 93:19.
appreciate 5:6,
22:15, 34:11,
63:20, 72:3,

108:2, 108:5,
118:8, 154:5,
154:20, 165:19,
194:20.
appreciated
154:21.
apprise 196:13.
approach 48:19.
appropriate 2:17,
7:6, 154:8.
appropriately
6:13.
area 7:17, 7:22,
8:1, 8:5, 9:15,
15:3, 75:16,
171:19, 179:11.
areas 51:1.
argue 80:9, 82:16,
144:23.
argument 61:1,
193:11.
arise 197:13.
around 11:14, 34:17,
36:7, 47:23,
47:25, 75:17,
117:9, 151:19,
160:15.
arrangements 4:25,
5:3.
arrival 7:20.
arrived 83:11.
Asia 39:11.
Asif 1:46, 199:16,
199:21.
asks 7:3.
aspect 187:4.
aspects 83:14.
assemble 8:19.
assembly 7:22,
8:1.
assess 46:1,
46:10.
assessment 46:4.
assist 43:1, 51:22,
52:8.
assistance 25:16,
37:21, 55:13,
66:19, 74:19,
82:5, 86:12,
96:12, 103:9,

110:16, 120:17,
128:1, 138:11,
143:10, 148:10,
157:24, 168:13.
Assistant 12:23,
12:24, 24:6, 36:3,
54:5, 54:6, 64:18,
64:19, 73:11,
85:4, 85:5, 94:25,
95:1, 101:22,
101:23, 109:6,
109:7, 119:9,
119:10, 126:16,
126:17, 137:2,
137:3, 147:1,
147:2, 156:16,
156:17, 167:4,
167:5.
associate 184:5,
184:10, 184:23.
associated 165:1,
190:9.
assume 41:18, 41:19,
42:12, 140:21,
158:11, 161:3.
assurance 47:25.
assured 20:9,
191:18.
AT&T 10:6, 52:21,
52:23.
attempt 189:10.
attempting 61:13.
attention 51:12,
52:4, 56:3, 62:4,
62:5, 62:8, 105:6,
151:10, 159:9,
162:19, 177:3.
Attorney 12:24,
24:6, 36:3, 36:4,
54:6, 64:19,
73:11, 73:12,
85:5, 95:1, 95:2,
101:23, 109:6,
109:7, 119:9,
119:10, 126:17,
137:2, 137:3,
147:2, 156:17,
167:4, 167:5.
attorneys 24:5,
54:4, 73:10, 85:3,

94:24, 101:21,
109:5, 119:8,
126:15, 137:1,
146:25, 156:15,
167:3.
audience 26:16.
audio 5:2, 8:21.
AUSA 1:25, 1:27,
185:25, 186:23.
authorities 5:11,
11:5.
authorize 187:12.
autopilot 21:19.
available 142:25.
average 170:15.
average-sized
117:8.
avoid 144:3.
aware 175:7, 182:21,
184:7, 197:20.
away 31:23, 33:12,
45:7, 49:25,
62:17, 196:13.
.
.
.
< B >.
B. 1:33.
backgrounds 163:7.
balance 184:17,
184:21.
ball 135:21.
Baltimore 1:19,
1:49.
barrier 33:17,
139:14.
barriers 33:16.
base 191:10.
based 45:6, 175:8.
basically 27:4,
130:15, 130:17,
139:12, 195:7.
basis 195:16,
195:18.
bear 40:1, 96:18,
171:21, 172:11.
bearing 173:3.
became 32:8.
begin 3:19,
143:24.
beginning 61:4,

62:13.
begs 81:20.
behalf 93:13,
101:25, 102:1,
124:16, 192:4.
behind 7:17, 8:6,
29:22, 83:9,
93:23, 155:5,
197:17.
belief 14:10, 26:11,
38:18, 56:8,
67:14, 75:13,
87:6, 97:8, 104:3,
111:14, 121:10,
128:25, 129:20,
139:9, 149:12,
159:6, 170:4.
believed 26:16,
78:5, 78:7,
81:11.
believes 185:4.
believing 195:16,
195:18.
belongings 22:24,
118:5, 135:15,
145:23, 179:5.
below 33:20.
belt 7:18.
bemused 175:11.
Bench 9:3, 9:4, 9:5,
10:13, 16:24,
21:8, 29:9, 42:6,
58:23, 62:24,
70:8, 79:17,
91:15, 99:24,
107:2, 114:17,
116:5, 117:17,
123:19, 133:1,
134:16, 142:14,
153:18, 162:8,
165:9, 174:24,
177:6, 178:7.
benefit 19:8.
beside 116:22,
185:13.
besides 151:2,
160:4.
best 15:19, 33:22,
38:25, 56:10,
185:4, 187:1,

193:24.
bet 132:19.
better 5:16, 129:23,
    184:22.
Beverly 180:24,
    182:22, 183:10,
    186:2.
beyond 16:1,
    197:9.
big 124:14, 135:6,
    178:25.
Bill 194:25.
bird 49:21.
birthday 191:1,
    192:5.
bit 4:10, 15:8,
    16:25, 20:25,
    61:19, 63:13,
    67:22, 70:5, 78:9,
    89:9, 91:12, 95:7,
    96:17, 110:21,
    114:10, 114:13,
    138:16, 141:21,
    162:4, 176:8.
blank 123:15.
blended 31:20.
block 162:2.
blocking 193:4.
blown 2:19.
blurred 17:19.
body 31:14, 32:11,
    33:24.
book 169:18.
boom 172:24.
booming 70:16.
borrow 197:19.
bottom 46:4.
boundaries 196:10.
box 33:3, 33:17,
    87:25, 116:16.
boy 40:11.
braids 111:25,
    115:13, 116:15.
branch 6:12.
break 20:11, 83:13,
    83:15, 83:17,
    83:24, 89:8,
    89:10, 89:20,
    124:22.
bridge 6:1.

bridging 2:10.
brief 2:9, 19:18,
    99:14.
briefing 80:8,
    196:24.
Briefly 13:15,
    15:16, 24:21,
    36:24, 54:18,
    65:24, 73:24,
    85:17, 95:16,
    102:11, 109:21,
    119:22, 127:5,
    137:16, 147:15,
    157:4, 167:17.
bring 10:4, 11:10,
    84:6, 87:13.
bringing 83:14.
broached 92:12.
broadened 163:22,
    164:4.
brought 3:11, 7:17,
    105:6, 112:17.
brown 170:15.
build 139:23.
building 75:17,
    146:1, 160:9,
    179:7.
burden 3:4, 108:4,
    108:6, 124:14,
    135:7, 135:9,
    145:19, 145:21,
    178:25, 180:5,
    198:19.
burdensome 124:14.
.
.
< C >.
C. 1:43.
call 7:15, 10:7,
    16:5, 52:22,
    77:24, 159:10,
    179:12, 180:6,
    180:14, 180:16,
    180:24, 181:2,
    181:9, 185:22,
    187:23, 188:6,
    188:16, 188:18,
    188:20, 192:17,
    193:2, 194:9,
    197:23.

called 11:19, 12:3,
    23:8, 32:22, 35:8,
    53:12, 65:5,
    72:15, 75:15,
    76:20, 84:9, 94:4,
    101:2, 108:12,
    111:18, 118:14,
    125:8, 136:8,
    146:7, 155:17,
    162:19, 166:8,
    182:20, 195:6.
calling 182:3,
    185:9.
camera 8:20, 8:21,
    25:10, 29:18,
    30:8, 39:20,
    66:13, 81:13,
    128:21, 134:10,
    170:24.
camera-type 37:14,
    55:7, 74:14, 86:6,
    96:6, 103:1,
    110:10, 120:11,
    127:19, 138:5,
    148:4, 157:18,
    168:6.
cameras 131:21,
    132:1.
Camille 105:6,
    105:7, 182:1.
camp 199:7.
candid 92:11.
capacity 3:7, 46:10,
    48:1, 163:20,
    164:1.
capture 164:7,
    186:17.
care 9:18.
careful 3:21, 25:25,
    38:6, 55:22, 67:3,
    75:3, 86:21,
    96:23, 103:17,
    111:5, 121:1,
    128:10, 148:19,
    158:8, 168:21,
    198:16.
carefully 31:15,
    45:8, 51:16.
carried 198:19.
carrying 3:6.

cases 3:15, 50:21.
catch 65:9.
catch-all 171:24.
caught 52:4.
cause 2:18, 92:24.
caused 2:11, 13:14,
  24:20, 36:24,
  52:5, 54:17,
  65:24, 73:23,
  85:16, 95:15,
  102:11, 109:21,
  119:22, 127:4,
  137:15, 147:14,
  157:3, 167:16.
causes 154:7.
central 184:3.
certain 5:11, 40:1,
  115:2.
Certainly 16:21,
  34:24, 162:7,
  163:2, 193:25.
certainty 34:5.
certify 199:16.
chair 22:25, 53:6.
chamber 14:15,
  15:11.
channel 7:8, 20:3,
  22:12, 29:8, 43:7,
  52:9, 53:2, 62:23,
  63:17, 71:24,
  82:25, 107:24,
  114:16, 116:4,
  118:1, 133:24,
  134:15, 145:13,
  164:20, 165:16,
  177:5, 178:6.
characterizing
  175:11.
charge 41:20.
chat 117:16.
chiding 175:12.
chief 186:24.
child 51:6, 51:7.
children 50:23,
  50:24.
chooses 6:3.
choppy 193:22.
chosen 6:1.
Christina 1:27.
Christine 1:46,

199:16, 199:21.
Christopher 1:43.
circle 175:4.
Circuit 2:6,
  163:1.
circumstance 47:5.
circumstances 2:17,
  11:7, 51:11,
  59:25, 60:15,
  143:8, 189:20,
  193:24.
citizen 52:14,
  63:22, 72:3, 83:2,
  100:19, 108:6,
  118:7, 145:22,
  154:25.
citizens 135:11.
citizenship 93:19,
  100:16, 124:15,
  135:8, 145:19,
  165:22, 179:3.
civil 194:2.
claimed 42:21, 97:2,
  175:15.
clarified 61:20.
clarify 192:17.
clarity 49:10,
  49:19, 59:13,
  61:24, 172:11.
clean 53:5.
clear 17:7, 17:10,
  17:13, 18:10,
  30:12, 34:1,
  45:22, 61:11,
  79:23, 81:15,
  82:14, 158:17,
  158:21, 164:14,
  172:10, 173:2,
  173:21, 175:10,
  192:2.
clearly 23:3,
  46:3.
CLERK 4:16, 10:4,
  23:6, 34:13,
  63:24, 72:4,
  72:11, 83:7, 84:7,
  100:20, 105:8,
  108:7, 118:9,
  124:18, 135:15,
  142:6, 145:24,

155:5, 166:2,
  179:5, 181:2,
  181:4, 182:1.
client 195:2.
clients 14:5, 25:22,
  38:4, 55:19, 67:1,
  74:25, 86:18,
  96:21, 103:14,
  111:3, 120:23,
  128:6, 138:20,
  148:17, 158:5,
  168:19.
close 70:14, 70:15,
  116:17, 133:12,
  144:2, 155:14,
  184:5, 184:10,
  184:22, 184:23,
  193:10.
closed 9:16.
Closer 17:4, 18:16,
  46:15, 46:21,
  59:5, 63:13, 89:9,
  133:9.
cold 175:8.
colleague 16:2,
  186:1.
colleagues 5:7.
collect 83:8.
color 88:13.
comes 6:11, 33:17,
  89:7, 115:20.
comfort 124:22.
comfortable 15:25.
coming 26:17, 34:11,
  38:22, 38:23,
  70:22, 93:18,
  108:3, 132:1,
  145:18, 154:22,
  155:1, 165:23,
  179:3, 183:3,
  187:6, 190:23,
  195:15.
commanded 144:3.
comment 47:12,
  48:21, 49:22,
  50:11, 60:10.
comments 49:4,
  129:16, 163:15,
  183:21.
common 51:3.

communicate 44:3.
communicated
  19:19.
communication 45:24,
  83:4.
communications
  188:22.
community 50:21.
complaining 188:3.
complete 92:25,
  143:23, 144:15,
  198:8, 198:25.
completed 4:18,
  83:6, 99:20,
  180:4, 184:2,
  196:25.
completely 6:10,
  47:21, 52:1,
  143:3.
complexion 39:12,
  88:13.
complicate 174:7.
complicated 174:8.
compromised 164:9.
computer 33:19.
concede 50:17.
concerned 10:18,
  27:4, 28:4, 32:2,
  47:17, 87:10,
  87:11, 97:11,
  105:5, 159:9,
  177:23.
concerning 87:14.
concerted 191:16.
conclude 11:1.
concluded 198:3.
concluded. 199:14.
conclusion 165:4,
  192:21.
concrete 112:15,
  151:21.
concur 107:13.
conduct 2:7, 2:12,
  2:15, 3:3, 3:9,
  6:10, 50:16,
  163:4, 181:8,
  190:6, 197:10.
conducted 2:20,
  163:11, 198:14.
conducting 2:24,

8:12.
conference 9:3, 9:4,
  9:5, 10:7, 10:14,
  16:24, 21:8, 29:9,
  42:6, 52:22,
  58:23, 62:24,
  70:8, 79:17,
  91:15, 99:24,
  107:2, 114:17,
  116:5, 117:17,
  123:19, 133:1,
  134:16, 142:14,
  153:18, 162:8,
  165:9, 174:24,
  177:6, 178:7.
conferences
  180:15.
confidence 191:15.
confirm 6:6, 13:6.
confirms 4:16.
confronted 198:13.
confusing 4:10.
congregating
  160:9.
connected 133:18.
connection 5:2,
  130:18, 130:19,
  149:22, 185:23,
  196:15.
consider 28:11,
  41:15, 49:7, 58:7,
  69:20, 79:2, 91:1,
  99:2, 99:10,
  106:14, 114:1,
  123:8, 133:17,
  141:18, 141:25,
  153:3, 161:20,
  173:17, 174:2.
considered 30:22,
  143:4, 154:2.
considering 198:6.
Consistent 14:24,
  143:7.
Constitution
  195:1.
consultation 3:14.
consulting 48:15.
cont'd 201:1.
contact 61:7, 80:3,
  135:19, 135:24,

184:4, 193:8.
context 30:12,
  44:18, 82:10,
  176:9, 191:22,
  192:6.
continued 4:6, 28:7,
  28:16, 31:2, 32:7,
  34:5, 41:11,
  57:25, 69:13,
  78:12, 90:19,
  93:3, 98:20,
  106:7, 113:19,
  123:1, 131:24,
  141:11, 152:21,
  161:12, 163:17,
  173:10.
continuing 45:19,
  48:1, 60:3,
  143:16.
convened 83:23,
  181:4.
convenience 20:8.
convening 179:16.
conversation 16:13,
  41:23, 42:3, 68:9,
  69:24, 70:1,
  89:19, 91:7, 91:9,
  99:16, 104:19,
  106:24, 121:14,
  132:21, 153:11,
  161:24, 174:19.
conversations 76:19,
  194:6.
conveyor 7:18.
convicted 2:21,
  50:25, 51:6.
convictions 2:22.
coordinator 89:13,
  89:15.
core 45:18, 51:5.
corner 95:5.
correctly 139:18,
  198:1.
Counsel 2:13, 2:14,
  2:25, 3:14, 3:15,
  6:23, 7:1, 7:2,
  11:2, 18:8, 33:6,
  59:23, 83:10,
  181:18, 182:14,
  184:16, 187:8,

195:5, 197:20,
199:10, 199:13.
couple 79:13,
123:18, 132:23,
174:21, 175:5,
183:25.
course 4:2, 8:22,
9:15, 47:14,
47:17, 52:4,
116:16, 160:21,
188:12.
court. 20:4, 22:14,
34:9, 52:10,
61:21, 63:18,
71:25, 82:24,
93:15, 100:13,
107:25, 115:5,
116:12, 118:2,
124:9, 133:25,
135:2, 145:12,
154:18, 164:21,
165:17, 176:4,
177:17, 178:19.
courthouse 7:20,
7:21, 7:22, 7:24,
8:4, 8:8, 52:25,
72:5, 83:7, 93:23,
100:22, 108:8,
118:10, 124:18,
135:16, 146:1,
155:2, 155:7,
165:23, 166:3,
192:8.
courtroom. 11:11,
22:21, 34:16,
53:4, 64:3, 72:13,
94:1, 100:25,
108:10, 118:11,
136:2, 146:4,
155:8, 166:6.
courtrooms 33:17.
covered 34:19.
COVID 8:12, 10:5,
10:11, 20:9,
34:23, 53:5,
136:4, 155:12,
179:2.
Covid-equipped
33:17.
coworker 190:25,

191:24.
coworkers 191:16.
crafted 143:18.
create 11:6.
crim 186:24.
crime 51:8.
crimes 50:25.
CRIMINAL 1:9, 50:21,
184:20.
cross 192:10.
crossed 6:1.
crossing 196:9.
crystal 45:22,
49:10, 81:15,
135:21, 192:2.
CSO 182:21, 186:2.
cues 31:16, 31:17,
32:22.
curative 29:16,
29:21.
curiosity 133:16.
current 135:23.
currently 33:3,
51:7.
curtail 198:6.
Cusatis 179:11.
custody 84:1,
196:23, 199:12.
cut 130:6.
cylinders 126:5.
.
.
< D >.
dangerously 144:2.
Dark 39:12, 88:14,
112:1, 150:17.
darker 117:11.
date 38:10, 128:17,
158:25.
days 62:18, 183:25,
195:16, 196:3.
deadline 188:3,
194:19, 197:18,
199:8, 199:9.
deal 50:20,
191:15.
decades 50:15.
decide 19:3, 148:24,
152:9, 169:1,
181:7.

decided 27:5.
decision 32:21,
57:23, 62:14,
62:16.
deck 83:18.
decline 45:4,
133:22, 144:13,
164:10.
declined 154:11.
declines 31:12.
declining 144:14.
DEFENDANT 1:12,
1:29, 1:35, 1:39,
7:3, 9:9, 9:11,
9:13, 24:24,
30:11, 48:14,
66:2, 67:5,
109:24, 119:25,
127:8, 137:19,
147:18, 167:20,
196:22, 199:4.
defense 2:25, 18:8,
59:23, 67:19,
187:8, 193:1,
195:5, 197:19,
199:7, 199:10.
defers 6:13.
deficient 81:9.
definite 151:18.
definitely 28:4,
36:17, 42:18.
definition 30:21,
184:22.
deliberate 138:23,
140:13, 140:24,
141:1, 142:24,
143:4, 158:13,
158:14, 161:4,
169:6, 172:24.
deliberated 4:8,
144:1, 154:1.
deliberating 19:7,
122:9.
deliberation 57:21,
122:13, 141:4.
deliberative
144:6.
delicate 51:1,
184:21.
delivered 169:4.

demarcation 61:4.
demeanor 31:14,
   175:9.
demonstrate 3:5,
   46:5, 93:2.
denials 163:25.
denied 2:20, 3:16,
   59:23, 59:24,
   143:7, 143:20,
   154:4.
depart 22:18, 52:17,
   63:25, 72:4, 83:7,
   93:21, 100:21,
   118:9, 124:18,
   124:21.
Department 5:20,
   5:21.
depending 61:15.
deprive 197:16.
Deputy 105:8,
   180:19, 180:25,
   181:4, 182:1,
   182:22, 183:1,
   183:3, 186:1.
descent 139:24,
   150:17, 170:13.
describe 3:22,
   33:11, 33:22,
   87:24, 88:1,
   88:12, 111:24,
   133:20, 176:20,
   176:23, 177:20.
described 20:18,
   80:13, 115:9,
   115:12.
describing 47:6,
   134:3, 144:16.
description 115:3.
descriptors 189:2.
designated 4:6.
designed 82:11,
   164:6.
desire 6:9.
detail 109:13,
   185:4, 191:13.
details 5:12, 15:18,
   45:10, 114:25,
   192:1.
detect 187:17.
determination 7:5,

   15:9, 82:6, 93:1,
   198:18.
determine 11:3.
determined 3:13.
develop 47:7, 176:8,
   189:23.
develops 154:7.
devices 6:25, 9:2,
   9:4, 91:11.
dial 52:22.
dialing 10:9.
difference 30:19.
different 4:10,
   4:11, 10:22,
   12:19, 24:1,
   35:25, 73:7,
   84:25, 94:21,
   101:19, 109:1,
   109:3, 119:4,
   126:13, 136:23,
   146:23, 155:12,
   156:10, 156:13,
   160:11, 163:15,
   167:1.
differently 44:6.
difficult 50:22,
   51:1, 91:22,
   193:23, 193:24.
difficulty 32:9.
dig 49:16.
diplomatic 5:10,
   11:5.
dire 13:12, 24:18,
   36:21, 54:15,
   65:21, 73:21,
   85:14, 95:13,
   102:8, 109:18,
   119:19, 127:2,
   137:13, 147:12,
   157:1, 162:23,
   163:8, 167:14.
direct 9:17, 144:16,
   195:24.
directed 143:19,
   177:25.
directing 2:6.
direction 163:15,
   181:5.
directions 187:14,
   198:9.

directive 163:4,
   184:7.
Directly 32:24,
   33:9, 48:25,
   104:6, 117:1,
   117:3, 117:4.
diring 50:15.
discern 49:18,
   192:14.
discharge 179:1.
disclosed 6:23,
   51:15, 188:4.
disclosure 187:7,
   188:2, 197:18,
   199:5.
discovery 187:15,
   193:20, 194:21,
   194:23.
discretion 14:6,
   25:24, 38:5,
   55:21, 67:2, 75:2,
   86:20, 96:22,
   103:16, 111:4,
   120:25, 128:8,
   138:21, 148:18,
   158:7, 168:20.
discuss 112:16,
   140:5.
discussed 91:24,
   191:7.
discussing 15:18,
   40:12.
discussions 9:2,
   15:22, 45:9,
   121:12, 134:2,
   151:13.
dismissed 75:23,
   97:10.
dispute 198:5.
dissent 163:9.
distance 70:16.
DISTRICT 1:1, 1:2,
   197:1.
docket 186:4,
   198:25.
dog 49:21.
doing 23:4, 50:8,
   72:3, 130:9,
   134:11, 177:2,
   191:22, 194:22.

done 41:21, 185:23,
   186:2, 188:2,
   191:21, 197:15.
door 6:21, 7:15,
   100:21, 145:25,
   166:2, 179:6.
double 173:24.
doubt 28:18, 45:9,
   45:14, 67:23,
   78:15, 192:9.
down 16:25, 17:5,
   47:15, 61:13,
   63:23, 91:11,
   101:6, 108:16,
   125:12, 135:10,
   136:11, 145:19,
   155:11, 155:13,
   155:21, 160:10,
   165:23.
draw 27:8, 40:14,
   57:4, 68:19,
   76:23, 89:23,
   98:1, 105:11,
   112:21, 122:7,
   130:22, 140:10,
   149:1, 151:24,
   160:19, 172:6.
drew 34:4.
drop 20:2.
dropped 163:23.
duly 11:19, 23:8,
   35:8, 53:12, 65:5,
   72:15, 84:9, 94:4,
   101:2, 108:12,
   118:14, 125:8,
   136:8, 146:7,
   155:17, 166:8.
DUSM 186:1.
duties 34:5, 124:15,
   135:8.
duty 184:20.
.
.
< E >.
e-mail 185:24.
e-mails 187:2.
ear 71:6, 71:7,
   79:22.
earlier 14:2, 25:20,
   38:1, 55:17,

71:13, 74:23,
   86:16, 96:19,
   100:18, 103:12,
   110:23, 120:21,
   128:4, 138:17,
   149:5, 158:3,
   163:2, 168:16,
   187:7.
early 23:18, 88:8,
   112:2.
easy 140:23.
edge 193:22.
effect 13:22, 29:17,
   46:7, 47:16,
   62:14, 78:1, 80:5,
   81:13, 144:22,
   162:21, 162:22,
   164:17, 165:3,
   174:9, 190:8.
effected 154:2.
effectively 44:20.
effects 92:15.
effort 11:6,
   49:15.
efforts 191:17.
Either 9:4, 76:4,
   188:13, 194:11,
   194:16, 196:25.
elaborate 47:4.
elbow 33:18.
elect 59:25.
elected 8:17.
electing 47:7.
electronic 28:22,
   41:24, 58:14,
   69:25, 79:8, 91:6,
   99:15, 106:18,
   114:6, 123:12,
   132:15, 142:5,
   153:7, 161:25,
   174:11.
elicited 47:8.
emphasis 33:25,
   46:8, 48:4, 49:19,
   51:16, 51:19,
   80:21, 92:19.
emphatic 32:8,
   163:25.
employee 182:2.
employing 51:19.

encounter 20:16,
   49:18.
end 2:13, 4:2, 7:12,
   32:20, 33:5, 33:6,
   46:3, 52:7,
   135:3.
ended 170:21.
energy 48:3.
engage 49:15.
engaged 26:7, 38:12,
   56:4, 67:10, 75:9,
   87:2, 97:4,
   103:24, 111:10,
   121:6, 128:18,
   139:5, 149:8,
   159:2, 169:10,
   169:22.
enough 133:12,
   169:15, 176:3,
   177:16.
ensure 163:18.
entered 7:15, 11:11,
   22:21, 34:16,
   53:4, 64:3, 72:13,
   94:1, 100:25,
   108:10, 118:11,
   136:2, 146:4,
   155:8, 166:6.
entering 15:3,
   187:10.
entire 162:20.
entitled 190:11.
entrance 8:8, 13:20,
   24:25, 37:3,
   54:22, 66:3, 74:3,
   85:21, 95:20,
   102:16, 109:25,
   120:1, 127:9,
   137:20, 147:19,
   157:8, 167:21.
environment 90:16.
equipped 33:16.
equivocation
   92:20.
erred 2:24.
escort 8:8, 155:6.
escorted 7:14, 8:4,
   14:19, 160:10.
escorting 14:18,
   16:4.

especially 49:2,
  51:17, 175:2.
Esquire 1:31, 1:33,
  1:37, 1:41,
  1:43.
essential 5:9,
  115:3, 135:11.
et 2:3, 2:4, 12:4,
  12:14, 23:17,
  23:21, 35:22,
  53:25, 64:11,
  73:3, 84:22,
  94:18, 101:16,
  108:24, 119:1,
  126:9, 146:19.
ethical 192:8.
evaluation 60:15.
everybody 136:4,
  151:8, 177:2.
Everyone 7:9, 8:15,
  27:4, 27:6, 52:25,
  87:12, 188:13,
  192:13.
everything 34:23,
  78:7, 78:9,
  112:12, 130:14,
  145:24.
Evidently 45:23.
evolve 68:9.
exact 51:20, 115:22,
  115:25, 128:17,
  139:13.
Exactly 56:24, 80:9,
  104:13, 121:15,
  129:3, 149:20,
  175:25, 188:11,
  192:10.
examined 11:19,
  23:8, 29:18, 30:9,
  35:8, 53:12, 65:5,
  72:15, 81:13,
  84:9, 94:4, 101:2,
  108:12, 118:14,
  125:8, 136:8,
  146:7, 155:17,
  166:8.
example 30:8.
except 9:16,
  172:2.
exception 180:1.

exchange 47:2.
Excuse 34:8, 102:10,
  129:20, 134:6,
  165:21, 178:23,
  179:18.
execute 5:4.
executive 6:13.
exhibits 185:19,
  186:3.
exist 184:18.
exit 160:11.
expansive 186:10.
expect 32:4, 182:20,
  186:6.
expected 41:19.
expenditure 49:24.
experience 19:9,
  20:19, 164:8,
  192:9.
experienced 34:24,
  50:21.
experiences 50:22,
  195:23.
explain 172:11.
explained 92:10.
explaining 30:18.
explanation 80:16.
explore 47:22.
express 14:16,
  41:19, 165:21,
  178:23.
expressed 13:17,
  15:23, 21:2,
  24:23, 27:6,
  32:12, 33:24,
  34:3, 37:1, 48:3,
  48:4, 54:20, 66:1,
  74:1, 85:19,
  95:18, 102:13,
  109:23, 119:24,
  127:7, 137:18,
  147:17, 157:6,
  159:22, 167:19,
  191:6, 194:6.
expressing 26:15.
expression 31:25.
extensive 3:14,
  45:9.
extent 32:21, 46:25,
  52:3, 62:9, 79:25,

107:9, 116:9,
  140:24, 164:4,
  175:13, 180:1,
  184:2, 190:4.
external 61:3, 61:7,
  80:3.
extremely 142:25.
.
.
< F >.
face 11:14, 23:3,
  32:24, 32:25,
  54:1, 64:12, 73:4,
  155:14.
facing 15:5, 33:7,
  33:8.
fact 3:22, 30:8,
  32:23, 44:5,
  59:16, 81:8,
  81:11, 81:12,
  144:17, 145:20,
  154:8, 154:10,
  162:1, 175:7,
  175:14, 179:11,
  192:21, 194:21,
  197:21.
factual 80:4.
faded 46:22.
fading 46:20.
failed 43:3.
Faintly 17:3.
fairly 46:6, 51:14,
  81:20, 92:22,
  93:3, 176:14.
fairness 3:8, 31:19,
  46:11, 47:19,
  49:17, 82:10,
  143:17, 163:20,
  164:2.
faithful 22:16.
families 183:24.
family 13:18, 24:24,
  37:2, 38:21,
  54:21, 66:2,
  67:19, 74:2,
  85:20, 95:19,
  102:14, 109:24,
  119:25, 127:8,
  137:19, 147:18,
  157:7, 167:20,

184:5, 190:24.
far 30:15, 32:24,
    38:22, 39:3,
    46:17, 59:11,
    65:10, 92:1,
    135:23.
farther 15:23,
    16:2.
fashion 3:18, 6:5,
    63:22.
fast 176:13.
favor 47:7, 195:2.
FCRR 1:46, 199:16.
fearful 196:9.
Federal 1:47,
    187:12.
fee 166:3.
feed 8:21.
feedback 48:10.
feel 27:24, 28:14,
    29:14, 41:7,
    57:19, 69:10,
    77:14, 77:17,
    90:13, 98:16,
    99:4, 106:3,
    113:15, 122:22,
    131:18, 141:7,
    152:17, 161:9,
    173:7.
feeling 39:3, 80:1,
    80:17, 125:24.
feelings 164:7.
feet 33:12, 33:13,
    33:14, 33:15,
    45:7.
fellow 13:23, 14:17,
    20:17, 20:18,
    24:21, 36:24,
    54:18, 65:24,
    73:24, 85:17,
    95:16, 102:12,
    109:21, 119:22,
    127:5, 137:16,
    147:15, 157:4,
    167:17.
female 111:25,
    115:12, 116:14,
    163:16.
few 13:23, 25:2,
    37:5, 54:24, 66:5,

74:5, 78:1, 85:23,
    91:9, 91:13,
    95:22, 99:21,
    101:12, 102:18,
    106:23, 110:2,
    114:12, 120:3,
    127:11, 137:22,
    142:10, 147:21,
    153:14, 157:10,
    162:5, 167:23,
    175:13, 191:7,
    195:1, 196:3.
file 194:12.
filed 30:16, 185:19,
    185:24, 186:3,
    186:8.
films 25:12, 37:16,
    55:9, 66:15,
    74:16, 86:8, 96:8,
    103:3, 110:12,
    120:13, 127:21,
    138:7, 148:6,
    157:20, 168:8.
final 171:23.
finally 60:7.
find 19:8, 49:1,
    187:1, 190:1,
    191:10, 192:14,
    193:21, 195:13,
    195:15.
finding 80:4,
    192:21.
fine 78:9, 88:4,
    110:23, 126:4,
    132:24.
finish 189:17.
finished 7:13,
    58:19, 63:20,
    72:1, 83:6, 91:11,
    93:17, 93:24,
    100:14, 100:22,
    106:21, 108:2,
    114:11, 118:4,
    123:16, 124:10,
    132:21, 135:4,
    135:17, 142:9,
    145:14, 153:13,
    162:4, 165:19,
    174:20, 178:21,
    179:4, 179:7,

198:20.
firing 126:5.
firm 149:1, 199:8.
Five 125:1, 125:3.
flat 33:20.
flaws 30:7.
Floor 1:48, 7:22,
    83:19.
floors 8:17.
focal 60:9.
focus 164:3.
focused 47:20.
folded 33:20.
follow 60:22, 80:15,
    155:12, 183:22.
follow-ups 81:5.
followed 164:6.
following 20:4,
    22:14, 34:9,
    50:13, 52:10,
    61:21, 63:18,
    71:25, 79:25,
    82:24, 93:15,
    100:13, 107:25,
    115:5, 116:12,
    118:2, 124:9,
    133:25, 135:2,
    145:12, 154:18,
    164:21, 165:17,
    165:23, 176:4,
    177:17, 178:19.
follows 11:20, 23:9,
    35:9, 53:13, 65:6,
    72:16, 84:10,
    94:5, 101:3,
    108:13, 118:15,
    125:9, 136:9,
    146:8, 155:18,
    166:9.
forbids 193:7.
foregoing 199:17.
foreign 6:16.
forgetting 193:16.
forgive 129:22.
forgot 14:17,
    16:3.
forgotten 49:3.
form 61:18, 181:6,
    186:20.
formal 5:14.

former 181:2.
forth 4:21, 31:19,
  44:3, 46:3, 48:17,
  48:18, 52:5,
  163:14, 163:17,
  168:24, 176:10,
  192:5, 193:11,
  197:24.
Fortunately 7:23.
forward 27:5, 30:23,
  48:21, 49:1,
  124:15.
foundation 198:4.
foundational
  197:25.
four 173:2, 175:3,
  178:2.
fourth 83:19.
freaked 169:20,
  171:11, 175:6,
  175:10.
freaking 176:2,
  176:6, 176:11,
  176:18, 176:21.
free 53:1, 108:8,
  118:4, 135:4,
  155:6, 178:22.
friend 189:4, 189:5,
  190:24, 191:3,
  191:5, 191:6,
  191:10, 191:17,
  191:25, 192:5,
  194:6.
friends 190:25.
front 33:15, 47:12,
  116:25, 117:1,
  117:3, 117:4,
  155:14.
fruition 192:24.
frustrated 126:1.
fulfill 44:21.
full 2:19, 190:1,
  193:25.
fully 28:11, 41:15,
  58:7, 69:19, 79:1,
  90:25, 92:22,
  99:1, 99:10,
  106:13, 113:25,
  123:8, 132:6,
  141:17, 141:25,

153:3, 161:19,
  173:17, 174:2,
  184:17, 189:23.
function 46:6,
  80:22, 93:3,
  144:6.
functioning 9:16.
future 135:22.
.
.
< G >.
gallery 9:15, 9:16,
  33:6, 159:10,
  162:19.
gather 100:20,
  108:7, 118:4,
  145:23, 166:1,
  179:5.
gathered 14:15.
gave 29:16, 77:24,
  77:25, 92:12.
geared 79:23.
geez 171:3.
gender 88:1, 139:19,
  150:8, 159:12.
general 48:13,
  59:23, 97:22,
  129:16, 187:8,
  187:13, 189:1,
  193:2.
generalized 32:3.
generally 71:14,
  163:24.
generated 32:14.
generates 7:11.
Geneva 5:3,
  179:18.
gentleman 4:3, 97:2,
  97:10, 97:14,
  105:4.
gentlemen 52:20.
Gerald 1:29, 12:4,
  12:14, 23:21,
  35:15, 35:21,
  53:24, 64:11,
  73:3, 84:18,
  84:22, 94:17,
  101:15, 108:23,
  118:25, 126:9,
  136:19, 146:19,

156:6, 166:19.
GERALD JOHNSON, et
  al. 1:10.
gets 186:14.
getting 193:10.
girl 14:19, 159:14,
  159:15, 160:5.
give 6:4, 107:14,
  115:3, 184:22,
  186:10, 190:5,
  193:12, 198:9.
given 51:19, 80:16,
  82:8, 82:9, 187:6,
  198:12.
giving 150:4.
glitch 53:3.
Golob 183:1, 183:2,
  183:3, 183:6,
  186:1.
Gosh 39:7, 130:8.
grateful 83:3,
  100:19, 135:11,
  155:2, 166:1,
  179:3.
gratitude 63:23,
  135:6, 154:24,
  165:22, 178:24.
great 81:8,
  191:15.
greeted 7:21.
group 160:7.
guaranteed 77:22.
guess 16:2, 28:3,
  29:14, 31:24,
  76:5, 87:11,
  89:13, 111:17,
  112:14, 115:24,
  117:9, 117:11,
  150:17, 151:22,
  159:10, 162:6,
  166:16, 170:20,
  176:12.
guiding 6:13.
guilt 26:1, 38:7,
  55:23, 67:5, 75:4,
  86:22, 96:24,
  103:18, 111:6,
  121:2, 128:12,
  138:24, 148:21,
  158:9, 158:13,

158:18, 168:23.
guy 150:24.
guys 20:21, 150:14,
  150:15.
.
.
< H >.
hair 39:12, 112:1,
  150:17.
Hairdresser 189:4,
  189:5, 190:9.
half 34:23, 129:7.
hallway 15:4, 25:7,
  37:11, 55:4,
  66:10, 68:13,
  74:10, 86:3, 96:3,
  102:23, 110:7,
  120:8, 127:16,
  138:2, 148:1,
  157:15, 165:2,
  168:3.
halt 171:8.
hand 11:14, 23:6,
  35:1, 35:3, 53:10,
  65:3, 84:7, 94:2,
  101:5, 104:8,
  104:19, 108:15,
  118:12, 125:11,
  136:11, 146:5,
  155:10, 155:15,
  155:20.
handled 131:20,
  198:1.
handling 48:17,
  48:18, 93:12,
  129:23.
hang 169:17.
hanging 71:7.
Hanlon 185:25,
  186:23.
happen 47:14, 58:13,
  69:23, 91:4,
  99:13.
happening 39:18,
  48:23, 57:1,
  87:11, 88:21,
  88:23, 197:15.
hard 39:13, 70:15,
  155:12, 179:1.
harm 197:2.

head 18:11, 77:23,
  78:8, 81:23, 82:2,
  82:3, 82:7,
  82:15.
head. 81:19.
health 8:14.
heard 2:23, 32:4,
  48:11, 49:4,
  51:25, 56:9,
  57:20, 57:22,
  59:7, 59:8, 59:13,
  60:11, 60:23,
  62:1, 62:6, 70:18,
  71:9, 77:20, 78:8,
  80:6, 106:21,
  133:20, 149:14,
  149:15, 149:21,
  159:19, 162:12,
  179:19, 185:13.
hearings 50:17.
heavy 112:3.
height 33:18,
  170:15.
held 7:16, 8:1,
  144:9.
Hello 39:14,
  94:11.
help 179:6,
  189:24.
helped 29:21.
helpful 99:6,
  143:19, 176:7.
hereby 199:16.
herself 33:25,
  194:7.
hesitate 80:15,
  179:2.
hesitating 174:6.
hide 39:20.
Hispanic 139:23.
history 2:9.
hit 192:20.
hmm 67:18.
Hoffman 1:27, 12:24,
  17:9, 24:7, 33:15,
  36:4, 54:6, 64:19,
  73:12, 85:5, 95:2,
  101:23, 109:7,
  119:10, 126:17,
  137:3, 147:2,

156:17, 167:5.
Hold 18:22, 184:1,
  196:21.
holding 8:5, 39:19,
  179:11, 196:19.
homicide 50:23.
Honest 169:25.
Honestly 104:5,
  177:3.
Honorable 1:17.
honored 50:14.
hope 5:8, 184:12.
hoping 180:16.
horrible 51:8.
horrific 50:22.
hours 83:24,
  194:11.
human 195:21.
husher 16:25,
  41:25.
.
.
< I >.
ideal 70:17.
identification
  116:10.
identified 188:4,
  196:14.
identify 185:21,
  187:24, 193:5,
  194:4, 194:12.
identity 87:22.
illuminating
  184:17.
images 25:8, 25:12,
  37:12, 37:16,
  55:5, 55:9, 66:11,
  66:15, 74:11,
  74:16, 86:4, 86:8,
  96:4, 96:8,
  102:24, 103:3,
  110:8, 110:12,
  120:9, 120:13,
  127:17, 127:21,
  138:3, 138:7,
  148:2, 148:6,
  157:16, 157:20,
  168:4, 168:8.
immediate 171:2.
immediately 80:19.

impact 3:6, 45:19,
   47:16, 62:20,
   90:16, 92:16,
   190:2.
impacted 25:17,
   37:22, 53:3,
   55:14, 66:20,
   74:20, 86:13,
   96:13, 103:10,
   110:17, 120:18,
   128:2, 138:12,
   148:11, 157:25,
   164:2, 168:14.
impair 6:15.
impaired 188:13.
impartiality 3:8,
   31:19, 34:6,
   46:11, 47:20,
   49:17, 82:10,
   143:17, 163:20,
   164:2.
impartially 46:6,
   51:14, 93:3.
implicate 197:11.
implied 32:10.
implying 169:14.
important 34:2,
   81:10, 135:7,
   135:8, 158:16,
   172:9, 172:12,
   173:3, 184:21.
imposed 199:8.
impressions 45:10.
improper 192:4.
in. 10:4, 11:7,
   15:11, 33:23,
   39:19, 40:10,
   91:10.
inadmissible 59:16,
   61:17.
inadvertently
   93:22.
inappropriate
   188:8.
incapable 51:10.
incarcerated 50:24,
   51:7, 196:23.
inches 70:16.
incident 38:11,
   44:24, 52:3,

   76:20, 77:19,
   91:24, 134:4,
   135:18, 143:25,
   177:25, 186:21,
   190:3.
incidents 49:2,
   133:18.
include 39:2.
included 25:9,
   37:13, 55:6,
   56:25, 66:12,
   74:13, 86:5, 96:5,
   102:25, 110:9,
   120:10, 127:18,
   138:4, 148:3,
   157:17, 168:5,
   187:4.
includes 30:22.
including 14:21,
   26:22, 30:8,
   31:16, 34:1,
   39:16, 50:14,
   56:17, 68:3,
   88:15, 88:16,
   88:19, 97:16,
   104:17, 112:4,
   121:19, 121:22,
   129:18, 139:25,
   151:4, 158:17,
   163:6, 171:12.
inconsistent
   192:15.
incontrovertible
   47:10, 47:13.
incorrect 9:25,
   61:2.
independent
   191:11.
INDEX 200:1,
   201:1.
Indian 88:11, 88:12,
   112:1, 112:3,
   150:17, 170:13.
Indian-american
   115:10.
indicate 193:14,
   195:5.
indicated 18:20,
   32:3, 60:11,
   80:12, 81:7,

   115:7, 154:9,
   179:23, 180:15.
indicating 14:10,
   26:10, 38:15,
   38:18, 56:7,
   67:13, 75:12,
   80:15, 87:5, 97:7,
   104:2, 111:13,
   121:9, 128:25,
   139:8, 149:11,
   159:5, 170:4.
indications 45:17.
indicators 187:9.
individual 3:24,
   25:11, 37:15,
   55:8, 66:14,
   74:15, 86:7, 96:7,
   103:2, 110:11,
   120:12, 127:20,
   138:6, 148:5,
   157:19, 168:7,
   188:21.
individually
   111:19.
individuals 186:21,
   188:15, 188:18,
   188:20.
indulge 198:11.
infected 163:19.
inference 34:4.
influence 30:5.
influenced 30:24,
   60:14, 184:16.
influences 61:3.
information 13:11,
   24:17, 36:20,
   54:14, 61:16,
   65:20, 73:20,
   77:25, 82:7,
   85:13, 95:12,
   102:7, 109:17,
   119:18, 127:1,
   137:12, 142:25,
   147:11, 156:25,
   167:13, 183:20,
   189:9, 190:10,
   190:20, 192:15,
   192:18.
inherent 82:2.
initial 198:4.

innocence 26:1,
  38:7, 55:24, 67:5,
  75:4, 86:22,
  96:25, 103:18,
  111:6, 121:2,
  128:12, 138:24,
  148:21, 158:10,
  158:13, 158:19,
  168:23.
input 3:14,
  184:16.
inquire 31:12,
  164:10, 190:20.
inquiries 2:12,
  2:13, 2:16, 4:2,
  190:6.
inquiring 49:20,
  50:12.
inquiry 5:10, 47:21,
  51:1, 163:7.
inquisitive 126:2.
insignificant 49:23,
  50:7.
instance 20:20,
  82:9.
instances 3:16.
Instead 28:23,
  41:25, 58:15,
  70:1, 79:10,
  83:18, 99:16,
  106:19, 149:4,
  153:8, 162:18,
  163:14, 163:24,
  174:13.
instruct 183:23,
  191:17.
instructed 32:23,
  182:13, 182:18.
instruction 77:24.
instructions 3:3,
  8:2, 23:5, 27:13,
  40:19, 57:8,
  68:24, 77:3, 90:3,
  98:6, 105:16,
  112:25, 122:12,
  131:3, 140:18,
  152:4, 160:24,
  165:24, 169:5,
  172:15.
insulin 125:20.

integrate 60:14.
intelligent 45:12.
intend 5:17, 154:9,
  199:4.
intended 9:4, 30:12,
  185:22.
intensity 32:12.
intent 197:17.
intention 5:8,
  181:9, 198:16.
intentions 187:17.
interaction 45:6,
  92:13.
interest 168:18,
  194:6.
interested 144:24.
interests 14:4,
  25:22, 38:3,
  55:19, 67:1,
  74:25, 86:18,
  96:21, 103:14,
  111:2, 120:23,
  128:6, 138:19,
  148:16, 158:5,
  197:11.
international 5:21,
  6:12.
interpret 162:24.
interpretation
  31:17, 186:10.
intersect 7:25.
interview 5:14,
  50:15, 50:18.
interviewed 13:24,
  25:3, 37:6, 54:25,
  66:6, 74:6, 85:24,
  95:23, 102:18,
  110:3, 120:4,
  127:12, 137:23,
  147:22, 157:11,
  167:24.
interviewing
  51:20.
intimidated 27:24,
  28:1, 28:3, 29:14,
  29:15, 31:24,
  41:7, 44:16,
  57:19, 69:10,
  77:14, 77:17,
  79:23, 90:13,

98:16, 106:3,
  107:12, 113:15,
  122:22, 131:18,
  134:12, 141:7,
  152:17, 161:9,
  173:7.
intimidating 77:21,
  80:14.
intimidation 31:22,
  79:22, 80:1.
introduced 14:2,
  25:20, 38:1,
  55:17, 66:23,
  74:23, 86:16,
  96:18, 103:12,
  110:23, 120:21,
  128:4, 138:17,
  148:14, 158:3,
  168:16.
intrude 144:5.
intruding 144:2.
investigated 25:8,
  29:17, 37:12,
  55:5, 66:11,
  74:12, 86:4, 96:4,
  102:24, 110:8,
  120:9, 127:17,
  138:3, 148:2,
  157:16, 168:4.
investigating
  187:1.
investigator 183:17,
  184:13, 185:1,
  187:25, 189:7,
  189:10, 196:3.
investment 50:6.
invitation 164:10.
involve 153:6.
involved 15:16.
involvement
  185:25.
involves 132:14,
  142:4, 174:10,
  198:23.
involving 10:21,
  48:24, 194:7.
ironic 198:2,
  198:5.
irony 187:19.
irrelevant 61:17.

issue 6:2, 6:5, 6:7,
  6:9, 10:25, 11:9,
  19:5, 28:2, 45:18,
  45:22, 47:25,
  49:11, 49:12,
  52:21, 52:24,
  60:1, 60:4, 60:8,
  61:10, 81:16,
  82:12, 92:22,
  159:20, 191:9,
  191:12.
issued 183:1.
issues 160:6,
  180:21, 184:18,
  196:19, 197:13,
  198:1.
itself 2:18, 92:14,
  178:21.
.
.
< J >.
Jack 185:25.
Jaco 179:10, 179:11,
  181:2, 181:9,
  181:17, 181:23.
James K. Bredar
  1:17.
January 3:1, 4:3,
  4:14, 29:16,
  139:3, 149:6,
  163:3.
Jeffrey 1:33.
Jenifer 1:41.
JKB-16-0363 1:9.
JKB-16-0363 35:16,
  35:22, 53:25,
  64:11, 73:3,
  84:22, 94:18,
  101:16, 108:24,
  119:1, 126:9,
  136:19, 146:19.
JKB-16-30363
  23:22.
JKB-16-363 2:5,
  12:5, 12:14,
  23:17, 53:21,
  64:7, 72:24,
  84:18, 94:13,
  156:6, 166:19.
jog 20:24.

join 19:25, 46:17,
  47:2.
joined 2:14.
Jones 1:35, 9:10,
  9:11, 13:2, 24:9,
  36:8, 54:8, 64:21,
  73:14, 85:7, 95:4,
  102:1, 109:10,
  119:12, 126:20,
  137:5, 147:5,
  156:19, 167:7.
judges 50:14.
judgments 196:21.
judicial 6:14.
juries 7:23.
Justice 5:21,
  184:20, 193:13.
.
.
< K >.
Keep 7:10, 11:25,
  23:3, 28:6, 41:11,
  57:25, 69:13,
  78:12, 90:19,
  98:20, 106:7,
  113:19, 123:1,
  131:24, 141:11,
  152:21, 161:12,
  173:10, 194:1.
keeping 132:9,
  132:12.
Kenneth 1:35.
kept 144:18.
Kind 14:20, 40:10,
  77:20, 77:21,
  78:8, 87:11,
  87:15, 90:15,
  92:2, 112:3,
  112:10, 129:16,
  130:8, 134:2,
  151:19, 160:8,
  171:19, 171:25.
kinds 51:11, 194:24,
  197:20.
knowing 154:24,
  193:18.
known 13:12, 24:18,
  36:21, 54:15,
  65:21, 73:21,
  85:14, 95:13,

102:8, 109:18,
  119:19, 127:2,
  137:13, 147:12,
  157:1, 167:14.
.
.
< L >.
lack 49:19,
  129:23.
Ladies 52:20.
laid 198:4.
language 31:14,
  31:18, 32:11,
  45:12, 45:13.
languages 21:2.
large 117:7.
Last 9:6, 49:22,
  50:11, 135:18,
  135:19, 171:19,
  175:3, 180:15.
lasted 13:9, 24:15,
  36:18, 54:12,
  65:18, 73:18,
  85:11, 95:10,
  102:5, 109:15,
  119:16, 126:24,
  137:10, 147:9,
  156:23, 167:11.
late 2:10, 23:17.
latitude 198:9.
latter 196:11.
law 2:7, 10:21,
  158:16, 172:10,
  181:2.
lawfully 6:11.
lawyer 48:14, 48:16,
  141:21, 141:23,
  173:20, 184:4.
lead 179:23,
  188:12.
leading 44:20.
leads 133:23.
learned 32:15, 51:4,
  78:5.
learning 25:17,
  37:22, 55:14,
  66:20, 74:20,
  86:13, 96:13,
  103:9, 110:17,
  120:18, 128:1,

138:12, 148:11,
157:25, 168:13.
least 13:16, 24:22,
36:25, 54:19,
61:18, 65:25,
73:25, 85:18,
95:17, 102:12,
109:22, 119:23,
127:6, 137:17,
147:16, 157:5,
167:18, 179:25,
180:16, 187:8,
188:21, 199:5.
leave 4:17, 8:7,
10:16, 63:23,
72:5, 72:7, 83:9,
93:17, 93:22,
93:23, 99:4, 99:9,
100:21, 108:8,
118:4, 118:5,
118:10, 124:20,
135:4, 135:5,
135:16, 154:24,
155:5, 155:6,
160:9, 166:3,
174:3, 177:21,
178:22, 194:10.
leaves 179:21.
legal 61:10.
legally 61:1.
lengthy 107:10.
Leo 185:25.
less 5:14.
level 33:20,
181:8.
life 34:24.
light 16:14, 29:12,
35:1, 51:14,
175:2, 190:4,
190:10, 196:12.
likely 180:24,
188:19.
limited 27:16,
40:24, 57:13,
69:3, 77:7, 90:7,
98:10, 105:21,
113:5, 122:16,
131:8, 194:5.
limiting 172:19.
line 10:6, 10:12,

20:7, 20:13, 21:7,
27:8, 40:14, 46:4,
52:21, 57:4,
68:19, 76:23,
89:23, 98:1,
105:11, 112:21,
122:7, 130:22,
140:10, 144:5,
149:1, 151:24,
160:19, 172:6,
172:24, 192:10.
lines 67:18,
198:11.
lingering 92:15.
list 81:4, 185:1.
listen 8:11, 10:7,
10:8, 51:16,
51:18, 52:23,
53:1.
listened 31:14,
45:8, 45:16.
litigate 197:13.
litigation 194:22.
live 8:21.
local 52:24.
locate 189:6.
Lombard 1:48.
long 5:25, 83:23,
197:11.
longer 4:4, 139:18,
191:16, 191:19.
look 11:25, 36:7,
39:10, 45:7,
170:12, 172:3.
looked 33:9, 33:10,
40:10, 43:23,
44:2, 44:8, 78:4,
78:5, 139:19,
150:12, 150:16,
164:25.
looking 13:11,
24:17, 36:20,
39:1, 54:14,
64:23, 65:20,
73:20, 85:13,
95:12, 102:7,
109:17, 119:18,
126:25, 137:12,
147:11, 156:25,
162:19, 163:7,

167:12, 195:13,
196:3, 196:5,
196:9.
Looks 71:7,
156:13.
loose 62:10.
lost 42:24.
lot 34:18, 193:19.
Lots 82:7.
Loud 17:7, 17:9,
17:12, 18:10.
lunch 83:10, 83:12,
83:13, 83:14,
83:17, 83:21,
83:24.
.
.
< M >.
Ma'am 11:21, 22:22,
23:2, 34:14,
34:17, 52:19,
63:16, 71:23,
72:21, 83:9,
84:15, 93:24,
94:8, 100:24,
108:9, 136:3,
136:15, 142:13,
146:1, 165:6,
166:4, 167:8,
179:8.
machine 16:15,
28:24, 42:1,
58:16, 70:2,
79:11, 114:6,
123:14, 132:16,
142:6, 162:1,
174:14.
mainly 144:13.
maker 42:1, 70:2,
91:7, 99:17,
106:20, 123:14,
142:7, 153:9.
Male 88:3, 115:10,
139:21, 139:23,
150:8, 170:14,
170:15.
manner 10:10, 31:13,
188:1, 197:2.
Marquise 1:39.
Marshal 84:2,

180:19, 180:25,
182:22, 183:1,
186:1, 199:13.
Marshals 39:21,
  177:1, 186:24.
Maryland 1:2, 1:19,
  1:49.
mask 54:1, 64:13,
  73:5.
masks 39:13.
matter. 20:23.
matters 9:18, 27:15,
  40:23, 57:10,
  69:1, 77:4, 90:5,
  98:8, 105:18,
  113:4, 122:14,
  131:5, 140:20,
  152:6, 160:25,
  164:24, 172:17.
May 10th 1:18.
Mccants 1:39, 9:12,
  9:13, 13:3, 24:11,
  36:9, 36:10, 43:1,
  43:2, 43:6, 43:18,
  54:9, 64:22,
  73:15, 85:8,
  93:13, 95:6,
  102:2, 109:11,
  119:13, 126:21,
  137:6, 147:6,
  156:20, 167:8.
meaning 45:14.
means 30:18,
  44:18.
meant 42:18, 176:1,
  176:18.
Meanwhile 70:25.
measures 8:14.
Medium 117:11,
  117:13, 139:23.
meet 187:3,
  192:13.
member 184:5.
members 8:23, 8:24,
  13:18, 15:4,
  24:24, 37:2,
  38:22, 54:21,
  66:2, 74:2, 85:20,
  95:19, 102:14,
  109:24, 119:25,

127:8, 137:19,
  147:18, 157:7,
  167:20.
memories 89:3,
  104:25.
memory 20:24, 43:19,
  105:2, 115:14,
  115:20, 134:5,
  171:25.
mental 32:15.
mention 16:3,
  89:12.
mentioned 38:21,
  56:2, 68:8,
  114:22, 134:10,
  175:5.
message 31:25.
met 191:1.
Microphone 18:16,
  23:4, 33:11,
  34:19, 42:10,
  46:15, 70:24,
  89:9, 155:13.
midst 2:12, 8:12,
  63:3.
mike 17:5, 18:17,
  46:21, 59:5,
  59:11, 63:13,
  70:14, 133:9,
  133:13.
minded 30:20, 32:9,
  48:2, 62:12,
  62:21, 80:22,
  92:17, 164:9.
mindedness 46:11,
  49:18, 82:10,
  163:21, 164:2.
mindful 193:7.
minds 143:12,
  143:14.
mine 72:10,
  190:24.
minute 16:20, 42:4,
  58:21, 70:6,
  88:25, 148:14,
  169:13.
mirrors 186:15.
mishear 91:24.
misheard 92:1.
misleading 81:7.

mission 192:21.
misspoke 44:8.
mistakes 198:3.
mixed 67:19,
  155:13.
modifications
  19:1.
moment 3:19, 10:23,
  16:12, 20:14,
  60:24, 61:23,
  124:24, 142:6,
  165:20, 178:22.
moments 33:25.
Monday 180:16,
  183:7, 185:6,
  185:9, 192:25,
  196:15, 196:17,
  199:1, 199:9.
Monday 1:18.
monitor 33:19.
mostly 34:4, 34:6.
mother 39:23, 43:16,
  43:18.
Motz 163:8.
mouth 20:24, 104:25,
  177:21.
mouthful 173:20,
  178:20.
move 8:4, 81:17.
moved 7:21.
moves 34:23.
MR. BUSSARD 17:19,
  17:23, 19:15,
  21:17, 22:7, 31:8,
  46:14, 46:17,
  46:24, 63:9,
  71:20, 82:21,
  93:6, 93:8, 100:8,
  107:19, 117:22,
  124:4, 134:22,
  145:4, 154:15,
  165:11, 178:13,
  181:14, 182:9,
  182:16.
MR. NIETO 18:2,
  21:23, 22:11,
  93:11, 100:11,
  107:22, 117:24,
  124:7, 134:25,
  145:7, 145:9,

154:17, 165:14,
178:17, 190:22,
190:24, 191:3,
191:5, 192:12,
192:20, 194:5,
194:9, 194:14.
MR. O'TOOLE 17:16,
21:15, 22:5,
48:10, 48:20,
48:23, 49:22.
MS. HOFFMAN 17:11.
multi-step 197:24.
multiple 49:16,
187:21.
murder 51:9.
myself 39:2.
mystery 186:4.
.
.
< N >.
nail 47:15.
nailing 61:13.
Name 14:17, 16:3,
39:9, 39:15,
87:23, 139:17,
159:12, 170:11,
188:25, 194:18,
200:3, 201:3.
narrow 163:9.
nationally 52:24.
nationwide 52:21.
natural 52:1.
naturally 90:15.
nature 48:25, 159:1,
195:21.
near 2:13, 23:3.
necessarily 61:14,
81:11, 89:19,
159:8.
necessary 162:21.
needed 2:19,
92:23.
needing 135:24.
needs 30:4, 43:20,
43:24, 81:12,
187:25.
negative 173:24.
neither 6:4.
nervous 90:15, 92:2,
92:4, 92:5,

176:15.
nervousness 92:12.
new 136:4, 136:25.
nice 155:14.
nine 166:22.
Nisbet 180:20,
180:25, 182:22,
183:10, 186:1.
nobody 39:18, 39:19,
198:24.
nodding 18:11.
noise 16:15, 28:24,
42:1, 58:16, 70:2,
70:4, 79:11, 91:7,
99:17, 106:20,
114:6, 114:7,
123:14, 132:16,
132:20, 142:7,
153:9, 162:1,
174:14.
None 59:9, 59:15,
60:20, 63:12.
Nonetheless 144:5,
149:1, 152:11,
158:16, 163:17.
nonjuror 180:16.
nonsealed 10:11.
nonverbal 31:16,
45:23.
noon 194:11, 194:17,
195:5, 199:5,
199:9.
nor 6:4.
normal 33:16,
180:2.
north 33:6.
NORTHERN 1:2.
northwest 33:11.
note 52:25, 107:9,
107:10.
noted 20:2.
notes 13:10, 18:22,
24:16, 36:19,
54:13, 65:19,
73:19, 85:12,
95:11, 102:6,
109:16, 119:17,
126:25, 137:11,
147:10, 156:24,
162:23, 163:6,

167:12, 181:3,
181:5.
Nothing 31:8, 39:18,
48:6, 48:14,
60:17, 71:15,
78:10, 112:15,
129:12, 134:12,
145:9, 158:11,
198:15.
notice 39:1, 155:1,
194:12, 194:16,
197:4, 197:5.
noticed 38:21,
60:1.
notify 6:6.
notion 30:22.
November 84:20.
number 10:9, 12:4,
12:14, 23:17,
23:22, 35:15,
35:22, 52:23,
53:25, 64:11,
73:3, 84:22,
87:25, 88:5, 88:6,
94:13, 94:18,
101:16, 108:24,
119:1, 126:9,
136:19, 146:19,
156:6, 166:16,
166:19.
numerical 4:20.
.
.
< O >.
O'toole 1:33, 12:25,
17:15, 21:14,
22:4, 24:8, 36:6,
48:8, 48:9, 54:7,
64:21, 73:13,
85:6, 95:3, 102:1,
109:8, 119:11,
126:19, 137:4,
147:4, 156:18,
167:6.
oath 5:8, 5:17,
5:18, 6:3, 9:23,
10:17, 10:19,
11:4, 35:4, 44:21,
65:3.
object 9:22, 9:24,

30:1, 32:23, 81:5,
188:1, 188:8,
197:9.
objection 11:5,
30:11, 60:3,
70:12, 81:2,
154:10.
objections 59:17,
70:19, 71:13,
197:12, 197:17.
objectives 144:7.
obligations 6:15.
observation 11:1,
15:10, 15:12.
observations 32:22,
164:5.
observe 15:7.
observed 8:3, 15:17,
15:24, 43:13,
164:6.
obvious 143:11.
obviously 50:2,
191:8.
occasion 100:19.
occasions 187:21.
occur 5:1, 9:2,
49:21, 79:8,
106:17, 114:4,
123:11.
occurring 163:13.
offense 51:6,
51:9.
Officer 8:8,
180:24.
officers 8:5.
Official 1:47,
199:22.
old 150:12.
older 88:3, 88:4.
Once 4:18, 7:13,
8:7, 13:3, 22:17,
24:12, 32:1,
45:16, 45:21,
48:3, 52:15,
92:12, 92:17,
124:16, 131:25,
142:9, 144:16,
153:13, 178:24,
179:19.
one. 8:18, 135:8,

139:17.
open-minded 45:20,
80:19.
open-mindedness
31:19.
opened 197:20.
opening 20:10.
opens 197:21.
operate 49:13.
operating 20:13,
198:23.
Operations 182:1.
opinion 2:8,
175:14.
opportunity 8:11,
80:8, 81:6,
189:23, 190:6,
193:12.
optional 20:7.
order 2:5, 4:20,
4:22, 4:24,
162:20, 183:18,
187:10, 187:12,
197:10.
ordinarily 52:22.
ordinary 30:19.
originally 3:22.
others 15:20, 19:20,
43:15, 63:4,
129:2, 195:9.
otherwise 6:15,
7:24, 20:9, 25:7,
37:11, 55:4, 60:2,
66:10, 74:11,
86:3, 96:3, 97:20,
102:23, 110:7,
120:8, 126:2,
127:16, 138:2,
148:1, 157:15,
168:3.
ought 44:22,
133:17.
outside 15:4, 20:17,
25:6, 29:4, 37:10,
46:7, 55:3, 66:9,
74:9, 86:2, 96:2,
102:22, 106:24,
110:6, 114:4,
120:7, 127:15,
128:20, 132:15,

138:1, 139:14,
147:25, 157:14,
163:1, 168:2,
179:10.
overheard 56:25,
62:7, 134:2.
overly 177:23.
overreacting 175:12,
175:15.
own 31:21, 34:24,
50:23, 164:4.
.
.
< P >.
p.m. 83:22.
Page 200:3, 201:3.
paid 51:13, 177:3.
painfully 197:20.
painstaking
198:16.
palpable 48:2.
pandemic 8:13.
panel 2:23.
paper 19:10,
169:18.
papers 30:16.
paperwork 35:14,
187:2.
paragon 192:8.
paranoia 67:22.
paranoid 68:11,
68:14.
Pardon 35:2.
part 4:7, 11:5,
28:20, 32:6,
43:16, 44:4, 70:1,
78:3, 79:7, 99:16,
106:17, 114:4,
115:14, 123:11,
138:25, 142:4,
144:3, 153:6,
161:23, 163:8,
174:10, 191:24,
195:21, 197:25.
participants 9:17,
186:25.
participate 6:2,
8:25, 15:14,
26:25, 40:4,
56:20, 68:6,

76:14, 89:4,
91:10, 97:20,
104:21, 112:7,
121:25, 130:11,
140:3, 151:13,
160:12, 161:5,
171:21.
participates 5:25,
8:15.
participating
100:17.
participation 52:16,
154:20.
particular 2:14,
7:13, 8:16, 20:20,
46:10, 59:25,
71:16, 171:11,
188:17, 198:5.
particularly 50:20,
80:13, 179:1.
particulars 61:12,
171:4.
parties 12:23, 24:5,
54:5, 64:17,
73:10, 80:2, 85:4,
94:25, 101:22,
109:6, 119:9,
126:16, 137:2,
147:1, 156:16,
167:4.
parts 43:19.
party 191:1,
192:5.
pass 74:3.
passed 13:19, 24:25,
37:3, 54:22, 66:3,
85:21, 95:20,
102:15, 109:25,
120:1, 127:9,
137:20, 147:19,
157:8, 167:21.
passing 13:10,
24:16, 36:19,
54:13, 65:19,
73:19, 85:12,
95:11, 102:6,
109:16, 119:17,
126:25, 137:11,
147:10, 156:24,
162:23, 163:6,

167:12.
patience 16:12,
58:21, 114:13,
132:22, 165:7.
patient 16:20,
79:14, 91:12,
99:21, 106:23,
123:18, 142:11,
153:15, 162:6,
174:22.
Paul 170:1, 170:11,
177:24.
Paul F. Enzinna
1:31.
pause 2:12, 13:15,
24:21, 36:24,
54:18, 65:24,
73:24, 85:17,
95:16, 99:14,
102:11, 107:10,
107:13, 109:21,
115:19, 119:22,
127:5, 137:16,
147:15, 157:4,
167:17, 192:21.
paused 52:5.
pausing 13:13,
24:19, 36:22,
54:16, 65:22,
73:22, 85:15,
95:14, 102:9,
109:19, 119:20,
127:3, 137:14,
147:13, 157:2,
167:15.
pay 56:2, 62:3,
62:5, 62:8,
151:10.
paying 159:10.
pending 5:5,
32:16.
people 5:20, 39:1,
39:2, 39:14,
39:22, 43:13,
67:20, 68:12,
130:15, 135:20,
139:13, 143:12,
150:4, 151:16,
160:7, 163:7,
165:1, 171:9,

179:1, 183:21,
183:24, 187:22,
188:22, 195:19,
195:21.
per 48:16.
perceiving 20:19.
percent 8:3,
186:16.
perception 81:24,
164:17.
Perfect 11:15,
70:17, 155:15.
perfectly 23:4,
53:1, 88:4,
186:15.
perform 51:13.
period 81:21, 134:3,
181:3, 196:24,
197:12, 197:16.
permission 184:6,
193:9.
permit 189:15.
permits 61:2.
permitted 8:24,
61:7, 93:17,
184:4.
Personally 28:1.
perspective 34:6.
persuasive 32:13.
Peter J. Martinez
1:25.
petition 193:6.
phase 62:7.
phases 198:4.
phone 15:5, 16:5,
25:10, 29:18,
37:14, 55:7,
66:13, 68:13,
74:14, 86:6, 96:6,
103:1, 110:10,
120:11, 125:21,
127:19, 138:5,
148:4, 157:18,
168:6.
phones 67:20,
131:22, 151:8.
photo 143:25,
191:12.
photographed 25:7,
37:11, 55:4,

66:10, 74:10,
86:3, 96:3,
102:23, 110:7,
120:8, 127:16,
138:2, 148:1,
157:15, 168:3.
photography 43:11,
162:18.
photos 42:22, 42:23,
43:14.
physical 88:10,
117:7.
pick 39:8, 83:15,
124:19, 135:15,
155:4.
piece 71:6.
place 5:4, 5:8,
8:14, 100:17,
144:7.
placed 10:19,
181:25.
places 30:5, 175:5,
186:9.
placing 6:3.
Plaintiff 1:7,
1:23.
plan 182:13, 188:18,
189:6, 189:7,
192:11, 198:21.
planning 83:11,
185:9.
plans 180:9, 186:9,
187:17, 193:2.
plays 189:14.
plexiglas 33:16.
plural 38:16.
point. 47:23, 58:20,
143:20, 173:3.
pointed 30:2,
163:8.
points 10:5,
193:22.
policy 144:6.
popped 191:9.
popping 172:1.
portal 20:6.
portion 132:14.
posed 143:8.
position 5:19,
10:18, 10:22,

33:4, 71:11,
81:10, 81:15,
81:16, 142:24,
144:8, 196:8.
positioning 33:24.
positions 10:19.
positive 83:14.
possession 25:11,
37:15, 55:8,
66:14, 74:14,
86:7, 96:7, 103:2,
110:11, 120:12,
127:20, 138:6,
148:5, 157:19,
168:7.
possibility 15:15,
27:1, 32:1, 40:5,
56:21, 68:7,
76:15, 89:5,
97:21, 104:22,
112:8, 115:8,
122:1, 130:12,
140:4, 151:14,
160:13, 171:22,
196:20.
possible 6:11,
20:25, 27:23,
41:6, 57:18,
61:11, 69:9,
77:13, 90:12,
98:15, 106:2,
113:14, 122:21,
131:17, 141:6,
152:16, 165:25,
173:6, 192:25,
196:13.
possibly 11:6, 57:1,
77:22, 133:15.
post 80:7.
post-verdict 3:3.
postponement
189:24.
potential 14:14,
26:20, 39:6,
50:15, 51:2,
56:15, 68:1,
75:19, 87:18,
97:13, 104:14,
111:22, 121:17,
129:15, 150:7,

160:2, 191:12,
199:7.
potentially 10:20,
61:16, 180:20,
191:14, 195:8,
195:9, 197:16.
Powell 105:7, 181:5,
182:2, 182:3,
182:12, 182:18.
practice 9:3, 48:13,
51:15, 192:9.
preamble 163:3.
precise 104:13.
predicted 187:22.
predicts 135:21.
preface 50:1.
prejudice 196:18,
197:14.
prejudiced 197:3,
197:4.
preliminary 2:16,
9:18.
preparation 34:19.
prepared 183:5,
185:14, 185:23,
186:2.
presence 13:16,
24:22, 36:25,
54:19, 65:25,
73:25, 85:18,
95:17, 102:12,
109:22, 119:23,
127:6, 137:17,
147:16, 154:20,
157:5, 167:18.
present 9:7, 9:8,
9:10, 9:12, 80:2,
180:10, 199:4.
presided 12:18,
23:24, 35:23,
54:1, 64:12, 73:4,
84:23, 94:19,
101:17, 108:25,
119:2, 126:10,
136:20, 146:20,
156:7, 166:20.
press 8:23.
Presumably 168:24,
191:22, 192:17,
196:5.

presume 192:13.
Pretty 16:4, 87:10,
  88:21, 116:2,
  171:11, 171:17,
  173:2, 175:6,
  175:10, 193:10.
prevail 197:22.
prevailed 46:8.
previous 20:1.
previously 10:20,
  92:11, 143:7,
  143:11, 154:9,
  196:6.
Prior 12:14, 27:9,
  40:15, 57:4,
  62:13, 68:20,
  76:24, 81:4,
  81:21, 89:24,
  98:2, 105:12,
  112:21, 122:8,
  130:22, 133:18,
  140:11, 151:24,
  160:20, 162:22,
  164:16, 172:7.
privacy 184:19.
privately 48:16,
  106:17, 123:12,
  142:5, 153:7.
Probably 33:12,
  33:13, 33:14,
  34:23, 34:24,
  58:16, 70:2,
  162:2, 169:16,
  171:17, 173:2,
  178:2, 184:11.
probe 20:24,
  49:16.
probed 43:20.
problem 20:12,
  44:17.
procedure 180:3.
procedures 10:5,
  155:12.
proceed 3:18, 4:19,
  4:21, 5:13, 11:4,
  20:13, 197:2.
proceeded 165:4.
proceeding 3:13,
  5:25, 6:5, 6:14,
  7:25, 8:11, 8:12,

8:15, 8:16, 9:17,
  10:8, 47:21,
  71:14, 132:14,
  135:23, 138:25,
  179:15, 180:6,
  182:14, 182:20,
  183:19, 185:21,
  187:21.
processes 197:21,
  197:22.
produce 185:22.
produced 187:16.
professional
  193:23.
Proffer 185:15,
  197:7, 197:8.
projected 31:16.
projecting 170:1.
proof 180:6, 199:2,
  199:4.
prophylactically
  61:5.
proposal 19:1.
propose 14:5, 19:5,
  25:23, 29:15,
  38:4, 55:20, 67:1,
  71:12, 75:1,
  86:19, 96:21,
  103:15, 111:3,
  120:24, 128:7,
  138:20, 144:25,
  148:17, 158:6,
  164:11, 168:19,
  175:16, 184:12,
  193:9.
proposed 18:8,
  18:12, 18:18,
  18:23, 18:24,
  18:25, 19:11,
  19:13, 19:16,
  29:24, 30:1,
  30:25, 31:21,
  45:5, 48:5, 63:3,
  63:10, 82:13,
  142:21, 162:16.
proposes 31:13,
  162:13.
proposing 49:6,
  49:23.
propound 154:11.

prospect 80:13.
protect 8:14.
protected 194:25.
protective 184:13,
  184:19.
prove 68:12.
provide 116:10,
  142:24, 185:1,
  187:10.
provided 165:24.
provides 46:9.
providing 46:9.
public 8:10, 8:19,
  8:24, 9:1, 10:6,
  20:6, 20:8, 20:9,
  20:13, 52:21,
  53:1.
published 10:9.
Pull 125:22, 133:13,
  155:13.
pump 125:20.
purged 80:16, 80:19,
  143:13.
purpose 153:10.
purposes 5:10,
  30:21, 61:4.
pursuant 2:5,
  2:15.
puts 48:25.
putting 50:9.
.
.
< Q >.
quality 80:14.
questioned 3:12,
  3:19, 4:7, 4:24,
  5:1, 82:4, 111:19,
  112:17, 112:18,
  116:9, 144:9,
  162:22.
questioning 3:25,
  4:18, 45:18,
  115:24, 163:12,
  164:6, 183:20,
  186:15.
quick 164:23.
quietly 142:8.
quite 32:8, 33:25,
  51:4, 82:14,
  92:11, 133:12,

193:10.
quote 30:3, 42:17,
    43:24, 81:19,
    143:12, 176:1.
.
.
< R >.
race 88:1, 88:9,
    139:20, 159:13.
Raise 10:24, 11:13,
    15:12, 23:6,
    34:18, 35:1, 35:3,
    53:9, 65:3, 76:11,
    84:7, 94:2,
    118:12, 136:4,
    146:5, 155:9,
    155:15.
raising 75:24,
    160:6.
rather 80:2.
rattled 177:1.
re-asked 30:4,
    30:6.
re-orient 116:18.
reach 191:25,
    192:5.
reached 26:2, 38:8,
    55:24, 67:5, 75:5,
    86:23, 96:25,
    103:19, 111:7,
    121:2, 128:12,
    148:21, 158:10,
    168:23.
react 198:13.
reacted 144:10,
    177:20.
reaction 60:18,
    60:20, 133:15,
    175:11, 176:20,
    176:23, 176:25.
reactions 164:7.
read 27:13, 29:19,
    40:19, 57:8,
    68:24, 77:2, 90:3,
    98:5, 105:16,
    112:25, 122:12,
    131:3, 140:18,
    152:3, 160:23,
    169:18, 172:15.
ready 10:2, 20:5,

34:20, 34:25,
    47:21, 53:7, 84:5,
    125:5, 194:4.
real 68:9, 176:13,
    177:3.
realize 104:23.
really 13:23, 19:19,
    43:14, 46:1, 46:3,
    48:16, 51:13,
    51:25, 56:23,
    57:21, 62:3,
    62:16, 68:8,
    68:12, 87:23,
    88:6, 97:15,
    112:19, 131:25,
    134:9, 151:7,
    169:25, 170:21,
    171:6, 171:10,
    172:2, 176:15,
    176:25, 177:23.
reason 19:6, 144:13,
    149:15, 149:23,
    149:24.
reasonable 190:6.
reasonably 198:12.
reasons 92:10,
    150:5, 154:9.
reassured 81:3.
recalled 46:25.
received 25:9,
    37:13, 55:6,
    66:12, 74:12,
    83:5, 86:5, 96:5,
    102:25, 110:9,
    120:10, 127:18,
    138:4, 148:3,
    157:17, 163:25,
    168:5.
recent 154:23.
recess 83:12, 84:3,
    84:4, 125:4,
    199:1, 199:13.
reciprocal 193:20.
recites 186:14.
recognize 39:13,
    64:13, 73:5, 89:6,
    135:6, 140:13,
    144:4, 148:22,
    172:8.
recollection 47:5,

61:12, 191:11.
recollections
    5:15.
reconsider 11:7.
reconvene 198:21.
record. 16:24, 21:8,
    29:9, 42:6, 58:23,
    62:24, 70:8,
    79:17, 91:15,
    99:24, 107:2,
    114:17, 116:5,
    117:17, 123:19,
    133:1, 134:16,
    142:14, 153:18,
    162:8, 165:9,
    174:24, 177:6,
    178:7.
recording 125:24.
records 197:13.
redundant 39:25.
refer 163:24.
reference 31:22,
    62:10, 163:16,
    163:23.
referenced 16:3,
    163:2, 184:7.
referred 25:13,
    37:17, 55:10,
    66:16, 74:16,
    78:1, 86:9, 96:9,
    97:13, 103:4,
    110:13, 120:14,
    127:22, 138:8,
    139:2, 148:7,
    150:7, 157:21,
    158:23, 160:5,
    168:9.
referring 14:8,
    26:4, 56:1, 67:8,
    76:5, 88:24,
    105:7, 128:16,
    175:6.
reflect 8:10, 9:6,
    33:2, 43:2, 43:6,
    50:12, 59:24,
    60:3, 80:4, 80:7,
    179:13, 192:7.
reflection 107:14.
reframed 163:22.
regard 5:22, 44:15,

51:22, 59:18,
130:13, 160:6,
187:6, 189:20.
regarding 14:14,
26:19, 39:5,
56:14, 61:2, 61:7,
67:25, 75:18,
87:17, 97:12,
104:14, 111:22,
121:16, 129:14,
150:6, 162:23.
regardless 60:14,
61:3, 61:8.
regular 7:8, 52:9.
regularly 50:18.
reiterate 27:18,
41:1, 57:14, 69:4,
77:8, 90:8, 98:11,
105:22, 113:7,
122:17, 131:9,
172:21.
related 160:16,
163:10.
relation 163:13,
177:19, 186:21.
relations 6:12.
relationship 5:12,
6:16, 185:4.
Relatively 140:23,
159:14, 159:15.
relayed 186:3.
released 182:19,
196:22.
relevance 49:7.
remain 28:5, 30:17,
34:25, 41:10,
43:7, 49:23, 50:4,
52:1, 57:24,
69:12, 78:11,
90:18, 98:19,
106:6, 113:18,
122:25, 131:23,
141:10, 152:20,
161:11, 173:9.
remainder 25:18,
37:23, 55:15,
66:21, 74:21,
86:14, 96:14,
103:11, 110:18,
120:19, 128:3,

138:13, 148:12,
158:1, 168:15,
180:9.
remained 19:2, 32:8,
144:17.
remaining 44:16.
remains 183:9.
remand 163:1, 163:9,
198:15.
remanded 3:2, 84:1,
199:12.
remembered 42:17.
remembering
171:25.
remembrance
129:20.
Remind 52:25,
180:18.
reminded 30:2, 30:7,
43:20.
Remmer 2:8, 2:15,
2:19, 2:24, 3:4,
50:16, 181:8,
198:19.
Remmer-type 163:5.
render 51:10.
renders 61:16.
repeat 78:21, 88:18,
141:20.
repetitively
21:19.
rephrase 88:16.
replace 9:5, 71:1.
replacing 43:4.
report 25:9, 37:13,
43:16, 55:6,
66:12, 74:12,
86:5, 96:5,
102:25, 110:9,
120:10, 127:18,
138:4, 148:3,
157:17, 168:5,
171:17, 185:20,
186:2, 186:15,
186:16.
reported 14:17,
14:22, 26:23,
39:17, 43:12,
43:16, 56:18,
68:4, 88:20,

88:22, 97:17,
104:18, 112:5,
121:20, 121:23,
129:19, 129:21,
133:19, 140:1,
151:6, 171:13,
171:14.
Reporter 1:47,
18:10, 199:22.
reporting 164:25.
reports 185:22,
185:24, 186:8,
186:16, 186:20,
186:23, 187:7,
187:8, 187:16,
187:20, 188:5.
represented 24:7,
24:8.
Representing 36:4,
36:6, 36:8, 36:9,
64:18, 64:20,
64:21, 64:22,
73:12, 73:13,
73:14, 102:2,
109:7, 109:8,
109:10, 109:11,
126:18, 126:19,
126:20, 137:3.
represents 13:1,
24:9, 54:8, 85:7,
95:1, 95:2, 95:4,
119:12, 137:5,
147:5, 156:19,
167:7.
request 2:20, 3:15,
7:11, 20:1, 44:15,
59:19, 59:22,
80:4, 88:15,
132:22, 142:20,
143:6, 143:20,
143:23, 153:24,
154:4, 175:24,
177:13, 177:14,
186:11.
requested 2:15,
2:25, 18:3, 19:22,
19:24, 185:20,
198:10.
requesting 154:5,
164:14.

requests 3:17,
    46:18, 92:10.
required 20:7,
    183:10.
requires 189:24.
reserve 18:6,
    162:12.
residence 5:3.
residing 15:11.
resolved 196:25.
respect 5:6, 9:20,
    10:10, 32:12,
    48:1, 51:2, 52:21,
    59:18, 60:4,
    60:10, 71:11,
    71:14, 81:16,
    83:6, 145:20,
    154:5, 154:7,
    163:5, 175:25,
    179:24, 188:14,
    195:19, 196:15,
    196:18, 196:20.
respond 25:25, 38:5,
    55:22, 63:22,
    67:3, 75:2, 86:20,
    96:23, 103:16,
    111:4, 120:25,
    128:10, 138:21,
    148:18, 158:7,
    168:21, 193:12.
responded 49:8.
responding 27:7,
    40:13, 52:14,
    57:3, 68:18,
    76:22, 83:2,
    89:22, 97:25,
    100:16, 105:10,
    112:20, 122:6,
    130:21, 135:9,
    140:9, 145:17,
    151:23, 154:25,
    160:18, 165:22,
    172:5, 186:25.
response 72:2,
    79:21, 79:23,
    79:24, 79:25,
    80:1, 80:3, 83:4,
    92:10, 92:25,
    100:15, 108:2,
    118:6, 124:12,

    154:22.
response. 101:20.
responses 45:21,
    175:3, 175:9.
responsibility
    184:20, 193:24.
responsible
    145:18.
rest 4:25, 13:16,
    24:22, 36:25,
    43:23, 54:19,
    65:25, 73:25,
    85:18, 95:17,
    102:13, 109:22,
    119:23, 127:6,
    137:17, 147:16,
    157:5, 167:18,
    178:1.
restate 99:6.
restricting
    187:10.
restrictions
    193:4.
resume 83:22, 83:25,
    180:2.
retaining 32:9,
    179:25.
return 22:12, 52:15,
    161:5, 181:18.
returned 83:18,
    84:2, 144:11,
    179:14.
returner 93:20.
returning 22:16,
    52:12, 63:20,
    72:2, 83:1, 83:4,
    100:15, 100:18,
    108:2, 118:6,
    124:12, 145:15,
    165:19, 169:21,
    178:24.
revealed 25:12,
    37:16, 55:9,
    66:15, 74:15,
    86:8, 96:8, 103:3,
    110:12, 120:13,
    127:21, 138:7,
    148:6, 157:20,
    168:8.
revealing 92:11.

review 198:17.
revise 60:1.
revisit 79:21.
Rights 194:25.
rise 92:12,
    143:10.
road 187:21.
roaming 151:19.
rooted 195:22.
routine 50:16,
    50:17.
row 116:18,
    116:19.
RPR 1:46, 199:16.
Rule 7:12, 60:19,
    61:2, 80:10,
    144:7, 193:7,
    196:15, 197:11.
ruled 2:23.
Rules 136:4, 187:12,
    194:21, 194:23.
ruling 11:3, 11:7,
    45:6, 47:4, 61:9,
    61:17.
rulings 19:10,
    143:7.
run 6:15, 185:21,
    191:13, 191:14,
    195:2.
running 193:3.
.
.
< S >.
sacred 184:19.
sadly 51:3.
safe 184:11.
safety 27:5.
sat 87:24.
satisfied 2:18,
    32:13, 32:15.
save 153:23.
saw 15:4, 20:17,
    33:25, 38:24,
    39:4, 39:19,
    47:11, 87:13,
    97:2, 105:4,
    150:22, 150:24,
    163:11, 169:22,
    185:12.
saying 15:2, 15:17,

28:14, 31:24,
38:23, 49:8,
62:15, 78:7,
122:4, 129:10,
170:8, 170:18,
170:23, 171:16,
174:9, 175:9,
193:18.
says 162:14, 187:24,
193:19.
scared 97:11,
134:12.
scene 33:22.
scope 163:1, 186:8,
186:12, 186:17,
187:9, 187:11,
190:1, 190:7,
197:10.
search 196:12.
seat 11:22, 11:25,
23:2, 50:18, 53:6,
116:22, 155:9.
seated 2:2, 2:4,
3:7, 9:14, 33:5,
33:7, 33:12, 35:1,
45:25, 116:18,
117:4, 136:3,
136:5.
Second 18:21, 18:22,
18:23, 18:24,
19:6, 42:24, 53:7,
80:14, 115:18,
115:19, 116:14,
133:24, 134:7,
172:12, 180:20,
181:25.
Security 8:5, 8:8,
180:23.
seeing 15:1, 20:17,
159:24.
seek 5:7.
seem 128:22.
seemed 60:13, 115:7,
160:8.
Seems 59:7, 60:9,
163:9, 187:7.
seen 25:2, 37:5,
54:24, 66:5, 74:5,
85:23, 95:22,
102:17, 110:2,

120:3, 127:11,
137:22, 147:21,
157:10, 167:23,
175:15, 191:19.
selected 7:23.
selection 13:12,
24:18, 36:21,
54:15, 65:21,
73:21, 85:14,
95:13, 102:8,
109:18, 119:19,
127:2, 137:13,
147:12, 157:1,
167:14.
selectively 49:3.
self-assurance
47:25.
send 8:9.
sentenced 2:22.
sequence 197:2.
serious 13:23,
18:20, 19:16,
20:21, 21:2,
43:14, 50:25,
51:6, 107:14,
134:4.
serious. 133:21.
seriousness 118:8.
serve 4:17, 19:7,
28:10, 41:14,
45:20, 51:10,
58:4, 69:16,
78:18, 78:23,
90:22, 92:19,
98:23, 106:10,
113:22, 123:4,
124:16, 132:3,
141:3, 141:14,
143:17, 145:21,
152:24, 158:12,
161:16, 165:3,
173:13.
served 3:10, 3:23,
4:5, 12:13, 12:15,
23:16, 23:20,
35:16, 35:20,
53:24, 64:10,
73:2, 84:21,
94:12, 94:16,
101:14, 108:22,

118:24, 126:8,
136:14, 136:17,
139:18, 146:17,
156:1, 156:4,
166:18, 181:2.
serving 3:20, 4:4,
4:9, 4:11, 4:13,
4:19, 12:2, 13:6,
18:4, 105:8,
141:3.
session 181:4,
198:23.
set 2:7, 3:12,
112:3.
several 39:2,
143:11.
sexual 51:9.
shape 61:18,
117:7.
share 180:8.
shared 14:13,
77:19.
sheds 190:4.
shelf 116:22.
shift 51:15.
shifted 92:15.
short 81:14.
shorter 83:15,
117:9.
shot 61:12.
shoulder 24:10,
33:18, 33:21,
34:2, 36:9, 64:25,
108:5.
shouldered 145:20.
shouldering 135:9.
shown 198:15.
shows 194:21.
shred 195:22.
sic 163:17.
side 6:8, 6:21.
sides 28:12, 41:16,
58:8, 69:20, 79:2,
91:1, 99:2, 99:11,
106:14, 114:1,
123:9, 132:7,
141:18, 142:1,
153:4, 161:20,
173:18, 174:3.
signaled 43:2.

signaling 43:6.
signals 45:17.
significance 82:8, 82:9.
significant 13:22, 18:21, 20:22, 20:23, 21:3, 25:2, 30:19, 32:6, 37:5, 45:14, 54:24, 66:5, 74:5, 85:23, 95:22, 102:17, 110:2, 120:3, 127:11, 137:22, 147:21, 157:10, 167:23, 179:25.
silenced 10:12.
silent 16:5, 49:23.
similar 92:10, 142:21, 197:11.
similarly 188:13.
sincerely 34:11, 63:20.
single 81:13.
singular 38:17.
sit 4:6, 144:4, 144:12, 148:23, 152:9, 155:11, 168:25.
sitting 33:3, 62:18, 75:22, 83:13, 116:15, 128:20, 128:23, 169:16, 193:18.
situated 33:23.
size 117:11, 117:13, 139:22.
skin 88:12, 112:1, 117:11, 170:15.
slash 190:25, 191:24.
slightest 125:23.
slightly 163:22.
small 117:7.
smart 25:10, 29:18, 37:14, 55:7, 66:13, 74:13, 86:6, 96:6, 103:1, 110:10, 120:11, 127:19, 138:5,

148:4, 157:18, 168:6.
Smith 10:17, 11:16, 20:5, 20:10, 22:18, 35:5, 43:1, 70:25, 83:16, 84:5, 124:24, 179:14, 181:23, 182:19.
soft 18:17.
soldier 47:18.
Somebody 39:23, 56:2, 56:12, 56:13, 56:25, 57:1, 62:6, 87:23, 97:3, 104:19, 105:3, 170:23, 171:16, 195:22.
somehow 6:14, 190:4.
sometime 3:23.
sometimes 33:9, 47:14, 106:20, 173:21.
somewhere 33:18, 39:11.
soon 196:13.
sooner 196:14.
sophisticated 45:12.
Sorry 21:18, 34:19, 39:15, 56:22, 88:18, 97:24, 110:22, 126:4, 129:7, 129:16, 130:1, 130:4, 189:18, 190:22.
sorted 20:12.
sound 142:6.
sounding 39:25.
source 190:20.
south 33:5, 33:7, 39:11.
spark 89:3.
speaking 32:19, 34:12, 48:14.
special 4:25, 8:13, 51:12.
specific 19:16, 59:25, 71:12,

158:25, 163:10.
Specifically 25:16, 26:14, 37:21, 38:20, 42:23, 43:10, 43:11, 55:13, 61:10, 66:19, 74:19, 86:12, 96:12, 103:7, 110:16, 120:17, 127:25, 138:11, 142:23, 148:10, 157:24, 168:12, 169:19, 170:20, 170:22, 171:9.
specificity 82:5.
specifics 121:13.
spectators 165:1.
speculate 138:22, 170:17.
speculating 195:14.
speculation 152:12, 195:20.
speed 34:23.
spoke 25:4, 37:8, 46:19, 55:1, 66:7, 74:7, 85:25, 95:25, 102:20, 110:4, 114:23, 120:5, 127:13, 137:24, 147:23, 157:12, 167:25.
spot 49:1, 50:9.
squarely 185:19.
stab 115:4.
staff 7:21, 8:5, 8:22, 13:24, 25:3, 37:6, 52:23, 54:25, 66:6, 74:6, 85:24, 89:15, 89:17, 92:13, 95:23, 102:19, 110:3, 120:4, 127:12, 129:25, 137:23, 147:22, 157:11, 167:24.
staging 7:17.
stairway 160:10.
stand 6:22, 19:20,

33:8, 33:19,
71:13, 124:25,
186:14.
standard 9:3.
standing 6:9, 9:24,
10:17, 10:24,
11:2, 11:8, 59:22,
70:12, 70:19,
153:24, 154:10,
183:17.
stands 196:16.
start 27:9, 38:16,
39:25, 40:15,
47:22, 57:4,
68:20, 76:24,
89:24, 98:2,
105:12, 112:22,
122:8, 130:23,
140:11, 151:25,
160:20, 172:7,
193:3.
started 121:13,
131:21, 176:12.
Starting 12:23,
54:5, 119:9,
126:16, 147:1,
156:16.
starts 70:15,
144:5.
State 5:20, 12:11,
62:18.
statement 9:23,
29:16, 29:19,
29:21, 47:1,
79:24, 104:11,
171:2.
statements 14:10,
26:10, 38:15,
38:18, 56:7,
67:13, 75:12,
87:5, 97:7, 104:2,
111:13, 121:9,
128:24, 135:22,
139:8, 149:11,
159:5, 170:4,
186:19, 186:20.
stating 159:19.
status 3:25, 32:15,
179:25, 180:15,
183:3, 185:19,

193:19.
stay 48:24, 62:17,
70:14, 71:9.
stayed 45:11,
88:7.
steered 31:23.
steering 61:5.
stenographic
199:17.
step 50:7.
step-by-step
198:17.
steps 34:19,
193:13.
stop 6:24, 65:2,
83:16, 92:4,
196:2.
stopped 132:9,
132:12.
store 81:8.
story 80:12.
straight 35:14.
stranger 51:1.
Street 1:48, 194:22,
194:24.
stressed 34:7,
126:1.
strike 184:17.
strikes 45:11.
subject 51:8,
184:15.
submission 195:4.
subpoena 181:18,
181:24, 181:25,
182:13, 182:19,
182:25, 183:9,
183:14, 183:16.
subpoenaed 182:22,
182:23, 183:6.
subsequent 7:16,
170:25.
Subsequently 2:21,
4:14, 19:9.
substance 29:19.
substantial 143:9,
196:24.
substantive 187:3.
substitute 43:4.
suddenly 45:2.
sufficient 181:8,

189:22.
sugar 126:3,
126:6.
suggest 14:22, 18:7,
26:22, 39:16,
56:17, 60:13,
68:3, 88:16,
88:19, 97:16,
104:17, 112:4,
121:19, 121:22,
129:18, 139:25,
151:4, 151:5,
171:12, 184:24.
suggested 26:7,
38:12, 56:4,
67:10, 75:9, 87:2,
97:5, 97:19,
103:24, 111:10,
121:6, 128:19,
139:5, 149:8,
159:2, 169:10,
169:23.
suggesting 50:1,
50:5, 80:17.
suggestion 44:4,
61:14, 62:2.
suggestions 3:16,
3:17, 70:20.
suggests 61:6.
summons 22:16,
52:15, 63:22,
72:3, 83:2,
100:15, 100:17,
108:3, 118:7,
124:12, 135:9,
145:18, 154:23,
155:1, 165:23.
supervising 8:22.
Supervisor 182:1,
186:23.
supplant 9:5.
supplied 31:15,
45:8, 46:9, 61:16,
65:10.
support 160:8.
suppose 49:8,
185:11, 188:9.
supposed 15:11,
150:22.
Supreme 2:8.

surgical 51:5.
surprise 52:3,
   187:6, 187:13,
   198:11.
surprised 51:23,
   189:15.
suspect 112:19.
suspected 111:16,
   112:14.
suspicion 187:5.
suspicions 112:15,
   116:1.
sustain 30:11.
Swear 53:7, 65:2,
   136:5.
Swiss 5:6, 6:4,
   10:21, 196:20.
switch 48:17.
Switzerland 5:3,
   5:13, 179:18.
swore 50:10.
sworn 6:4, 6:22,
   11:19, 23:8, 35:8,
   53:12, 65:5,
   72:15, 84:9, 94:4,
   101:2, 108:12,
   118:14, 125:8,
   136:8, 146:7,
   155:17, 166:8.
.
.
< T >.
T. 1:46, 199:21.
table 72:7.
tag-team 48:19.
taint 183:18.
taken. 84:4,
   125:4.
Talked 89:13, 115:8,
   129:22, 130:1,
   151:16, 163:15,
   163:24, 170:16,
   187:23.
task 143:10,
   180:1.
team 193:1.
technical 53:3.
technically 20:7,
   144:4.
technique 51:20.

technology 198:22.
telephone 10:6,
   10:9, 10:12,
   25:14, 37:18,
   55:11, 66:17,
   74:17, 86:10,
   96:10, 103:5,
   110:14, 120:15,
   127:22, 138:9,
   148:8, 157:22,
   168:9.
telex 6:25, 9:2,
   9:4, 10:12, 43:3,
   70:22, 71:1.
ten 33:12, 45:7.
tended 169:17.
term 30:21, 44:18,
   176:6.
terms 3:21, 10:20,
   31:20, 47:11,
   49:24, 61:13,
   70:20, 115:18,
   164:24, 176:8,
   180:9, 193:5,
   198:4, 199:7.
terribly 172:9.
Test 43:5, 49:17,
   71:7.
testified 11:20,
   23:9, 35:9, 53:13,
   65:6, 72:16,
   84:10, 94:5,
   101:3, 108:13,
   118:15, 125:9,
   136:9, 146:8,
   155:18, 166:9.
testify 61:7,
   182:20, 182:23,
   185:10, 185:11,
   185:12, 186:9,
   188:7.
testifying 5:18,
   9:22, 31:17.
testimony 6:4, 32:6,
   33:4, 47:8, 61:2,
   80:20, 179:19,
   179:22, 180:21,
   181:6, 186:17,
   187:9, 189:19,
   192:22, 197:9,

197:10, 197:14.
Thanks 22:17, 72:6,
   135:5.
THE CLERK 10:3,
   10:15, 11:17,
   11:22, 23:11,
   35:6, 35:11, 53:8,
   53:15, 65:8,
   72:10, 72:18,
   83:20, 84:12,
   94:2, 94:7, 101:5,
   108:15, 118:12,
   118:17, 125:11,
   136:6, 136:11,
   146:5, 146:10,
   155:9, 155:20,
   166:11.
THE WITNESS 22:19,
   22:23, 23:1,
   34:15, 34:21,
   35:2, 52:13,
   52:18, 64:1, 64:5,
   64:8, 64:15,
   65:11, 72:6,
   93:25, 94:6,
   100:23, 101:8,
   135:18, 135:25,
   146:2, 166:5,
   179:9.
themselves 44:4,
   50:24, 51:12.
They'll 6:21, 6:22,
   7:17.
They've 8:7, 186:5,
   197:8, 198:10,
   199:11.
Thinking 10:23,
   134:6, 174:8,
   178:3.
third 4:5, 6:12,
   43:22, 104:8,
   104:19.
third-hand 104:7.
thorough 144:15.
thoroughly 6:10.
though 32:7, 34:2,
   47:24, 60:9,
   115:8, 119:4,
   141:22, 150:24,
   176:16, 192:5.

thoughts 180:8.
three 4:10, 9:6,
   34:12, 42:1,
   52:12, 71:7,
   76:17, 129:2,
   129:7, 135:10,
   145:17, 154:21,
   175:3.
throughout 32:3,
   33:16.
thrust 194:1.
timing 60:9, 61:3,
   61:8, 61:13.
together 31:20,
   67:20, 183:10,
   191:20.
Tomorrow 5:1, 5:4,
   5:9, 5:19, 6:6,
   6:18, 179:16,
   180:3, 198:22,
   198:23.
tone 34:3, 48:4,
   194:1.
took 10:20, 31:25,
   181:3.
topic 51:16, 92:12,
   158:19, 160:15,
   164:10.
topics 144:25,
   187:14.
total 31:25.
totality 175:8,
   176:23, 189:20,
   189:25.
touched 187:15,
   191:10.
towards 79:24.
tradition 50:14.
Transcript 1:16,
   80:6, 175:8,
   199:17.
transitioned 3:25.
transmitted 8:20.
tread 51:3.
treaty 5:11, 6:15.
trials 47:14.
trick 173:19,
   173:22.
trouble 197:19.
true 23:22, 23:25,

33:8, 34:24,
   35:18, 68:16,
   141:4, 148:24,
   152:9, 161:6,
   169:6.
truly 184:19.
trusted 177:1.
truthful 65:10.
try 20:24, 49:15,
   61:11, 62:16,
   116:11, 141:22,
   144:9, 173:24,
   176:19, 192:13,
   198:21.
trying 39:20, 56:23,
   62:17, 173:22,
   181:7, 184:16,
   190:1, 193:5,
   194:20.
turf 51:3.
Turn 6:25, 11:14,
   16:25, 17:5, 23:2,
   29:3, 34:17, 36:7,
   42:2, 70:1, 79:10,
   91:7, 99:17,
   99:18, 123:13,
   132:16, 142:6,
   153:9, 153:13,
   174:13, 180:4.
turned 114:7,
   186:5.
turning 162:1.
turns 34:10, 46:2.
twice 131:25.
twists 46:2.
two 2:23, 8:17,
   18:18, 32:24,
   48:15, 60:15,
   61:23, 70:16,
   71:7, 83:24,
   111:23, 114:23,
   115:8, 129:2,
   180:15.
two-question
   49:25.
two-step 49:24,
   50:6.
two-way 194:22,
   194:24.
type 25:10, 66:13.

typically 178:2.
.
.
< U >.
ultimate 49:20.
ultimately 82:6,
   82:11, 148:23,
   158:12, 169:1,
   197:22, 198:18.
umbrella 179:24.
uncertain 193:3.
uncharacteristically
   176:13.
uncomfortable
   39:3.
understand 13:21,
   16:17, 25:1,
   31:18, 37:4,
   54:23, 66:4, 74:4,
   81:10, 85:22,
   95:21, 96:17,
   102:17, 110:1,
   112:9, 120:2,
   127:10, 137:21,
   147:20, 157:9,
   158:20, 162:20,
   167:22, 192:3.
understanding 30:20,
   45:13, 191:15.
understandings
   5:11.
understands 45:14.
understood 163:4.
underway 7:24,
   135:23.
undue 30:5.
Unfortunately
   191:23, 195:1.
unique 6:7.
unit 70:22.
Unless 49:18, 59:24,
   154:6.
unlikely 183:4.
Unquestionably
   82:3.
unquote 30:3,
   176:1.
unsure 184:9.
until 7:12, 12:12,
   59:14, 60:17,

112:16, 141:3,
183:19, 191:9,
192:21, 198:17,
199:1.
upper 33:24.
useful 116:9.
using 61:3,
132:15.
uttered 80:7.
.
.
< V >.
vacated 196:22.
Vaguely 67:9.
vagueness 82:3.
various 134:2.
verbal 101:20.
verbatim 186:14.
verdict 26:2, 38:8,
55:24, 67:6, 75:5,
86:23, 91:23,
96:25, 103:19,
111:7, 121:3,
128:12, 144:11,
148:22, 149:3,
152:13, 158:10,
158:19, 161:5,
168:23, 169:6.
verified 18:9.
vernacular 176:20.
versus 2:3, 2:4,
2:8, 12:4, 12:13,
23:17, 23:21,
35:15, 35:21,
53:20, 53:24,
64:7, 64:11,
72:23, 73:2,
84:18, 84:21,
94:13, 94:17,
101:12, 101:15,
108:23, 118:25,
126:8, 136:18,
146:18, 156:6,
166:19.
via 5:1, 10:6,
198:24.
victim 51:8.
victims 50:23.
video 5:2.
videos 25:13, 37:17,

55:10, 66:16,
74:16, 86:9, 96:9,
103:4, 110:13,
120:14, 127:21,
128:22, 138:8,
148:7, 157:21,
168:8.
videotaping 15:6.
view 8:11, 32:7,
32:12, 189:21,
189:22.
views 34:3.
violation 10:21.
violent 51:8.
virtue 80:20.
visual 31:17,
32:22.
voice 12:1, 18:17,
34:4.
voir 13:12, 24:18,
36:21, 50:15,
54:15, 65:21,
73:21, 85:14,
95:13, 102:8,
109:18, 119:19,
127:2, 137:13,
147:12, 157:1,
162:23, 163:8,
167:14.
volume 17:5, 34:3.
voluntarily 5:25,
6:2, 6:3.
vs 1:8.
.
.
< W >.
W. 1:48.
wait 179:10,
179:11.
walk 75:17.
walked 39:19.
walking 15:3,
15:10.
wanted 125:21,
125:23.
warrant 51:12.
watch 8:19, 51:17,
53:2.
watched 31:13,
31:14, 45:17.

watching 39:21,
159:23, 162:19,
163:17.
waters 193:23.
website 10:10.
Wednesday 194:11,
194:16, 195:5,
199:6, 199:9.
weeks 13:9, 24:15,
36:18, 54:12,
65:18, 73:18,
85:11, 95:10,
102:5, 109:15,
119:16, 126:24,
137:10, 147:9,
156:23, 166:22,
167:11, 197:1.
weigh 189:20.
welcome 16:11,
16:23, 52:13.
well-being 8:14,
27:5.
well-informed
93:1.
west 33:8.
whatever 45:19,
68:14, 97:22,
105:1, 135:22,
184:18, 198:13.
white 114:7,
132:20.
whole 77:20, 80:12,
80:13, 88:7.
willing 93:21,
124:16, 145:21.
willingly 145:21.
willingness 108:5.
wind 199:3.
window 196:7.
Winstone 180:19.
wiped 143:14.
wire 125:19.
wish 180:6,
180:10.
withdraw 11:1, 63:6,
175:18.
within 8:4, 186:7,
186:12, 194:11,
196:7.
without 11:4, 13:13,

20:13, 23:4,
24:19, 30:18,
36:22, 46:7,
54:16, 65:22,
73:22, 80:21,
81:5, 85:15,
92:19, 92:20,
95:14, 102:9,
109:19, 119:20,
127:3, 137:14,
147:13, 157:2,
167:15, 184:6,
193:8.
witness/juror
92:11.
witnesses 71:14,
179:14, 179:22,
180:7, 180:10,
180:14, 182:21,
185:8, 185:16,
185:18, 185:22,
186:7, 187:9,
188:6, 195:8,
195:15, 196:14,
197:6, 197:8,
199:8, 199:11.
woman 129:7, 129:22,
130:16, 164:5.
wonder 39:23, 48:8,
48:20, 134:11.
wondered 43:15.
wondering 130:20,
133:16.
word 19:16, 20:20,
30:20, 31:23,
31:24, 45:14,
48:24, 129:23,
176:18.
words 19:19, 20:22,
20:23, 32:11,
48:3, 80:7,
104:25, 115:22,
115:25, 139:12,
139:13, 177:21.
work 3:7, 20:11,
144:3.
worked 186:24,
192:7.
working 52:24,
189:10, 191:19,

198:23.
works 70:17,
198:8.
worried 39:22,
111:17, 115:23.
written 173:20,
186:15, 186:20.
wrote 141:22.
.
.
< Y >.
years 34:12, 42:2,
52:12, 63:21,
76:17, 83:1,
93:18, 101:12,
129:8, 135:10,
145:17, 154:22,
191:1, 192:8.
young 159:14,
159:15, 160:5,
163:16, 164:5.
younger 117:10.
yourself 14:21,
26:22, 39:16,
56:17, 68:3,
88:16, 88:19,
97:16, 104:17,
112:4, 121:19,
121:22, 129:18,
139:25, 151:5,
171:12.
Yup 166:24, 167:2,
174:17, 174:23.
.
.
< Z >.
zero 82:11.
zeroed 47:9.
zeroing 52:8.
Zoom 5:2, 5:9,
179:18, 198:24.